# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| FLYING J INC., et al.,[1] | ) Case No. 08-13384 (MFW) |
| Debtors. | ) Jointly Administered |
| | ) Hearing Date: April 3, 2009 at 11:30 a.m. (ET) |
| | ) Objection Date: March 27, 2009 at 4:00 p.m. (ET) |

## MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER AMENDING THE RETENTION ORDER AUTHORIZING THE DEBTORS TO RETAIN BLACKSTONE ADVISORY SERVICES L.P. AS INVESTMENT BANKER AND FINANCIAL ADVISOR TO INCLUDE ADDITIONAL NECESSARY FINANCIAL ADVISORY AND INVESTMENT BANKING SERVICES

Flying J Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), file this motion (the "Motion") for entry of an amended order (the "Amended Order"), substantially in the form attached hereto as **Exhibit A**, amending the final retention order of Blackstone Advisory Services L.P. ("Blackstone"), to include additional necessary financial advisory and investment banking services directly related to the sale of certain assets, companies, or businesses as identified in the Amended Order.

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226), Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

3. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Bankruptcy Rules").

## Relief Requested

4. By this Motion, the Debtors request that this Court enter the Amended Order, substantially in the form attached hereto as **Exhibit A**, amending the Original Retention (as defined herein) to (a) include the Additional Services (as defined herein) in the scope of services to be provided by Blackstone to the Debtors pursuant to the engagement letter dated March 14, 2009 (the "Additional Services Engagement Letter"), and (b) modify the fee arrangement in the Original Retention to provide compensation to Blackstone for providing the Additional Services, as set forth below.

## Background

5. On December 22, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the Bankruptcy Code. On January 5, 2009, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Creditors' Committee").

6. The Debtors and their wholly owned non-debtor subsidiaries (collectively, the "Flying J Group") are a fully integrated oil company with operations in the field of exploration, production, refining, transportation, wholesaling and retailing of petroleum products. Debtor Flying J Inc. is one of the 20 largest privately held companies in America with 2007 consolidated

sales in excess of $16.2 billion and is the direct or indirect parent corporation of each of the other members of the Flying J Group.

7. The Flying J Group operates over 240 retail locations, including state-of-the-art travel plazas, convenience stores, restaurants, motels and truck service centers in 41 states and six Canadian provinces. In addition to usual rest stop services (food, fuel, shower facilities), the Flying J Group offers banking, bulk-fuel programs, communications (wireless Internet connections), fuel cost analysis, insurance and truck fleet sales. Furthermore, the Flying J Group explores for, refines and transports petroleum products and is likely the largest retail distributor of diesel fuel in North America. Other operations of the Flying J Group include online banking, card processing, truck and trailer leasing, and payroll services. In these widespread operations, the Flying J Group employs approximately 16,000 people.

8. Each of the Debtors in these chapter 11 cases is involved in or associated with the Flying J Group's core businesses of petroleum refining, supply and distribution. In particular, Debtors Big West Oil LLC and Big West of California LLC own and operate two refineries in North Salt Lake City, Utah and Bakersfield, California, respectively, which have the combined capacity to refine over 100,000 barrels of crude oil per day. These Debtors also are responsible for purchasing and transporting crude oil in parts of California, Utah, Wyoming and Colorado. Debtor Longhorn Pipeline, Inc. and its Debtor subsidiaries own and operate a 700-mile common carrier pipeline with installed capacity of over 70,000 barrels per day from the Gulf Coast near Houston to El Paso, Texas.

9. The Debtors have filed these chapter 11 cases to address near-term liquidity constraints brought on by the precipitous drop in the price of oil beginning in September of 2008 and continuing through the present as well as the recent tightening credit markets. The Debtors

believe that their businesses are fundamentally sound and profitable and that these chapter 11 cases will allow them to resolve their liquidity constraints and emerge as stronger, healthier companies.

### The Debtors' Decision To Retain Blackstone To Assist With Asset Sales

10. To address the Debtors' growing liquidity crisis, the Debtors employed Blackstone effective as of December 18, 2008 to provide financial advisory services to the Debtors in connection with a possible restructuring of certain liabilities of the Debtors and to assist the Debtors in analyzing, structuring, negotiating and effecting a "Restructuring" as defined in and pursuant to the terms of the engagement letter dated December 22, 2008 (the "Original Engagement Letter"). Since then, Blackstone has quickly become familiar with the Debtors' business, operations and financial condition and is both well-qualified and uniquely able to represent the Debtors as financial advisor and investment banker in connection with these chapter 11 cases in a cost-effective and efficient manner.

11. On January 16, 2009, the Debtors filed an application with this Court for entry of an order authorizing the retention of Blackstone as their Investment Banker and Financial Advisor pursuant to sections 327(a) and 328(a) of the Bankruptcy Code (the "Original Retention") [Docket No. 323]. As of the date this Motion, the order authorizing such retention is still pending.

12. Since filing the Original Retention, the Debtors have determined that the sale of certain assets would provide substantial value to the Debtors' estates. As a result, the Debtors have requested, and Blackstone has agreed, to expand the scope of Blackstone's engagement to include mergers and acquisitions services contemplated in the Additional Services Engagement Letter which relate to the Transaction(s) (as defined herein) and as subsequently directed by the Debtors (the "Additional Services").

## Blackstone's Qualifications

13. Blackstone is a preeminent financial and restructuring advisor with a reputation for creativity in complex business situations. The Debtors have selected Blackstone as their investment banker and financial advisor because of Blackstone's diverse experience, knowledge, recognized expertise, and reputation in the restructuring field, its understanding of the issues involved in chapter 11 cases, and because the Debtors believe that Blackstone possesses the resources and is well-qualified to provide the investment banking and financial advisory services that will be required in connection with these chapter 11 cases.

14. Blackstone is a leading advisor to debtors as well as creditors in large, complex and high profile restructurings and bankruptcies. Established in 1991, Blackstone has advised debtors and creditors in more than 150 distressed situations, both in and out of bankruptcy proceedings, involving some $500 billion of total liabilities. Blackstone's clients include debtors, creditors, corporate parents, financial sponsors and acquirors of troubled companies. Blackstone is particularly active in large, complex and high-profile bankruptcies and restructurings. Blackstone has advised the following clients, among others, in their chapter 11 reorganizations: In re SemCrude, L.P., No. 08–11525 (BLS) (Bankr. D. Del. Sept. 12, 2008) [Docket No. 1350]; In re Delta Airlines, Inc., No. 05–17923 (PCB) (Bankr. S.D.NY. Sept. 16, 2005) [Docket No. 180]; In re Winn–Dixie Stores, Inc., No. 05–03817 (JAF) (Bankr. M.D. Fla. June 3, 2005) [Docket No. 1560]; In re Mirant Corp., No. 03–46590 (DML) (Bankr. N.D. Tex. Dec. 8, 2003) [Docket No. 2081]; In re Williams Communication Group, No. 02–11957 (BRL) (Bankr. S.D.N.Y. July 31, 2002) [Docket No. 238]; In re Global Crossing Ltd., No. 02–40188 (REG) (Bankr. S.D.N.Y. Apr. 16, 2002) [Docket No. 831]; In re Enron Corp., No. 01–16034 (AJG) (Bankr. S.D.N.Y. July 8, 2002) [Docket No. 4965]; In re W.R. Grace & Co., No. 01–01139 (JKF) (Bankr. D. Del. May 3, 2001) [Docket No. 182]; and In re Dow Corning Corp., No.

95-20512 (DPF) (Bankr. E. D. Mich. Dec. 14, 1995) [Docket No. 3704]. In addition to restructuring advice, Blackstone has provided general advice to major companies such as Aquila, Inc., General Motors Corporation, The Goodyear Tire & Rubber Company and Xerox Corporation. As a result of its work on a significant share of major restructuring assignments, Blackstone is one of the most seasoned and experienced restructuring advisors on Wall Street. Blackstone's senior professionals have well in excess of 150 years of combined experience in restructuring assignments.

15. In particular, the Debtors believe that Blackstone is well qualified to provide the Additional Services because of Blackstone's extensive experience in the area of distressed mergers and acquisitions ("M&A") transactions. Blackstone has been an advisor on numerous complex M&A transactions in distressed situations and has significant experience with sales pursuant to section 363 of the Bankruptcy Code in large complex chapter 11 cases such as SemGroup, Enron, Global Crossing, Winn Dixie, WilTel Communications, Cable & Wireless America, Horsehead Industries, Fleming Companies, ContiFinancial, Adelphia Communications, Crown-Pacific, Russell-Stanley, and LTV Steel. Some of Blackstone's transactional capabilities include (a) the ability to give general advice related to mergers, acquisitions and portfolio rationalizations and divestitures, (b) the ability to advise on large cap (more than $10 billion), mid-cap, and small cap (less than $500 million) transactions, and (c) the ability to execute a broad variety of transactions including, but not limited to, acquisitions, third-party sales, divestitures, asset swaps, and recapitalizations. Blackstone also has significant relevant industry experience. For example, Blackstone advised Enron on the sale of three major North American natural gas pipelines to CCE Holdings, a joint venture of Southern Union Company and GE Commercial Finance Energy Financial Services, for $2.9 billion in transaction value, and, more

recently, Blackstone advised SemGroup on the sale of White Cliffs Pipeline, a 524-mile, 12-inch common carrier joint venture pipeline system with a 100,000 barrel tank.[2]

16. Paul P. Huffard, a Senior Managing Director of Blackstone, will lead all of the day-to-day aspects of this assignment. He is well-suited to provide the services required by the Debtors and his advisory experience extends across many industries. He was named one of the country's leading restructuring financial advisors in the K&A Restructuring Register, a peer-group listing assembled by the country's leading restructuring professionals, and he has significant experience with M&A transactions within chapter 11 bankruptcy proceedings. Advisory assignments in which he has been actively involved which required significant M&A work include, among others, Conti Financial Corp., Crown Pacific, Fleming Companies, The LTV Corporation, Mattress Discounters Corp., Plaid Clothing Group Inc., and Winn-Dixie Stores, Inc.

17. Employing the resources, capabilities and experience of Blackstone in the area of M&A is crucial to the Debtors' successful restructuring. An experienced investment bank and financial advisor such as Blackstone fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals. The Debtors believe that the expansion of the scope of Blackstone's services will be one of the key ingredients to a successful conclusion of these chapter 11 cases and that Blackstone's expertise will enable the Debtors to maximize the value of their chapter 11 estates. For these reasons, the Debtors require the expanded services of a capable and experienced investment banking firm such as Blackstone.

---

[2] This sale process has been put on hold for strategic reasons and adverse market conditions.

## Additional Services to Be Provided

18. Pursuant to the Amended Order, the scope of Blackstone's retention will be expanded to include the Additional Services directly related to the Transaction(s). These Additional Services include, but are not limited to, the following:

(a) Advise the Debtors in the sale, merger or other disposition of all or a portion of the Company or its assets (a "Transaction"), whether in a series of transactions or otherwise;

(b) Assist the Debtors in preparing marketing materials in conjunction with a possible Transaction(s);

(c) Assist the Debtors in identifying potential buyers or parties in interest to a Transaction(s);

(d) Develop due diligence materials and manage the due diligence process for interested parties;

(e) Assist and advise the Debtors concerning the negotiation and structuring of the terms, conditions and impact of any proposed Transaction;

(f) Design an appropriate sales/auction process and run any related auction process, as specified in any relevant bidding procedures arrangement;

(g) Provide expert witness testimony relating to the sale process(es) that have been run and the value of the bids received; and

(h) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Transaction, as requested and mutually agreed.

19. The services described above do not contemplate the rendering of a fairness opinion or a solvency opinion.

## Terms of Retention

20. Subject to Court approval, the Debtors will compensate Blackstone for the Additional Services in accordance with the terms and conditions of the Amended Order and the Additional Services Engagement Letter, attached hereto as Exhibit 1 to **Exhibit A**, which provides in relevant part for the following compensation structure (the "Fee and Expense

Structure"); provided, however, that if a Transaction is consummated contemporaneously as an integrated part of a Restructuring, then no separate Longhorn Transaction Fee or other Transaction Fee will be due Blackstone:[3]

    (a)    upon the consummation of a Transaction regarding the Debtors' pipeline and related assets ("Longhorn Transaction"), Blackstone's portion[4] of the transaction fee ("Longhorn Transaction Fee") payable in cash directly from gross proceeds is calculated as set forth in Table 1. Notwithstanding the foregoing, a transfer of the ownership or assets of the pipeline to the pipeline's creditors shall not be deemed a Longhorn Transaction, and no Longhorn Transaction Fee shall be payable to Blackstone in connection with such a transaction.

Table 1

| Longhorn Transaction Consideration: | Blackstone's Share of the Longhorn Transaction Fee: |
|---|---|
| Up to $200,000,000 | $500,000 ("Base Fee") |
| $200,000,000 to $300,000,000 | Base Fee + 1.0% of incremental Consideration over $200,000,000 |
| Greater than $300,000,000 | Base Fee + $1.0 million + 2.0% of incremental Consideration over $300,000,000 |

    (b)    if requested in writing to pursue additional Transactions, upon the consummation of each such Transaction, a Transaction Fee ("Transaction Fee") will be payable in cash directly from gross proceeds is calculated as set forth in Table 2.

Table 2

| Transaction Consideration: | Transaction Fee as a Percentage of Consideration |
|---|---|
| Up to $500,000,000 | 1.0% (subject to a minimum fee to be negotiated, not to exceed $1.0 million) |
| Greater than $500,000,000 | $5,000,000 + 0.5% on incremental amounts above $500,000,000 |

---

3    This summary is presented for convenience purposes only. The terms set forth in the Amended Order are controlling in all respects. Capitalized terms used herein not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter and Amended Order.

4    Blackstone is co-advising on the Longhorn Transaction.

(c) The scale in Table 2 is applied to the Consideration in each individual Transaction and not to the aggregate Consideration from all Transactions.

21. The Debtors do not intend to use the services of Blackstone for routine or small asset sales. Instead, the Debtors plan to use Blackstone's services only where the size and complexity of the transaction makes it necessary or beneficial for the Debtors to have Blackstone provide such services.

**Coordination of Services**

22. The services that Blackstone will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. In addition to, and in connection with the services described herein and in the Additional Services Engagement Letter, Blackstone will coordinate with Aegis Energy Advisors Corp. ("Aegis").[5] Specifically, Blackstone will carry out unique functions, and the Debtors and Blackstone will use reasonable efforts to coordinate Blackstone's services with the services provided by Aegis as well as the Debtors' other retained professionals to avoid unnecessary duplication of services to the extent consistent with Blackstone's own professional obligations.

**Basis for Relief**

23. The Debtors seek approval of the Fee and Expense Structure and Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on

---

[5] The Debtors are seeking the retention of Aegis pursuant to the Application of the Debtors for Entry of an Order Authorizing the Debtors to Retain Aegis Energy Advisors Corp. as Lead Sale Advisor Nunc Pro Tunc to January 27, 2009 filed contemporaneously herewith.

a contingency fee basis . . . ." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions, which is a significant departure from prior bankruptcy practice relating to the compensation of professionals. As the United States Court of Appeals for the Fifth Circuit recognized in In re National Gypsum Co., 123 F.3d 861, 862 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. The uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328 the professionals may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862. Owing to this inherent uncertainty, courts have approved similar retention orders and subsequent necessary amendments to those orders that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. See., e.g., In re Calpine Corp., No. 05-60200 (Bankr. S.D.N.Y. Oct. 25, 2006) [Docket No. 2951] (approving an amended retention order for Miller Buckfire & Co., LLC as financial advisors and investment bankers to the Debtors).

24. The Debtors respectfully submit that the current proposed engagement structure is reasonable and market-based. The Debtors have compared Blackstone's proposed compensation to ones in other larger reorganization cases and believe it to be comparable to compensation generally charged by financial advisory and investment banking firms for similar engagements, both in and out of chapter 11. Moreover, the proposed engagement properly aligns Blackstone's incentives towards consummating a transaction beneficial to the Debtors' estates.

## Notice

25. The Debtors have provided notice of this Motion by electronic mail, facsimile or overnight mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Creditors' Committee; (c) counsel for the agents for the Debtors' prepetition secured and unsecured lenders; and (d) any persons who have filed a request for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

26. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the forms attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: March 16, 2009
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Pauline K. Morgan (Bar No. 3650)
Edmon L. Morton (Bar No. 3865)
Donald J. Bowman, Jr. (Bar No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571–6637
Facsimile: (302) 576–3320

- and -

**KIRKLAND & ELLIS LLP**
David L. Eaton (admitted *pro hac vice*)
Adam C. Paul (admitted *pro hac vice*)
Jeffrey W. Gettleman (admitted *pro hac vice*)
Aon Center
200 East Randolph Drive
Chicago, Illinois 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200

- and -

**KIRKLAND & ELLIS LLP**
Craig A. Bruens (admitted *pro hac vice*)
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Counsel for the Debtors and Debtors in Possession