# **EXHIBIT A**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLYING J INC.., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Ref. Docket No.: _____ |

### AMENDED ORDER AUTHORIZING THE DEBTORS TO RETAIN BLACKSTONE ADVISORY SERVICES L.P. AS THEIR INVESTMENT BANKER AND FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE PETITION DATE

Upon the motion dated March 16, 2009 (the "Motion") of Flying J Inc., and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for entry of an amended order (this "Amended Order") amending the final retention order of Blackstone Advisory Services L.P. ("Blackstone"), to include additional necessary financial advisory and investment banking services (the "Additional Services") directly related to the sale of certain assets, companies, or businesses (the "Transaction") identified by the Debtors in this Amended Order; and the Debtors having submitted a proposed Order Authorizing the Retention of Blackstone Advisory Services L.P. as Financial Advisor and Investment Banker to the Debtors on February 18, 2009 [Docket No. 323] (the "Original Retention Order"); the Debtors, Blackstone and certain parties in interest having agreed that the terms of Blackstone's engagement should be further amended as requested by the Debtors in the Motion and as reflected in this Amended Order; and the Court having found that Blackstone neither holds nor

---

[1]   The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226), Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

represents any interest adverse to the Debtors' estates; and the Court having found that

Blackstone is "disinterested," as that term is defined in section 101(14) of the Bankruptcy Code;

and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this

District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the

relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and

other parties in interest; and the Debtors having provided appropriate notice of the Motion and

the opportunity for a hearing on the Motion under the circumstances and no other or further

notice need be provided; and the Court having reviewed the Motion and having heard the

statements in support of the relief requested therein at a hearing before the Court (the

"Hearing"); and the Court having determined that the legal and factual bases set forth in the

Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the

proceedings had before the Court; after due deliberation and sufficient cause appearing therefor,

it is HEREBY ORDERED THAT:

1.     This Amended Order supersedes and replaces the Original Retention Order.

2.     The Motion is approved on a final basis as set forth in this Amended Order.

3.     The Debtors are authorized pursuant to sections 327 and 328(a) of the Bankruptcy

Code to retain Blackstone as their investment banker and financial advisor in accordance with

the terms and conditions set forth in the Application, the original engagement letter dated

December 22, 2008 (the "Original Engagement Letter"), the engagement letter dated March 14,

2009 attached hereto as Exhibit 1 (the "Additional Services Engagement Letter," and together

with the Original Engagement Letter, the "Engagement Letters") and the indemnification

agreement annexed as **Attachment A** to Exhibit 1 attached hereto (the "Indemnification Agreement").

4.     The Additional Services Engagement Letter, as modified by this Amended Order, is approved pursuant to section 328(a) and the Debtors are authorized to pay, reimburse, and indemnify Blackstone according to the terms and at the times specified in the Additional Services Engagement Letter, as modified by this Amended Order.

5.     Blackstone's compensation as set forth in the Engagement Letters is amended as follows: Blackstone shall be entitled to a monthly advisory fee (the "Monthly Fee") in the amount of $250,000 in cash with the first Monthly Fee payable in advance on each monthly anniversary of the Effective Date.[2] The Monthly Fees shall be applied against and reduce the amount of the Restructuring Fee by (a) 25% of the amount of any Monthly Fees paid after the third Monthly Fee, (b) 50% of the amount of any Monthly Fees paid after the sixth Monthly Fee, and (c) 75% of the amount of any Monthly Fees paid after the ninth Monthly Fee.

6.     Blackstone will file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code and such Bankruptcy Rules as may then be applicable, from time to time, and such procedures as may be fixed by order of this Court. The right of any party in interest to object to the apportionment of such fees among the Debtor entities, but not to the level of fees in the aggregate, is preserved.

7.     Notwithstanding the prior paragraph, the fees payable to Blackstone pursuant to the Engagement Letters shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth

---

[2]  Capitalized terms used herein not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letters.

in section 330 of the Bankruptcy Code, in accordance with the terms of the Engagement Letters, subject to the procedures set forth in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules and any other applicable orders of this court; provided, however, that the U. S. Trustee retains the right to object to Blackstone's compensation on any basis, including under the "reasonableness" standard set forth in section 330 of the Bankruptcy Code.

8.  Blackstone shall apply for compensation and reimbursement in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, and subject to the approval of this Court and the procedures set forth in the Application, the proposed Order Authorizing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Compensation Procedures Order"), the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the further orders of this Court; provided, however, that Blackstone shall describe their services on a daily basis with time kept to the hour and shall describe expense detail.

9.  The indemnification obligations of the Debtors set forth in **Attachment A** annexed to Exhibit 1 attached hereto are approved, subject during the pendency of these chapter 11 cases to the following:

(a)  Blackstone shall not be entitled to indemnification, contribution or reimbursement pursuant to the Indemnification Agreement for services under the Engagement Letter or otherwise, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Bankruptcy Court;

(b)  The Debtors shall have no obligation to indemnify Blackstone, or provide contribution or reimbursement to Blackstone, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Blackstone's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; or (ii) settled prior to a judicial determination as to Blackstone's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or

4       DB02:7945625.1

self-dealing but determined by the Bankruptcy Court, after notice and a hearing, to be a claim or expense for which Blackstone should not receive indemnity, contribution or reimbursement under the terms of the Indemnification Agreement for services under the Engagement Letter;

(c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the chapter 11 cases of the Debtors (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the chapter 11 cases of the Debtors, Blackstone believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' obligations under the Indemnification Agreement (as modified by the order of the Bankruptcy Court approving the Indemnification Agreement), including without limitation the advancement of defense costs, Blackstone must file an application therefore in the Bankruptcy Court, and the Debtors may not pay such amounts to Blackstone before the entry of an order by the Bankruptcy Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by Blackstone for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Blackstone.

10.    Any Longhorn Transaction Fee owed to Blackstone shall be paid upon closing from the gross proceeds of sale or other disposition as contemplated herein, in accordance with, if necessary, section 506(c) of the Bankruptcy Code.

11.    All time periods set forth in this Order shall be calculated in accordance with Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

12.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13.    Notwithstanding the possible applicability of Rules 6004(h), 7062, 9014 of the Federal Rules of Bankruptcy Procedure or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation and enforcement of this Order.


Dated: April _____, 2009
        Wilmington, Delaware

_____
Mary F. Walrath
United States Bankruptcy Judge

# **EXHIBIT 1**

 The **Blackstone** Group®

March 14, 2009

Ms. Crystal Maggelet
Chairman of the Board
President and Chief Executive Officer
Flying J Inc.
1104 Country Hills Drive
Ogden, UT 84403

Dear Ms. Maggelet:

This letter confirms the understanding and agreement (the "Agreement") between Blackstone Advisory Services L.P. ("Blackstone") and Flying J Inc. (together with any subsidiaries, the "Company") regarding the retention of Blackstone on an exclusive basis by the Company (except as otherwise provided herein) effective as of December 22, 2008 (the "Effective Date") as its financial advisor for the purposes set forth herein. This letter supersedes the previous engagement letters between Blackstone and the Company dated December 18, 2008 and January 28, 2009. Blackstone acknowledges that the Company will also be advised by its legal counsel and by a Chief Restructuring Officer and other members of his firm.

Under this Agreement, Blackstone will provide financial advisory services to the Company in connection with a possible restructuring of certain liabilities of the Company and will assist the Company in analyzing, structuring, negotiating and effecting the Restructuring pursuant to the terms and conditions of this Agreement. Also, Blackstone will provide certain mergers and acquisitions advisory services to the Company, as detailed below. As used in this Agreement, the term Restructuring shall mean a reorganization of the Company pursuant to Chapter 11 of the United States Bankruptcy Code.

The financial advisory services to be rendered by Blackstone will include the following:

(a)     Assist in the evaluation of the Company's businesses and prospects;

(b)     Assist in the development of the Company's long-term business plan and related financial projections;

(c)     Assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties;

(d)    Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(e)    Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f)    Provide strategic advice with regard to restructuring or refinancing the Company's obligations;

(g)    Evaluate the Company's debt capacity and alternative capital structures;

(h)    Participate in negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

(i)    Value securities offered by the Company in connection with a Restructuring;

(j)    Advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)    Assist in arranging debtor-in-possession ("DIP") financing for the Company, as requested;

(l)    Provide expert witness testimony concerning any of the subjects encompassed by the other financial advisory services; and

(m)    Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring, as requested and mutually agreed.

The mergers and acquisitions advisory services to be provided by Blackstone to the Company will include the following:

(a)    Advise the Company in the sale, merger or other disposition of all or a portion of the Company or its assets (a "Transaction"), whether in a series of transactions or otherwise;

(b)    Assist the Company in preparing marketing materials in conjunction with a possible Transaction(s);

(c)    Assist the Company in identifying potential buyers or parties in interest to a Transaction(s)

(d)    Develop due diligence materials and manage the due diligence process for interested parties;

(e) Assist and advise the Company concerning the negotiation and structuring of the terms, conditions and impact of any proposed Transaction;

(f) Design an appropriate sales/auction process and run any related auction process, as specified in any relevant bidding procedures arrangement;

(g) Provide expert witness testimony relating to the sale process(es) that have been run and the value of the bids received; and

(h) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Transaction, as requested and mutually agreed.

The services described above do not contemplate the rendering of a fairness opinion or a solvency opinion.

Notwithstanding anything contained in this Agreement to the contrary, Blackstone shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. Blackstone makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. Blackstone is retained under this Agreement solely to provide advice regarding a Restructuring, and is not being retained to provide "crisis management."

The Company will pay the following fees to Blackstone for its financial advisory services:

(i) a monthly advisory fee (the "Monthly Fee") in the amount of $250,000 in cash, with the first Monthly Fee payable upon the execution of this Agreement by both parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date. An initial non-refundable retainer in the amount of $700,000 (the "Retainer") was paid to Blackstone on or about the Effective Date. One Monthly Fee was charged to the Retainer as of the Effective Date and subsequent Monthly Fee and out-of-pocket expenses will be charged against the Retainer until such time the Retainer is exhausted, with additional Monthly Fee amounts payable in cash thereafter. The Monthly Fees shall be applied against and reduce the amount to the Restructuring Fee identified below;

(ii) an additional fee (the "Restructuring Fee") equal to $8,500,000 payable in cash. Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon confirmation and consummation of a Plan of Reorganization pursuant to an order of the Bankruptcy Court. The Restructuring Fee shall be reduced by 25% of the amount of any Monthly Fees paid after the third Monthly Fee, 50% of the amount of any Monthly Fee paid after the sixth

Monthly Fee and 75% of the amount of any Monthly Fees paid after the ninth Monthly Fee. The Restructuring Fee shall be further reduced by the first $500,000 paid to Blackstone in respect of a Longhorn Transaction Fee. The Restructuring Fee will be earned on the consummation of the Restructuring and will be payable, in immediately available funds, promptly upon entry of an order of the Bankruptcy Court approving Blackstone's fee application.

Notwithstanding the foregoing, a Restructuring specifically shall be deemed to exclude any assumption at face value of obligations in connection with the sale or disposition of any subsidiaries, joint ventures, assets or lines of business of the Company;

(iii)   The Monthly Fees and the Restructuring Fee shall be allocated between Flying J Inc., Big West Oil, LLC and Longhorn Pipeline Inc. as follows: 60% to Flying J Inc.; 25% to Big West Oil, LLC; and 15% to Longhorn Pipeline Inc., and

(iv)   reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.

The Company will pay the following fees to Blackstone for its mergers and acquisitions advisory services; provided, however, that if a Transaction is consummated contemporaneously as an integrated part of a Restructuring, then no separate Longhorn Transaction Fee or other Transaction Fee will be due Blackstone. For the avoidance of doubt, a 363 sale approved by the Bankruptcy Court that is not part of a Plan of Reorganization will not be considered a Restructuring:

(i)   upon the consummation of a Transaction regarding the Company's pipeline and related assets ("Longhorn Transaction"), Blackstone's portion[1] of the transaction fee ("Longhorn Transaction Fee") payable in cash directly from gross proceeds is calculated as set forth in Table 1. Notwithstanding the foregoing, a transfer of the ownership or assets of the pipeline to the pipeline's creditors shall not be deemed a Longhorn Transaction, and no Longhorn Transaction Fee shall be payable to Blackstone in connection with such a transaction.

---

[1]   Blackstone is co-advising on the Longhorn Transaction.

Table 1

| Longhorn Transaction Consideration: | Blackstone's Share of the Longhorn Transaction Fee: |
|---|---|
| Up to $225,000,000 | $500,000 ("Base Fee") |
| Greater than $225,000,000 | Base Fee + 2.5% of incremental Consideration over $225,000,000 |

(ii) if requested in writing to pursue specific additional Transactions, upon the consummation of each such Transaction, a Transaction Fee ("Transaction Fee") payable in cash directly from gross proceeds is calculated as set forth in Table 2.

Table 2

| Transaction Consideration: | Transaction Fee as a Percentage of Consideration |
|---|---|
| Up to $500,000,000 | 1.0% (subject to a minimum fee to be negotiated, not to exceed $1,000,000) |
| Greater than $500,000,000 | $5,000,000 + 0.5% on incremental amounts above $500,000,000 |

The scale in Table 2 is applied to the Consideration in each individual Transaction and not to the aggregate Consideration from all Transactions. As used in this Agreement, Consideration means the gross value of all cash, securities and other properties paid or payable, directly or indirectly, in one transaction or in a series or combination of transactions, in connection with the Transaction or a transaction related thereto (including, without limitation, amounts paid (A) pursuant to covenants not to compete or similar arrangements and (B) to holders of any warrants, stock purchase rights, convertible securities or similar rights and to holders of any options or stock appreciation rights, whether or not vested). Consideration shall also include the face amount of any long-term liabilities or preferred stock (including indebtedness for borrowed money and the amount set forth in the Company's financial statements for any pension liabilities and guarantees) indirectly or directly assumed or acquired, or otherwise repaid or retired, in connection with or in anticipation of the Transaction. Consideration shall also include the aggregate amount of any extraordinary dividend or distribution made by the Company from the date hereof until the closing of the Transaction to the extent such dividend or distribution is made with respect to the asset or business which is the subject of the Transaction. If the Transaction takes the form of a purchase of assets, Consideration shall also include (i) the value of any current assets not purchased, minus (ii) the value of any current operating liabilities not assumed, in either case as relates to the business(es) or operations being purchased. Consideration shall include all amounts paid into escrow and all

contingent payments payable in connection with the Transaction, with fees on amounts paid into escrow to be payable upon the establishment of such escrow and fees on contingent payments to be payable when such contingent payments are made. If the Consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such Consideration is paid.

In this Agreement, the value of any securities (whether debt or equity) or other property paid or payable as part of the Consideration shall be determined as follows: (1) the value of securities that are freely tradable in an established public market will be determined on the basis of the last market closing price prior to the public announcement of the Transaction; and (2) the value of securities that are not freely tradable or have no established public market or, if the Consideration utilized consists of property other than securities, the value of such other property shall be the fair market value thereof as mutually agreed by the parties hereto.

The Company is not hiring Blackstone at this time to perform services in connection with obtaining new debt financing or in connection with every sale or merger and acquisition transaction. In the event the Company elects to retain Blackstone in the future in connection with any such transactions, the parties will enter into a separate written retainer agreement with respect thereto. Nothing in this Agreement shall restrict or prevent the Company from retaining other advisors or consultants in connection with any such transactions, and the Company shall not have any obligation to pay any fee or other consideration to Blackstone in connection with any such transactions unless otherwise agreed to in a separate written agreement between the Company and Blackstone.

The Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) Blackstone's retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company shall supply Blackstone with a draft of such application and any proposed order authorizing Blackstone's retention sufficiently in advance of the filing of such application and proposed order to enable Blackstone and its counsel to review and comment thereon. Blackstone shall have no obligation to provide any services under this Agreement unless Blackstone's retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Blackstone in all respects. Blackstone acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, Blackstone's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code

and any applicable fee and expense guideline orders; provided, however, that Blackstone shall only be required to maintain daily time descriptions which shall indicate total hours incurred by professional for each day and a brief description of the nature of the work performed each day and, provided further, that Blackstone shall not be required to maintain receipts for expenses in amounts less than $75. In the event that Blackstone's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Blackstone hereunder as promptly as practicable in accordance with the terms hereof.

With respect to Blackstone's retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that Blackstone's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of Blackstone's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of Blackstone's services hereunder could not be measured merely by reference to the number of hours to be expended by Blackstone's professionals in the performance of such services. The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Blackstone and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for Blackstone and that the actual time and commitment required of Blackstone and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues which Blackstone may be required to address in the performance of its services hereunder, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Monthly Fee and the Restructuring Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by Blackstone at the request of the Company, including the arranging of debt or equity capital (except as provided above), providing mergers and acquisitions advice (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between Blackstone and the appropriate party.

Except as contemplated by the terms hereof or as required by applicable law or legal process, for a period of one year after consummation of the Restructuring, Blackstone shall keep confidential all material non-public information provided to it by or at the request of the Company, and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with

Blackstone's performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential.

The Company will furnish or cause to be furnished to Blackstone such information as Blackstone believes appropriate to its assignment (all such information so furnished being the "Information"). The Company recognizes and confirms that Blackstone (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company is stored electronically on Blackstone's computer systems, Blackstone shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that Blackstone exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, any advice to be provided by Blackstone under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors or, if appropriate in the Company's judgment, in any filings in a Chapter 11 proceeding) without the prior written consent of Blackstone. All services, advice and information and reports provided by Blackstone to the Company in connection with this assignment shall be for the sole benefit of the Company and shall not be relied upon by any other person.

The Company acknowledges and agrees that Blackstone will provide its financial advice exclusively to the members of the Board of Directors and senior management of the Company and not to the Company's shareholders or other constituencies. The Board of Directors and senior management will make all decisions for the Company regarding whether and how the Company will pursue a Restructuring and on what terms and by what process. In so doing, the Board of Directors and senior management will also obtain the advice of the Company's legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of a Restructuring.

In consideration of Blackstone's agreement to provide financial advisory services to the Company in connection with this Agreement, it is agreed that the Company will indemnify Blackstone and its agents, representatives, members and employees. A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A.

In the event that, as a result of or in connection with Blackstone's engagement for the Company, Blackstone becomes involved in any legal proceeding or investigation or is required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, the Company will reimburse Blackstone for the reasonable fees and expenses of its counsel incurred in responding to such a request. Nothing in this paragraph shall affect in any way the Company's obligations pursuant to the separate indemnification agreement attached hereto.

Blackstone's engagement hereunder may be terminated upon 30 days' written notice without cause by either the Company or Blackstone; termination for cause by either party will occur forthwith. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of Blackstone as an independent contractor and the limitation as to whom Blackstone shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A or Blackstone's confidentiality obligations hereunder and (c) Blackstone shall be entitled to the Restructuring Fee or a Transaction Fee in the event that a Restructuring or a Transaction as the case may be is consummated at any time prior to the expiration of 12 months following the termination of this Agreement.

The Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

Notwithstanding anything to the contrary provided elsewhere herein, none of the provisions of this Agreement shall in any way limit the activities of The Blackstone Group L.P. and its affiliates in their businesses distinct from the restructuring advisory business of Blackstone Advisory Services L.P., provided that the Confidential Information is not made available to Representatives of The Blackstone Group L.P. and its affiliates who are not involved in the restructuring advisory business of Blackstone Advisory Services L.P. Should the Confidential Information be made available to a Representative of The Blackstone Group L.P. and its affiliates who is not involved in the restructuring advisory business of Blackstone Advisory Services L.P., such Representative shall be bound by the obligations set forth in this Agreement.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement shall be governed by, and construed

in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Company hereby agrees that any action or proceeding brought by the Company against Blackstone based hereon or arising out of Blackstone's engagement hereunder, shall be brought and maintained by the Company exclusively in the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York; provided, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case. The Company irrevocably submits to the jurisdiction of the courts of the State of New York located in the City and County of New York and the United States District Court for the Southern District of New York and the United States Bankruptcy Court for the district of Delaware, and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of Blackstone's engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings. The Company hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to Blackstone the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,

BLACKSTONE ADVISORY SERVICES L.P.

By: _____

Name:    Paul P. Huffard
Title:    Senior Managing Director

Accepted and Agreed to as
of the date first written above:

Flying J Inc.

By: _____

Name: Crystal Maggelet
Title: Chairman of the Board, Chief Executive Officer and President

- 10 -

ATTACHMENT A

Blackstone Advisory Services L.P.
345 Park Avenue
New York, NY 10154

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

This letter will confirm that we have engaged Blackstone Advisory Services L.P. ("Blackstone") to advise and assist us in connection with the matters referred to in our letter of agreement dated as of March 14, 2009 (the "Engagement Letter") and effective as of December 22, 2008, or in such other letters of agreement dated December 22, 2008 and January 28, 2009. In consideration of your agreement to act on our behalf in connection with such matters, we agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement (the "Engagement") under the Engagement Letter and will reimburse each Indemnified Party for all expenses (including reasonable fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending or assisting in the defense of any action, claim, suit, investigation or proceeding brought by or against any third party related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of Blackstone or the Indemnified Party seeking indemnification. We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us

that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of Blackstone or the Indemnified Party seeking the benefit of the exculpation.

If the indemnification provided for in the preceding paragraph is for any reason unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (i) in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement or (ii) if and only if the allocation provided by clause (i) above is for any reason not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of each of you and us, as well as any other relevant equitable considerations. For the purposes of this agreement, the relative benefits received by us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to Blackstone under the Engagement Letter (excluding any amounts paid as reimbursement of expenses).

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "Judgment"), whether or not such other party is an actual or potential party to such claim, action, suit or proceeding. In the event that we seek to settle or compromise or consent to the entry of any Judgment without Blackstone's consent, we agree that such settlement, compromise or consent (i) shall include an unconditional release of Blackstone and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of Blackstone or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on Blackstone or each other Indemnified Party.

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights. If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Blackstone and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the reasonable fees and disbursements of such counsel; provided, however, that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of the Company under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and such Indemnified Party.

Notwithstanding anything in the Engagement Letter or this Indemnification Agreement to the contrary, in the event the Company is or becomes a debtor under chapter 11 of the Bankruptcy Code, the following provisions shall apply:

(a)    Blackstone shall not be entitled to indemnification, contribution or reimbursement pursuant to this Indemnification Agreement for services under the Engagement Letter or otherwise, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Bankruptcy Court;

(b)    The Company shall have no obligation to indemnify Blackstone, or provide contribution or reimbursement to Blackstone, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Blackstone's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; or (ii) settled prior to a judicial determination as to Blackstone's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by the Bankruptcy Court, after notice and a hearing, to be a claim or expense for which Blackstone should not receive indemnity, contribution or reimbursement under the terms of the Indemnification Agreement for services under the Engagement Letter;

(c)    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the chapter 11 cases of the Company (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the chapter 11 cases of the Company, Blackstone believes that it is entitled to the payment of any amounts by the Company on account of the Company's obligations under this Indemnification Agreement (as modified by the order of the Bankruptcy Court approving this Indemnification Agreement), including without limitation the advancement of defense costs, Blackstone must file an application therefore in the Bankruptcy Court, and the Company may not pay such amounts to Blackstone

before the entry of an order by the Bankruptcy Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Bankruptcy Court shall have jurisdiction over any request for fees and expenses by Blackstone for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Company's obligation to indemnify Blackstone.

The provisions of this agreement shall apply to the Engagement and any written modification of the Engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This Agreement and the Engagement Letter shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

Flying J Inc.

By: _____
Name: Crystal Maggelet
Title: Chairman of the Board, Chief
Executive Officer and President

Accepted and Agreed
to as of the date first
written above:
BLACKSTONE ADVISORY SERVICES L.P.

By: _____
Paul P. Huffard
Senior Managing Director