# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FLYING J INC., et al.,[1] | Case No. 08-13384 (MFW) |
| Debtors. | Jointly Administered |
| | **Objection Deadline**: April 28, 2009 |

## NOTICE OF DE MINIMIS ASSET SALE

**PLEASE TAKE NOTICE** that, on December 22, 2008, Flying J. Inc. and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that, on February 19, 2009, the United States Bankruptcy Court for the District of Delaware (the "Court") approved an *Amended Order Approving Procedures for the Sale, Transfer or Abandonment of De Minimis Assets* [Docket No. 551] (the "Sale Order"), whereby the Court authorized the Debtors to (a) sell or transfer certain assets (collectively, the "De Minimis Assets") that are surplus, obsolete, non-core or burdensome and (b) abandon De Minimis Assets to the extent that a sale thereof cannot be consummated at value greater than the cost of liquidating such De Minimis Assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Order, the Debtors are hereby giving notice to those parties entitled to notice (the "Notice Parties") of the following sale of certain De Minimis Assets as follows:

(a) **Description of the De Minimis Assets**:

    (i) Approximately 10.63 acres, located in Snowville, Utah, and identified on the tax parcel map attached to the Purchase Agreement as parcels 08-063-0014, 0015, 0036, 0037, 0025, 0026, 0028 and 0048 (the "Property").

(b) **Aggregate Purchase Price**: $28,500.00

(c) **Seller**: Flying J Inc.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226), Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

(d) **Purchaser**: Archibald Properties LLC

(e) **Governing Purchase Agreement(s)**: Purchase Agreement (attached as **Exhibit A** hereto)

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Order, any recipient of this notice may object to the proposed sale within five (5) business days of service of this notice by filing a written objection with the Court at the address shown below:

| United States Bankruptcy Court |
|:---:|
| For the District of Delaware |
| Clerk of the Court |
| 824 North Market Street, 3rd Floor |
| Wilmington, Delaware 19801 |

*[The Remainder of This Page is Intentionally Left Blank]*

**If a written objection is filed with the Court within such five business day period and cannot be resolved, the relevant De Minimis Assets shall only be sold, transferred or abandoned upon further order of the Court or resolution of the objection by the parties in question.**

Dated: April 21, 2009
      Wilmington, Delaware

YOUNG CONAWAY
STARGATT & TAYLOR, LLP

Pauline K. Morgan (Bar No. 3650)
Edmon L. Morton (Bar No. 3865)
Donald J. Bowman, Jr. (Bar No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571–6637
Facsimile: (302) 576–3320

- and -

**KIRKLAND & ELLIS LLP**
David L. Eaton (admitted *pro hac vice*)
Adam C. Paul (admitted *pro hac vice*)
Jeffrey W. Gettleman (admitted *pro hac vice*)
300 N. LaSalle St.
Chicago, IL 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200
Counsel for the Debtors and Debtors in Possession

3    DB02:80
89336.1

# EXHIBIT A

# PURCHASE AGREEMENT

THIS PURCHASE AGREEMENT ("Agreement") made by and between Archibald Properties LLC, hereinafter called "Buyer," and Flying J Inc., a Utah corporation, hereinafter called "Seller," constitutes a contract for the purchase of the described property, as follows:

1. **Property**: Seller agrees to sell to Buyer that certain real property, totaling approximately 10.63 acres, located in Snowville, Utah, and identified on the attached tax parcel map as parcels 08-063-0014, 0015, 0036, 0037, 0025, 0026, 0028, and 0048 (the "Property"). See Exhibit A.

2. **Consideration**. The consideration for the conveyance shall be as follows:

   **a. Purchase Price.** The purchase price for the Property shall be an amount equal to Twenty Eight Thousand Five Hundred Dollars ($28,500.00) (The "Purchase Price"). The Purchase Price shall be paid in cash at Closing (as defined in Par. 12 herein).

   **b. Earnest Money.** Buyer shall deposit Five Hundred Dollars, ($500.00) with National Title Agency 5295 South Commerce Drive, Suite 250 Murray, Utah 84107 (Title Company") c/o Bill Rowley, upon execution of this Agreement, as earnest money ("Earnest Money"). All Earnest Money shall be become nonrefundable upon the expiration of the Feasibility Period (defined below), except to the extent of a breach of contract by Seller, and shall be credited toward the purchase price at closing.

3. **Escrow.** Upon Buyer's receipt of a fully executed copy of this Agreement, Buyer shall open an escrow with Title Company, by depositing with Title Company the Earnest Money and an executed copy of this Agreement. The Agreement, together with other written instructions as will be provided by Buyer and Seller to the Title Company, shall constitute its escrow instructions to the Title Company.

4. **Effective Date.** The effective Date shall be deemed the date when a fully executed copy of this Agreement, together with Buyer's check for the Earnest Money, is deposited with the Title Company.

5. **Title Commitment.** Seller shall cooperate with Buyer's efforts to obtain a commitment for title insurance ("Title Commitment"), issued by the Title Company, showing all matters affecting title to the Property including all exceptions, easements, restrictions, rights-of-way, covenants, reservations and other conditions or encumbrances affecting the Property, together with legible copies of all recorded documents constituting such exceptions. Seller shall deliver to Buyer copies of any written leases, tenancies and rental agreements affecting the Property.

6. **Survey.** Buyer may obtain, at Buyer's expense and within the Feasibility Period (defined below), a land survey ("Survey").

7. **Title and Survey Objections**. Within the Feasibility Period, Buyer shall give written notice to Seller of any material exception to clear title, or any material defect showing on the Survey, to which Buyer objects ("Objections"). All matters disclosed in the Title Commitment (other than

mortgages, trust deeds or other debt security instruments) or on the Survey to which Buyer does not so object shall be "Permitted Exceptions".

8. **Curing Objections**. Seller shall have the right and the option to cure the Objections within thirty (30) days after receipt of such notice ("Seller's Curing Period"). If Seller gives notice that Seller is unable or unwilling to cure the Objections, or if Seller fails to cure the Objections within Seller's Curing Period, then Buyer may (a) subject to Seller's prior written consent, cure the Objections at Buyer's cost and deduct the cost thereof from the Purchase Price at Closing, (b) if Seller elects to cure the Objections, extend the Seller's Curing Period, (c) waive any such Objections and proceed to Closing or (d) terminate this Agreement and receive a refund of the Earnest Money.

9. **Investigations.** From the effective Date until its termination or Closing, Buyer and its representatives shall have the right to enter upon the Property to conduct investigations, including without limitation, obtaining or performing surveys, soils and/or water tests, engineering studies, feasibility studies, environmental assessments and inspections, evaluating the availability of utilities, drainage, and access, and performing such other investigations as Buyer may desire to determine the condition of title and the condition of the Property. Buyer, in the conduct of its investigation, shall not unreasonably interfere with any existing operations on the Property and Buyer shall indemnify and hold Seller harmless from and against any and all damages whatsoever resulting from Buyer's investigation of the Property.

10. **Feasibility Period**. Seller agrees that Buyer shall have a period of fourteen (14) days ("Feasibility Period") after the Effective Date to determine the condition of title and the condition of the Property. Buyer shall give Seller notice of its decision to proceed with this purchase (subject to conditions herein stipulated) or to terminate on or before the expiration of the Feasibility Period if the condition of the Property or the condition of title is defective. Seller may continue to market the Property to other potential buyers during the Feasibility Period. Should Buyer provide proper written notice of termination prior to the expiration of the Feasibility Period, this Agreement shall terminate and be of no further force and effect, and Buyer shall receive all of the Earnest Money deposited with the Title Company. If Buyer fails to provide written notice of termination prior to the expiration of the Feasibility Period, Buyer shall proceed with the purchase, subject to the Conditions to Closing, below.

11. **Conditions to Closing.** Buyer's obligation to purchase the Property is subject to satisfaction of the following conditions prior to Closing:

    a. **Platting.** The Property shall be a legally marketable, separate parcel of land.

    b. **Title.** Seller shall have the ability to convey title to Buyer, subject only to the Permitted Exceptions.

12. **Closing.** The conveyance of the Property to Buyer shall be closed on the Closing Date at the office of the Title Company, which date shall be on or before April 29, 2009.

13. **Closing Documents.** The following documents shall be delivered at Closing:

    a. **Deed.** Seller shall deliver a Special Warranty Deed ("Deed") executed and acknowledged by Seller, conveying to Buyer good and marketable fee simple title to the Property free and clear of all liens or financial encumbrances, except the Permitted Exceptions.

b.  **Title Policy.** A standard ALTA Owner's Title Policy shall be issued by the Title Company, with Seller paying for the Standard Policy and Buyer paying for any extra premium required for endorsement requested by Buyer. The policy shall be in the amount of the Purchase Price and shall guarantee that Buyer's title to the Property is good and indefeasible subject only to the following exceptions: (1) the Permitted Exceptions, (2) taxes for the current year and subsequent years, not yet due and payable; and (3) unrecorded governmental rights and regulations, including but not limited to building and zoning ordinances.

c.  **Tax.** Seller shall deliver reasonable documentation showing there are no delinquent taxes levied or assessed against the Property as of Closing.

d.  **Restrictive Covenant.** Buyer shall execute and deliver at Closing, in a form acceptable to Seller, a Restrictive Covenant whereby Buyer accepts title subject to covenants for itself and its successors and assigns that the Property not be used, directly or indirectly, for the retail sale of motor fuels, ~~or for a restaurant, or for lodging.~~ *[initials]*

e.  **Other Documents.** Such other documents as are reasonably necessary to convey title and to achieve the purposes expressed by this Agreement

14. **Closing Costs.** Closing costs and prorations shall be prorated as follows:

    a.  **Taxes and Utilities.** All ad valorem and excise taxes and utilities shall be prorated to the date of Closing; the proration shall be based upon the previous year's taxes with an adjustment made between Seller and Buyer when the current year's taxes are known.

    b.  **Prepayment Penalties.** Seller shall pay all prepayment penalties and other amounts necessary to release all existing notes, liens and security interests against the Property.

    c.  **Fees.** Any transfer taxes or escrow fees charged by Title Company shall be shared equally by Seller and Buyer. Each party will pay its own attorney's fees. Buyer shall pay the cost of recording the Deed.

15. **Possession.** Possession of the Property shall be delivered to Buyer at Closing. Seller agrees that any improvements remaining on the Property after such date shall belong to Buyers.

16. **Warranties.** Buyer acknowledges that the Property will be sold "as is", with no warranties as to fitness for any particular purpose, and with no other warranties of any kind or nature, except that Seller makes the following representations and warranties as of the date of this contract and as of the date of Closing.

    a.  **Title.** Seller is able to cause good and marketable title to be conveyed pursuant to this contract.

    b.  **No Proceedings.** To the best of Seller's knowledge, there are no pending or threatened condemnation or similar proceedings or assessments affecting the Property, lawsuits by adjoining landowners or others, nor to the best knowledge and belief of Seller is any such

lawsuit contemplated by any person, nor is any condemnation or assessment contemplated by any governmental authority. Seller discloses that sale of the Property may require bankruptcy court procedures.

c. **No Leases.** At the time of Closing the property will not in whole or in part be subject to any leases, or other possessory rights and interest.

d. **No Contracts.** Seller has not and will not enter into any written contracts, agreements or listings, or be a party to any oral understandings or agreements affecting the Property, which may become binding upon Buyer.

e. **Compliance With Laws.** To the best knowledge of Seller, Seller has complied with all applicable laws, ordinances, regulations, statutes and rules relating to the Property or any part thereof. Seller discloses that sale of the Property may require bankruptcy court procedures.

f. **Environmental.** Seller hereby discloses that Seller has requested a "No Further Action" letter regarding environmental remediation activities on the property. Except as set forth herein, Seller represents that, to the best of seller's knowledge, the Property is not in violation of any applicable environmental laws or regulations. Notwithstanding the foregoing, the Property is offered "as is" and Buyer shall be responsible for conducting the necessary environmental studies as part of the Feasibility Period to determine the environmental condition of the Property and to ensure it is suitable for Buyer's use.

17. **Notices.** Any notice or designation to be given hereunder shall be given by placing the notice or designation in the United States mail, certified or registered, properly stamped and addressed to the address shown below or such other address as the respective party may direct in writing to the other, or by personal delivery to such address by a party, or by a delivery service which documents delivery, and such notice or designation shall be deemed to be received upon such placing in the mails or such delivery:

| | | |
|---|---|---|
| SELLER: | FLYING J INC<br>ATTN: Ronald R. Parker<br>3707 North Canyon Road, Suite 1-B<br>Provo, Utah 84604 | WITH A COPY TO:<br>Flying J Inc Legal Department<br>1104 Country Hills Drive, 7th Floor<br>Ogden, UT 84403<br>attn: Russ Workman |
| BUYER: | Archibald Properties, LLC<br>Attn: Brad Archibald<br>925 West Main Street<br>Tremonton, UT 84337 | |

18. **Condemnation. Dedication.** To the best of Seller's knowledge, no pending or threatened condemnation, environmental, zoning or other land use regulation proceeding relating to or affecting the Property exists.

19. **Entire Agreement.** This contract contains all agreements between the parties, and any agreement not contained herein shall not be recognized by the parties.

21. **Binding Effect**. This contract shall be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns.

22. **Acceptance**. This contract must be executed by Buyer and an executed copy returned to Buyer by April 13 or it shall be deemed null and void at Buyer's option.

23. **Confidentiality**. Buyer shall not disclose or otherwise make available to any other person (other than Buyer's employees, officers, directors, members, legal advisors, financial advisors, accountants and prospective lenders -- provided, as a condition to such disclosure each such person shall agree to maintain the confidentiality of such information) any of the terms of this Agreement or any information obtained by Buyer (or its agents or contractors) regarding the Property, without the prior written consent of Seller. In the event that disclosure is required by law, court order, or a governmental authority, Buyer shall promptly notify Seller and will use reasonable efforts to obtain protective orders or similar restraints with respect to such disclosure.

24. **Remedies** In the event that Buyer or Seller fails to comply with its obligations under this Agreement, the non-defaulting party may terminate this Agreement and be entitled to receive an amount equal to the Earnest Money as its sole remedy and relief hereunder (if Buyer is the breaching party the Earnest Money shall be disbursed to and retained by Seller; if Seller is the breaching party, the Earnest Money shall be disbursed to and retained by Buyer, and Seller shall also deliver to Buyer an amount equal to the Earnest Money). Seller and Buyer acknowledge that the actual damages to Buyer or Seller which would result from such breach would be extremely difficult to calculate or establish on the date hereof. In addition, Buyer and Seller desire to have a limitation put upon their potential liability to each other in the event of such a breach. Seller and Buyer specifically acknowledge and agree, after negotiation between Seller and Buyer, that the amount of the Earnest Money constitutes reasonable compensation for such a breach by either party. Buyer and Seller each hereby agree that, prior to its exercise of any right or remedy as a result of any breach or default under this Agreement, the non-defaulting party will first deliver written notice of said breach or default to the defaulting party, and allow ten (10) business days thereafter in which to cure said breach or default.

25. **Signing Authority**. Each signer of this Agreement represents and warrants that he or she has been fully authorized to execute and deliver this Agreement on behalf of the party he or she represents.

26. **Contracting Authority**. Buyer is and will remain a limited liability company, duly organized and validly existing in good standing under the laws of the State of Utah, duly qualified to do business in the jurisdiction where the Property is, and has full power and authority to perform its obligations under an appropriate resolution of its governing body.

THE SUBMISSION OF THIS AGREEMENT FOR EXAMINATION OR ITS NEGOTIATION OR THE NEGOTIATION OF THE TRANSACTION DESCRIBED HEREIN DOES NOT CONSTITUTE AN OFFER TO SELL, AND THE EXECUTION OF THIS AGREEMENT BY BUYER DOES NOT CONSTITUTE A BINDING CONTRACT UNTIL SUCH TIME AS THIS AGREEMENT HAS BEEN APPROVED AND EXECUTED BY AUTHORIZED OFFICERS OF SELLER, AND DELIVERED TO BUYER. THE TERMS OF THIS AGREEMENT ARE SUBJECT TO ALL LAWS, ORDERS, RULES

THE SUBMISSION OF THIS AGREEMENT FOR EXAMINATION OR ITS NEGOTIATION OR THE NEGOTIATION OF THE TRANSACTION DESCRIBED HEREIN DOES NOT CONSTITUTE AN OFFER TO SELL, AND THE EXECUTION OF THIS AGREEMENT BY BUYER DOES NOT CONSTITUTE A BINDING CONTRACT UNTIL SUCH TIME AS THIS AGREEMENT HAS BEEN APPROVED AND EXECUTED BY AUTHORIZED OFFICERS OF SELLER, AND DELIVERED TO BUYER. THE TERMS OF THIS AGREEMENT ARE SUBJECT TO ALL LAWS, ORDERS, RULES AND PROCEDURES APPLICABLE TO SELLER'S CHAPTER 11 PROCEEDINGS BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE CASE NO. 08-13384 AND RELATED PROCEEDINGS.

**IN WITNESS WHEREOF**, each of the parties has executed this Agreement.

Seller: Flying J Inc.

By: Ron Parker
Its: Vice President

Buyer: Archibald Properties LLC

Brad Archibald, Managing Member

# EXHIBIT A

## Legal Description of the Property

