# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Objection Deadline:** April 28, 2009 |

## NOTICE OF DE MINIMIS ASSET SALE

**PLEASE TAKE NOTICE** that, on December 22, 2008, Flying J. Inc. and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that, on February 19, 2009, the United States Bankruptcy Court for the District of Delaware (the "Court") approved an *Amended Order Approving Procedures for the Sale, Transfer or Abandonment of De Minimis Assets* [Docket No. 551] (the "Sale Order"), whereby the Court authorized the Debtors to (a) sell or transfer certain assets (collectively, the "De Minimis Assets") that are surplus, obsolete, non-core or burdensome and (b) abandon De Minimis Assets to the extent that a sale thereof cannot be consummated at value greater than the cost of liquidating such De Minimis Assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Order, the Debtors are hereby giving notice to those parties entitled to notice (the "Notice Parties") of the following sale of certain De Minimis Assets as follows:

(a)     **Description of the De Minimis Assets**:

     (i)     Approximately 50 acres, located in Helena, Montana, and described in the Mortgage, attached as **Exhibit A** hereto, as follows:

         (A)     Tract 1A, being located in the SW1/4 of Section 17, Township 11 North, Range 3 West, M.P.M., Lewis and Clark County, Montana, as shown on the Certificate of Survey filed under Doc. No. 582248/F.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226), Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

<ol type="A" start="2">
<li>(B)    Tract 2, being located in the SW1/4 of Section 17, Township 11 North, Range 3 West, M.P.M., Lewis and Clark County, Montana as shown on the Certificate of Survey filed under Doc. No. 559603/T.</li>
<li>(C)    Tract 3A, being located in the SW1/4 of Section 17, Township 11 North, Range 3 West, M.P.M., Lewis and Clark County, Montana, as shown on the Certificate of Survey filed under Doc. No. 582251/B.</li>
</ol>

(b)    **Aggregate Purchase Price**: $750,000.00

(c)    **Seller**: Flying J Inc.

(d)    **Purchaser**: Bridge Creek Estates LLC

(e)    **Governing Purchase Agreement(s)**: Purchase Agreement (attached as **Exhibit B** hereto)

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Order, any recipient of this notice may object to the proposed sale within five (5) business days of service of this notice by filing a written objection with the Court at the address shown below:

<div style="text-align:center; border:1px solid black;">
United States Bankruptcy Court<br>
For the District of Delaware<br>
Clerk of the Court<br>
824 North Market Street, 3rd Floor<br>
Wilmington, Delaware 19801
</div>

*[The Remainder of This Page is Intentionally Left Blank]*

DB02:80
89362.1

**If a written objection is filed with the Court within such five business day period and cannot be resolved, the relevant De Minimis Assets shall only be sold, transferred or abandoned upon further order of the Court or resolution of the objection by the parties in question.**

Dated: April 21, 2009
Wilmington, Delaware

**YOUNG CONAWAY
STARGATT & TAYLOR, LLP**

Pauline K. Morgan (Bar No. 3650)
Edmon L. Morton (Bar No. 3865)
Donald J. Bowman, Jr. (Bar No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:  (302) 571–6637
Facsimile:  (302) 576–3320

- and -

**KIRKLAND & ELLIS LLP**
David L. Eaton (admitted *pro hac vice*)
Adam C. Paul (admitted *pro hac vice*)
Jeffrey W. Gettleman (admitted *pro hac vice*)
300 N. LaSalle St.
Chicago, IL  60654
Telephone:  312-862-2000
Facsimile:  312-862-2200
Counsel for the Debtors and Debtors in Possession

DB02:80
89362.1

# **EXHIBIT A**

STATE OF MONTANA,
County of ............................... } ss.
Filed for record this ............ day of ............................... 19 ...... at ...... o'clock ...... M. and
Recorded in Book ...... of Mortgages on Page ...... of the Records of County of ...............................
State of Montana. ................................... Clerk and Recorder By ...............................
NO. 12 — MORTGAGE (SHORT FORM)

# MORTGAGE

THIS MORTGAGE, Made and entered into this 31st day of March ...... A. D. 19 99.
by and between ...... Flying J, Inc., a Utah corporation ......

of ...... P.O. Box 474, 50 North 990 South, Brigham City, ...MORTGAGOR......
and ...... Donald E. Ferriter & Sharon L. Ferriter, husband and wife, of ......
4734 N. Montana Ave., Helena, MT 59602 ...... MORTGAGEE.S.

WITNESSETH: That said Mortgagor......................... for and in consideration of the sum of
...... Six Hundred Thousand & no/100------------------Dollars ($ 600,000.00)
in hand paid by said Mortgagee......, the receipt of which is hereby acknowledged, do es ...... hereby
mortgage and confirm unto the said Mortgagee ...... their heirs, executors, administrators and
assigns forever the hereinafter described Real Estate, situate, lying and being in the City or Town xx
...................... County of Lewis and Clark ...................... State of Montana,
...................... See attached Ex. A
......................
......................

Together with all and singular the tenements, hereditaments, appurtenances, easements, water and all other rights,
belonging or in anywise appertaining thereto, unto the said Mortgagee.s and the.ir heirs, executors, administrators
and assigns.

The said Mortgagor...... represent.s. to and covenant with the said Mortgagee.s ...... and the.ir heirs, execu-
tors, administrators and assigns that...it xxxx will WARRANT and defend said premises against the lawful claims
of all persons whomsoever, and the said Mortgagor ...... each hereby relinquish all right of dower and all right of home-
stead, accruing or to accrue, in and to all of said premises, and the said Mortgagor ...... hereby covenant ...... 
with the said Mortgagee.s ...... that...it lawfully "seized" and in possession of said premises and the same is
free from all incumbrances excepting ......
...................... None ......

Provided Always, That these presents are upon the express condition that if said Mortgagor ......
heirs, executors, administrators and assigns, shall pay, or cause to be paid to the said Mortgagee.s ...... and their
heirs, executors, administrators and assigns, the full sum of Six Hundred Thousand & no/100-DOLLARS
according to the tenor and effect of that certain promissory note or obligation secured hereby a copy of said note or
obligation being as follows:
...... Promissory Note dated March 31, 1999. (Ten equal annual
...... payments at 8.25 percent interest of $90,428.50 on the 31st day
...... of March of each year until 2009.)
......

Then these presents to be void, otherwise to be and remain in full force and effect.

It is hereby agreed that if the Mortgagor ...... or maker or makers of the obligation secured by this indenture shall
fail to pay the principal or any interest as the same becomes due, or any taxes or assessments or insurance as required,
or otherwise fail to comply with any or all of the conditions of this mortgage, then all of said debt secured hereby shall
become due and collectible, and all rents and profits of said property shall then immediately accrue to the benefit of
the said Mortgagee......; and this mortgage may be foreclosed for the full amount, together with costs, taxes, insurance,
cost of abstract title, attorney's fees, and any and all other sums advanced or expense incurred on account of the said
Mortgagor...... for whatever purpose, and any and all advances shall draw interest at the rate of ten per cent per
annum, and be liens under this indenture.

A release of this mortgage is to be made at the expense of the Mortgagor ......, on full payment of indebtedness
secured hereby.

IN WITNESS WHEREOF, the said Mortgagor......ha.s ......hereunto set......it.s hand.s......
and seal...s...the day and year first above written.

Signed, sealed and delivered in the presence of .................................................(Seal)
FLYING J INC, A Utah corporation .................................................(Seal)
BY ...............................
J Phillip Adams, President .................................................(Seal)

STATE OF MONTANA, UTAH
County of BOX ELDER } ss.
On this ...... 31st ...... day of ...... March ...... in the year A. D. one thousand
nine hundred and ...... ninety-nine ...... before me LuAnn Miskin ......
a Notary Public for the State of Montana, personally appeared J Phillip Adams, President
of Flying J Inc. ......
known to me ...... (or proved to me xxxxxxx of ...............................)
to be the person ...... whose name is subscribed to the within instrument, and acknowledged to
me that ...... he xxxxx of xxxxxxxxxxxxx executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notarial
the day and year first above written.
...............................
Notary Public for the State of Montana Utah
Residing at Brigham City, UT My Commission expires 1-30- 19 2003


NOTARY PUBLIC
LUANN MISKIN
...... Utah 84302
My Commission Expires 1-30-2003
State of Utah

000746

# EXHIBIT A

Tract 1A, being located in the SW1/4 of Section 17,
Township 11 North, Range 3 West, M.P.M., Lewis and Clark
County, Montana, as shown on the Certificate of Survey
filed under Doc. No. 582248/F.

And, Tract 2, being located in the SW1/4 of Section 17,
Township 11 North, Range 3 West, M.P.M., Lewis and Clark
County, Montana as shown on the Certificate of Survey filed
under Doc. No. 559603/T.

And, Tract 3A, being located in the SW1/4 of Section 17,
Township 11 North, Range 3 West, M.P.M., Lewis and Clark
County, Montana, as shown on the Certificate of Survey
filed under Doc. No. 582251/B.

594896
PAULETTE DEMAROIS & REC
LEWIS & CLARK CO
03 APR -1 AM 11:00
BOOK M21 PAGE 9198
BY Shelby McMartin

000747

# PROMISSORY NOTE
## SECURED BY MORTGAGE

$600,000.00
Due: March 11, 1999

Brigham City, Utah
March 11, 2009

FOR VALUE RECEIVED Flying J Inc., a Utah corporation, of P.O. Box 678, 50 West 990 South, Brigham City, Utah 84302, (referred to herein as the "Maker") promises to pay to Donald E. Ferriter and Sharon L. Ferriter, husband and wife, at 4734 N. Montana Avenue, Helena, Montana 59602, (referred to herein as "Payees") the sum of Six Hundred Thousand and no/100 Dollars ($600,000.00), together with interest accruing on the unpaid balance outstanding at the annual rate of 8.25 percent.

This note shall be as follows:

In 10 annual payments of $90,428.58, first credited to interest, and the balance to principal on the 31st day of March of each year commencing the 31st day of March, 2000. All accrued interest and the remaining principal balance shall be paid on the 31st day of March, 2009. This note may be voluntarily prepaid at any time or times, in whole or in part, without premium or penalty.

All payments under this note shall be applied initially against accrued interest and thereafter in reduction of principal. Prepayments shall be applied against principal and shall not release the Maker of its obligation to make annual installments as herein above set forth.

This note is secured by a Mortgage dated March 31, 1999, against real property in Lewis and Clark County, Montana, described in Exhibit A attached hereto.

In the event of default, as described in the Mortgage, Payees may at their option take any action permitted by the laws of the State of Montana to collect the balance due under the note and foreclose its Mortgage.

-1-

000748

All costs of collection, including reasonable attorney fees, shall be assessed to Maker.

DATED this 31st day of March, 1999.

FLYING J INC., a Utah corporation

By _____

J Phillip Adams   Its President

000743

## MONTANA TRUST INDENTURE

THIS TRUST INDENTURE, made this 22 day of March, 2002, between FLYING J., INC. whose mailing address is 1104 Country Hills Drive, Ogden, UT 84403, as Grantor, HELENA ABSTRACT AND TITLE COMPANY, a Montana Corporation, with principal office at Helena, Montana, as Trustee, and SHARON FERRITER AND DONALD FERRITER, as Beneficiaries.

WITNESSETH:

That Grantor hereby irrevocable grants bargains, sells, conveys and warrants to trustee in trust, nevertheless, with power of sale that certain real property, which does not exceed forty (40) acres, situated in the County of Lewis and Clark, State of Montana, particularly described as follows, to-wit:

Tract 1B, being located in the S1/2 SW1/4 of Section 17, Township 11 North, Range 3 West, P.M.M., Lewis and Clark County, Montana, as shown on the Certificate of Survey filed under Doc. No. 582248-F

TOGETHER WITH: (1) All buildings, fixtures and improvements thereon and all water rights, rights-of-way, tenements, hereditaments, privileges and appurtenances thereunto belonging, now owned or hereafter acquired, however evidenced, used or enjoyed with said premises or belonging to the same; (2) All right, title and interest hereafter acquired in or to any of said premises, hereby also releasing relinquishing and waiving all exemptions, rights of dower and homestead, in or to said premises, vested or inchoate; (3) All heating, air conditioning, plumbing and lighting facilities, equipment and fixtures now or hereafter installed upon or within said premises, used, or proper or necessary to constitute the said premises a habitable, usable or operating unit - all of said property being designated and deemed for the purposes of this instrument a part of the realty.

FOR THE PURPOSE OF SECURING: (1) Payment of the principal sum of Fifty Seven Thousand Six Hundred Dollars ($57,600.00) with interest thereon according to the terms of a promissory note, date the ____ day of March, (and any extensions and/or renewals or modifications thereof), made by Grantor payable to the order of Beneficiary in installments, the last of which, unless sooner paid, will be due and payable on the 1st day of June, 2008; (2) Payment of all sums expended or advanced by Beneficiary under or pursuant to the terms hereof, together with interest thereon as herein provided; and (3) Performance of each agreement of Grantor herein and in said note contained.

To protect the security of this Trust Indenture and for other purposes, Grantor agrees that the Appendix of Additional Terms and Conditions attached hereto is incorporated herein and made an integral part hereof for all purposes as though set forth herein at length. Grantor further acknowledges a copy of said provisions.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand the day and year first hereinabove written.

FLYING J. INC.

By: 

Its: Secretary

3016442
Page: 1 of 4
03/22/2002 02:59P
Bk-M2B Pg-2038
Lewis & Clark County    MTG

000750

STATE OF UTAH )
                                                 : ss.
County of Weber )

Utah   On this __ day of March, 2002, before me, the undersigned, a Notary Public for the State of
~~Montana~~, personally appeared Burt Pruван, known to me to be the Secretary of
Flying J. Inc. the Corporation that executed the within instrument, and acknowledged to me that said
Corporation executed the same.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notarial Seal the day
and year in this certificate first above written.



Michelle L. Satterthwaite
Michelle L. Satterthwaite
print full name
NOTARY PUBLIC for the State of Utah
Residing at Box Elder County
My Commission Expires 1/25/06
                        mm/dd/yyyy

3016442
Page: 2 of 4
03/22/2002 02:59P
Lewis & Clark County     MTG     BK-M26 Pg-2038

000751

TO PROTECT THE SECURITY OF THIS TRUST INDENTURE, AND FOR OTHER PURPOSES, GRANTOR AGREES:

1. To keep said property in good condition and repair; to complete and restore promptly and in a good and workmanlike manner any building which may be constructed, damaged or destroyed thereon, and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws, covenants and restrictions affecting said property; not to commit or permit waste thereof; not commit, suffer or permit any act upon said property in violation of the law; to do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general; and if the loan secured hereby or any part thereof is being obtained for the purpose of financing construction of improvements on said property, Grantor further agrees:

    a.     To commence construction promptly and to pursue the same with reasonable diligence to completion in accordance with plans and specifications satisfactory to the Beneficiary, and

    b.     To allow Beneficiary to inspect said property at all times during construction.

Trustee, upon presentation to it of an affidavit signed by Beneficiary, setting forth facts showing a default by Grantor under this numbered paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon as provided in this instrument, as allowed by law.

2. To provide, maintain and deliver to Beneficiary, insurance of such type or types and amounts as Beneficiary may require, on the improvements now existing or hereafter erected or placed on said property. Such insurance shall be carried in companies approved by the Beneficiary with loss payable clause in favor of and in form acceptable to Beneficiary. In the event of loss, Grantor shall give immediate notice to Beneficiary, who may make proof of loss and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Beneficiary instead of to Grantor and Beneficiary jointly, and the insurance proceeds, or any part thereof, may be applied by Beneficiary, at its option, to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. Notwithstanding any other provision contained in this paragraph 2, Grantor shall have the right, at its option, to satisfy said insurance requirements with proof of ability to self-insure.

3. To deliver to, pay for and maintain with Beneficiary until the indebtedness secured hereby is paid in full, such evidence of title as Beneficiary may require, including abstracts of title or policies of title insurance and any extensions or renewals thereof or supplements thereto.

4. To pay before delinquent all taxes and assessments, including interest and penalties, affecting said premises and improvements; to promptly pay and discharge all encumbrances, charges and liens on said property attributable to obligations incurred by Grantor, which at any time are, or appear to be, prior or superior hereto.

5. Except as otherwise expressly provided herein, to pay all costs, fees and expenses of this trust, including cost of search and evidence of title, advertising and recording expense, documentary taxes and Trustee's and attorney's fees as allowed by law.

6. Should Grantor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, without obligation so to do and after reasonable notice to or demand upon Grantor and without releasing Grantor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes.

7. To pay immediately and without demand all sums expended hereunder by Beneficiary or Trustee, with interest from date of expenditure at the rate of eight point five percent (8.5%) per annum until paid, and the payment thereof shall be secured hereby.

IT IS MUTUALLY AGREED THAT:

8. Without affecting the liability of any person, including Grantor, for the payment of any indebtedness secured hereby, or the lien of this Trust Indenture on the remainder of the property for the full amount of any indebtedness unpaid, Beneficiary and Trustee are respectively empowered as follows: Beneficiary may from time to time and with notice to and consent from Grantor:

    a.     Release any person liable for payment of any of the indebtedness,
    b.     Extend the time or otherwise alter the terms of payment of any of the indebtedness,
    c.     Alter, substitute or release any property securing the indebtedness;

Trustee may, at any time and from time to time, upon the written request of Beneficiary, with notice to and consent from Grantor:

    a.     Consent to the making of any map or plat of the property,
    b.     Join in granting any easement or creating any restriction thereon,
    c.     Join in any subordination or other agreement affecting this Trust Indenture or lien or charge thereof,
    d.     Reconvey, without warranty, all or any part of the property.

9. Both parties agree that Beneficiary may, if Beneficiary so elects, procure and thereafter continue during the term of this Indenture, for as long as Beneficiary desires, a form of insurance acceptable to Beneficiary insuring Beneficiary against any loss sustained by Beneficiary by reason of any default in payment by Grantor of the secured indebtedness.

10. Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Trust Indenture and said note to Trustee for cancellation and retention and upon payment by Beneficiary of its fees, Trustee shall reconvey to Grantor, without warranty, the property then held hereunder.

11. The entering upon and taking possession of said property, the collection of fire or other insurance policies, or compensation or awards for any taking or damage of said property, and the application or release thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

12. Time is of the essence hereof. Upon default by Grantor in the payment of any indebtedness secured hereby or in the performance of any agreement hereunder, all sums secured hereby shall immediately become due and payable at the option of the Beneficiary. In the event of such default, Beneficiary may execute or cause Trustee to execute a written notice of default and of election to cause such property to be sold to satisfy the obligations hereof, and Trustee or Beneficiary shall file such notice for record, in each county wherein said property or some part thereof is situated. Beneficiary shall also deposit with Trustee, the note and all documents evidencing expenditures secured hereby.

**3016442**
Page: 3 of 4
03/22/2002 02:65P
Lewis & Clark County     MTG     Bk-M28 Pg-2038

000752

13. After the lapse of such time as may then be required by law following the recordation of said notice of default and of election to cause said property to be sold, and notice of default and notice of sale having been given as then required by law, Trustee, or its attorney, without demand on Grantor, shall sell said property on the date and at the time and place designated in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine (but subject to any statutory right of Grantor to direct the order in which such property, if consisting of several known lots or parcels, shall be sold), at public auction to the highest bidder, the purchase price payable in cash in lawful money of the United States at the time of sale. The person conducting the sale may, for any cause he deems expedient, postpone the sale for a period not exceeding fifteen (15) days by public proclamation by such person at the time and place fixed in the notice of sale, and no other notice of the postponed sale need be given. Trustee shall execute and deliver to the purchaser its deed conveying said property so sold, but without any covenant of warranty, express or implied. The recitals in the deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person including Beneficiary (but excluding Trustee) may bid at the sale. After deducting all costs and expenses of exercising the power of sale and of the sale, including cost of search and evidence of title, advertising and recording expense, documentary taxes and Trustee's and attorney fees, Trustee shall apply the proceeds of sale to payment of all amounts secured hereby and due hereunder, including all sums expended by the Trustee and Beneficiary, or either of them, with accrued interest thereon at the rate of eight point five percent (8.5%) per annum from the date of expenditure thereof, and the surplus, if any, to the person or persons legally entitled thereto; provided that the Trustee, in its discretion, may deposit such surplus with the County Clerk and Recorder of the county in which the sale took place.

14. Grantor agrees to surrender possession of the hereinabove described trust property to the purchaser at the aforesaid sale on the tenth (10th) day following said sale, in the event such possession has not previously been delivered by Grantor.

15. Each abstract of title, title insurance policy and all other evidences of title, placed or deposited with the Beneficiary shall be deemed an incident to the title to the trust property and upon foreclosure by exercise of power of sale, or otherwise, shall pass to the purchaser and the same are hereby pledged as additional security for payment of the indebtedness secured hereby.

16. Upon the occurrence of any default hereunder, Beneficiary shall have the option to declare all sums secured hereby immediately due and payable and foreclose this Trust Indenture in the manner provided by law for the foreclosure of mortgages on real property and Beneficiary shall be entitled to recover in such proceedings all costs and expenses incident thereto, including a reasonable attorney fee in such amount as shall be fixed by the Court.

17. Except as may be otherwise provided herein, Grantor agrees to pay to Beneficiary or Trustee the costs and expenses, including a reasonable attorney fee, incurred by either of them in instituting, prosecuting or defending any Court action in which Grantor does not prevail, if such action involves the interpretation hereof or performance hereunder by a party hereto or the breach of any provision hereof by a party hereto, including but not limited to an action to obtain possession of the above-described property after exercise of the power of sale granted hereunder.

18. This Trust Indenture shall apply to, inure to the benefit of and bind all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. All obligations of Grantor hereunder are joint and several. The term "Beneficiary" shall mean the owner and holder, including any pledgee, of the note secured hereby. In this Trust Indenture, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

19. Trustee accepts this Trust when this Trust Indenture, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of a pending sale under any other trust indenture or of any action or proceeding in which Grantor, Beneficiary, or Trustee shall be a party, unless brought by Trustee.

20. This Trust Indenture is made within the State of Montana pursuant to the Small Tract Financing Act of Montana and is not made or taken in substitution for any mortgage in existence on the effective date of said Act.

3016442
Page: 4 of 4
03/22/2002 02:59P
Lewis & Clark County    MTG    Bk-M28 Pg-2038

OA10499CLNTM04f83VerT1319.frm

000734

## ESCROW INSTRUCTIONS:  DEPOSIT OF FUNDS PRIOR TO CLOSING

TO:  HELENA ABSTRACT & TITLE COMPANY, AS ESCROW HOLDER

DATE: April _9_, 2009

RE:  Escrow No: _____
     Property:  see exhibit A part 2 of buy-sell agreement

     Buyer(s):  **BRIDGE CREEK, LLC**


     Seller(s):  **FLYING J INC., A UTAH CORPORATION.**


The undersigned hereby hand you the sum of **$10,000.00,** which you are to deposit into your non-interest bearing Trust Account and hold, pending further instructions to follow.

These are to be credited to the undersigned Buyer(s) as payment in part of the purchase price of the above referenced property and in accordance with the terms and conditions set forth in the Purchase Agreement and/or Escrow Instructions existing between the above parties.

The undersigned hereby acknowledge and understand that in the event of the cancellation of this escrow, all funds deposited, except loan funds, shall be held subject to cancellation instructions acceptable to Helena Abstract & Title Company, and signed by both Buyer(s) and Seller(s).

You may terminate this escrow and return all papers and moneys to the parties herein only upon written direction to you of all parties of this escrow and their agent(s), if any, unless otherwise specified herein.  Provided, however, that in the event of such termination of escrow, the escrow holder may withhold from funds due either party, cancellation fees and any expense incurred by the escrow holder while this escrow is pending.

Provided, further, that in the event a dispute arises between the principals hereto or with any third party during the course of this escrow, Helena Abstract & Title Company shall have the option to await settlement of such controversy between the parties and submission of joint instructions by them, or to institute an interpleader action or to otherwise await entry of a court order or judgment determining the parties right to such dispute.  And in such event, Helena Abstract & Title Company shall be held harmless from any damages or interest.  The parties hereto agree to reimburse and indemnify Helena Abstract & Title Company for all attorney fees, court costs, and expenses incurred as a result of said dispute.

The undersigned also acknowledge and understand that fees advanced and/or cancellation fees may be due as compensation for services performed by Helena Abstract & Title Company.  That the individuals signing below on behalf of the respective parties hereto warrant that they are duly authorized to execute these instructions on behalf of said parties, and that such execution is binding upon said parties without further actions or ratification.

Seller: **FLYING J INC., A UTAH CORPORATION.**

BY:_____

_____


Buyer: **BRIDGE CREEK, LLC**

BY:_____

_____


The foregoing instructions are hereby acknowledged and received by Helena Abstract & Title Company.

By: _____

# **EXHIBIT B**

**PURCHASE AGREEMENT**

*PRW*

THIS PURCHASE AGREEMENT ("Agreement") made by and between BRIDGE CREEK LLC, hereinafter called "Buyer," and Flying J Inc., a Utah corporation, hereinafter called "Seller," constitutes a contract for the purchase of the described property, as follows:

1. **Property:** Seller agrees to sell to Buyer that certain real property, totaling approximately 50 acres legally described on Exhibit A, attached and incorporated herein by this reference, together with all rights, title and interests appurtenant thereto (the "Property").

2. **Consideration.** The consideration for the conveyance shall be as follows:

   **a. Purchase Price.** The purchase price for the Property shall be an amount equal to Seven Hundred Fifty Thousand Dollars ($750,000.00) (The "Purchase Price"). The Purchase Price shall be paid as follows:

   (i) **Earnest Money.** Buyer shall deposit Ten Thousand Dollars, ($10,000.00) with ~~National Title Agency 5295 South Commerce Drive, Suite 250 Murray, Utah 84107~~ (Title Company") ~~c/o Bill Rowley~~, upon execution of this Agreement, as earnest money ("Earnest Money"). All Earnest Money shall be become nonrefundable upon the expiration of the Feasibility Period (defined below), except to the extent of a breach of contract by Seller, and shall be credited toward the purchase price at closing.

   *Helena Abstract and Title Co.
   PO B 853
   Helena mt 59624
   Attn B. ILGowen Jr.*

   (ii) **Promissory Note.** Buyer shall deliver a fully executed promissory note in the amount of $50,000, in the form attached hereto as Exhibit B.

   (iii) **Cash at Closing.** The balance of the Purchase Price shall be paid in cash at Closing.

3. **Escrow.** Upon Buyer's receipt of a fully executed copy of this Agreement, Buyer shall open an escrow with Title Company, by depositing with Title Company the Earnest Money and an executed copy of this Agreement. The Agreement, together with other written instructions as will be provided by Buyer and Seller to the Title Company, shall constitute its escrow instructions to the Title Company.

4. **Effective Date.** The effective Date shall be deemed the date when a fully executed copy of this Agreement, together with Buyer's check for the Earnest Money, is deposited with the Title Company.

5. **Title Commitment.** Seller shall cooperate with Buyer's efforts to obtain a commitment for title insurance ("Title Commitment"), issued by the Title Company, showing all matters affecting title to the Property including all exceptions, easements, restrictions, rights-of-way, covenants, reservations and other conditions or encumbrances affecting the Property, together with legible

copies of all recorded documents constituting such exceptions. Seller shall deliver to Buyer copies of any written leases, tenancies and rental agreements affecting the Property.

6. **Survey.** Buyer may obtain, at Buyer's expense, a land survey ("Survey").

7. **Title and Survey Objections.** Prior to Closing, Buyer shall give written notice to Seller of any material exception to clear title, or any material defect showing on the Survey, to which Buyer objects ("Objections"). All matters disclosed in the Title Commitment (other than mortgages, trust deeds or other debt security instruments) or on the Survey to which Buyer does not so object shall be "Permitted Exceptions".

8. **Curing Objections.** Seller shall have the right and the option to cure the Objections within thirty (30) days after receipt of such notice ("Seller's Curing Period"). If Seller gives notice that Seller is unable or unwilling to cure the Objections, or if Seller fails to cure the Objections within Seller's Curing Period, then Buyer may (a) subject to Seller's prior written consent, cure the Objections at Buyer's cost and deduct the cost thereof from the Purchase Price at Closing, (b) if Seller elects to cure the Objections, extend the Seller's Curing Period, (c) waive any such Objections and proceed to Closing or (d) terminate this Agreement and receive a refund of the Earnest Money.

9. **Investigations.** From the effective Date until its termination or Closing, Buyer and its representatives shall have the right to enter upon the Property to conduct investigations, including without limitation, obtaining or performing surveys, soils and/or water tests, engineering studies, feasibility studies, environmental assessments and inspections, evaluating the availability of utilities, drainage, and access, and performing such other investigations as Buyer may desire to determine the condition of title and the condition of the Property. Buyer, in the conduct of its investigation, shall not unreasonably interfere with any existing operations on the Property and Buyer shall indemnify and hold Seller harmless from and against any and all damages whatsoever resulting from Buyer's investigation of the Property.

10. **Feasibility Period.** Seller agrees that Buyer shall have a period of twenty one days ("Feasibility Period") after the Effective Date to determine the condition of title and the condition of the Property. Buyer shall give Seller notice of its decision to proceed with this purchase (subject to conditions herein stipulated) or to terminate on or before the expiration of the Feasibility Period if the condition of the Property or the condition of title is defective. Seller may continue to market the Property to other potential buyers during the Feasibility Period. Should Buyer provide proper written notice of termination prior to the expiration of the Feasibility Period, this Agreement shall terminate and be of no further force and effect, and Buyer shall receive all of the Earnest Money deposited with the Title Company. If Buyer fails to provide written notice of termination prior to the expiration of the Feasibility Period, Buyer shall proceed with the purchase, subject to the Conditions to Closing, below.

11. **Condition to Closing.** Buyer's obligation to purchase the Property is subject to satisfaction of the following condition prior to Closing: Seller shall have the ability to convey title to Buyer, subject only to the Permitted Exceptions.

12. **Closing.** The conveyance of the Property to Buyer shall be closed on the Closing Date at the office of the Title Company, which date shall be within twenty one days after the Effective Date.

13. **Closing Documents.** The following documents shall be delivered at Closing:

   a. **Deed.** Seller shall deliver a Special Warranty Deed ("Deed") executed and acknowledged by Seller, conveying to Buyer good and marketable fee simple title to the Property free and clear of all liens or financial encumbrances, except the Permitted Exceptions.

   b. **Title Policy.** A standard ALTA Owner's Title Policy shall be issued by the Title Company, with Seller paying for the Standard Policy and Buyer paying for any extra premium required for endorsement requested by Buyer. The policy shall be in the amount of the Purchase Price and shall guarantee that Buyer's title to the Property is good and indefeasible subject only to the following exceptions: (1) the Permitted Exceptions, (2) taxes for the current year and subsequent years, not yet due and payable; and (3) unrecorded governmental rights and regulations, including but not limited to building and zoning ordinances.

   c. **Tax.** Seller shall deliver reasonable documentation showing there are no delinquent taxes levied or assessed against the Property as of Closing.

   d. **Restrictive Covenant.** Buyer shall execute and deliver at Closing, in a form acceptable to Seller, a Restrictive Covenant whereby Buyer accepts title subject to covenants for itself and its successors and assigns that the Property not be used as a Truck Stop or as a parking area for a Truck Stop. Any use that includes the retail sale of motor fuels shall be deemed a "Truck Stop" if it meets either of the following to conditions: (i) it offers more that two fuel dispensers designed for, or substantially dedicated to, the dispensing fuel to commercial trucking customers; or (ii) it offers more that 10 parking spaces suitable for tractor-trailers. This restrictive covenant shall expire on the 10th anniversary of the recorded deed conveying property ownership from Seller to Buyer.

   e. **Other Documents.** Such other documents as are reasonably necessary to convey title and to achieve the purposes expressed by this Agreement

14. **Closing Costs.** Closing costs and prorations shall be prorated as follows:

   a. **Taxes and Utilities.** All ad valorem and excise taxes and utilities shall be prorated to the date of Closing; the proration shall be based upon the previous year's taxes with an adjustment made between Seller and Buyer when the current year's taxes are known.

   b. **Prepayment Penalties.** Seller shall pay all prepayment penalties and other amounts necessary to release all existing notes, liens and security interests against the Property.

   c. **Fees.** Any transfer taxes or escrow fees charged by Title Company shall be shared equally by Seller and Buyer. Each party will pay its own attorney's fees. Buyer shall pay the cost of recording the Deed.

15. **Possession.** Possession of the Property shall be delivered to Buyer at Closing. Seller agrees that any improvements remaining on the Property after such date shall belong to Buyers.

16. **Warranties.** Seller makes the following representations, warranties and covenants as of the date of this contract and as of the date of Closing, and such warranties and covenants shall survive the Closing.

    a.   **Title.** Seller is able to cause good and marketable title to be conveyed pursuant to this contract.

    b.   **No Proceedings.** To the best of Seller's knowledge, there are no pending or threatened condemnation or similar proceedings or assessments affecting the Property, lawsuits by adjoining landowners or others, nor to the best knowledge and belief of Seller is any such lawsuit contemplated by any person, nor is any condemnation or assessment contemplated by any governmental authority. Seller discloses that sale of the Property may require bankruptcy court procedures.

    c.   **No Leases.** At the time of Closing the property will not in whole or in part be subject to any leases, or other possessory rights and interest.

    d.   **No Contracts.** Seller has not and will not enter into any written contracts, agreements or listings, or be a party to any oral understandings or agreements affecting the Property, which may become binding upon Buyer.

    e.   **Compliance With Laws.** To the best knowledge of Seller, Seller has complied with all applicable laws, ordinances, regulations, statutes and rules relating to the Property or any part thereof. Seller discloses that sale of the Property may require bankruptcy court procedures.

17. **Notices.** Any notice or designation to be given hereunder shall be given by placing the notice or designation in the United States mail, certified or registered, properly stamped and addressed to the address shown below or such other address as the respective party may direct in writing to the other, or by personal delivery to such address by a party, or by a delivery service which documents delivery, and such notice or designation shall be deemed to be received upon such placing in the mails or such delivery:

**SELLER:**     FLYING J INC
              ATTN: Ronald R. Parker
              3707 North Canyon Road, Suite 1-B
              Provo, Utah 84604

**WITH A COPY TO:**
Flying J Inc Legal Department
1104 Country Hills Drive, 7th Floor
Ogden, UT 84403
attn: Russ Workman

**BUYER:**   Bridge Creek Estates, LLC
PRW     Attn: Phil Wirth
          PO Box 233
          Wolf Creek MT 59648

18. **Condemnation. Dedication.** To the best of Seller's knowledge, no pending or threatened condemnation, environmental, zoning or other land use regulation proceeding relating to or affecting the Property exists.

4

19. **Entire Agreement**. This contract contains all agreements between the parties, and any agreement not contained herein shall not be recognized by the parties.

21. **Binding Effect**. This contract shall be binding upon and inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns.

22. **Confidentiality**. Buyer shall not disclose or otherwise make available to any other person (other than Buyer's employees, officers, directors, members, legal advisors, financial advisors, accountants and prospective lenders -- provided, as a condition to such disclosure each such person shall agree to maintain the confidentiality of such information) any of the terms of this Agreement or any information obtained by Buyer (or its agents or contractors) regarding the Property, without the prior written consent of Seller. In the event that disclosure is required by law, court order, or a governmental authority, Buyer shall promptly notify Seller and will use reasonable efforts to obtain protective orders or similar restraints with respect to such disclosure.

23. **Remedies** In the event that Buyer or Seller fails to comply with its obligations under this Agreement, the non-defaulting party may terminate this Agreement and be entitled to receive an amount equal to the Earnest Money as its sole remedy and relief hereunder (if Buyer is the breaching party the Earnest Money shall be disbursed to and retained by Seller; if Seller is the breaching party, the Earnest Money shall be disbursed to and retained by Buyer, and Seller shall also deliver to Buyer an amount equal to the Earnest Money). Seller and Buyer acknowledge that the actual damages to Buyer or Seller which would result from such breach would be extremely difficult to calculate or establish on the date hereof. In addition, Buyer and Seller desire to have a limitation put upon their potential liability to each other in the event of such a breach. Seller and Buyer specifically acknowledge and agree, after negotiation between Seller and Buyer, that the amount of the Earnest Money constitutes reasonable compensation for such a breach by either party. Buyer and Seller each hereby agree that, prior to its exercise of any right or remedy as a result of any breach or default under this Agreement, the non-defaulting party will first deliver written notice of said breach or default to the defaulting party, and allow ten (10) business days thereafter in which to cure said breach or default.

24. **Signing Authority**. Each signer of this Agreement represents and warrants that he or she has been fully authorized to execute and deliver this Agreement on behalf of the party he or she represents.

25. **Contracting Authority**. Buyer is and will remain an _Limited Liability Company_ (corporation, partnership or limited liability company, _____) _____, duly organized and validly existing in good standing under the laws of the State of _Montana_, duly qualified to do business in the jurisdiction where the Property is, and has full power and authority to perform its obligations under an appropriate resolution of its governing body.

THE SUBMISSION OF THIS AGREEMENT FOR EXAMINATION OR ITS NEGOTIATION OR THE NEGOTIATION OF THE TRANSACTION DESCRIBED HEREIN DOES NOT CONSTITUTE AN OFFER TO SELL, AND THE EXECUTION OF THIS AGREEMENT BY BUYER DOES NOT CONSTITUTE A BINDING CONTRACT UNTIL SUCH TIME AS THIS AGREEMENT HAS BEEN APPROVED AND EXECUTED BY AUTHORIZED OFFICERS OF SELLER, AND DELIVERED TO BUYER. THE TERMS OF THIS AGREEMENT ARE SUBJECT TO ALL LAWS, ORDERS, RULES

AND PROCEDURES APPLICABLE TO SELLER'S CHAPTER 11 PROCEDINGS BEFORE THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE CASE NO. 08-13384 AND RELATED PROCEEDINGS.

**IN WITNESS WHEREOF,** each of the parties has executed this Agreement.

Seller: Flying J Inc.

_____

By: Ron Parker
Its: Vice President

Buyer: *Bridge Creek Estates, LLC.*

By: *Phil Wirth*
Its: *Member*

# EXHIBIT A
## Part 1  Illustration of the Property







# EXHIBIT A
## Part 2
### Legal Description of the Property

# PROMISSORY NOTE

$50,000.00                                                    Ogden, Utah   April __, 2009

**1.      PROMISE TO PAY.**

> **FOR VALUE RECEIVED, PHIL WIRTH ("Maker")**, having his principal residence at _____ promises to pay to the order of Flying J Inc. **("Holder")**, at 1104 Country Hills Drive, Ogden, Utah 84403, or at such other place as the Holder may from time to time designate in writing, the principal sum of FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00) (the **"Note Amount"**).

**2.      MATURITY DATE.**

> The entire Note Amount shall be due and payable on or before August 1, 2014 (the **"Maturity Date"**).

**3.      INSTALLMENT PAYMENTS.**   Maker shall make 5 equal installment payments, of $10,000.00 each, due and payable on the 1st day of August of 2010, 2011, 2012, 2013 and 2014. Maker may prepay the Note Amount, in whole or in part, without penalty.

**4.      INTEREST.**  Interest shall accrue at an annual rate of 0.0% on all obligations, except in the case of default by Maker.

**5.      LAWFUL MONEY.**

> The Note Amount, and all principal and interest due in the case of a default, are payable in lawful money of the United States of America.

**6.      EVENT OF DEFAULT.**

> The occurrence of any of the following shall be deemed to be an event of default (**"Event of Default"**) hereunder:

> (a)      default in the payment of the Note Amount on or before the Maturity Date; or

> (b)      the filing of bankruptcy; or

> (c)      the discontinuation of Maker's business operations; or

> (d)      the sale (or promise to sell) of all or substantially all of the assets or shares of stock of Maker.

**7.      REMEDIES.**

> Upon the occurrence of an Event of Default, then at the option of the Holder, the entire unpaid portion of the Note Amount, and all other amounts payable by

Maker shall, without demand or notice, immediately become due and payable and shall begin to accrue interest at an annual compound rate of 15%. Holder shall also have all other remedies available at law and equity.

IN WITNESS WHEREOF, Maker has executed and delivered this Note as of the day and year first above written.

_____
Phil Wirth