# EXHIBIT A
# DIP Term Sheet

**Subject to the Terms and Conditions of the Commitment Letter
to which this Term Sheet is Attached**

PROPOSED DIP LOAN FINANCING TERM SHEET
WITH
PILOT TRAVEL CENTERS LLC

| | |
|---|---|
| Proposed Facility Size | ▶ $100,000,000 (comprised of a $55,000,000 line of credit facility and a separate $45,000,000 letter of credit and performance, surety or similar bond facility). |
| Borrower | ▶ Flying J Inc. |
| Guarantors | ▶ Flying J Transportation LLC, AFJ LLC and the other direct and indirect subsidiaries of the Borrower set forth on Schedule 1 hereto (collectively, the "***Guarantors***") |
| Use of Proceeds | ▶ General corporate operating and working capital purposes of Borrower and its non-debtor subsidiaries for the travel center, card and trucking businesses; provided, that up to $5,000,000 of DIP Facility proceeds may be used for administrative and other costs and expenses associated with the Borrower's and its non-debtor subsidiaries' other businesses; provided, further, that in all cases proceeds of the DIP Facility shall be used in accordance with a thirteen-week budget and cash flow forecast (in reasonable line item detail and subject to permitted variances) to be agreed (as periodically updated from time to time in accordance with the terms of the DIP Facility, the "***Budget***"). |
| Structure | ▶ Revolving credit facility. |
| Priority | ▶ Senior secured; Super-priority administrative claim. |
| Final Maturity | ▶ June 30, 2010; provided, however, that if the Acquisition Agreement (defined below) has been executed and delivered by the parties thereto, and is thereafter terminated on March |

| | |
|---|---|
| | 31, 2010 because the waiting period under the HSR Act shall not have expired on or prior to such date, the Final Maturity shall be extended to September 30, 2010. |
| Interest | ▶ Payable monthly in arrears on the last business day of each calendar month. |
| Repayment | ▶ At final maturity (or sooner as provided herein), principal advances under the DIP Facility shall be paid in full in cash, together with all accrued and unpaid interest, fees and expenses. |
| Collateral Security Package | ▶ First priority senior Lien on (i) all equity and membership interests in and to (a) Flying J Transportation LLC, (b) AFJ LLC and (c) the other entities set forth on schedule 1 hereto; (ii) the real property set forth on schedule 1 hereto; (iii) Borrower's or AFJ LLC's leasehold interests in all plazas/truck stops; (iv) the Borrower's rights in and to that certain intercompany receivable owed to it by AFJ LLC in the outstanding principal amount of approximately $50,000,000; (v) all proceeds realized from the transactions contemplated by the Acquisition Agreement or the Letter of Intent (defined below); and (vi) all products and proceeds of the foregoing.<br><br>▶ Super-priority claim (described more fully below) against the Borrower in the Bankruptcy Case which shall be senior and prior to all other administrative expense claims against the Borrower, subject only to the Carve Out. |
| Interest Rate/Fees | ▶ Twelve percent (12%) per annum of the aggregate outstanding amount of advances under line of credit.<br>▶ Five percent (5%) per annum of the aggregate face amount of outstanding letters of credit and performance, surety or similar bonds; provided that interest on unreimbursed draws on letter of credit and performance, surety or similar bonds shall accrue at the rate applicable to advances under the line of credit. |
| Fees | ▶ One percent (1.0%) of the maximum amount of the DIP Facility, payable at closing on a fully earned and non-refundable basis.<br>▶ An unused line fee equal to one half of one percent (0.50%) per annum of the unutilized amount of the DIP Facility, payable monthly in arrears. |

# FLYING J INC.
## Summary of Proposed Terms and Conditions
## Up to $100,000,000 Senior Secured Super-priority
## Debtor in Possession Credit Facility
## Dated: July __, 2009

The proposed terms and conditions summarized herein represent the conditions pursuant to which PILOT TRAVEL CENTERS LLC or an affiliate thereof (the "*DIP Lender*") will provide a Senior Secured Super-priority Debtor-in-Possession Credit Facility in an amount of up to $100,000,000, which shall be comprised of a (i) $55,000,000 line of credit facility and (ii) $45,000,000 letter of credit facility and performance, surety or similar bond (collectively, the "*DIP Facility*"), with the Borrower (defined below). This term sheet is subject to the Commitment Letter to which it is attached and the terms and conditions hereof, including to Bankruptcy Court approval, and the execution of definitive documentation (including entry by Bankruptcy Court of an order or orders approving the DIP Facility) which shall be substantially and materially consistent with, although may contain different or additional terms which vary from those described herein, and which shall otherwise be in form and substance satisfactory to the DIP Lender in its absolute discretion.

| Borrower: | Flying J Inc. (the "*Borrower*") |
|---|---|
| Guarantors | Flying J Transportation LLC, AFJ, LLC and the other direct and indirect subsidiaries of the Borrower set forth on Schedule 1 hereto (collectively, the "*Guarantors*") |
| Amount and Type of Facility: | (1) a revolving line of credit ("*Line of Credit*") in the maximum principal amount of $55,000,000.<br><br>(2) Letters of credit and/or performance, surety or similar bonds (each, a "*LC/Bond*")[1] to be procured by the DIP Lender supporting certain fuel tax, workers' compensation and other obligations incurred in the ordinary course of the Borrower's business up to a maximum aggregate amount of $45,000,000 (the "*LC/Bond Facility*"). |
| Fees: | Fees in connection with the DIP Facility shall be paid by the Borrower as follows:<br><br>(1) Payment at closing of a closing fee in an amount equal |

---

[1] For avoidance of doubt, the expiry of any LC/Bond shall not extend beyond the Final Maturity Date (defined below).

DB02:8456624.1

|  |  |
|---|---|
|  | to one percent (1.0%) of the maximum amount of the DIP Facility, which shall be fully earned and non-refundable; |
|  | (2) Payment of an unused line fee in the amount equal to one-half of one percent (0.50%) per annum of the unutilized amount of the DIP Facility, payable monthly in arrears on the last business day of each month; and |
|  | (3) Payment by Borrower of all actual, reasonable and documented out-of-pocket fees and expenses incurred by the DIP Lender in connection with this DIP Facility, including reasonable attorney fees and costs. |
| **DIP Facility Termination Date:** | The earliest to occur of: |
|  | (a) June 30, 2010 (as such date may be extended to September 30, 2010 as set forth above (the "*Final Maturity Date*")); |
|  | (b) July 31, 2009 if, by such date, the letter of intent, dated as of the date hereof, between the DIP Lender, the Borrower and Flying J Transportation LLC (the "*Letter of Intent*") is not approved by the Bankruptcy Court pursuant to an order in form and substance satisfactory to the DIP Lender; |
|  | (c) acceleration of the Obligations under the DIP Facility due to the occurrence and continuation of an Event of Default; |
|  | (d) the "effective date" of any Plan of Reorganization with respect to the Borrower confirmed by the Bankruptcy Court; and |
|  | (e) (w) the date of closing of the transactions contemplated by the Letter of Intent or the Acquisition Agreement (as defined therein), or (x) the date of execution by the Borrower or any of its Affiliates of any agreement (including any letter of intent) for the sale to any third party of all or any material portion of the property or assets comprising the businesses contemplated to be sold by the Letter of Intent or, when executed and effective, the Acquisition Agreement (the "*Target Assets*"), or (y) the sale, or execution of any agreement for sale, to any third party of any Target Assets comprising travel plazas, fuel stops, card locks and |

| | |
|---|---|
| | similar business properties (the "***Plazas***"), or (z) the sale, or execution of any agreement for sale, to any third party of Target Assets, other than Target Assets comprising Plazas or certain excess land adjacent to operating travel plazas (the "***Adjacent Land***"), having a value in excess of $3,000,000 in the aggregate during the term of the DIP Facility.<br><br>The date on which the earliest of clauses (a) through (e) above occurs is hereinafter referred to as the "***Termination Date***." On the Termination Date, the Commitment of the DIP Lender shall be terminated, and the DIP Lender shall have no further obligation to provide financing, pursuant to the DIP Facility or otherwise. |
| **Non-Default Interest Rate/Fees and Payment Terms:** | The Borrower shall pay monthly in arrears on the last business day of each month:<br><br>(a) interest on the aggregate principal amount of all advances outstanding under the Line of Credit at a rate of twelve percent (12%) per annum; and<br><br>(b) a fee equal to five percent (5%) per annum of the aggregate face amount of all LC/Bonds issued under the LC/Bond Facility.<br><br>Any payment by the issuer thereof of any LC/Bond shall, automatically and without regard to the satisfaction of any condition precedent to the extension of credit under the DIP Credit Agreement (as defined below) or the occurrence or continuance of a default or Event of Default (as defined below), constitute an advance under the Line of Credit for all purposes, and shall bear interest at a rate applicable to such advances, up to the Line of Credit limit of $55,000,000 and shall otherwise constitute an unreimbursed amount due by the Borrower and shall bear interest at the rate applicable to Line of Credit advances.<br><br>All interest and fees shall be computed on the basis of a 360-day year for the actual number of days elapsed. |
| **Default Interest Rate:** | Effective immediately upon the occurrence of an Event of Default, unless and until such Event of Default is waived in writing by the DIP Lender, interest and fees shall accrue at a rate equal to the applicable non-default rate, plus two hundred (200) basis points. |

- 5 -

| | |
|---|---|
| **Loan Payments:** | All unpaid principal and interest on the DIP Facility shall be due and payable, and all LC/Bonds shall be cash collateralized (on terms and subject to documentation satisfactory to the DIP Lender), in full on the Termination Date.<br><br>Borrower may voluntarily prepay the DIP Facility in whole or in part at any time without penalty.<br><br>The documentation for the DIP Facility shall contain mandatory prepayments and corresponding permanent commitment reductions which are customary for financings of this type, modified as appropriate to reflect the context of the proposed DIP Facility.<br><br>In any event, the Borrower shall be required to permanently repay the DIP Facility (with a corresponding permanent commitment reduction), with the proceeds of sale of any Plazas, any Adjacent Land, any Collateral or any of the Target Assets (other than Plazas or Adjacent Land) having an aggregate value in excess of $3,000,000 during the term of the DIP Facility. |
| **Use of Proceeds:** | General corporate operating and working capital purposes of Borrower and its non-debtor subsidiaries for the travel center, card and trucking businesses; provided, that up to $5,000,000 of DIP Facility proceeds may be used for administrative and other costs and expenses associated with the Borrower's or non-debtor subsidairies' other businesses; provided, further, that in all cases DIP Facility proceeds shall be used in accordance with the Budget. |
| **Priority:** | Except as agreed with respect to the Carve Out (as defined below)[2], all obligations and liabilities of the Borrower to the DIP Lender pursuant to the DIP Facility, including all accrued interest, fees, costs and expenses, shall constitute an allowed Super-priority administrative expense claim against the Borrower pursuant to *Section 364(c)(1)* of the Bankruptcy Code, having priority over all administrative expenses of the kind specified in or arising under any sections of the Bankruptcy Code (including, without limitation, *Sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 506(c), 507, 546(c), 726, 1113* and *1114* thereof). |

---

[2] The Carve Out will be limited to amounts set forth in the Budget which accrued prior to the date of a notice of an Event of Default under the DIP Facility and remain unpaid; wind down costs to be discussed.

DB02:8456624.1

| Collateral Security: | In addition to the Super-priority claim referenced above, the Transaction Documents shall provide a First priority senior Lien on (i) all equity and membership interests in and to (a) Flying J Transportation LLC, (b) AFJ, LLC and (c) the other entities set forth on schedule 1 hereto; (ii) the real property set forth on schedule 1 hereto; (iii) Borrower's and AFJ, LLC's leasehold interests in all plazas/truck stops; (iv) the Borrower's rights in and to that certain intercompany receivable owed to it by AFJ LLC in the outstanding principal amount of approximately $50,000,000; (v) on all proceeds realized from the transactions contemplated by the Acquisition Agreement or Letter of Intent; and (vi) all products and proceeds of the foregoing ("*Collateral*"). |
|---|---|
| Lien Validation and Perfection: | All Liens authorized and granted pursuant to the Final Order entered by the Bankruptcy Court, and the other Transaction Documents, shall be deemed effective and perfected as of the date thereof, and no further notice or act will be required to effect such perfection.<br><br>Borrower and the Guarantors shall take such actions as may be required by DIP Lender to create and perfect such Liens and security interests in the Collateral. |
| Documentation: | The DIP Facility shall be subject to the negotiation, execution and delivery of a definitive credit agreement (the "*DIP Credit Agreement*") and related loan documents, pledges, security documents and other supporting instruments and agreements embodying the terms set forth herein, as well as the Final Order, which in each case shall be in form and substance satisfactory to the Borrower and the DIP Lender.<br><br>Each of the Transaction Documents shall contain terms and conditions, to the extent acceptable to the DIP Lender, customary in debtor-in-possession financing agreements, consistent with the Borrower's rights and obligations as a debtor-in-possession.<br><br>The DIP Credit Agreement shall include customary protective provisions for such matters as increased costs, funding losses, illegality and withholding taxes. |
| Conditions Precedent to Closing: | The closing of the DIP Facility, and the initial funding thereunder, shall be subject to conditions precedent customary and appropriate for financings of this type, modified to reflect the context of the Proposed DIP Facility, |

DB02:8456624.1

|  | including but not limited to: |
|---|---|
|  | (a) receipt by the DIP Lender of duly executed definitive Transaction Documents consistent with the terms of the Commitment Letter and this Term Sheet, prepared by counsel to the DIP Lender, and otherwise satisfactory to the DIP Lender and the Borrower; |
|  | (b) receipt by the DIP Lender in immediately available funds of all fees and expenses payable on the closing date; |
|  | (c) satisfaction of the DIP Lender that no Material Adverse Effect has occurred; |
|  | (d) entry by the Bankruptcy Court, by July 31, 2009, of the Final Order, which shall approve the DIP Facility (including the Transaction Documents) and the Letter of Intent, and which shall be in form and substance satisfactory to the DIP Lender, and with such prior notice to the necessary parties as required by Bankruptcy Rule 4001 or otherwise; |
|  | (e) the delivery of a certified copy of the Final Order to the DIP Lender; |
|  | (f) the unstayed continuation of the Final Order in full force and effect without modification or amendment (unless such modification or amendment was approved in writing by the DIP Lender); |
|  | (h) satisfaction of the conditions precedent to the DIP Facility set forth in paragraph 12 of the Letter of Intent; |
|  | (i) the aggregate amount of trade payables owed by AFJ LLC to third parties (i.e., not to the Borrower) does not exceed $15,000,000; and |
|  | (j) the satisfaction of all other customary conditions set forth in the DIP Credit Agreement prepared by counsel to the parties and satisfactory in form and substance to the parties. |
| **Affirmative and Negative Covenants:** | The documentation for the DIP Facility shall contain affirmative and negative covenants customary for financings of this type (including in respect of non-debtors), modified as appropriate to reflect the context of the proposed DIP Facility, including, but not limited to: |

DB02:8456624.1

|  |  |
|---|---|
|  | (a) compliance with the Final Order, and each of the other orders entered by the Bankruptcy Court;<br><br>(b) customary periodic financial and other reporting, including weekly Budget variance reports and monthly updates (reasonably satisfactory to the DIP Lender) to the Budget;<br><br>(c) not creating or assuming any Liens on the Collateral or any of the other assets or property of the Borrower or the Guarantors (except for permitted liens to be agreed in the DIP Credit Agreement or as otherwise may be permitted by the DIP Lender in the DIP Lender's sole discretion);<br><br>(d) not seeking the revision or modification of Final Order (except as otherwise may be permitted by the DIP Lender in the DIP Lender's sole discretion); and<br><br>(e) compliance with all obligations under the Letter of Intent and, if executed and effective, the Acquisition Agreement. |
| **Representations and Warranties:** | The documentation for the DIP Facility shall contain representations and warranties customary for financings of this type, modified as appropriate to reflect the context of the proposed DIP Facility. |
| **Conditions to Each Extension of Credit Under the DIP Facility:** | The documentation for the DIP Facility shall contain conditions to each extension of credit under the DIP Facility customary for financings of this type, modified as appropriate to reflect the context of the proposed DIP Facility (unless waived by the DIP Lender in its sole discretion), including:<br><br>Borrower shall provide DIP Lender with at least five (5) business days written notice prior to the date of any requested advance under the Line of Credit or of the issuance of any LC/Bond.<br><br>The Termination Date shall not have occurred and there shall exist no Default or Event of Default under any of the Transaction Documents, and the representations and warranties therein shall be true and correct in all material respects.<br><br>The DIP Lender shall have received, in form and substance reasonably satisfactory to the DIP Lender, all certificates, orders, authorizations, consents, affidavits, schedules, |

DB02:8456624.1

|  | |
|---|---|
| | instruments, security agreements, financing statements and other documents which are provided for under the Final Order, or which the DIP Lender may at any time reasonably request or as may be required under the terms of the DIP Credit Agreement.<br><br>The Borrower shall have paid all fees and reasonable and documented out-of pocket expenses as the DIP Lender shall reasonably determine are then due and payable (which fees and expenses shall be set forth in the DIP Credit Agreement or the other Transaction Documents).<br><br>The Borrower and the other sellers party to the Letter of Intent or, if executed and effective, the Acquisition Agreement, as the case may be, shall not have breached any of their respective obligations thereunder.<br><br>The Final Order shall be in full force and effect, un-stayed, not subject to any timely filed appeal and (without the prior written consent of the DIP Lender) such order shall not have been amended or modified.<br><br>Compliance with Bankruptcy Rule 4001 and the entry of the Final Order, together with any other order reasonably requested by the DIP Lender authorizing and approving the DIP Facility in form, substance and amount and providing for the super-priority administrative claims and Liens described herein or as may be set forth in the DIP Credit Agreement. |
| **Remedies:** | Upon any Event of Default and/or the Termination Date, the DIP Lender shall have remedies customary for financings of this type, modified as appropriate to reflect the context of the proposed DIP Facility, including, without limitation, relief from the automatic stay, the right to realize on all Collateral, the right to exercise any remedy available under definitive documentation for the DIP Facility and applicable law, including but not limited to:<br><br>(a) the immediate termination of the Commitment;<br><br>(b) the acceleration of all Obligations, including the unpaid principal amount of and accrued interest and fees on all extensions of credit under the DIP Facility, in each case without presentment, demand, protest or other requirements of any kind; and<br><br>(c) the enforcement by the DIP Lender of any and all Liens |

|  | and security interests created pursuant to Security Documents, without the necessity of obtaining any further relief (including stay relief) or order from the Bankruptcy Court as may be set forth in the DIP Credit Agreement, but subject to the five-day notice provision set forth below. *Section 362* relief from the stay in favor of the DIP Lender shall be embodied in any order approving the DIP Facility; provided however, that the DIP Lender shall be required to give the Borrower, the Borrower's counsel, counsel to the Committee and to the Office of the United States Trustee at least 5 business days prior notice of any exercise of remedies against the Collateral.<br><br>All proceeds received upon the exercise of such remedies by the DIP Lender shall be applied <u>first</u>, to accrued unpaid interest and costs under the DIP Facility and <u>second</u>, to repay outstanding principal under the DIP Facility and to cash collateralize all LC/Bond on terms and subject to documentation satisfactory to the DIP Lender. |
|---|---|
| **Additional Covenants and Conditions to Commitment:** | By July 14, 2009, the Borrower shall file a motion in form and substance satisfactory to the DIP Lender seeking approval of the DIP Facility and the Letter of Intent and entry of the Final Order.<br><br>No alternative DIP proposal shall be filed with the Bankruptcy Court unless this commitment to provide this DIP Facility has terminated in accordance with its terms.<br><br>The DIP Lender shall have the right (but not the obligation) at any time to cure defaults and/or repay or cause to be refinanced any mortgage on real property pledged to it or owned by any entity whose equity is pledged to it, as part of the Collateral (and the Borrower shall be obliged to reimburse the DIP Lender for any such amounts so advanced and to pay interest thereon at the Line of Credit rate), it being understood that to the extent the DIP Lender repays a mortgage directly, it shall have and be entitled to (and the applicable mortgagor shall execute) a mortgage on such real property pursuant to documentation in form and substance satisfactory to the DIP Lender. |
| **Events of Default:** | The documentation for the DIP Facility shall contain events of default customary for financings of this type, including in |

DB02:8456624.1

respect of non-Debtor entities, modified as appropriate to reflect the context of the proposed DIP Facility, subject to any applicable cure periods ("***Events of Default***"), including, without limitation:

(a) Failure to timely make any Loan repayments, or any payments of interest, fees or expenses, in each case when due, including in the case of principal repayments, the failure to make any mandatory prepayments or to repay the DIP Facility in full on or before the Final Maturity Date.

(b) The voluntary or involuntary dissolution or liquidation of the Borrower, or conversion to Chapter 7 of the Borrower's Chapter 11 case, or the filing by the Borrower of a motion with the Bankruptcy Court seeking authorization to dissolve or liquidate the Borrower, or to convert to Chapter 7 the Borrower's Chapter 11 case.

(c) The reversal, vacation or stay by the Bankruptcy Court of the Final Order.

(d) The Bankruptcy Court shall enter an order with respect to the Bankruptcy Case: (i) appointing a trustee under *Section 1104*; (ii) appointing an examiner with enlarged powers (beyond those set forth in *Section 1106(a)(3) and (4)* of the Bankruptcy Code) relating to the operation of the business under *Section 1106(b)* of the Bankruptcy Code; or (iii) dismissing the Bankruptcy Case.

(e) The failure of Borrower to comply with any material provision of the Final Order.

(f) The Bankruptcy Court enters an order confirming a plan of reorganization in the Bankruptcy Case which does not: (i) contain a provision for payment in full of all Obligations and for the cash collateralization, on terms and subject to documentation satisfactory to the DIP Lender, of all LC/Bonds, in each case outstanding on the effective date of such plan on or before the effective date of such plan; and (ii) provide for the continuation of the Liens and priorities in favor of the DIP Lender until such effective date.

(g) The Bankruptcy Court, or any other court of competent jurisdiction, enters an order: (i) revoking, reversing, staying for a period in excess of ten (10) days, vacating or

- 12 -

DB02:8456624.1

rescinding any provision of the Final Order; (ii) modifying, supplementing or amending any provision of the Final Order without the consent of the DIP Lender; (iii) permitting any administrative expense, other debtor-in-possession financing or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to Borrower, which is equal or superior in priority to the superpriority claim of the DIP Lender, except in respect of the Carve Out, which shall have a Super-priority claim pari passu with the Obligations and which will be paid by the Borrower as and when allowed by the Bankruptcy Court; (iv) granting or permitting the grant of a Lien on the Collateral other than permitted Liens to be agreed upon or Liens permitted by DIP Lender in DIP Lender's sole discretion; or (v) dismissing the Bankruptcy Case which dismissal does not contain a provision for termination of the DIP Lender's Commitment and payment in full in cash of all Obligations and the cash collateralization or return of all LC's in a manner satisfactory to the DIP Lender upon such dismissal.

(h) The Bankruptcy Court enters an order granting relief from the automatic stay applicable under *Section 362* of the Bankruptcy Code to the holder or holders of any Liens on Collateral to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any Collateral where the aggregate value of such Collateral subject to such relief is greater than $5,000,000.

(i) Any material provision of the Final Order, the DIP Credit Agreement or any other Transaction Document ceases to be valid or binding or enforceable against Borrower.

(j) Borrower commences or joins in any legal proceeding to contest in any manner that the Final Order, the DIP Credit Agreement or any other Transaction Document constitutes a valid and enforceable agreement or to assert that it has no further obligation or liability under the Final Order, the DIP Credit Agreement or any other Transaction Document.

(k) Borrower seeks to, or supports (whether by way of motion or other pleadings filed with the Bankruptcy Court) any other Person's motion to: (i) disallow in whole or in part any of the Obligations arising under the DIP Credit Agreement or any other Transaction

DB02:8456624.1

|  | Document; or (ii) challenge the validity or enforceability of the Liens or security interests granted or confirmed in the DIP Credit Agreement or in the Final Order in favor of the DIP Lender.<br><br>(l) The Bankruptcy Court enters an order avoiding or requiring disgorgement by the DIP Lender of any amounts received in respect of the Obligations.<br><br>(m) Any breach by the Borrower or the other sellers party to the Letter of Intent of their respective obligations under (I) section 7 or 14 thereof, (II) Section 8 or the last sentence of Section 12 thereof, in each case after notice and a four (4) business day period to cure such breach (or such longer period as may reasonably be required to cure such breach, provided that breaching party is diligently pursuing such cure), and (III) Section 10 thereof, after notice and a four (4) business day period to cure such breach.<br><br>(n) Any material breach by the Borrower or the other sellers party to the Acquisition Agreement of their respective obligations thereunder. |
|---|---|

DB02:8456624.1

## Annex 1[3]

"*Advance*" means an advance of Loan proceeds under the Line of Credit to the Borrower.

"*Affiliate*" means, as applied to any Person, any other Person directly or indirectly controlling, controlled by, or under common control with, that Person. For the purposes of this definition, "control" (including, with correlative meanings, the terms "controlling", "controlled by" and "under common control with"), as applied to any Person, means the possession, directly or indirectly, of the power (through the ownership of voting securities or by contract or otherwise) (i) to vote 50% or more of the securities having ordinary voting power for the election of directors of such Person or (ii) to direct or cause the direction of the management and policies of that Person.

"*Bankruptcy Case*" means the case filed by the Borrower under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

"*Bankruptcy Code*" means Title 11 of the United States Code entitled "Bankruptcy," as now and hereafter in effect, or any successor statute.

"*Bankruptcy Court*" means the United States Bankruptcy Court, District of Delaware

"*Carve Out*" means sums having priority pari passu with the Super-Priority Claims and Liens securing the Obligations for (i) the payment of allowed professional fees and disbursements incurred by Borrower or the Committee, in each case to the extent approved by the Bankruptcy Court (regardless of source), and (ii) the payment of fees to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. §1930; provided, that no portion of the Carve Out shall be utilized for the payment of professional fees and disbursements incurred in connection with any challenge to the amount, extent, priority, validity, perfection or enforcement of the indebtedness of the Borrower owing to the DIP Lender.[4]

"*Commitment*" means, as to the DIP Lender, its obligation to make the Loans to the Borrower or to cause LC's to be issued for the benefit of the Borrower (which Commitment shall be set forth in the DIP Credit Agreement).

"*Committee*" shall mean the official committee of the unsecured creditor's appointed on January 5, 2009, pursuant to Section 1102 of the Bankruptcy Code in the Borrower's bankruptcy case (as may be modified from time-to-time by the U.S. Trustee or otherwise).

"*Dollars*" and the sign "*$*" mean the lawful money of the United States of America.

---

[3] Capitalized terms used but not defined in the foregoing term sheet shall have the meanings given them in this Annex 1.

[4] The Carve Out will be limited to amounts set forth in the Budget which accrued prior to the date of a Default under the DIP Facility and remain unpaid; wind down costs to be discussed.

"*Final Order*" means the order or judgment of the Bankruptcy Court as entered on the docket of the Bankruptcy Court approving the DIP Facility pursuant to the terms of the DIP Credit Agreement and the other Transaction Documents (including the incurrence of post-petition superpriority secured indebtedness and the payment of interest, fees costs and expenses thereunder), and approving the Letter of Intent, in form and substance satisfactory to the DIP Lender, which order or judgment is in effect and not stayed, and as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending, or, if pending, no stay pending appeal shall have been granted.

"*Lien*" means, with respect to any property or assets, any right or interest therein of a creditor to secure liabilities owed to it or any other arrangement with such creditor which provides for the payment of such liabilities out of such property or assets or which allows such creditor to have such liabilities satisfied out of such property or assets prior to the general creditors of any owner thereof, including any lien, mortgage, security interest, pledge, deposit, production payment, rights of a vendor under any title retention or conditional sale agreement or lease substantially equivalent thereto, tax lien, mechanic's or materialman's lien, or any other charge or encumbrance for security purposes, whether arising by law or agreement or otherwise, but excluding any right of offset which arises without agreement in the ordinary course of business. "*Lien*" also means any filed financing statement, any registration of a pledge (such as with an issuer of uncertificated securities), or any other arrangement or action which would serve to perfect a Lien described in the preceding sentence, regardless of whether such financing statement is filed, such registration is made, or such arrangement or action is undertaken before (assuming proper authorization) or after such Lien exists.

"*Loan*" means any loan made by the DIP Lender to the Borrower under the DIP Credit Agreement.

"*Material Adverse Effect*" means any event, condition or change which materially and adversely affects, or could reasonably be expected to materially and adversely effect, the business, assets, liabilities, operations or condition (financial or otherwise) of the relevant entity, taken as a whole, since the date the of the Borrower's most recent audited financial statements.

"*Obligations*" means all obligations of every nature of Borrower or Guarantor from time to time owed to the DIP Lender under any Transaction Document, whether for principal or interest or otherwise.

"*Person*" means and includes natural persons, corporations, limited partnerships, general partnerships, limited liability companies, limited liability partnerships, joint stock companies, joint ventures, associations, companies, trusts, banks, trust companies, land trusts, business trusts or other organizations, whether or not legal entities, and governmental authorities.

"*Petition Date*" means December 22, 2008.

"*Security Documents*" means all security agreements, pledges, guaranties, financing statements, continuation statements, extension agreements and other agreements or instruments documenting or evidencing the pledge or perfection of a Lien on the Collateral, now, heretofore,

or hereafter delivered by Borrower or Guarantor to the DIP Lender in connection with the DIP Credit Agreement or any transaction contemplated thereby to secure payment of any part of the Obligations or the performance of Borrower's other duties and obligations under the Transaction Documents.

"*Super-Priority Claim*" shall mean, in relation to Borrower, as set forth more fully above, a claim against Borrower in the Bankruptcy Case which is an administrative expense claim authorized and established by the Bankruptcy Court pursuant to *Sections 364(c)* and *507(b)* of the Bankruptcy Code and having priority over any or all administrative expenses of the kind specified in *Sections 503(b), 507(b)* and *546(c)* of the Bankruptcy Code.

"*Transaction Document*" means any of the DIP Credit Agreement, the promissory notes, the guaranty, if any, the Security Documents, the Final Order, and all other certificates, documents, instruments or agreements executed and delivered by Borrower or Guarantor for the benefit of the DIP Lender in connection with the DIP Facility (for the sake of clarity, the Transaction Documents do not include the Letter of Intent and any related Acquisition Agreement).

# Schedule 1

## **PROPOSED COLLATERAL PACKAGE FOR PILOT DIP**

| Guarantors | Pledged Entities[5] | Owned Real Estate[6] |
|---|---|---|
| Flying J Transportation LLC | Flying J Transportation LLC | Snowville (FJ) |
| AFJ LLC | AFJ LLC | 12th Wall (FJ) |
| FJI Plaza Company III LLC | Ton Services Inc. | Harrisville (FJ) |
| ------- | Free III LLC | Layton (FJ) |
| ------- | Free IV LLC | Logan (FJ) |
| ------- | Free V LLC | Wayland (AFJ) |
| ------- | Free VI LLC | Edinburg (FJ) |
| ------- | FJI Plaza Company II LLC | Pontoon Beach (AFJ) |
| ------- | ------- | Brigham City (FJ) |
| ------- | ------- | Broadway (FJ) |
| ------- | ------- | Chubbock (FJ) |
| ------- | ------- | Dodge City (FJ Real Estate) |
| ------- | ------- | Payson (FJ Real Estate) |
| ------- | ------- | Draper (FJ Real Estate) |
| ------- | ------- | [Willard Bay][7] (FJ Real Estate) |
| ------- | ------- | [Springville][8] (FJ Real Estate) |
| ------- | ------- | [Jeffersonville][9] (Free V) |
| | | ------- |
| ------- | ------- | ------- |

---

[5] All pledges are of 100% of the equity of such entities.
[6] All listed sites are either owned by Flying J Inc. ("FJ"), Flying J Real Estate Enterprises Inc. ("FJ Real Estate"), AFJ LLC ("AFJ") or Free V LLC ("Free V"), as indicated. Company to provide 1st lien on all listed sites except for a 2nd lien on the Snowville site.
[7] To be mortgaged post-closing once existing debt is paid off.
[8] To be mortgaged post-closing once existing debt is paid off.
[9] To be mortgaged post-closing once existing debt is paid off.

| | | |
|---|---|---|