# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| FLYING J, INC., *et al.*,[1] | : | Case No. 08-13384 |
| | : | Jointly Administered. |
| Debtors. | : | |
| | : | **Ref. Docket No. 975, 1024 & 1158** |

**AMENDED FINAL ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362(c)(2), 363(e) AND 364 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) (A) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES**

Upon the motion, dated April 14, 2009 [Docket No. 975] (the "Motion"), of Flying J, Inc. ("FJI"), Longhorn Partners Pipeline, L.P. ("LPP") and Longhorn Pipeline Holdings, LLC ("LPH"), and affiliated debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") for an interim order and final order authorizing them to incur postpetition secured indebtedness, grant security interests and superpriority claims, and grant adequate protection, pursuant to sections 105(a), 361, 362, 363, and 364(c), and (e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and having sought the following relief:

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification numbers are: Flying J, Inc. (3458); Longhorn Partners Pipeline, L.P. (0554); Big West Oil, LLC (6982); Big West of California, LLC (1608); Longhorn Pipeline Inc. (0654); Big West Transportation, LLC (1056); Longhorn Pipeline Holdings, LLC (0226). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

(a) the Court's authorization, pursuant to sections 105(a), 362, 363, and 364(c), and 364(d) of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, and 9014, for LPP, as borrower (the "DIP Borrower"), and LPH, as Guarantor ("DIP Guarantor", and together with the DIP Borrower, the "DIP Financing Debtors"), to enter into a debtor-in-possession, senior secured multiple-draw "Debtor-in-Possession Term Credit, Security and Guarantee Agreement", or, in connection with the Interim Order (defined below), prior to the execution of the Debtor-in-Possession Term Credit, Security and Guarantee Agreement, a "Debtor-in Possession-Note" in the principal amount of the Interim Amount, (the "DIP Credit Agreement") based substantially on the terms set forth in the Longhorn Partners Pipeline, L.P. Debtor-In-Possession (DIP) Financing Term Sheet (the "DIP Term Sheet"), a copy of which DIP Term Sheet was attached to the Motion as Exhibit B, with Pipeline Investors Capital, LLC and/or the lenders party (or for purposes of this Final Order, intended to be party) to the DIP Credit Agreement (collectively, the "DIP Lender"), to obtain extensions of credit on a superpriority, priming secured basis, in an aggregate principal amount not to exceed $20 million at any time outstanding (the loans under such facility, the "DIP Loans") on the terms set forth in the DIP Credit Agreement and the DIP Term Sheet (together with any and all other related documents, term sheets, notes, instruments, credit agreements, security documents, deeds of trust, filings, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, including the Budget (as defined below), collectively, the "DIP Loan Documents"), to fund cash operating expenses of LPP and LPH in accordance with the Budget (the "Permitted Purposes");

(b) the Court's ordering, pursuant to sections 364(c)(1), (c)(2) and 364(d)(1) of the Bankruptcy Code, that all of the obligations of the Debtors under the DIP Loan Documents, the

Interim Order or this Final Order, whether for principal, interest, fees, expenses, indemnities, charges, costs or otherwise (collectively, the "DIP Obligations") are:

i. granted superpriority administrative expense claim status against the DIP Financing Debtors, having priority over any and all administrative expenses of the kinds specified in or arising or ordered under any section of the Bankruptcy Code including, without limitation, sections 105(a), 326, 328, 330, 331, 365, 503(b), 506(c), 506(d), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code; and

ii. secured under section 364(c)(2) by a valid and fully perfected, first priority lien on and security interest in all assets and properties of the DIP Financing Debtors, and their estates, as more fully described in paragraph 8(b) hereof, to the extent such property is not otherwise subject to a valid and perfected lien and security interest; provided, further, that the collateral for the DIP Obligations described in this paragraph shall not include recoveries from any proceeding brought by or on behalf of the DIP Financing Debtors' estates under section 510, 544, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code; and

iii. secured under section 364(d) of the Bankruptcy Code by a valid and fully perfected, first priority senior priming lien on and security interest in all property and assets of the DIP Financing Debtors, and their estates, that is currently subject to a valid and perfected lien and security interest, including the Pipeline Prepetition Collateral (as defined below); provided, however, that the collateral for the DIP Obligations described in this paragraph shall not include recoveries from any proceeding brought by or on behalf of the DIP Financing Debtors' estates under section 510, 544, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code; and

(c) the Court ordering that, in accordance with sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to the extent of any diminution resulting from (x) the use, sale, lease,

disposition, decline in market value, consumption (or other decline in value) of the Pipeline Prepetition Collateral (as defined below), (y) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, and (z) the granting for the benefit of DIP Lender of the claims, liens and security interests hereunder, Longhorn Pipeline Investors, LLC ("Pipeline Investors") is:

i. granted a superpriority administrative claim against the DIP Financing Debtors as provided for in section 507(b) of the Bankruptcy Code; and

ii. granted valid, perfected, additional and replacement liens existing from and after the Petition Date (as defined below) on, and security interests in, all of the Pipeline Prepetition Collateral (as defined below), including the Cash Collateral (each as defined below), all Unencumbered Collateral (as defined below), and all other assets of the DIP Financing Debtors, and their estates; provided, that the collateral described in this paragraph relating to Pipeline Investors shall not include recoveries from any proceeding brought by or on behalf the DIP Financing Debtors' estates under sections 510, 544, 547, 548, 549 550 and/or 551 of the Bankruptcy Code (collectively, the "Replacement Liens"); and

(d) the Court's scheduling an interim hearing on April 17, 2009 (the "Interim Hearing") pursuant to Bankruptcy Rule 4001(c)(2) to consider the entry of an interim order, which, among other things, on an interim basis, (i) approved the postpetition financing to be made pursuant to the DIP Loan Documents, (ii) authorized the DIP Borrower to obtain DIP Loans on an interim term basis in accordance with the DIP Loan Documents in the aggregate principal amount of up to $7,500,000 (the "Interim Amount") (of which $500,000 may be placed in an escrow account to fund potential operating emergencies of Magellan Midstream Partners L.P. ("Magellan") related to the pipeline owned by LPP, subject to an escrow agreement acceptable to

the DIP Lender), (iii) granted adequate protection to Pipeline Investors, as provided in such interim order, and (iv) granted the other relief set forth therein and contemplated by the DIP Loan Documents;

(e) the Court's scheduling, pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), a hearing on May 7, 2009 at 1:00 p.m. (the "Final Hearing") to consider entry of this final order (this "Final Order") which, among other things, (i) approves, on a final basis, the postpetition financing to be made pursuant to the DIP Loan Documents, (ii) authorizes, on a final basis, the postpetition financing to be made pursuant to the DIP Loan Documents in an aggregate principal amount, inclusive of the Interim Amount, of up to $20 million (the "Final Amount"), (iii) grants, on a final basis, adequate protection to Pipeline Investors as provided in such Final Order, and (iv) grants the other relief set forth herein and approves the transactions contemplated by the DIP Loan Documents and this Final Order;

(f) the Court's finding, pursuant to Bankruptcy Rule 4001(c)(3), that notice of the Interim Hearing and the Final Hearing was and is sufficient, having been given to (i) the United States Trustee, (ii) counsel to the DIP Lender, (iii) counsel to the Committee (as defined below), (iv) counsel to the Pipeline Investors, (v) counsel to Merrill Lynch (as defined below), (vi) counsel for the agents for the secured and unsecured lenders, (vii) all parties having filed a notice of appearance in the above-captioned cases, and (viii) all parties required to be served pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required; and

(g) The Interim Hearing having been held on April 17, 2009, the Interim Order[2] having been entered by the Court on April 17, 2009; the Final Hearing having been held on May 7, 2009, and based upon all of the pleadings filed with the Court, the evidence presented at the Interim Hearing and at the Final Hearing and the entire record herein; and the Court having heard and resolved or overruled all objections to the interim relief and the final relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:**[3]

A. Petition Date. On December 22, 2008 (the "Petition Date"), the Debtors commenced their chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under the Bankruptcy Code. The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Chapter 11 Cases. On January 5, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

B. Jurisdiction; Venue. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157. Venue for these Chapter 11 Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and

---

[2] Interim Order Under 11 U.S.C. §§ 105, 361, 362, 363, And 364 And Fed. R. Bankr. P. 2002, 4001 And 9014 (I) Authorizing Debtors to (A) Obtain Post-petition Financing, And (B) Utilize Cash Collateral, And (II) Granting Adequate Protection To Prepetition Secured Parties (the "Interim Order") [Docket No. 1024].

9014 and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of Delaware (the "Local Bankruptcy Rules").

C. Debtors' Stipulations. In connection with the relief provided for herein, the Debtors permanently, immediately and irrevocably acknowledge, represent, stipulate, and agree that:

(i) the DIP Lender and the Debtors negotiated the DIP Loan Documents on an arm's length basis and in good faith within the meaning of Section 364(e) of the Bankruptcy Code;

(ii) the DIP Lender is not in control of or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Loan Documents;

(iii) as of the date hereof, there exist no Claims (as defined in the Bankruptcy Code) or causes of action against the DIP Lender (in its capacity as such) with respect to, in connection with, related to, or arising from the Debtors or the DIP Loan Documents that may be asserted by the Debtors or their estates;

(iv) Pipeline Investors has valid, binding, enforceable and perfected first priority liens in the Pipeline Prepetition Collateral (as defined below) and such liens shall not be subject to avoidance, reduction, subordination, defense, disallowance or impairment or any other challenge under the Bankruptcy Code or any applicable non-bankruptcy law or regulation by any person or entity. Subject to the ability of the Committee to commence a Committee Challenge,[4]

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052. Paragraphs A through JI shall have the same force and effect as if set forth below as decretal paragraphs.

[4] As that term is defined in the Order Approving Stipulation Between the Official Committee of Unsecured Creditors and Longhorn Pipeline Investors, LLC Extending Deadline for Official Committee of Unsecured Creditors to Commence Adversary Proceeding [Docket No. 895] dated March 31, 2009.

the DIP Financing Debtors also agree that they will not take any steps to investigate or challenge any such liens or security interests, provided that the Debtors may cooperate with the Committee in any investigation by the Committee. The DIP Financing Debtors admit and acknowledge that as of the Petition Date, (A) the secured claim of Pipeline Investors under the Pipeline Note (as defined below) is equal to no less than $162.45 million (plus accrued and unpaid interest, fees, costs and expenses) (the "Undisputed Pipeline Investors Claim Amount"), (B) all of Pipeline Investors' secured claim in the amount of the Undisputed Pipeline Investors Claim Amount is unconditionally owing by the DIP Financing Debtors to Pipeline Investors, and (C) all claims in respect of the Undisputed Pipeline Investors Claim Amount shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or other applicable law. Subject to the acknowledgements set forth herein, the Debtors and Pipeline Investors reserve their respective rights regarding the principal amount and interest thereon due and owing under the Pipeline Note (as defined below), and no party waives any defenses, claims or counterclaims they may hold in respect thereof.

D. Purpose and Necessity of Financing. The principal asset of LPP is a refined products common carrier pipeline (the "Longhorn Pipeline") extending 700 miles from the Gulf Coast near Houston to El Paso, Texas. The Longhorn Pipeline has the ultimate capacity to transport 225,000 barrels of refined product per day and is a vital piece of infrastructure enabling Gulf Coast refinery production to reach the southwestern United States to satisfy rapidly growing demand in that area. The principal asset of LPH is its 100% equity interest in LPP. The Debtors are currently engaged in an active sale process for the Longhorn Pipeline. The DIP Financing Debtors require the financing described in the Motion to fund the cash operating expenses of LPP

and LPH during such sale process. If the DIP Financing Debtors do not obtain authorization to borrow under the DIP Loan Documents and the DIP Loans are not approved, the DIP Financing Debtors will suffer immediate and irreparable harm, and the failure to obtain authorization could potentially cause material disruption to the sale process, which will ultimately cause irreparable harm to the Debtors and their estates, creditors and equity holders. The DIP Financing Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other financing under sections 364(c) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents. A loan facility in the amount provided by the DIP Loan Documents is not available to the DIP Financing Debtors without granting the DIP Lender the superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), (2), and 364(d) of the Bankruptcy Code, as provided in this Final Order and the DIP Loan Documents. After considering all alternatives, the DIP Financing Debtors have concluded, in the exercise of their prudent business judgment, that the loan facility provided under the DIP Loan Documents represents the best working capital financing available to them at this time.

E. Prepetition Obligations. The Longhorn Pipeline was purchased on or about August 17, 2006 by LPP from Pipeline Investors pursuant to that certain Membership Interest Purchase Agreement between Longhorn Pipeline, Inc. ("LPI") (which is currently one of the Debtors) and Pipeline Investors dated August 17, 2006 and related documents. As part of the consideration for such purchase, Pipeline Investors received a Non-Recourse Promissory Note by and between LPH, as borrower, and Pipeline Investors, as lender, dated as of August 17, 2006 (the "Pipeline Note"). To secure the obligations under the Pipeline Note, LPP pledged certain collateral to Pipeline Investors pursuant to (a) that certain Deed of Trust, Mortgage, Assignment,

Fixture Filing and Financing Statement (the "Mortgage") and (b) that certain Security Agreement (collectively, together with related collateral agreements and filings, the "Pipeline Collateral Documents," and together with the Pipeline Note, the "Prepetition Pipeline Loan Documents"). Pursuant to the Prepetition Pipeline Loan Documents, the collateral (including cash collateral (as defined in section 363(a) of the Bankruptcy Code) ("Cash Collateral")) securing the Pipeline Note (hereinafter, the "Pipeline Prepetition Collateral") includes the Longhorn Pipeline, all related Longhorn Pipeline assets and all accessions and additions to, substitutions for, and all replacements, products and proceeds of and from the Longhorn Pipeline. Without limitation, the Pipeline Prepetition Collateral includes all present and future real property interests, improvements, equipment, contracts, contract rights, documents, and instruments relating to the operation of the Longhorn Pipeline, including all agreements covering or otherwise relating to the ownership and operation of the Longhorn Pipeline and/or to the transportation and storage of refined petroleum products by, through, over or in the Longhorn Pipeline, and the products and proceed thereof, provided that, for the avoidance of doubt, the Pipeline Prepetition Collateral shall not include the "Prepetition Collateral" (as defined in the LPI Financing Order (as defined below), the "ML Prepetition Collateral"). The amount of the claim of Pipeline Investors pursuant to the Prepetition Pipeline Loan Documents is hereinafter referred to as the "Prepetition Pipeline Obligations". Pipeline Investors has filed a proof of claim against LPP and LPH in the principal amount of at least $215 million. As set forth in the last sentence of paragraph C above, as of the date of this Final Order, the Debtors have not agreed to the amount of Prepetition Pipeline Obligations. Pursuant to an "Order on Motion of Longhorn Pipeline Investors, LLC For Adequate Protection Pursuant to Section 105(A), 361, 362(c)(2) and 363(e) of the Bankruptcy Code" entered by this Court on February 18, 2009 [Docket No. 550], Pipeline Investors has been

provided adequate protection and certain other rights as a result of, among other things, the use of the Pipeline Prepetition Collateral, including Cash Collateral (the "Pipeline Investors Adequate Protection Order").

F. Good Cause. The ability of the DIP Financing Debtors to obtain sufficient working capital under the DIP Loan Documents is vital to the DIP Financing Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents will enable the DIP Financing Debtors to continue to operate their businesses in the ordinary course and preserve the value of the DIP Financing Debtors' businesses. The DIP Financing Debtors' estates will be immediately and irreparably harmed if this Final Order is not entered, which will ultimately cause irreparable harm to the Debtors and their estates, creditors and equity holders. Good cause has, therefore, been shown for the relief sought in the Motion.

G. Good Faith. The terms and conditions of the DIP Loan Documents are fair, reasonable, and the best available to the DIP Financing Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. DIP Loan Documents have been negotiated in good faith and at arm's length by and among the DIP Financing Debtors and the DIP Lender. Any DIP Loans and/or other financial accommodations made to the DIP Financing Debtors by the DIP Lender pursuant to this Final Order and/or the DIP Loan Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereunder, including, without limitation, the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise. The terms of the senior secured credit facility provided under

the DIP Loan Documents are fair and reasonable, reflect the DIP Financing Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

H. LPI Postpetition Financing. The Court has previously entered on March 9, 2009 [Docket No. 733] that certain "Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 (i) Authorizing Debtors to (a) Obtain Post-Petition Financing and (b) Utilize Cash Collateral, and (ii) Granting Adequate Protection to Prepetition Secured Parties" (the "LPI Financing Order"), pursuant to which, among other things, Merrill Lynch Commodities, Inc. ("LPI DIP Lender") provided post-petition financing to LPI and adequate protection was provided to Merrill Lynch Capital Corporation ("MLC") and Merrill Lynch Bank USA ("MLB", and together with MLC, the "LPI Prepetition Secured Lender" and together with LPI DIP Lender, "Merrill Lynch").

I. Consideration. The DIP Financing Debtors will receive and have received fair and reasonable consideration in exchange for access to the DIP Loans, and all other financial accommodations provided under the DIP Loan Documents, and this Final Order and the entry and execution thereof.

J. Immediate Entry of Final Order. The DIP Financing Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the DIP Financing Debtors. This Court concludes that entry of this Final Order is in the best interests of the DIP Financing Debtors' respective estates and creditors as its implementation will, among other things, allow for the funding of cash operating expenses, which is necessary to sustain the operation of the DIP

Financing Debtors' existing businesses and further enhance the DIP Financing Debtors' prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, stipulations, and conclusions, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED:**

1. Disposition. The Motion is granted on the terms set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Final Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014. The terms and provisions of the DIP Loan Documents are approved on a final basis.

2. Term of DIP Loans. The DIP Loan Documents authorized hereunder shall expire, and the DIP Loans made pursuant to the DIP Loan Documents and this Final Order, together with all interest thereon and other DIP Obligations, shall mature and become due and payable (unless such DIP Loans and other DIP Obligation become due and payable earlier pursuant to the terms of the DIP Loan Documents and/or this Final Order) on the earlier of (the "DIP Loan Termination Date"): (i) August 1, 2009 (subject to a possible thirty day extension in accordance with the DIP Loan Documents) and (ii) the date on which the DIP Loans shall become due and payable in accordance with the terms of this Final Order and/or the DIP Loan Documents, including but not limited to, upon the occurrence of an Event of Default (as defined below).

3. Borrowing. The DIP Financing Debtors are hereby authorized to immediately obtain the DIP Loans, pursuant to the terms of this Final Order and subject to the terms of the DIP Loan Documents, in the aggregate principal amount of up to $20,000,000 for uses permitted under the Budget (as defined below).

4. Budget and Use of Proceeds of Borrowing and Assets. The DIP Financing Debtors shall use advances of credit under the DIP Loan Documents only for the purposes set forth in this Final Order and, for purposes of this Final Order, in compliance with a four week budget with respect to flow volumes and expenses mutually agreed upon among the DIP Financing Debtors, the DIP Lender, and the Committee (the "Budget" attached as Exhibit 1 hereto). An updated Budget for each successive four week period (or longer time agreed among the DIP Lender, the Debtors and the Committee) shall be provided to DIP Lender, the Committee and LPI Prepetition Secured Lender (including detailed line items underlying the Budget) not less than two weeks prior to the end of the time period covered by the then effective Budget and shall be effective upon agreement by the DIP Lender and the Debtors. For the avoidance of doubt, (a) no borrowings under the DIP Loan Documents in excess of the amounts provided in the detailed line items underlying the Budget and no other assets in excess of the amounts provided in the detailed line items underlying the Budget may be transferred to any other Debtor other than the DIP Financing Debtors or used to pay the expenses of any Debtor other than the DIP Financing Debtors, and (b) no borrowings under the DIP Loan Documents nor other assets of LPP and LPH may be transferred to LPI or used to pay any expenses or any other obligations of LPI. The Budget and any modifications to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved by the DIP Lender and the Committee (any such modified, amended or updated Budget (including detailed line items underlying the Budget) to be provided to the LPI Prepetition Secured Lender). The Budget may be amended or modified in writing from time to time with the written consent of the DIP Lender, and may be amended or modified without the need for further approval by this Court only with the written consent of the DIP Lender and the Committee.

5. Authority to Execute and Deliver Necessary Documents.

(a) Each of the DIP Financing Debtors is authorized and directed to negotiate, prepare, enter into, and deliver the DIP Loan Documents. Each of the DIP Financing Debtors is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral (as defined below) necessary to perfect the DIP Liens (as defined below) and securing all of the DIP Financing Debtors' obligations under the DIP Loan Documents, including repayment of all DIP Obligations in cash, that are requested by the DIP Lender.

(b) Each of the DIP Financing Debtors is hereby further authorized and directed to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Final Order, and (ii) perform all acts required under the DIP Loan Documents and this Final Order, including, without limitation, the payment of fees, and the reimbursement of present and future costs and expenses (including without limitation, reasonable attorneys' fees and legal expenses, as described more fully in the DIP Loan Documents), paid or incurred by the DIP Lender as provided for in this Final Order and the DIP Loan Documents. All such unpaid fees, commissions, costs, and other expenses shall be included and constitute part of the principal amount of the DIP Obligations and be secured by the DIP Liens (as defined below).

(c) Upon the request of the DIP Lender, Pipeline Investors is authorized to make, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the DIP Lender to further perfect, preserve, and enforce the DIP Liens (as defined below).

(d) All obligations under the DIP Loan Documents and this Final Order shall constitute valid and binding obligations of each of the DIP Financing Debtors enforceable against each of them, and each of their successors and assigns, in accordance with their terms and the terms of this Final Order. No obligation, payment, transfer or grant of a security under the DIP Loan Documents or this Final Order shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any defense, challenge, dispute, reduction, setoff, recoupment or counterclaim.

6. Amendments, Consents, Waivers, and Modifications. The DIP Financing Debtors are hereby authorized to execute, deliver and perform one or more amendments to the DIP Term Sheet and the DIP Loan Documents, in each case with the express written consent of the DIP Lender, it being understood that no prior approval of the Court shall be required for amendments to the DIP Loan Documents that do not (i) change the maturity of the extensions of credit thereunder, (ii) increase commitments or the rate of interest payable thereunder, (iii) change any defaults or stop events or add any covenant or amend the covenants therein to be more restrictive to the DIP Financing Debtors, or (iv) make any other material change to the DIP Loan Documents; provided, that such amendments shall, promptly after the effectiveness thereof, be filed on the Court's docket.

7. DIP Lender's Superpriority Claims. The DIP Lender is hereby granted an (i) allowed superpriority administrative expense claim against LPP (the "LPP Superpriority Claim"), as DIP Borrower, pursuant to section 364(c)(1) of the Bankruptcy Code, in the amount of all DIP Obligations, having priority over any and all other administrative expenses and unsecured claims against LPP or its estates in these Chapter 11 Cases or any successor cases under any chapter of

the Bankruptcy Code, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 365, 503(b), 506(c), 507, 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which LPP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of LPP and its estates and all proceeds thereof, and (ii) allowed superpriority administrative expense claim against LPH (the "LPH Superpriority Claim", and together with the LPP Superpriority Claim, the "Superpriority Claims"), as DIP Guarantor, pursuant to section 364(c)(1) of the Bankruptcy Code, in the amount of all DIP Obligations, having priority over any and all other administrative expenses and unsecured claims against LPH or its estates in these Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 365, 503(b), 506(c), 507, 546(c), 546(d), 726, 1113, and 1114 of the Bankruptcy Code, and any other provisions of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which LPH Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of LPH and its estates and all proceeds thereof. Except for (i) the Existing Adequate Protection Claims (as defined below) referenced and provided for herein, (ii) any junior superpriority administrative expense claim granted by LPP to Magellan Pipeline Company, L.P. in respect of the "Fee Holiday" pursuant to the "Motion of the Debtors for Entry of an Order Approving (a) Modifications to the Magellan

Services Agreement, (b) Entry into Supplemental Services Agreement, and (c) Granting of Superpriority Liens" (the "Magellan Motion") [Docket No. 1063] and (iii) the junior superpriority claim being provided as additional adequate protection by LPP to LPI Prepetition Secured Lender pursuant to paragraph 28(d) of this Final Order, no other superpriority administrative claims shall be granted or allowed in the chapter 11 cases of LPP or LPH.

8. DIP Lender's Lien Priority.

(a) To secure the DIP Obligations, the DIP Lender is hereby granted:

i. pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly fully perfected first priority postpetition security interest in, and lien on, any and all presently owned and hereafter acquired personal property, real property and other assets and properties of LPP and LPH, and their respective estates, regardless of where located, including, without limitation, the following: all presently owned and hereafter acquired assets of the DIP Financing Debtors and their estates, and any proceeds, products, profits and rents in respect thereof, including without limitation, accounts deposit accounts, cash, chattel paper, investment property, letter-of-credit rights, securities accounts, commercial tort claims, investments, instruments, documents, inventory, contract rights, franchise agreements, general intangibles, intellectual property, real property, fixtures, goods, inventory, equipment and other assets and proceeds, products, profits and rents in respect thereof (but excluding, for the avoidance of doubt, any ML Prepetition Collateral) (collectively, "Pipeline Property"), but excluding as collateral any recoveries from any proceedings brought by or on behalf of LPP's or LPH's estate under sections 510, 544, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code, to the extent such Pipeline Property is not otherwise subject to a valid, enforceable, non-avoidable and perfected lien and security interest (to such

extent, the "Unencumbered Collateral") (such lien and security interest, the "Unencumbered Property Lien"); and

ii. pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, non-avoidable, and automatically and properly fully perfected first priority postpetition priming senior security interest in, and lien on, all Pipeline Property that is currently subject to a valid, enforceable, non-avoidable and perfected lien and security interest, including the Pipeline Prepetition Collateral (the "Priming Collateral", and together with the Unencumbered Collateral, the "DIP Collateral")) (such lien and security interest, the "Priming Lien", and together with the Unencumbered Property Lien, the "DIP Liens"); provided, however, for the avoidance of doubt, the DIP Liens shall not attach to the ML Prepetition Collateral, and the DIP Liens shall be subject to the liens of Cadre Services, Inc. ("Cadre") to the extent Cadre has a valid, enforceable, non-avoidable, perfected lien on certain properties of the DIP Financing Debtors; provided, further, that the collateral for the DIP Obligations described in this paragraph shall not include recoveries from any proceeding brought by or on behalf of the DIP Financing Debtors' estates under section 510, 544, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code.

(b) Except as otherwise expressly provided in this Final Order with respect to the reservation of rights by Cadre in paragraph 8(a)(i) above, the Texas Tax Authorities in paragraph 29 hereof and Afco in paragraph 34 hereof, the DIP Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of or following the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the DIP Financing Debtors' estates under section 551 of the Bankruptcy Code.

(c) The DIP Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the date of this Final Order without the necessity of execution by the DIP Financing Debtors of mortgages, deeds of trust, security agreements, pledge agreements, financing agreements, financing statements and other agreements, such that no additional steps need be taken by the DIP Lender to perfect such interests;

(d) The DIP Liens, Superpriority Claims, and other rights and remedies granted under this Final Order to the DIP Lender shall continue in this and in any superseding case or cases under the Bankruptcy Code and shall survive dismissal or conversion of one or more of the Chapter 11 Cases, and such liens and security interests shall maintain their priority as provided in this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and the DIP Lender's commitment has been terminated in accordance with the DIP Loan Documents.

(e) Upon reasonable notice, at reasonable times during normal business hours and subject to the confidentiality provisions of the Prepetition Credit Agreement, the Debtors (and/or their legal or financial advisors) shall deliver to the DIP Lender, Pipeline Investors, Vinson & Elkins LLP, counsel to the DIP Lender and Pipeline Investors, and any financial advisor to the DIP Lender or Pipeline Investors, all financial reports, budgets, forecasts, and all other documentation, pleadings, and/or filings (collectively, the "Documentation"), as is reasonably available, that is either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Lender or Pipeline Investors, and/or the DIP Lender's or Pipeline Investor's legal and financial advisors pursuant to the DIP Loan Documents or Prepetition Pipeline Loan Documents, or (ii) reasonably requested by the DIP Lender or Pipeline Investors (or their legal and financial advisors), including information relating to LPI (but specifically excluding, for the

avoidance of doubt, any information relating to any Committee investigation in respect of LPI Prepetition Secured Lender), or (iii) any information relating to the DIP Financing Debtors, the DIP Loan, the DIP Loan Documents or the Prepetition Pipeline Loan Documents that is provided to the Committee and/or the Committee's legal or financial advisors. Upon reasonable notice, at reasonable times during normal business hours and subject to the terms of any existing confidentiality agreements, the Debtors (and/or their legal and financial advisors) shall provide any and all Access to Information (as set forth below) as is reasonably available, including, without limitation, access to their properties and financial and accounting records, that is either required, or reasonably requested, to be provided (by the DIP Financing Debtors and/or their legal or financial advisors) to the DIP Lender or Pipeline Investors, and/or the DIP Lender's or Pipeline Investors legal and financial advisors pursuant to the DIP Loan Documents or Prepetition Pipeline Loan Documents or, solely where such Access to Information (as set forth below) relates to the DIP Financing Debtors, the DIP Loan, the DIP Loan Documents or the Prepetition Pipeline Loan Documents, any Access to Information (as set forth below) that is afforded to the Committee and/or the Committee's legal or financial advisors.

9. Adequate Protection for Pipeline Investors

(a) The Debtors have requested that Pipeline Investors consent to, among other things, the incurrence of the DIP Loans by the DIP Borrowers under the DIP Loan Documents and the Debtors' granting of liens and superpriority claims in connection therewith, and Pipeline Investors has consented thereto, subject to the provisions of this Final Order. For the avoidance of doubt, Pipeline Investors does not consent to any postpetition financing other than financing provided by the DIP Lender (as identified on the date hereof) pursuant to the DIP Loan Documents and this Final Order. The Debtors acknowledge and stipulate that Pipeline Investors

is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Pipeline Prepetition Collateral, including the Cash Collateral, to the extent of any aggregate diminution in value of the Pipeline Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the DIP Financing Debtors (or other decline in value) of Cash Collateral of Pipeline Investors and any other Pipeline Prepetition Collateral, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code and the imposition of superpriority claims and priming liens pursuant hereto and the DIP Loan Documents (any such diminution in value, however arising or resulting from, the "Existing Collateral Value Diminution"). As adequate protection for the Existing Collateral Value Diminution, Pipeline Investors is hereby granted the following ((b) through (d) below shall be referred to collectively as the "Existing Adequate Protection Obligations"):

(b) Ratification of Pipeline Investors Adequate Protection Order. The terms of the Pipeline Investors Adequate Protection Order is hereby ratified, confirmed and continued in accordance with its terms.

(c) Adequate Protection Liens. The Pipeline Investors Adequate Protection Order is hereby deemed amended to provide that in addition to the replacement liens provided therein, Pipeline Investors shall also be granted replacement liens on all assets and properties of LPP and LPH to the extent of diminution in value arising from the DIP Obligations, this Final Order and the DIP Financing Documents (all such replacement liens, including the replacement liens provided in the Pipeline Investors Adequate Protection Order, the "Replacement Liens"). For the avoidance of doubt, the Replacement Liens shall not attach to any asset or property of LPI. The Replacement Liens shall not at any time be (i) made subject or subordinated to, or made *pari passu* with any other lien, security interest or claim existing as of the Petition Date, or created

under sections 363 or 364(d) of the Bankruptcy Code or otherwise (except that the Replacement Liens shall be subordinated to the DIP Liens), or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under sections 551 of the Bankruptcy Code. The Replacement Liens shall not extend or apply to any interest of the Debtors arising under sections 510, 544, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code.

(d) Section 507(b) Claim. The Pipeline Investors Adequate Protection Order is hereby deemed amended to provide that in addition to the superpriority claims provided therein, to the extent of the Existing Collateral Value Diminution, if any, Pipeline Investors is also hereby granted an allowed superpriority administrative claims against LPP and LPH, as provided for in section 507(b) of the Bankruptcy Code (including the superpriority claims provided in the Pipeline Investors Adequate Protection Order, the "Existing Adequate Protection Claims"), , having priority over any and all other claims against LPP and LPH including claims made pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, except that the Existing Adequate Protection Claim shall be junior in priority to the DIP Claims.

10. Further Adequate Protection. Nothing in this Final Order waives any right of Pipeline Investors to request at any time that the Court provide additional or further protection of their interests in the Pipeline Prepetition Collateral (including their Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided herein proves to be inadequate, or the right of the Debtors to contest any such request.

11. Perfection of DIP Liens and Replacement Liens. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Replacement Liens without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the

law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Replacement Liens, or to entitle the DIP Lender and Pipeline Investors to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Lender and Pipeline Investors are authorized to file, as it deems necessary or advisable in their sole discretion, at the expense of the Debtors, such financing statements, mortgages, deeds of trust, notices and other instruments or documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and/or Replacement Liens, and all such financing statements, mortgages, deeds of trust, notices and other instruments or documents shall be deemed to have been filed as of the date of this Final Order; provided however that no such filing or recordation shall be necessary or required in order to create, evidence or perfect the DIP Liens and/or the Replacement Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Lender and Pipeline Investors all such financing statements, mortgages, deeds of trust, notices and other instruments or documents as may be reasonably requested. The DIP Lender and Pipeline Investors may each, in their sole discretion, file a photocopy of this Final Order as a financing statement or other notice with any filing or recording office or with any registry of deeds of similar office, in addition to or in lieu of such financing statements, mortgages, notices of lien instrument or similar document.

12. Expenses. The DIP Financing Debtors shall pay directly or reimburse the DIP Lender and Pipeline Investors for all reasonable fees, expenses and charges incurred in connection with the DIP Loan Documents and the Prepetition Pipeline Loan Documents (including, without limitation, the payment of reasonable fees and expenses of counsel and any

financial consultant) within 15 days of submitting an invoice to the DIP Financing Debtors (with a copy to the Committee); provided that the estimated reasonable fees, expenses and charges incurred prior to closing of the initial funding shall be paid concurrently with such funding; provided, further, that the Committee retains the right to object to any such invoice as unreasonable even if such invoice has been paid, for a period of 30 days from payment, but in any event all such accrued fess and expenses shall be paid in full no later than the DIP Loan Termination Date (provided that the Debtors shall have at least 15 days to pay any invoice issued less than 15 days prior to the DIP Loan Termination Date). The fees, expenses and charges of the DIP Lender and Pipeline Investors shall constitute part of the DIP Obligations and the Prepetition Pipeline Obligations, respectively.

13. Access to Information. Upon reasonable notice, at reasonable times during normal business hours and subject to the provisions of existing confidentiality agreements, the DIP Financing Debtors shall permit representatives, agents, and/or employees of the DIP Lender and Pipeline Investors to have access in the ordinary course to visit and inspect their properties, to examine their books and records, and to discuss their affairs, finances and condition (and the affairs, finances and condition of LPI) with their officers and financial advisors and shall cooperate, consult with, and provide to such persons all such information as required or allowed under the DIP Loan Documents or the provisions of this Final Order, as is reasonably requested and reasonably available.

14. Lenders Not Responsible Persons. In (a) deciding to make the DIP Loans; (b) administering the DIP Loans; and (c) extending other financial accommodations to the DIP Financing Debtors under the DIP Loan Documents, the DIP Lender shall not be considered to be exercising control over any operations of the DIP Financing Debtors or acting in any way as a

responsible person, as an owner or operator under any applicable law, including without limitation, any environmental law (including, but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute (collectively, the "Statutes")).

15. Successors and Assigns. The DIP Loan Documents and the provisions of this Final Order shall be binding upon the DIP Financing Debtors, the DIP Lender, and Pipeline Investors, and each of their respective successors and assigns, and shall inure to the benefit of the DIP Financing Debtors, Pipeline Investors, and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code. The provisions of this Final Order shall also be binding on all of the DIP Financing Debtors' creditors, equity holders, and all other parties in interest.

16. No Obligation to Extend Credit. None of the entities constituting the DIP Lender shall have any obligation to make any loan or advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Loan Documents and this Final Order have been satisfied in full or waived in writing or otherwise provided for in the DIP Loan Documents.

17. Binding Nature of Agreement. Each of the DIP Loan Documents to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms. The DIP Loan Documents have been or will be properly executed and delivered to the DIP Lender by the DIP Financing Debtors. The rights, remedies, powers, privileges, liens, and priorities of Pipeline Investors

provided for in this Final Order and the DIP Loan Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), or by any plan of reorganization or liquidation in these cases or in any subsequent case under the Bankruptcy Code unless and until the DIP Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents.

18. Subsequent Reversal or Modification. This Final Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lender all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the DIP Lender and Pipeline Investors prior to the date of receipt by the DIP Lender or Pipeline Investors, as applicable, of written notice of the effective date of such action, or (ii) the validity and enforceability of any lien or priority authorized or created under this Final Order or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Lender and Pipeline Investors prior to written notice to the DIP Lender or Pipeline Investors, as applicable, of the effective date of such action, shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender and Pipeline Investors shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

19. Restriction on Use of DIP Lender's Funds. Notwithstanding anything herein to the contrary, no DIP Collateral, proceeds thereof, Cash Collateral, Pipeline Prepetition

Collateral, or proceeds thereof may be used by any of the Debtors, the Committee, any trustee appointed in these Chapter 11 Cases, or any other person, party or entity to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lender on the terms provided herein; and (b) assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the DIP Lender and Pipeline Investors, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any actions arising under chapter 5 of the Bankruptcy Code, (ii) any so-called "lender liability" claims and causes of action, (iii) any action with respect to the validity and extent of the DIP Obligations or the obligations to Pipeline Investors, or the validity, extent, and priority of the DIP Liens, the Prepetition Pipeline Liens or the Replacement Liens, (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the liens in favor of Pipeline Investors or the Replacement Liens, or (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the DIP Lender and Pipeline Investors in respect of their liens and security interests in the DIP Collateral or the Pipeline Prepetition Collateral; provided, however, that nothing herein shall limit the Debtors' cooperation with the Committee in any Committee Investigation, or the Committee in conducting such investigation, to the extent such investigation is authorized under the terms of this Final Order or the Pipeline Investors Adequate Protection Order.

20. Event of Default. Unless otherwise agreed to in writing between the DIP Lender and the DIP Financing Debtors, the DIP Financing Debtors' ability to obtain DIP Loans under the DIP Loan Documents and this Final Order shall terminate on the earlier to occur of (i) the DIP Loan Termination Date, and (ii) the date upon which any of the following events occur and are continuing beyond any applicable grace period set forth below (each an, "Event of Default"):

(a) the Debtors fail to make a payment to the DIP Lender as and when required by the DIP Loan Documents or this Final Order, or otherwise fail to comply in any material respect with any of the terms or conditions of the DIP Loan Documents and/or this Final Order other than relating to payments, including, without limitation, the Debtors failure to provide Access to Information as required in paragraph 13 of this Final Order; provided, however, that any failure by the Debtors to make a payment to the DIP Lender or otherwise comply with any material terms or conditions of the DIP Loan Documents and/or this Final Order is subject to three (3) business days notice by the DIP Lender to the DIP Financing Debtors and an opportunity to cure;

(b) three days after the DIP Lender notifies the DIP Financing Debtors of the occurrence of an "Event of Default" under the DIP Credit Agreement;

(c) the Debtors seek any modification or extension of this Final Order, without the prior consent of Pipeline Investors and the DIP Lender, or an order is entered by a court of competent jurisdiction reversing, amending, supplementing, staying for a period in excess of three (3) days, vacating or otherwise modifying this Final Order in a manner that is adverse to Pipeline Investors and/or the DIP Lender without their prior written consent;

(d) any representation or warranty made by the Debtors under this Final Order or the DIP Loan Documents proves to have been false, materially inaccurate or materially misleading;

(e) the Debtors shall use proceeds of DIP Loans or any other asset of the DIP Financing Debtors for any purpose other than as provided in the Budget (or pursuant to an amended, modified or updated Budget that has been amended, modified or updated in accordance with paragraph 4 of this Final Order) or for any purpose prohibited by paragraph 4 of this Final Order;

(f) with respect to the Budget, if (i) volumes starting with the second week after the Effective Date (as defined in the DIP Term Sheet) (subject to following proviso) are less than 70,000 barrels per week on a trailing average weekly basis at the end of any weekly period (calculated from the second week after the Effective Date; provided that starting in the fifth week after the Effective Date, volumes during the first week after the Effective Date shall be included in this test), (ii) total disbursements for the time period of the Budget shall have exceed the total disbursements allowed in the Budget by more than 10%, or (iii) the Budget amount is exceeded by any amount for certain specific items to be agreed to by the parties;

(g) except as otherwise provided in the Amended Order Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets dated February 19, 2009 [Docket No. 551], the Debtors shall, without the prior written consent of Pipeline Investors and the DIP Lender (i) enter into any agreement for the sale, lease or transfer of the Pipeline Prepetition Collateral or the DIP Collateral (or any equity interests in any of the DIP Financing Debtors), except for an agreement with respect to a transaction ("Acceptable Transaction") that provides for (1) the payment in full in cash on closing of all of the DIP Obligations and (2) which is scheduled to close on or prior to the DIP Loan Termination Date; or (ii) consummate any asset sale, or any order shall be entered by the Bankruptcy Court under section 363 of the Bankruptcy Court, for the sale, lease or transfer of the DIP Collateral, except for an Acceptable Transaction;

provided that irrespective of whether a transaction constitutes an Event of Default, nothing in this Final Order will be deemed a waiver of the right of the DIP Lender or Pipeline Investors to object to any transaction or the terms thereof, or to credit bid their claims in any such transaction;

(h) without the prior written consent of Pipeline Investors and the DIP Lender, the Debtors shall file a motion seeking to grant a third party, pursuant to section 364 or otherwise, a security interest or lien upon all or part of any of the Pipeline Prepetition Collateral, including the Cash Collateral, or the DIP Collateral that has a priority which is senior to, or *pari passu* with, the Prepetition Pipeline Liens, the Replacement Liens or the DIP Liens;

(i) an application (other than the application for financing provided by a third party which seeks authority to pay indefeasibly in full the Prepetition Pipeline Obligations and DIP Obligations upon entry of an order approving such financing) is filed by any of the Debtors for the approval of (or an order is entered by the Court approving) any claim arising under section 507(b) of the Bankruptcy Code or any lien in any of the Chapter 11 Cases which is *pari passu* with or senior to the Superpriority Claims, the Existing Adequate Protection Claims, the Replacement Liens or the DIP Liens, excluding, in all cases, any financing agreement made with the prior written consent of Pipeline Investors and the DIP Lender (which shall be in their sole discretion);

(j) the commencement of any action by any of the Debtors against the Pipeline Investors or the DIP Lender, or their respective agents and employees, to subordinate or avoid any liens or object to any portion of any claim made in connection with the DIP Loan Documents and Prepetition Pipeline Loan Documents; provided, that, subject to paragraph 25 hereof, the filing of an objection to the principal portion of the Prepetition Pipeline Obligations

in excess of the Undisputed Pipeline Investors Claim Amount shall not constitute an Event of Default;

(k) any order with respect to any of the DIP Financing Debtors shall be entered by the Bankruptcy Court in the Chapter 11 Cases that is not stayed granting relief from the automatic stay to one or more creditors of any of the DIP Financing Debtors to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, or any similar remedy with respect to any assets of the DIP Financing Documents that could reasonably be expected to result in a Material Adverse Effect (as defined in the DIP Loan Documents);

(l) except for matters subject to the automatic stay or with respect to which enforcement has otherwise been effectively stayed, or that are fully covered by insurance (i) one or more judgments arising after the Petition Date for the payment of money in an aggregate amount in excess of $500,000 shall be rendered against any of the DIP Financing Debtors or any of their respective subsidiaries or any combination thereof and the same shall remain undischarged for a period of 30 consecutive days, or (ii) one or more judgments arising after the Petition Date that is not for the payment of money shall be rendered against any of the DIP Financing Debtors or any of their subsidiaries or any combination thereof and the same shall result in a Material Adverse Effect (as defined in the DIP Loan Documents);

(m) any of the Chapter 11 Cases shall be dismissed (without providing for the termination of all commitments and payment in full in cash of all DIP Obligations under the DIP Loan Documents and this Final Order) or converted to a case under chapter 7 of the Bankruptcy Code, or an order of the Bankruptcy Court shall be entered in any of the Chapter 11 Cases appointing a trustee under chapter 11 of the Bankruptcy Code, or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth

in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106 of the Bankruptcy Code;

(n) any material contract of the DIP Financing Debtors shall be terminated or rejected pursuant to order of the Court without the consent of the DIP Lender;

(o) the occurrence of a "Deemed Lift Stay Date", or "Event of Default" under the LPI Financing Order, and such occurrence continues for ten business days without cure or agreement by LPI Prepetition Secured Lender or LPI DIP Lender to forbear exercise of their remedies; or

(p) the Debtors shall assert in any pleading filed in any court that any material provision of this Final Order is not valid and binding for any reason, or any material provision of this Final Order shall for any reason, or any other order of the Bankruptcy Court approving the use of Cash Collateral, without the prior written consent of Pipeline Investors and DIP Lender, cease to be valid and binding.

The DIP Financing Debtors shall promptly provide notice to the Pipeline Investors and DIP Lender (with a copy to the United States Trustee, the Committee and Merrill Lynch) of the occurrence of any Event of Default.

21. Rights and Remedies Upon Event of Default. Upon the occurrence of an Event of Default, (i) the DIP Loans made pursuant to the DIP Loan Documents and this Final Order shall mature, and together with all interest thereon and other DIP Obligations, become due and payable, (ii) the DIP Lender may, upon three (3) business days' written notice to the DIP Financing Debtors (with a copy to the United States Trustee and the Committee) setoff amounts in any account of the DIP Financing Debtors maintained with DIP Lender, (iii) the DIP Lender may, upon three (3) business days' written notice to the DIP Financing Debtors (with a copy to

the United States Trustee, the Committee and Merrill Lynch), without need for further relief from the stay or other relief from this or any other court, exercise the rights and remedies available under this Final Order and/or applicable law (including the Uniform Commercial Code as in effect in any jurisdiction), including foreclosing upon and selling all or any portion of the DIP Collateral. The actions described in clauses (i), (ii) and (iii) above may be taken without further order or application to the Bankruptcy Court as such DIP Lender shall, in its discretion, elect, and the automatic stay is hereby modified and vacated to the extent necessary to permit such actions, so long as no order prohibiting such action is entered by the Bankruptcy Court during the above-referenced three (3) business day period. The sole issue that may be raised by any party during such three (3) business day period shall be limited to whether an Event of Default has occurred. The DIP Lender shall be entitled to apply the payments or proceeds of the DIP Collateral to the DIP Obligations in any order whatsoever. Notwithstanding the occurrence of an Event of Default or anything herein, all of the rights, remedies, benefits and protections provided to the DIP Lender and Pipeline Investors under this Final Order shall survive any Event of Default.

22. Collateral Rights. In the event that any party who holds a lien or security interest in DIP Collateral or Pipeline Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the Replacement Liens or the Prepetition Secured Lender Liens in such DIP Collateral or Pipeline Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Pipeline Prepetition Collateral, or receives any other payment with respect thereto from any other source, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents and all Prepetition Pipeline Loan Obligations under the Prepetition Pipeline Loan Documents, and termination of the commitments in accordance with

the DIP Loan Documents and the Prepetition Pipeline Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Pipeline Prepetition Collateral in trust for the DIP Lender and Pipeline Investors and shall immediately turnover such proceeds for application (a) to the DIP Obligations under the DIP Loan Documents in accordance with the DIP Loan Documents and this Final Order and (b) to the Prepetition Pipeline Obligations under the Prepetition Pipeline Loan Documents and this Final Order.

23. No Waiver. This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Lender and Pipeline Investors may have under the Bankruptcy Code or applicable law, or any prior order of this Court, or to bring or be heard on any matter brought before this Court.

24. No Marshalling. The DIP Lender and Pipeline Investors shall not be subject to the equitable doctrine of "marshalling" or any other similar doctrine with respect to any of the DIP Collateral or the Pipeline Prepetition Collateral.

25. Sale of Collateral; Treatment of Proceeds; Right to Credit Bid. The DIP Lender and Pipeline Investors expressly reserve their right to object to any sale of any DIP Collateral or Pipeline Prepetition Collateral or any of the terms of any proposed transaction. In the event that, prior to the allowance of the Prepetition Pipeline Obligations, any sale of the DIP Collateral or Pipeline Prepetition Collateral results in cash proceeds in excess of the sum of the Undisputed Pipeline Investors Claim Amount and the unpaid DIP Loan Obligations, the amount of such excess shall be segregated and deposited in an interest bearing escrow account, and, upon the allowance of the amount of the Prepetition Pipeline Obligations (pursuant to Court order or agreement), an amount equal to the difference between such allowed amount and the Undisputed

Pipeline Investors Claim shall be paid to Pipeline Investors; provided, that, the right of Pipeline Investors to receive funds from the escrow account shall be subject to the right of the Committee to commence a Committee Challenge. In connection with any proposed sale or other transfer of any DIP Collateral or Pipeline Prepetition Collateral, the DIP Lenders and Pipeline Investors shall be entitled to bid at such sale and shall be entitled to offset the DIP Obligations and the Prepetition Pipeline Obligations against the purchase price of such property; provided that the Debtors and Pipeline Investors expressly reserve all rights in the event that Pipeline Investors seeks to credit bid in an amount in excess of the Undisputed Pipeline Investors Claim Amount. In connection with the formulation and approval of any bidding procedures related to a sale of the Pipeline Collateral, the Debtors and the DIP Lender shall negotiate in good faith regarding such bidding procedures, including the terms relating to the assertion of a credit bid by Pipeline Investors in excess of the Undisputed Pipeline Investors Claim Amount.

26. Conversion/Dismissal. No motion shall be filed by any of the Debtors seeking to dismiss the Chapter 11 Cases or convert to a case under chapter 7 of the Bankruptcy Code, or to seek entry of an order in any of the Chapter 11 Cases appointing a trustee under chapter 11 of the Bankruptcy Code, or a responsible officer or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106 of the Bankruptcy Code unless and until (i) the DIP Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance therewith, or (ii) the DIP Lender expressly consents in writing.

(a) Limits on Lenders' Liability. Nothing in this Final Order or in any of the Prepetition Pipeline Loan Documents or DIP Loan Documents shall in any way be construed or

interpreted to impose or allow the imposition upon Pipeline Investors or the DIP Lender of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

27. Incorporation by Reference of DIP Term Sheet and DIP Loan Documents. All terms and conditions of the DIP Term Sheet and DIP Loan Documents are incorporated by reference and shall be binding and enforceable to the same extent as if set forth herein in the first instance.

28. LPI Prepetition Secured Lender.

(a) For the avoidance of doubt, nothing in this Final Order shall limit or otherwise affect or modify Merrill Lynch's rights and remedies, including without limitation upon the occurrence of a Deemed Lift Stay Date (as defined in the LPI Financing Order), under the LPI Financing Order.

(b) For the avoidance of doubt, neither the Pipeline Investors nor the DIP Lender are being granted any claim, lien, right or interest in any assets or property of LPI under this Final Order and LPI is not granting any lien in any of its property or assets pursuant to this Final Order or the DIP Loan Documents.

(c) For the avoidance of doubt, any rights, remedies or obligations of LPI Prepetition Secured Lender and the Pipeline Investors under any intercreditor agreement, lender agreement or similar agreements or other applicable non-bankruptcy law are fully preserved and reserved

(d) As additional adequate protection, the LPI Prepetition Secured Lender, to the extent of the Existing Collateral Value Diminution (as defined in the LPI Financing Order), if any, is hereby granted allowed superpriority administrative claims against LPP, as provided for

in section 507(b) of the Bankruptcy Code (the "LPI Adequate Protection Claim"), immediately junior in right of payment to the Superpriority Claims and the Existing Adequate Protection Claims, provided, that the holder of such LPI Adequate Protection Claims shall not have any authority to interfere with the rights of DIP Lender and Pipeline Investors in respect of the DIP Collateral and the Pipeline Prepetition Collateral; provided further, that the LPI Prepetition Secured Lender shall not have a right to payment with respect to the LPI Adequate Protection Claim unless and until the DIP Obligations and the allowed amount of the Prepetition Pipeline Obligations have been paid in full. The LPI Adequate Protection Claim shall also be junior to any superpriority claim granted to Magellan Pipeline Company, L.P. pursuant to the Magellan Motion. Further, nothing in this Final Order shall preclude the ability of the Debtors to seek to grant additional superpriority claims against LPP with the consent of the DIP Lender and Pipeline Investors; provided that the Debtors shall also reasonably consult with the LPI Prepetition Secured Lender in connection with seeking to grant any further additional superpriority claims against LPP. For the avoidance of doubt, nothing in this Final Order waives any right of the LPI Prepetition Secured Lender to request at any time that the Court provide additional or further adequate protection (and other parties interest shall have the right to contest).

29. Texas Tax Authorities. Notwithstanding any other provisions included in the Interim Order or this Final Order, or any other agreements approved hereby, to the extent that the Local Texas Tax Authorities (as defined in the Objection of Local Texas Tax Authorities to the Emergency Motion of the Debtors for Entry of Interim and Final Orders (a) Authorizing the Debtors to Obtain Postpetition Financing dated April 29, 2009 [Docket 1099]), and the County of Bastrop, Texas, County of Crockett, County of Hays, Central Appraisal District of Taylor

County and the City of Waco/Waco Independent School District (collectively, along with the Local Texas Tax Authorities, the "Texas Tax Authorities") have properly perfected statutory liens in collateral of the DIP Financing Debtors pursuant to Texas state law, the Texas Tax Authorities' liens shall not, pursuant to this Order, be primed by nor made subordinate to any liens granted to any party hereby. Furthermore, nothing herein shall limit or bar or be deemed a waiver of the rights of the Texas Tax Authorities to assert to their entitlement to distribution of the proceeds from the sale of any property securing their claims (or the right of any party in interest to contest such assertion), or from objecting to any aspect of any credit bid on any property securing their claims.

30. Priority of Terms. To the extent of any conflict between or among (a) the express terms or provisions of any of the Prepetition Pipeline Loan Documents, the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Documents, the terms and provisions of this Final Order shall govern.

31. No Third Party Beneficiary. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

32. Survival. Except as otherwise provided herein, unless and until all DIP Obligations and Prepetition Pipeline Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents and the Prepetition Pipeline Loan Documents are terminated in accordance therewith, (a) the protections afforded to the DIP Lender and Pipeline Investors under this Final Order, and any actions taken pursuant

thereto, shall survive the entry of an order (i) confirming a plan of reorganization, (ii) dismissing any of these cases or (iii) converting any of these cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the Superpriority Claims, and the Existing Adequate Protection Claim shall continue in the Chapter 11 Cases, in any such successor case or after any such dismissal. Except as otherwise provided herein, the DIP Liens and the Replacement Liens shall maintain their validity and priority as provided by this Final Order, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness, except with respect to any additional financing to be provided by the DIP Lender in accordance with this Final Order, or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, by any act or omission until the all DIP Obligations and Prepetition Pipeline Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments thereunder are terminated in accordance with the DIP Loan Documents, the Prepetition Pipeline Loan Documents and this Final Order.

33. Limitation on Charging Expenses Against DIP Collateral and Pipeline Prepetition Collateral. In consideration of the financial accommodations provided by the DIP Lender hereunder and Pipeline Investors consent to the DIP Loans, no expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Pipeline Prepetition Collateral under section 506(c) of the Bankruptcy Code or any similar principle of law, or otherwise, without the prior written consent of Pipeline Investors and DIP Lender, and no such consent shall be implied from any action, inaction, acquiescence or otherwise; provided that, as provided in prior orders of the

Court entered in connection with the retention of Aegis Energy Advisors Corp. and Blackstone Advisory Services L.P., the Debtors reserves the right to seek, and Pipeline Investors shall have the right to contest, the payment of a portion of any transaction fee payable to Aegis or Blackstone from the Pipeline Prepetition Collateral.

34. Reservation Regarding Afco. Notwithstanding anything contained in this Order or the DIP Loan Documents to the contrary, the lien and security interest of AFCO Credit Corporation, an insurance premium finance company ("Afco"), in the collateral described in each of the Commercial Premium Finance Agreement—Promissory Notes that the Debtors have with Afco (the "Afco Collateral") shall not be primed pursuant to section 364(d)(1) of the Bankruptcy Code or otherwise and the DIP Lender is not granted pursuant to this Order a Priming Lien on the Afco Collateral and the Afco Collateral is not included within the definition of the Priming Collateral.

35. Reservation of Rights in Respect of Big West. The entry of this Final Order is without prejudice to the rights of any party having an interest in the estates of Big West Oil, LLC, Big West of California, LLC or Big West Transportation, LLC to assert that any property held by Longhorn Pipeline Partners or Longhorn Pipeline Holdings, LLC (together, "Longhorn") is not property of the estates of Longhorn pursuant to Section 541(d) of the Bankruptcy Code, or the rights of any party to challenge such assertion.

36. Adequate Notice/Objections. The notice given by the Debtors of the Final Hearing and the relief set forth herein was given in accordance with Bankruptcy Rules 2002 and 4001(b)(3) and (c)(3), and the Local Bankruptcy Rules, and was adequate and sufficient, and no other or further notice shall be required. Under the circumstances, no further notice of the request of the Final Hearing and the relief set forth herein is required. The Debtors shall

promptly mail copies of this Final Order to the Notice Parties, any known party effected by the terms of the Final Order, and any other party requesting notice after the entry of this Final Order. The DIP Financing Debtors shall not be required to mail copies of the DIP Loan Documents to such persons or entities but shall provide instructions on how to obtain a copy of the DIP Loan Documents from the Court's docket or how to request a paper copy of the DIP Loan Documents from counsel to the Debtors.

37. Entry of Order; Effect. This Final Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Final Order on the Court's docket in these cases. This Amended Order amends and supersedes the previous order [Docket No. 1158] entered by this Court.

38. Binding Effect of Order. The terms of this Final Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated: Wilmington, Delaware
May 11, 2009

Mary F. Walrath
MARY F. WALRATH
UNITED STATES BANKRUPTCY JUDGE