# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| Debtors. | ) | Joint Administration Requested |
| | ) | **Ref. Docket Nos.: 187, 292, 322, 449** |

**ORDER ON MOTION OF LONGHORN PIPELINE INVESTORS, LLC FOR ADEQUATE PROTECTION PURSUANT TO SECTIONS 105(A), 361, 362(C)(2) AND 363(E) OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion")[2] of Longhorn Pipeline Investors, LLC ("Longhorn Investors") for entry of an order (this "Order") granting adequate protection to Longhorn Investors pursuant to sections 105(a), 361, 363(c)(2) and 363(e) of title 11 of the United States Code (the "Bankruptcy Code"); and it appearing that the relief requested is in the best interests of Longhorn's estate and the Debtors' estates, their creditors and other parties in interest; and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2); and due and proper notice of this Motion having been provided; and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED:

1 The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Longhorn Partners Pipeline, L.P. (0554); Big West Oil, LLC (6982); Big West of California, LLC (1608); Longhorn Pipeline Inc. (0654); Big West Transportation, LLC (1056); Longhorn Pipeline Holdings, LLC (0226). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

2 All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

1. The Motion is granted.

2. The Debtors are entitled to use Longhorn Investors' collateral in accordance with the terms set forth in the term sheet attached hereto as **Exhibit 1** (the "Longhorn Investors Term Sheet") through and until September 1, 2009 (the "Collateral Period"), without prejudice to the Debtors' right to seek to continue or modify the terms of the Longhorn Investors Term Sheet or Longhorn Investors' right to object thereto..

3. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062 or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

5. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: February 18, 2009
Wilmington, Delaware

Mary F. Walrath
United States Bankruptcy Judge



K&E 14254550.1

# EXHIBIT 1

## Longhorn Investors Term Sheet

**Outline for Terms and Conditions for**
**<u>Adequate Protection</u>**

| | |
|---|---|
| Debtors: | Longhorn Partners Pipeline, L.P. and Longhorn Pipeline Holdings, LLC (the "Longhorn Debtors" and together with Longhorn Pipeline, Inc. and Flying J, Inc., the "Debtors"), each as debtors in possession in cases under chapter 11 of the Bankruptcy Code. |
| Secured Party: | Longhorn Pipeline Investors, LLC ("Longhorn Investors") under that certain Non-Recourse Promissory Note by and between Longhorn Pipeline Holdings, LLC, as borrower, and Longhorn Investors, as lender, dated as of August 17, 2006 (the "Pipeline Note"), that certain Deed of Trust, Mortgage, Assignment, Fixture Filing and Financing Statement (the "Mortgage") and that certain Security Agreement (collectively, together with related collateral agreements and filings, the "Pipeline Collateral Documents," and together with the Pipeline Note, the "Pipeline Loan Documents"). |
| Use of Collateral: | The Debtors may use the Longhorn Investors' collateral under the Pipeline Loan Documents and section 552(b) of the Bankruptcy Code (including any cash collateral, the "Pipeline Collateral") for the period commencing as of the date hereof through the earlier of September 1, 2009 or such other date a superseding agreement is reached (as may be extended by written consent of the parties, the "Collateral Period"). |
| Termination of Authority for Use of Collateral: | Notwithstanding anything contained herein, the authority for use of the Pipeline Collateral under these terms and conditions shall terminate at the close of the close of business on September 1, 2009, without prejudice to the Debtors' right to seek to continue or modify the terms hereof or Longhorn Investors' right to object thereto. A six week budget ("Budget") to be agreed upon by the parties shall be attached to this term sheet, which Budget shall be updated for successive six week periods as provided herein.<br><br>An updated Budget for each successive six week period (or such longer time period as to which the parties may agree) shall be provided to the advisors for the Longhorn Investors not less than two weeks prior to the end of the period covered by the then effective Budget. If the Longhorn Investors object to such updated Budget, it shall serve a written objection to such updated Budget to the Debtors within five business days after receipt of such updated Budget, with the use of Pipeline Collateral permitted beyond the period of the then effective Budget only upon consensual resolution of the objection by the parties in question or further order of the Court after notice and a hearing. If no such written objection is served within such time, the updated Budget shall become effective for |

| | |
|---|---|
| | the period specified therin. |
| Adequate Protection for Collateral: | As adequate protection for the interests of Longhorn Investors in the Pipeline Collateral, on account of the Debtors' use of the Pipeline Collateral from the Petition Date through the end of the Collateral Period, to the extent of any diminution in the value of the Pipeline Collateral from the Petition Date and other diminution resulting from (a) the use, sale, lease, disposition, decline in market value, consumption (or other decline in value) and/or (b) the imposition of the automatic stay, the Longhorn Debtors shall grant to Longhorn Investors senior additional and replacement liens existing from and after the Petition Date on, and security interests in, all the Pipeline Collateral and any and all unencumbered assets of the Longhorn Debtors and a lien on any property of the Longhorn Debtors (including, without limitation, any equity interests of the Longhorn Debtors in any subsidiary of the Longhorn Debtors) including property that is subject to one or more valid perfected priority prepetition lien(s), and a junior lien in any property of the Longhorn Debtors that has a prior senior perfected prepetition lien on it, but in the case of any such junior lien, subordinate to and without any authority to interfere with the senior perfected lienholders' rights, and provided that no such additional liens shall affect the liens of Cadre Services Inc. and Cadre Services Inc. shall have a replacement lien on revenues generated postpetition to the same extent, validity and priority of any prepetition lien it may have had on revenues generated from its collateral prepetition, provided further that such additional liens shall exclude the Longhorn Debtors' interest in any avoidance actions brought by or on behalf of the Longhorn Debtors' estates under sections 510, 544, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code (the "Replacement Liens"). The Replacement Liens shall (a) be supplemental and in addition to the existing liens and security interests of Longhorn Investors, (b) be deemed valid and perfected without the need for any action by Longhorn Investors and (c) continue in full force and effect until the allowed secured claim of Longhorn Investors is paid in full.<br><br>In addition, Longhorn Investors shall be granted by each of the Longhorn Debtors a superpriority administrative claim pursuant to section 507(b) of the Bankruptcy Code in the amount, if any, by which the Replacement Liens are insufficient to adequately protect Longhorn Investors from any diminution in value of the Pipeline Collateral from the Petition Date to the end of the Collateral Period. The superpriority administrative claims (i) shall have priority over any other claims including claims made pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, and (ii) shall at all times be senior to the rights of the Debtors and any trustee in the chapter 11 cases or any subsequent cases or proceedings.<br><br>In addition to, and irrespective of diminution in value of Longhorn |

| | |
|---|---|
| | Investor's liens on the Pipeline Collateral, and without further order of, or application to, the Court, the Longhorn Debtors shall pay adequate protection payments in an amount equal to all interest (at the non-default rate provided in the Pipeline Loan Documents) accruing on the Pipeline Note from the period beginning January 9, 2009 through the close of business on the last day of the Collateral Period on each scheduled due date for payment of interest under the Pipeline Loan Documents, provided that interest for the period beginning February 18, 2009 through the close of business on the last day of the Collateral Period shall be paid only by the Longhorn Debtors from the revenues generated in respect of the Pipeline Collateral or otherwise by the Longhorn Debtors and to the extent that such payment does not impair the Longhorn Debtors' ability, as reasonably determined, to meet their then projected cash operating requirements. Any increment of interest for the period beginning February 18, 2009 that is not paid on a scheduled interest payment date shall continue to accrue at the default rate until paid in full. For the Collateral Period, such payments shall be based on the principal amount of $162.45 million (the "Debtors' Asserted Amount"), which the Debtors assert, but Longhorn Investors disagrees, is the principal amount owing under the Pipeline Note. In the event that the outstanding principal balance due and owing under the Pipeline Note is determined by court order or agreement of the parties to exceed $162.45 million, the Debtors agree that interest shall accrue at the applicable default rate under the Pipeline Note on the difference between the determined amount outstanding under the Pipeline Note and the Debtors' Asserted Amount, for the period from January 9, 2009 through the end of the Collateral Period. The Longhorn Debtors will further pay reasonable fees and expenses incurred by Longhorn Investors from the Petition Date through the end of the Collateral Period. The Longhorn Debtors will not pay any attorneys fees until at least five business days after any such invoice has been disclosed to counsel for the creditors' committee to permit any objection to such fees by the creditors' committee to be filed with this Court. Nothing herein shall constitute a waiver of Longhorn Investors' right to assert claims for interest during periods outside the period January 9, 2009 through the end of the Collateral Period. The application of any payments pursuant to this section shall be subject to challenge by the creditors' committee. |
| Acknowledgements: | The Longhorn Debtors, to the best of their knowledge, acknowledge that Longhorn Investors has valid, binding, enforceable and perfected first priority liens in the Pipeline Collateral and such liens shall not be subject to avoidance, reduction, subordination, defense, disallowance or impairment or any other challenge under the Bankruptcy Code or any applicable non-bankruptcy law or regulation by any person or entity. Subject to the Committee Investigation Period (described below), the Debtors also agree that they will not take any steps to investigate or |

| | |
|---|---|
| | challenge any such liens or security interests, provided that the Debtors may cooperate with the creditors' committee in any investigation by such committee.<br><br>The Longhorn Debtors admit and acknowledge that as of the Petition Date, (A) the secured claim of Longhorn Investors under the Pipeline Note is equal to no less than $162.45 million (plus accrued and unpaid interest, fees, costs and expenses), (B) all of Longhorn Investors' secured claim is unconditionally owing by the Longhorn Debtors to Longhorn Investors, and (C) all claims in respect of Longhorn Investors' secured claim shall not be subject to any avoidance, reductions, setoff, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or other applicable law.<br><br>Subject to the acknowledgements set forth herein, the Debtors and Longhorn Investors reserve their respective rights regarding the principal amount due and owing under the Pipeline Note, and no party waives any defenses, claims or counterclaims they may hold in respect thereof. During the Collateral Period, the parties will have good faith discussions regarding the asserted amount (including the details of components of any alleged reduction) with respect to the disputed principal amount of the Pipeline Note.<br><br>The Longhorn Debtors admit and acknowledge that the aggregate market value of the Pipeline Collateral exceeds the amount of Longhorn Investors' claim. The Committee Investigation Period shall not apply to the creditors' committee's right to challenge the acknowledgments contained in the prior sentence or any acknowledgement as to the value of the Pipeline Collateral contained herein, which right is not affected by this Order and for which this Order imposes no time limit for asserting a challenge or opposition to such acknowledgement.<br><br>The Debtors shall agree not to use the Pipeline Collateral except in the ordinary course of business and shall not sell or dispose of the Pipeline Collateral without further order of the Court.<br><br>The Longhorn Debtors shall admit and acknowledge that the aggregate intercompany indebtedness owed to Flying J by any of the Debtors is currently $[109 million] (provided that Longhorn Investors acknowledges that such amount is unaudited) and that all such debt, whether now existing or hereinafter created, shall be junior and subordinate in all respects to amounts owing under the Pipeline Note to the extent provided for in the Pipeline Loan Documents or otherwise by applicable law. |

| | |
|---|---|
| Committee Investigation Period: | Notwithstanding the acknowledgements of the Debtors and the Longhorn Debtors, until 90 days after the formation of the creditors' committee in the chapter 11 cases, subject to the right of the creditors' committee, but no other party, to seek an order extending such period for good cause shown, the creditors' committee shall be entitled to investigate the validity, perfection, enforceability and extent of the Longhorn Investors' existing liens and claims, *provided however* that the Pipeline Collateral shall not be used to fund the costs and/or expenses of any challenge, objection or adversary proceeding arising from such investigation. The creditors' committee is hereby granted standing by this Order to challenge the matters contemplated by this paragraph. |
| Access to Records: | Upon reasonable notice, at reasonable times during normal business hours and subject to acceptable confidentiality arrangements, the Debtors shall permit representatives, agents and employees of Longhorn Investors to have access in the ordinary course to visit and inspect their properties, to examine their books and records and to discuss their affairs, finances and condition with their officers and financial advisors and shall cooperate, consult with and provide to such persons all such non-privileged information as it may reasonably request and is reasonably available. |
| Pipeline Loan Documents: | Except as expressly provided herein, the Longhorn Debtors shall otherwise comply with all of their obligations, as applicable, under the Pipeline Loan Documents. |
| Reservation of Rights: | Except as provided herein, Longhorn Investors shall not be precluded from seeking (and the Debtors shall not be precluded from objecting to) any further relief in the cases at a future time, including seeking relief from the stay or further adequate protection. |

# LONGHORN PIPELINE INC. AND SUBSIDIARIES
## Six Week Budget

*($ in 000's)*

| Week Ending | Week 1 2/27/09 | Week 2 3/6/09 | Week 3 3/13/09 | Week 4 3/20/09 | Week 5 3/27/09 | Week 6 4/3/09 | Total |
|---|---|---|---|---|---|---|---|
| Total Cash Receipts | $ 822 | $ 2,642 | $ 1,484 | $ 1,292 | $ 320 | $ 320 | $ 6,880 |
| Cash Disbursements | | | | | | | |
| Fuel Purchases | - | - | - | - | - | - | - |
| Other Operating Disbursements (1) | 849 | 528 | 420 | 812 | 579 | 1,095 | 4,282 |
| Non-Operating Disbursements (2) | 272 | 8 | 38 | 271 | 252 | 39 | 880 |
| Total Cash Disbursements | 1,121 | 536 | 458 | 1,083 | 831 | 1,134 | 5,162 |
| Net Receipts / (Disbursements) | $ (299) | $ 2,106 | $ 1,027 | $ 209 | $ (511) | $ (814) | $ 1,718 |

(1) Includes payroll, utilities, repairs and maintenance, capex, taxes, other operating expenses.
(2) Includes professional fees, adequate protection payments, and pipeline replacement costs.