UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FLYING J, INC., *et al.*,[1] | Case No. 08-13384<br>Jointly Administered |
| Debtors. | |
| | **Related Docket No. 1399** |
| | **Sale Objection Deadline: July 20, 2009 @ 4:00 p.m.**<br>**Sale Hearing Date: July 27, 2009 @ 10:30 a.m.** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS REGARDING DEBTORS' MOTION FOR ENTRY OF (A) ORDER APPROVING BIDDING AND NOTICE PROCEDURES AND BREAK-UP FEE IN CONNECTION WITH SALE OF (I) SUBSTANTIALLY ALL ASSETS OF LONGHORN PARTNERS PIPELINE, L.P. AND (II) PETROLEUM PRODUCTS BELONGING TO CERTAIN DEBTORS, AND (B) AN ORDER (I) APPROVING PURCHASE AGREEMENTS BETWEEN DEBTORS AND SUCCESSFUL BIDDER; (II) AUTHORIZING SALE OF ALL OR SUBSTANTIALLY ALL OF LONGHORN PARTNERS PIPELINE, L.P.'S ASSETS AND PETROLEUM PRODUCTS BELONGING TO CERTAIN DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH; AND (IV) GRANTING RELATED RELIEF**

Merrill Lynch Capital Corporation in its capacity as the Administrative Agent for the LPI Lenders (as defined below) (the "Administrative Agent") under that certain Revolving Credit Agreement, dated as of December 19, 2007 (as amended, restated or supplemented, the "Prepetition Credit Agreement"), among Longhorn Pipeline, Inc., as Borrower ("LPI"), the

---

1 The debtors and debtors in possession in these cases (the "Debtors"), along with the last four digits of each of the Debtors' federal tax identification numbers are: Flying J, Inc. (3458); Longhorn Partners Pipeline, L.P. (0554); Big West Oil, LLC (6982); Big West of California, LLC (1608); Longhorn Pipeline Inc. (0654); Big West Transportation, LLC (1056); Longhorn Pipeline Holdings, LLC (0226). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

Administrative Agent, and the lenders party thereto from time to time, including Merrill Lynch Bank USA (the "LPI Lenders," and together with the Administrative Agent, the "LPI Prepetition Secured Parties"), and Merrill Lynch Commodities, Inc., in its capacity as Lender (the "DIP Lender," and collectively with the LPI Prepetition Secured Parties, "Merrill Lynch") under that certain Debtor-in-Possession Revolving Credit, Security and Guarantee Agreement, dated as of March 13, 2009 (as amended, the "DIP Credit Agreement"), among Flying J, Inc., as Borrower ("FJI"), LPI, as Guarantor ("LPI," and together with FJI, the "DIP Financing Debtors"), and the DIP Lender, hereby submit this limited objection and reservation of rights (the "Limited Objection") to the Debtors' motion, dated June 19, 2009 (Docket No. 1399) (the "Motion"), for, among other things, entry of an order (the "Sale Order") (i) approving the Purchase Agreements[2] for the sale of (a) substantially all of the assets of Longhorn Partners Pipeline, L.P. ("LPP") and (b) petroleum products belonging to, among other Debtors, LPI (the "Main Line Fill"[3] and the "Spur Line Fill," collectively, the "Line Fill") to Magellan Midstream Partners, L.P. or its designated affiliate or affiliates or the Successful Bidder to be identified pursuant to the Bidding Procedures, and (ii) authorizing the sale of substantially all of LPP's assets and the Line Fill (the "Sale") free and clear of all liens, claims, encumbrances and other interests (the "Encumbrances"), and in support of its Limited Objection, respectfully states as follows:

---

2 Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Final DIP Order (defined herein).

3 The Motion indicated that "[t]he Line Fill is comprised of approximately 1.23 million barrels of refined petroleum product. The Main Line Fill, owned by Longhorn Pipeline, Inc., is located in the Pipeline System (as defined in the Purchase Agreement) . . . , in [LPP] storage tanks in Crane, Texas and at [LPP's] El Paso terminal." Motion at 2 n.2. The Main Line Fill is part of Merrill Lynch's Prepetition Collateral (i.e., Line Fill and Excess Line Fill) as more specifically described and defined in the Final DIP Order and the Prepetition Credit Agreement.

## BACKGROUND

1. **Petition Date**. On December 22, 2008, the Debtors filed voluntary petitions with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"). The Debtors continue to manage and operate their businesses and property as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases. On January 5, 2009, the Office of the United States Trustee appointed the official committee of unsecured creditors (the "Creditors' Committee").

2. **Merrill Lynch's Final DIP Order**. On March 9, 2009, the Bankruptcy Court entered the Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors to (A) Obtain Post-Petition Financing and (B) Utilize Cash Collateral, and (II) Granting Adequate Protection to Prepetition Secured Parties (Docket No. 733) (as amended, the "Final DIP Order," attached hereto as Exhibit A).

3. **DIP Term Sheet**. The Bankruptcy Court, pursuant to the Final DIP Order, incorporated by reference and deemed binding and enforceable all terms and conditions of the DIP Loan Documents and that certain debtor-in-possession senior secured revolving credit facility term sheet (Docket No. 619) (as amended, the "DIP Term Sheet"). See Final DIP Order ¶ 27.

4. **First Amendment**. On May 7, 2009, the Bankruptcy Court authorized an amendment to the Final DIP Order through entry of the Final Order Authorizing the LPI DIP Debtors to (A) Enter Into a First Amendment to the Postpetition Financing Provided by Merrill

Lynch and (B) Schedule a Final Hearing (Docket No. 1156).

5. **Motion and Sale Order**. On June 19, 2009, the Debtors filed the Motion seeking, among other relief, approval of the Sale and entry of the Sale Order. The Motion provides that pursuant to section 363(f) of the Bankruptcy Code, the Sale will occur free and clear of all Encumbrances, with such Encumbrances attaching to the net proceeds of the Sale (although the proposed Sale Order is less clear). See Motion ¶¶ 14, 57, 60. The Debtors' Sale Order provides that they "are authorized, but not required, to use the proceeds of the Sale to pay the Secured Lenders," which includes Merrill Lynch. Sale Order ¶ 43.

6. **Bidding Procedures Order**. On July 6, 2009, the Bankruptcy Court entered an order approving, among other things, the establishment of Bidding Procedures in connection with the Auction and Sale (Docket No. 1460).

## LIMITED OBJECTION

7. Counsel for Merrill Lynch has engaged in multiple discussions with counsel for the Debtors regarding Merrill Lynch's repayment rights from the proceeds of the Line Fill. Debtors' counsel has stated that they expect that the proceeds from the Sale of the Main Line Fill will be used to repay any and all Prepetition Obligations of LPI under the Prepetition Credit Agreement in full, in cash. As mentioned above, however, the current proposed Sale Order does not clearly mandate such an outcome, and instead provides that the Debtors are authorized but not required to make such payments. Although Merrill Lynch is hopeful that this issue can be resolved consensually by the parties prior to the Sale Hearing, Merrill Lynch files this Limited Objection to object to the Sale (i) to the extent that the Sale Order does not provide for immediate payment upon closing of all Prepetition Obligations (this term includes, without limitation, all amounts accruing after the petition date) in full, in cash

from the proceeds of the Sale and (ii) in order to expressly reserve any and all of its rights under the Final DIP Order.

**Merrill Lynch is Entitled to Immediate Payment from Sale Proceeds[4]**

8. The case law is clear that secured creditors should be paid immediately from the proceeds of the sale of their collateral. See, e.g., In re Indus. Office Bldg. Corp., 171 F.2d 890, 892-93 (3d Cir. 1949) (Bankruptcy Act did not preclude "giving creditors the benefit of their contract rights to the extent that this may be accomplished consistently with the preservation of the going concern value of the real estate when reorganization is contemplated"); In re San Jacinto Glass Indus., Inc., 93 B.R. 934, 942-43 (Bankr. S.D. Tex. 1988) (finding no reason to delay secured creditor's receipt of proceeds of sale of asset in which it has undisputed priority claim and noting that disbursement of funds to secured creditor would not "materially dictate terms of debtor's reorganization nor otherwise endanger creditor protections); see also In re Kellstrom Indus., Inc., 282 B.R. 787, 794 (Bankr. D. Del. 2002) (while approving debtor's sale of certain goods free and clear of a secured creditor's reclamation rights under 11 U.S.C. § 363(f)(5), the court conditioned such approval on adequate protection to the secured creditor in the form of payment in full in cash); In re Whittemore, 37 B.R. 93 (Bankr. D. Or. 1984) (proceeds of sale could not be used to pay off second priority secured position before paying first priority position in full).

9. Delaware courts have enforced secured lenders' rights to immediate

---

4 The Creditors' Committee's investigation under the Final DIP Order regarding the Prepetition Credit Agreement does not affect Merrill Lynch's right to immediate payment in full, in cash of all Prepetition Obligations. Issues arising in connection with such investigation, if any, may be severed or otherwise maintained notwithstanding such payment. The Creditors' Committee's investigation period (as previously extended) expires on August 3, 2009.

payment from the sale of their collateral in connection with orders approving asset sales under section 363 of the Bankruptcy Code. See, e.g., In re Avado Brands, Inc., No. 07-11276 (MFW), 2007 WL 4994670, ¶ 5 (Bankr. D. Del. Dec. 10, 2007) (order approving 363 sale and directing, upon closing of sale, immediate payment according to terms of prior order approving debtor-in-possession financing); In re Decora Indus., Inc., No. 00-4459 (JJF), 2002 WL 32332377, at *7, ¶ 9 (Bankr. D. Del. May 17, 2002) (order approving 363 sale and directing immediate repayment of debtor-in-possession financing obligations upon closing).

10. In the instant matter, Merrill Lynch's right to immediate payment from the proceeds of its Prepetition Collateral (i.e., the Main Line Fill) is supported not just by relevant case law but also by the terms of the Final DIP Order. Specifically, paragraph five (5) of the Final DIP Order states that if on any day the aggregate of Linefill Inventory and Excess Linefill:

> is reduced by sales to a ***third party*** (including FJI), LPI will be required to ***immediately prepay*** the Loans in an aggregate principal amount equal to the Market Value (as defined in the Prepetition Credit Agreement) of such reduction.

Final DIP Order ¶ 5 (emphasis added). Accordingly, it is clear that proceeds from the Sale of the Main Line Fill must be used to immediately prepay the Prepetition Obligations in full, in cash.

11. Additionally, paragraph 22 of the Final DIP Order provides that in the event any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the Postpetition Liens, the Replacement Liens or the Prepetition Secured Lender Liens in such DIP Collateral or Prepetition Collateral:

> ***receives*** or is paid the proceeds of such DIP Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, ***prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Loan Documents and all Prepetition Obligations under the Prepetition Loan Documents***, and termination of the commitments in accordance with the DIP Loan Documents and the Prepetition Loan Documents, such junior or subordinate lienholder

> shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Prepetition Collateral in trust for the DIP Lender and the LPI Prepetition Secured Lender and ***shall immediately turnover such proceeds*** for application (a) to the DIP Obligations under the DIP Loan Documents in accordance with the DIP Loan Documents and this Final Order and (b) to the Prepetition Obligations under the Prepetition Loan Documents and this Final Order.

Final DIP Order ¶ 22 (emphasis added). To the extent the Debtors are lienholders or have a security interest, this provision applies equally to the Debtors (and should apply by analogy to the extent they hold proceeds of the DIP Collateral or Prepetition Collateral) and is further evidence of the requirement that proceeds of the Line Fill must be used to pay down such obligations.

12. The Final DIP Order also provides that the Debtors must enter into an Appropriate Sale Agreement or otherwise trigger a default under such order. Specifically, the DIP Term Sheet (a referenced exhibit in the Final DIP Order and incorporated as if fully set forth therein) indicates that any sale agreements regarding the Main Line Fill must provide for full payment of Merrill Lynch's claims. See DIP Term Sheet at 6-7 ("An Appropriate Sale Agreement shall be a final agreement for the sale of the Pipeline not subject to any financing condition, and (1) ***providing for a purchase price in cash sufficient to pay, in cash, and that shall be used to pay all of the LPI Pre-Petition Secured Lender's claims***, or (2) assume liability for payment of such claims (in which case the buyer shall be at least rated investment grade, have total assets over $5 billion, or revenues over $3 billion or otherwise satisfactory to ML)" (emphasis added)). Upon information and belief, the agreement for the Sale of the Main Line Fill provides for a cash price sufficient to pay, in cash, the LPI Prepetition Secured Lender's claims and accordingly the Sale Order should be modified to provide for such relief.

13. Finally, the Final DIP Order is very clear that Cash Collateral (i.e., the

proceeds from the Sale of the Main Line Fill) can only be used for very limited purposes. Specifically, LPI is authorized to use Cash Collateral in which Merrill Lynch has an interest solely to (x) "purchase new Linefill Inventory in accordance with the DIP Term Sheet," (y) "pay its ordinary business expenses (which may include payments to affiliates on account of such expenses but may not include loans to or investments in affiliates)," and (z) "to the extent provided under Repayment of Loans ..., to repay outstanding Loans; and to the extent that any Cash Collateral is not used to purchase new Linefill Inventory, pay such ordinary business expenses or to repay Loans, such Cash Collateral shall be retained in the Collateral Account... ." Final DIP Order ¶¶ 4, E. After completion of the Sale, LPI will no longer have an ability to purchase Linefill Inventory because the related LPP pipeline will have been sold to Magellan, and there will be no further (or extremely limited) ordinary course business expenses because the only current business is purchasing Linefill Inventory. Consequently, the only authorized use for the proceeds from the Sale (i.e., the Cash Collateral) is for the Debtors to repay the Prepetition Obligations in full, in cash.

14. Indeed, each day that the Debtors delay repaying the Prepetition Obligations increases the costs required for payment in full, in cash of all of the Prepetition Obligations. Included, without limitation, among such costs, are the accrual of interest, expenses and fees on and in connection with the outstanding Prepetition Obligations, and the expenses for Merrill Lynch's continued involvement in these cases and the measures taken to protect Merrill Lynch's rights and secure repayment (such expenses on an aggregate month-to-month basis are not less than $125,000). The Debtors can easily avoid this detriment to the estates by satisfying the Prepetition Obligations simultaneously with the closing of the Sale. See, e.g., Law Debenture Trust Co. v. Calpine Corp. (In re Calpine Corp.), 356 B.R. 585, 597 (S.D.N.Y. 2007)

(upholding order authorizing Debtors to prepay First Priority Senior Secured Notes over objections of indenture trustee on the principal ground that "repayment of the outstanding principal of the Notes stopped the unnecessary loss of funds from Debtors' estates"); United States ex rel. Rural Electrification Admin. v. Wabash Valley Power Ass'n (In re Wabash Valley Power Ass'n), 167 B.R. 885, 889 (S.D. Ind. 1994) (finding that bankruptcy court directly determined that substitution of secured debt under section 363 would benefit debtor by lowering its debt service obligations).

15. In view of the foregoing, Merrill Lynch is entitled to immediate payment of the Prepetition Obligations following the closing of the Sale and the advance of the purchase price to the Debtors.[5] As such, the Sale Order should be modified to provide for the immediate payment in full, in cash of all Prepetition Obligations in connection with the closing of the Sale.

## RESERVATION OF RIGHTS[6]

16. Merrill Lynch has also filed this Limited Objection in order to reserve any and all of its rights under the Final DIP Order, including, without limitation, (a) under paragraph 4, regarding its rights with respect to Cash Collateral and deemed automatic lifting of the stay, (b) under paragraph 22, with respect to Collateral Rights and immediate turnover of unauthorized payments, (c) under paragraph 5, with respect to Repayment of Loans and immediate

---

5 To the extent there are remaining proceeds after satisfaction in full of the Prepetition Obligations, Merrill Lynch is also entitled to immediate payment of the DIP Obligations (to the extent unpaid at such time). Such right flows from the provisions of the Final DIP Order granting the DIP Lender a valid, binding, continuing, enforceable and fully-perfected junior security interest and lien, under section 364(c)(3) of the Bankruptcy Code, upon all Prepetition Collateral (which is inclusive of the Main Line Fill). See Final DIP Order ¶ 9(a)(ii).

6 Merrill Lynch also reserves its rights to amend or supplement this Limited Objection between now and the Sale Hearing and reserves its rights to be heard on any other issue arising at the Sale Hearing.

prepayment of Loans, (d) under paragraph 12, with respect to the Application of Collateral Proceeds and the right to receive proceeds of the DIP Collateral (as defined to include Prepetition Collateral) and (e) the rights incorporated therein with respect to the DIP Term Sheet. See Final DIP Order ¶¶ 4, 5, 12, 22, 27.

WHEREFORE, for the foregoing reasons, Merrill Lynch respectfully requests that the Court (i) sustain the Limited Objection; (ii) deny entry of the Sale Order or otherwise modify the Sale Order in accordance with the above requests regarding distribution of the Sale proceeds; and (iii) grant Merrill Lynch such other relief as is just and proper.

Dated: July 20, 2009
Wilmington, Delaware

**MORRIS NICHOLS ARSHT & TUNNELL LLP**

Robert J. Dehney (#3578)
Gregory W. Werkheiser (#3553)
1201 N. Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: rdehney@mnat.com
gwerkheiser@mnat.com

**- and -**

**MILBANK, TWEED, HADLEY & McCLOY LLP**
Dennis F. Dunne (admitted *pro hac vice*)
Michael E. Comerford (admitted *pro hac vice*)
1 Chase Manhattan Plaza
New York, New York 10005-1413
(212) 530-5000 (Telephone)
(212) 530-5219 (Facsimile)
E-mail: ddunne@milbank.com
mcomerford@milbank.com

Counsel for Merrill Lynch Capital Corporation, as Administrative Agent for the LPI Lenders, and Merrill Lynch Commodities, Inc., as DIP Lender