# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |
|  | ) | **Ref. Docket No.: 1493** |
|  | ) |  |

## NOTICE OF FILING OF PROPOSED FINAL ORDER UNDER 11 U.S.C. §§ 105, 362, 363 AND 364 AND FED. R. BANKR. P.2002, 4001 AND 9014 AUTHORIZING FLYING J INC. TO (A) OBTAIN POST-PETITION FINANCING, (B) GRANT LIENS AND SUPERPRIORITY CLAIMS AND (C) EXECUTE A LETTER OF INTENT RELATING TO THE TARGET ASSETS

On July 15, 2009, Flying J Inc. ("Flying J") and its affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively with Flying J, the "Debtors") filed the *Motion of the Debtors for Entry of a Final Order (A) Authorizing Flying J Inc. to Obtain Postpetition Financing, (B) Granting Liens and Superpriority Claims, and (C) Authorizing Flying J Inc. to Execute a Letter of Intent Relating to the Target Assets* [Docket No. 1493] (the "Motion"). The Motion indicated that the proposed final order approving the Motion would be filed prior to the hearing on the Motion, which is scheduled for July 30, 2009 at 3:00 p.m. (the "Hearing"). Attached hereto as Exhibit A is the proposed order (the "Final Order") granting the Motion, which the Debtors intend to present for approval at the Hearing.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226); Longhorn Pipeline Inc. (0654).  The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

PLEASE TAKE NOTICE that paragraph 8 of the Final Order provides that, as a condition of the DIP Facility[2] and any obligation of the DIP Lender to make the DIP Extensions of Credit thereunder, the DIP Borrower shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Lender, the DIP Liens or the DIP Collateral.

Dated: July 27, 2009
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Donald J. Bowman, Jr.*
Pauline K. Morgan (Bar No. 3650)
Edmon L. Morton (Bar No. 3865)
Donald J. Bowman, Jr. (Bar No. 4383)
Ryan M. Bartley (Bar No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:    (302) 571–6637
Facsimile:     (302) 576–3320

- and -

**KIRKLAND & ELLIS LLP**
David L. Eaton (admitted *pro hac vice*)
Adam C. Paul (admitted *pro hac vice*)
Jeffrey W. Gettleman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200

Counsel for the Debtors and Debtors in Possession

---

[2]     Capitalized terms used, but not defined, herein shall have the meanings ascribed to them in the Motion or the Final Order.

## EXHIBIT A

## Proposed Final Order

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------- x
   :
In re:   :   Chapter 11
   :
FLYING J INC., <u>et al.</u>,[1]   :   Case No. 08-13384 (MFW)
   :   Jointly Administered.
      Debtors.   :
   :
   :   **Ref. Docket No.: 1493**
   :
---------------------------------------------------- x

**FINAL ORDER UNDER 11 U.S.C. §§ 105, 362, 363 AND 364 AND FED. R. BANKR. P. 2002, 4001 AND 9014 AUTHORIZING FLYING J INC. TO (A) OBTAIN POST-PETITION FINANCING, (B) GRANT LIENS AND SUPERPRIORITY CLAIMS AND (C) EXECUTE A LETTER OF INTENT RELATING TO THE TARGET ASSETS**

Upon the Motion of the Debtors for Entry of a Final Order (A) Authorizing Flying J Inc. to Obtain Postpetition Financing, (B) Granting Liens and Superpriority Claims, and (C) Authorizing Flying J Inc. to Execute a Letter of Intent Relating to the Target Assets [Docket No. 1493] (the "<u>Motion</u>"), dated July 14, 2009, filed by Flying J Inc. ("<u>FJI</u>") and its affiliated debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively with FJI, the "<u>Debtors</u>"), the Debtors sought the following relief:

(a)      the Court's authorization, pursuant to sections 105(a), 362 and 364(c) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"), for FJI, as borrower (the "<u>DIP Borrower</u>"), to enter into a senior secured

---

[1]  The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification numbers are: Flying J, Inc. (3458); Longhorn Partners Pipeline, L.P. (0554); Big West Oil, LLC (6982); Big West of California, LLC (1608); Longhorn Pipeline Inc. (0654); Big West Transportation, LLC (1056); Longhorn Pipeline Holdings, LLC (0226). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

superpriority post-petition credit facility (the "<u>DIP Facility</u>") with certain of its non-debtor subsidiaries, as guarantors and pledgors (together with the DIP Borrower, the "<u>Loan Parties</u>"), and Pilot Travel Centers LLC, as lender (the "<u>DIP Lender</u>"), pursuant to the Senior Secured Super-Priority Debtor-in-Possession Revolving Credit Agreement attached hereto as Exhibit A (the "<u>DIP Credit Agreement</u>," and together with this Final Order (as defined below), and all other related documents, notes, instruments, credit agreements, security documents, deeds of trust, filings, guarantees, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, including the Approved Budget and any other Loan Documents, collectively, the "<u>DIP Loan Documents</u>"),[2] which is consistent with the terms set forth in the DIP Loan Financing Term Sheet attached as Exhibit A to the Motion, and to obtain extensions of credit thereunder on a senior secured and superpriority basis, in an aggregate principal amount not to exceed $100,000,000, consisting of (i) a $55,000,000 revolving line of credit facility (the "<u>Line of Credit</u>") and (ii) a $45,000,000 letter of credit and performance, surety or similar bond facility (the "<u>L/C Bond Facility</u>"), in each case at any time outstanding (the Loans, Letters of Credit and other financial accommodations and extensions of credit under the DIP Credit Agreement and the DIP Facility, the "<u>DIP Extensions of Credit</u>") to be utilized in accordance with the limitations on use of proceeds set forth herein and in the DIP Credit Agreement;

(b)     the Court's ordering, pursuant to section 364(c) of the Bankruptcy Code, that all of the DIP Obligations (as defined below) are:

(i)     granted pursuant to section 364(c)(1) of the Bankruptcy Code superpriority administrative expense claim status against the DIP Borrower, having priority over any and all administrative expenses of the kinds specified in or arising or

---

[2]     Terms used but not otherwise defined herein shall have the meaning given to them in the DIP Credit Agreement.

ordered under any section of the Bankruptcy Code including, without limitation, sections 105(a), 326, 328, 330, 331, 364(c)(1), 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, and which shall be *pari passu* in all instances with the Carve Out (as defined and on the terms set forth below);

(ii)     secured under section 364(c)(2) of the Bankruptcy Code by a valid, effective, fully perfected and non-avoidable, first priority lien on and security interest in the DIP Collateral (as defined below);

(c)     approval by the Court of the Letter of Intent, dated July 13, 2009 (the "Letter of Intent"), among FJI, Flying J Transportation LLC ("FJT") and the DIP Lender, in the form attached to the Motion, and attached hereto, as Exhibit B;

(d)     modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order;

(e)     the Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), a hearing on July 30, 2009 at 3:00 p.m. ET (the "Final Hearing") to consider entry of this final order (this "Final Order") which, among other things, (i) authorizes and approves, on a final basis, the DIP Facility, the DIP Loan Documents and the DIP Borrower executing and delivering (and causing the other Loan Parties to execute and deliver) the DIP Loan Documents and consummating (and causing the other Loan Parties to consummate) the transactions contemplated by the DIP Loan Documents; (ii) approves the Letter of Intent, and (iii) grants the other relief set forth herein;

The Court having considered the Motion and the evidence submitted at the Final Hearing and finding, pursuant to Bankruptcy Rule 4001(c)(1), that notice of the Final Hearing was sufficient having been given to (i) the United States Trustee, (ii) counsel to the Committee (as

defined below), (iii) counsel for the agents for the Debtors' prepetition secured and unsecured lenders, (iv) the landlords under the FJI Leases (as defined below) and the mortgagees in respect of all real property subject thereto, and (v) all other parties required to be served pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required; and the Final Hearing having been held on July 30, 2009; and based upon all of the pleadings filed with the Court and the entire record herein; and the Court having heard and resolved or overruled all objections to the relief requested in the Motion; and the Court having noted the appearances of all parties in interest; and it appearing that approval of the relief requested in the Motion is fair and reasonable and in the best interests of the DIP Borrower, the other Debtors, their creditors and their estates, and is essential for the continued operation of the DIP Borrower's business; therefore:

**BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.  **Petition Date, etc** On December 22, 2008 (the "Petition Date"), the Debtors commenced their chapter 11 cases (the "Cases") by filing voluntary petitions for relief under the Bankruptcy Code. The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 5, 2009, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Committee"). No trustee or examiner has been appointed in any of the Cases.

B.    **Jurisdiction; Venue** This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157. Venue for the Cases and these proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014 and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of Delaware (the "Local Bankruptcy Rules").

C.    **Stipulations** In connection with the relief provided for herein, the Debtors permanently, immediately and irrevocably acknowledge, represent, stipulate and agree that: (i) the DIP Lender and the DIP Borrower negotiated the DIP Loan Documents and the Letter of Intent on an arm's length basis and in good faith within the meaning of section 364(e) of the Bankruptcy Code; (ii) the provisions of the DIP Loan Documents and the Letter of Intent are fair, reasonable and provide the Debtors with financing that is not otherwise available on equal or more favorable terms, including the opportunity for a transaction that will maximize value for the DIP Borrower's creditors and equity security holders and enable the Debtors to exit from chapter 11; (iii) neither the DIP Lender nor any affiliate is in control of persons or insiders of the DIP Borrower, the other Debtors or any affiliate by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Loan Documents or the Letter of Intent; and (iv) there are no other liens on or security interests in the Collateral (other than any Permitted Liens).

D.    **Purpose and Necessity of Financing and Letter of Intent** The DIP Borrower requires the financing described in the Motion to support the operational and working

capital needs of the DIP Borrower and certain of its non-Debtor subsidiaries to enable the DIP Borrower to consummate the transactions contemplated by the Letter of Intent.  If the DIP Borrower does not obtain approval of the Letter of Intent and the DIP Facility, and authorization to borrow under the DIP Loan Documents, the DIP Borrower (and the other Debtors and their respective estates, including creditors and equity security holders) will suffer immediate and irreparable harm, the DIP Borrower's operations will be severely and adversely affected as set forth in the Motion and the Debtors will lose the opportunity to consummate the transactions contemplated by the Letter of Intent.

E.     **Inability to Obtain Other Financing**The DIP Borrower is unable to obtain unsecured credit allowable solely as an administrative expense under section 503 of the Bankruptcy Code, or other financing under section 364(c) of the Bankruptcy Code on equal or more favorable terms than those set forth in the DIP Loan Documents.  A loan facility in the amount and for the purpose provided by the DIP Facility and the DIP Loan Documents is not available to the DIP Borrower without granting to the DIP Lender the superpriority claim and the liens and the security interests, pursuant to section 364(c) of the Bankruptcy Code, in each case as provided in this Final Order and the other DIP Loan Documents.  After considering all alternatives available to it, the DIP Borrower has concluded, after due deliberation and in the exercise of its prudent business judgment, that the DIP Facility, as provided under the DIP Loan Documents, and the transactions contemplated by the Letter of Intent, present the best opportunity available to consummate a transaction that will maximize value and recovery for creditors and equity security holders and enable the Debtors to exit from bankruptcy.

F.     **Good Cause**The ability of the DIP Borrower to consummate the transactions contemplated by the DIP Loan Documents and enter into the Letter of Intent is vital

to the DIP Borrower's and other Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents will enable the DIP Borrower to continue to operate its business in the ordinary course and provide the DIP Borrower with the opportunity to consummate the transactions contemplated by the Letter of Intent. Absent approval, the Debtors risk losing the best opportunity currently available to exit from bankruptcy pursuant to a value maximizing transaction, which, coupled with the lack of sources of liquidity which are readily available to the DIP Borrower, will cause irreparable harm to their creditors and equity security holders. Good cause has, therefore, been shown for the relief sought in the Motion.

G. **Use of Proceeds of the DIP Extensions of Credit**Proceeds of the DIP Extensions of Credit shall be used in accordance with the terms and conditions of (and subject to the limitations contained in) this Final Order and the other DIP Loan Documents.

H. **Good Faith**The terms and conditions of the DIP Loan Documents, and the fees paid and to be paid thereunder, and the terms and conditions of the Letter of Intent are fair, reasonable, and the best available under the circumstances, reflect the DIP Borrower's exercise, after due deliberation, of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration. The DIP Loan Documents and the Letter of Intent have been negotiated in good faith and at arm's-length by and among the DIP Borrower and the DIP Lender. Any DIP Extensions of Credit and/or other financial accommodations made to or at the direction of the DIP Borrower by the DIP Lender pursuant to this Final Order and/or the other DIP Loan Documents shall be deemed to have been extended by the DIP Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Lender shall be entitled to all protections afforded thereunder, including, without

DB02:8522438.1          067990.1001

limitation, the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise.

   I.  **Extension of Financing**The DIP Lender has indicated a willingness to provide financing to or at the direction of the DIP Borrower in accordance with the terms of the DIP Loan Documents.  The DIP Lender is a good faith financier.  The DIP Lender's claims, superpriority claim, security interests and liens and other protections granted pursuant to this Final Order and the other DIP Loan Documents will not be affected by any subsequent reversal, modification, vacatur or amendment of this Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

   J.  **Consideration**The DIP Borrower will receive and has received valuable, fair and reasonable consideration in exchange for access to the DIP Extensions of Credit and all of the financial accommodations provided under the DIP Loan Documents, and for entering into the Letter of Intent.

   K.  **Immediate Entry of Final Order**The DIP Borrower has requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).  The permission granted herein to enter into the DIP Loan Documents and to obtain extensions of credit and financial accommodations thereunder is, for the reasons stated above and in the Motion, necessary to avoid immediate and irreparable harm to the DIP Borrower, the other Debtors and their estates, including creditors and equity security holders.

   **NOW, THEREFORE,** on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the Final Hearing, and good and sufficient cause appearing therefor,

DB02:8522438.1   067990.1001

**IT IS ORDERED** that:

1.      **Motion Granted.**  The Motion is granted in accordance with the terms and conditions set forth in this Final Order.  Any objections to the Motion, with respect to entry of this Final Order or otherwise, to the extent not withdrawn, waived or otherwise resolved, and all reservation of rights included in any such objections, are hereby denied and overruled.

2.      **DIP Facility.**

(a)      **Execution and Performance; DIP Obligations, etc.**  The DIP Borrower is expressly and immediately authorized, empowered and directed to, and to cause the other Loan Parties to, enter into the DIP Facility and to incur and to perform the DIP Obligations in accordance with and subject to the terms of the DIP Loan Documents, and to execute and deliver, and to cause the other Loan Parties to execute and deliver, all instruments, certificates, agreements and documents which may be required by the DIP Lender or are otherwise necessary for the performance by the DIP Borrower (and, as the case may be, the other Loan Parties) under the DIP Facility and the creation and perfection of the DIP Liens (as defined below) and the liens on the other Collateral, in each case to the fullest extent described and provided for, as the case may be, herein and in the other DIP Loan Documents.  The DIP Borrower is hereby authorized and directed to, and to cause the other Loan Parties to, do and perform all acts, and to pay all principal, interest, fees, expenses, indemnities and other amounts described in the DIP Loan Documents as such become due, including, without limitation, the reasonable fees and expenses of the attorneys and financial advisors of the DIP Lender as provided for in the DIP Loan Documents (collectively, all loans, advances, extensions of credit (including with respect to procuring the issuance of Letters of Credit), financial accommodations, fees, expenses and other liabilities and obligations, including reimbursement obligations and indemnities, the "DIP

Obligations"). The DIP Obligations shall not otherwise be subject to further approval of this Court. All DIP Obligations shall represent valid and binding obligations of the DIP Borrower, enforceable against the DIP Borrower in accordance with their terms, and shall be paid in accordance with the terms of the DIP Loan Documents. Interest on the DIP Obligations shall accrue at the rates and be payable on the dates set forth in the DIP Credit Agreement. The DIP Loan Documents to which the DIP Borrower is a party represent valid and binding obligations of the DIP Borrower, enforceable against the DIP Borrower in accordance with their terms.

(b)     **Term.** The term (the "Term") of the DIP Facility shall commence on the date of entry of this Final Order and end on the Termination Date, subject to the terms and conditions set forth herein and in the other DIP Loan Documents, including the protections afforded a party acting in "good faith" under section 364(e) of the Bankruptcy Code.

(c)     **Authorization to Borrow, etc.** The DIP Borrower is hereby authorized, during the Term, to borrow under the DIP Facility up to an aggregate principal amount of $100,000,000, comprised of up to $55,000,000 under the Line of Credit and up to $45,000,000 under the L/C Bond Facility, subject to the requirements and limitations set forth in the DIP Loan Documents.

(d)     **Conditions Precedent.** The DIP Lender shall have no obligation to make any DIP Extension of Credit or any other financial accommodations hereunder or under the other DIP Loan Documents unless the conditions precedent to make such extensions of credit under the DIP Loan Documents have been satisfied in full or waived in accordance with the DIP Credit Agreement.

(e)     **DIP Liens.** Effective immediately upon the entry of this Final Order, and subject (on a *pari passu* basis) only to the Carve Out (subject to Permitted Liens), the DIP

Lender is hereby granted (and shall hereby have) a valid, binding, perfected, continuing, enforceable and non-avoidable senior and first priority security interest in and lien on (the "DIP Liens") all of the property, assets or interests of the DIP Borrower pledged and/or granted (or purported to be pledged and/or granted) under the applicable DIP Loan Documents, including, without limitation, the following (collectively, the "DIP Collateral"):

I.    Pledged Equity.  All membership, equity, ownership and/or other interests now or hereafter owned by the DIP Borrower in FJT, AFJ, LLC ("AFJ"), Ton Services Inc., FJI Plaza Company II LLC, FREE III LLC, FREE IV LLC, FREE V LLC, FREE VI LLC, and Flying J Oil & Gas Inc.[3] (collectively, the "Pledged Entities"), and including, without limitation, all of the DIP Borrower's right, title and interest in and to (1) any and all now existing and hereafter acquired membership, equity or ownership interest of the DIP Borrower in the Pledged Entities, whether in capital, profits or otherwise, (2) any and all now existing and hereafter arising rights of the DIP Borrower to receive distributions or payments from the Pledged Entities, whether in cash or in kind and whether such distributions or payments are on account of the DIP Borrower's interest as owner of a membership, equity or ownership interest of the Pledged Entities or as a creditor of the Pledged Entities or otherwise, and all other economic rights and interests of any nature of the DIP Borrower in the Pledged Entities, (3) any and all now existing and hereafter acquired management and voting rights of the DIP Borrower of, in, or with respect to the Pledged Entities, whether as an owner of a membership, equity or ownership interest of the Pledged Entities or otherwise, (4) if the Pledged Entities'

---

[3] Ownership structure/pledged equity to be confirmed.

membership interests are certificated, all such certificates, and (5) all proceeds of the foregoing;

II.    <u>FJI Leaseholds</u>.  All rights and interests of the DIP Borrower in, to and under all of its leases of real property, including those set forth on Schedule 1 attached hereto (collectively, the "<u>FJI Leases</u>"), together with any amendments or modifications thereto, or extensions, renewals or substitutions thereof, including all present and future options of any kind, rights of first refusal, privileges and other benefits of the DIP Borrower under the FJI Leases, and all of the DIP Borrower's right, title and interest to the land and the buildings, improvements, fixtures and structures now or hereafter located on the land, together with all real property rights related to the use and enjoyment of the land and all tangible and intangible personal property now or hereafter located on the land or related thereto, and all tangible and intangible personal property now or hereafter located on the land or related thereto, and all products and proceeds thereof, including in respect of insurance or condemnation (or similar) awards or recovery (or similar) events and all subleases, occupancy agreements, rents, revenues, income and profits of such real property;

III.    <u>FJI Real Property</u>.  All of the DIP Borrower's right, title and interest in and to all of the real property set forth on Schedule 2 attached hereto, including all of the DIP Borrower's right, title and interest in and to the land and the buildings, improvements, fixtures and structures now or hereafter located on the land, together with all real property rights related to the use and enjoyment of the land and all tangible and intangible personal property now or hereafter located on the land or related thereto, and all products and proceeds thereof, including in respect of insurance or condemnation (or

similar) awards or recovery (or similar) events and all leases, occupancy agreements, rents, revenues, income and profits of such real property;

IV.   _AFJ Intercompany Receivable_.   All interests of the DIP Borrower in all intercompany accounts receivable owed to it by AFJ, and any promissory notes, documents or agreements evidencing such obligations, all rights of enforcement thereof and all proceeds thereof (the "_AFJ Receivable_");

V.   _Deposit Accounts_.     The DIP Loan Deposit Account, the Letter of Credit Cash Collateral Account and the Cash Collateral Account of the DIP Borrower, and all amounts on deposit therein or credited thereto from time to time.

VI.   _Transaction Proceeds_.   All proceeds realized from the transactions contemplated by the Letter of Intent (and any related acquisition agreement), or from any similar transaction or agreement consummated with a third party or parties (i.e., not with the DIP Lender or any affiliate) ("_Transaction Proceeds_"); and

VII.   _All products and proceeds of the foregoing_.

(f)   **Other Provisions Relating to the DIP Liens and DIP Collateral.**   The DIP Liens shall secure all of the DIP Obligations.  The DIP Liens shall not without the consent of the DIP Lender be made subject to, or _pari passu_ with, any lien or security interest, other than to the Carve Out, by any court order heretofore or hereafter entered in the Cases and shall be valid and enforceable against any trustee appointed in any of the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "_Successor Cases_"), and/or upon the dismissal of any of the Cases.  The DIP Liens shall not be subject to sections 506(c), 510, 549, 550 or 551 of the Bankruptcy Code.

(g) **Evidence of Enforceable Obligations.** This Final Order shall constitute and evidence the valid and binding obligations of the DIP Borrower under the DIP Facility in respect of the DIP Obligations. The DIP Obligations shall be enforceable against the DIP Borrower, its estate and any successor thereto and its creditors, in accordance with their terms. No obligation, payment, transfer or grant of a security under the DIP Loan Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any defense, challenge, dispute, reduction, setoff, recoupment or counterclaim.

(h) **Protection of DIP Lender and Other Rights.** The DIP Borrower shall use (and direct the use of) the proceeds of the DIP Extensions of Credit only for the purposes specifically set forth in this Final Order and the other DIP Loan Documents. In particular, it is hereby ordered, for avoidance of doubt, that proceeds of the DIP Extensions of Credit will only be used in connection with the Debtor's travel center, credit card and trucking business enterprises; <u>provided</u> that up to $5,000,000 of proceeds of the DIP Extensions of Credit may be used for administrative costs and expenses associated with the DIP Borrower's and its non-Debtor subsidiaries' businesses. The DIP Borrower shall direct and cause the proceeds of DIP Extensions of Credit to be used for no other purposes.

(i) **Superpriority Administrative Claim Status.** The DIP Obligations shall, pursuant to section 364(c)(1) of the Bankruptcy Code, at all times constitute an allowed superpriority claim (the "<u>DIP Superpriority Claim</u>") of the DIP Lender, and be payable from and have recourse to all assets and property of the DIP Borrower, now owned or hereafter acquired. The DIP Superpriority Claim shall be *pari passu* with the Carve Out and have priority over any and all administrative expenses of the kinds specified in or arising or ordered under any section

DB02:8522438.1          067990.1001

of the Bankruptcy Code including, without limitation, sections 105(a), 326, 328, 330, 331, 364(c)(1), 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 of the Bankruptcy Code, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, or prior to the DIP Liens, the DIP Superpriority Claim or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder or under or in connection with the DIP Facility.

3. **Authorizations and Approvals.**

(a) **DIP Facility.** Pursuant to the terms and conditions of this Final Order and the other DIP Loan Documents, the DIP Borrower is authorized during the Term (and not beyond) to request and use (and direct the use of) DIP Extensions of Credit, subject to the requirements and limitations set forth in the DIP Loan Documents. Notwithstanding anything herein to the contrary, subject only to the DIP Borrower's rights under paragraph 14(a), the DIP Borrower's right to request and use (or direct the use of) the DIP Extensions of Credit shall terminate at the end of the Term, including, for avoidance of doubt, upon written notice (a "Default Notice") being provided by the DIP Lender to the DIP Borrower that an Event of Default has occurred and is continuing. Nothing in this Final Order shall authorize the disposition of any assets or property of the DIP Borrower or its estate outside the ordinary course of business or any proceeds resulting therefrom, except as expressly permitted by the DIP Loan Documents (subject to any required Court approval).

(b) **Letter of Intent.** The Letter of Intent is hereby approved, and the execution thereof by FJI is hereby ratified and confirmed, and FJI is hereby authorized and directed to, and to cause FJT to, perform and comply with all of the terms, conditions and covenants of, and to take all actions necessary and appropriate to implement, the Letter of Intent.

The Letter of Intent is a valid and binding contract among FJI and the other parties thereto and is enforceable in accordance with its terms.

4. **Reporting**. The DIP Borrower shall provide the DIP Lender with the monthly financial reporting given to the United States Trustee and all of the financial reporting as required under and in all instances consistent with the DIP Credit Agreement and the other DIP Loan Documents.

5. **DIP Lien Perfection.** This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document, or the obtaining of a control or similar agreement executed by any bank or depository institution, in any case which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens or to entitle the DIP Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file such financing statements, mortgages, deeds of trust, collateral assignments, security agreements, notices of liens and other similar documents, or obtain control agreements, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been obtained, filed or recorded, as the case may be, at the time and as of the date hereof. The DIP Borrower shall, and shall cause the other Loan Parties to, execute and deliver to the DIP Lender all such financing statements, mortgages, deeds of trust, collateral assignments, security agreements, control agreements, notices and other documents as the DIP Lender may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens (and/or any liens on all other Collateral).

The DIP Lender, in its discretion, may file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the DIP Borrower has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

6.      **Carve Out.**  Subject to the terms and conditions contained in this paragraph 6, the DIP Liens and the DIP Superpriority Claim shall be *pari passu*, after delivery of a Default Notice, with (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (ii) the amount of any allowed (after proper application therefor and Court order) fees and expenses incurred by the DIP Borrower and the Committee prior to delivery of the Default Notice to the extent provided for in the then current Approved Budget and that remain unpaid in respect of allowances of compensation for services rendered or reimbursement of reasonable expenses awarded (after proper application) by the Bankruptcy Court to the DIP Borrower's or the Committee's professionals (items (i) and (ii), collectively, the "Carve Out")[4].  No portion of the Carve Out or proceeds of the DIP Extensions of Credit or any Collateral, or any other amounts, may be used for the payment of the fees and expenses of any person incurred (i) in investigating, challenging, or in relation to the investigation or challenge of the DIP Lender's liens or claims (including DIP Liens or any liens on any other Collateral) or the value thereof, or the initiation or prosecution of any claim or action against the DIP Lender or any affiliate, including any claim under chapter 5 of the Bankruptcy Code, and state law or any foreign law, in respect of or in any way related to the DIP Facility (or any liens or claims in respect thereof), the Letter of Intent or any related

---

[4] Inclusion of wind down costs in Carve Out to be discussed.

DB02:8522438.1          067990.1001

acquisition agreement or the transactions contemplated thereby, or in preventing, hindering or delaying the realization by the DIP Lender upon any DIP Collateral (or any other Collateral), or the enforcement of its rights under the DIP Loan Documents, the Letter of Intent (or any related acquisition agreement), (ii) in connection with requesting authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lender, except in connection with a transaction which is consistent with and not in conflict with the terms of the DIP Loan Documents and Letter of Intent and that provides for the immediate and indefeasible payment in full in cash and satisfaction of the DIP Obligations (including the obligation to cash collateralize Letters of Credit as more fully set forth in the DIP Credit Agreement), and (iii) in connection with any claims or causes of actions against the DIP Lender, its affiliates, or any of their respective officers, directors, employees, professionals, advisors, agents and/or sub-agents, including in respect of formal or informal discovery proceedings in respect or anticipation thereof, and/or in challenging the DIP Facility, any DIP Obligations, DIP Liens, any liens on any other Collateral, the Letter of Intent, any related acquisition agreement or the transactions contemplated by or related in any way to any of the foregoing.  Any Carve Out shall be funded, first, from the DIP Borrower's unencumbered cash or proceeds of the DIP Borrower's unencumbered assets, if any (without limiting the *pari passu* lien granted hereunder in respect of the Carve Out).

7. **Payment of Compensation.**  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of the DIP Borrower or the Committee or shall affect the right of the DIP Lender to object to the allowance and payment of such fees and expenses.

8. **Section 506(c) Claims.**  As a further condition of the DIP Facility and any obligation of the DIP Lender to make the DIP Extensions of Credit thereunder, the DIP Borrower (and any successor thereto or any representative thereof, including any trustee or other fiduciary or representative appointed in the Cases or any Successor Cases) shall be deemed to have waived any rights, benefits, or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Lender, the DIP Liens or the DIP Collateral.

9. **Collateral Rights; Limitations in Respect of Subsequent Court Orders.** Without limiting any other provisions of this Final Order, unless the DIP Lender has provided its written consent, or unless in connection with a transaction which is consistent with and not in conflict with the terms of the DIP Loan Documents and Letter of Intent and that provides for the immediate payment in full in cash and satisfaction of the DIP Obligations  (including the obligation to cash collateralize Letters of Credit as more fully set forth in the DIP Credit Agreement), there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes the obtaining of credit or the incurring of indebtedness that is secured by a security interest, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, or on all or any portion of the DIP Borrower's other assets or property, now owned or hereafter acquired, and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Final Order to the DIP Lender.

10. **Proceeds of Subsequent Financing.**  Without limiting the provisions and protections of paragraph 9 above, if at any time prior to the repayment in full in cash of all DIP Obligations  (including the obligation to cash collateralize Letters of Credit as more fully set forth in the DIP Credit Agreement), and the termination of the DIP Lender's obligations to make DIP Extensions of Credit, including subsequent to the confirmation of any chapter 11 plan or

DB02:8522438.1          067990.1001

plans (the "Plan") with respect to the DIP Borrower, the DIP Borrower, the DIP Borrower's estate, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of this Final Order or the other DIP Loan Documents, then all of the net cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Lender for application on such date as a mandatory repayment of the DIP Obligations, in accordance with the relative rights, claims, and priorities specified in the DIP Loan Documents.

11.    **Cash Management.**  The DIP Borrower's cash management system shall at all times be reasonably satisfactory to the DIP Lender.  In addition, all proceeds of the Loans shall, prior to transfer to the DIP Borrower's operating account for prompt expenditure by the DIP Borrower, be maintained in the DIP Loan Deposit Account and segregated from and not commingled with any other funds; such DIP Loan Deposit Account and all amounts from time to time on deposit therein shall comprise part of the DIP Collateral and be subject to the DIP Liens (without the need for control over such account under the Uniform Commercial Code) for all purposes hereunder.

12.    **Prohibition on Disposition of DIP Collateral.**  Except as expressly permitted by the DIP Loan Documents, the DIP Borrower shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral.  The DIP Borrower shall not reject (or file any motion to reject) any of the FJI Leases, or take (or permit any affiliate to take) any other action that could impair or otherwise adversely affect its rights thereunder. The DIP Borrower shall not forgive, modify the terms of, waive or otherwise alter, impair or adversely affect the terms, amount or ability to realize on or collect the AFJ Receivable without the prior written consent of the DIP Lender. The DIP Borrower shall cause all Transaction Proceeds to be paid directly to

one or more Cash Collateral Accounts in accordance with the terms of the DIP Credit Agreement (up to the amount necessary for the DIP Obligations to be paid in full in cash, discharged and completely satisfied (including the obligation to cash collateralize Letters of Credit as more fully set forth in the DIP Credit Agreement)).

13. **Survival of Certain Provisions.** In the event of the entry of any order converting the DIP Borrower's Case into a Successor Case, the DIP Liens and the DIP Superpriority Claim shall continue in these proceedings and in any such Successor Case, and such DIP Liens and DIP Superpriority Claim shall maintain their respective priority, *pari passu* with the Carve Out, as provided by this Final Order.

14. **Events of Default; Rights and Remedies Upon Event of Default.**

(a) Any automatic stay otherwise applicable to the DIP Lender is hereby modified, subject to the requirements set forth in this paragraph, so that upon the occurrence, and at any time during the continuance, of any Event of Default, upon five (5) business days' prior written notice of such occurrence, in each case given to each of counsel to the DIP Borrower, counsel for the Committee, and the United States Trustee, the DIP Lender shall be entitled to exercise its rights and remedies in respect of the DIP Collateral, in accordance with this Final Order, Section 7.01 of the DIP Credit Agreement and the other DIP Loan Documents. Notwithstanding the immediately preceding sentence, immediately following the giving of a Default Notice: (i) the DIP Borrower shall deliver and cause the delivery of any proceeds of the DIP Collateral to the DIP Lender for application to the DIP Obligations in accordance with the DIP Loan Documents; (ii) the DIP Lender shall be permitted to apply such proceeds in accordance with the DIP Loan Documents; (iii) the DIP Borrower shall have no right to use any of such proceeds other than towards the satisfaction of the DIP Obligations as provided in the

DIP Loan Documents (until the DIP Obligations have been paid in full in cash, discharged and completely satisfied (including the obligation to cash collateralize Letters of Credit as more fully set forth in the DIP Credit Agreement)); and (iv) any obligation otherwise imposed on the DIP Lender to provide any DIP Extension of Credit to the DIP Borrower under the DIP Facility shall immediately be suspended. Following the giving of a Default Notice by the DIP Lender, if the subject Event of Default is contested, the Debtors and the DIP Borrower shall be entitled to an emergency hearing before this Court solely for the purpose of determining whether an Event of Default has occurred. If the DIP Borrower does not contest such occurrence within the five (5) business-day day notice period, or if the DIP Borrower does timely contest the occurrence of an Event of Default and this Court after notice and hearing (which shall be held on an expedited basis, to the extent practicable) declines to stay the enforcement thereof, the Commitments, and the automatic stay as to the DIP Lender, shall automatically terminate at the end of such notice period. Nothing herein shall preclude the DIP Lender from seeking an order from the Bankruptcy Court upon written notice (electronically (including via facsimile) in a manner that generates a receipt for delivery, or via overnight mail) to the United States Trustee, counsel to the DIP Borrower and counsel to the Committee, authorizing the DIP Lender to exercise any enforcement rights or remedies with respect to the DIP Collateral or to take any action to preserve the Collateral on less than five (5) business days' notice.

(b)     Subject only to the provisions of paragraph 14(a), upon the occurrence of an Event of Default, unless otherwise agreed to in writing by the DIP Lender, the DIP Lender is authorized to exercise against the DIP Borrower all remedies and proceed under or pursuant to this Final Order and the other DIP Loan Documents. All proceeds realized in connection with

the exercise of the rights and remedies of the DIP Lender shall be applied to the DIP Obligations in accordance with the provisions of the DIP Loan Documents.

(c)     The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Final Order as necessary to (i) permit the DIP Borrower to grant the DIP Liens and to incur all liabilities and obligations to the DIP Lender hereunder, and (ii) authorize the DIP Lender to receive, retain and apply payments and proceeds of DIP Collateral in accordance with the provisions of the DIP Loan Documents.

(d)     In relation to any surety or similar bond which is issued under the DIP Credit Agreement on an "evergreen" basis and is outstanding as of the Termination Date, the DIP Borrower will promptly upon the Termination Date, in its discretion, either (i) cause the immediate cancellation or replacement of such surety or similar bond or (ii) effective as of the date which is 30 days after the Termination Date, constitute and appoint the DIP Lender as its true and lawful attorney-in-fact, irrevocably, with full power (in the name of the DIP Borrower or otherwise) to act to cause the cancellation or replacement of such surety or similar bond, in each case without further order of, or application to, this Court.

(e)     Notwithstanding any other provisions hereof, nothing included herein shall (or shall be construed to) prejudice, impair, limit or otherwise affect the DIP Lender's rights to seek any other or supplemental relief in respect of the DIP Borrower or the other Loan Parties.

(f)     Notwithstanding any other provisions hereof, nothing included herein shall (or shall be construed to) limit, impair or otherwise adversely affect any of the rights or remedies of the DIP Lender against non-Debtor Loan Parties, under the Loan Documents or applicable law.

15. **Proofs of Claim, etc.** The DIP Lender will not be required to file proofs of claim in the Cases or in any Successor Case.

16. **Other Rights and Obligations.**

(a) **Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order.** Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code, and, no such appeal, modification, amendment or vacation shall affect the validity and enforceability of any DIP Extensions of Credit or the liens or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Lender hereunder arising prior to the effective date of such modification, amendment or vacation of any DIP Liens and the DIP Superpriority Claim granted to the DIP Lender shall be governed in all respects by the original provisions of this Final Order, and the DIP Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Liens and DIP Superpriority Claim granted herein, with respect to any such claim. Because the DIP Extensions of Credit are made in reliance on this Final Order, the obligations owed to the DIP Lender prior to the effective date of any stay, modification or vacation of this Final Order shall not, as a result of any subsequent order in the Cases or in any Successor Cases, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this Final Order.

DB02:8522438.1          067990.1001

(b)     **Expenses.**  Subject to the other terms and provisions of this Final Order, the DIP Borrower will pay all fees and expenses required to be paid by it under the DIP Loan Documents, including, without limitation, all actual, reasonable and documented out-of-pocket fees and expenses incurred by the DIP Lender (including, without limitation, the reasonable fees and disbursements of the counsel for the DIP Lender, any other local or foreign counsel that the DIP Lender shall retain and any internal or third-party appraisers, consultants, financial advisors and auditors advising any such counsel or the DIP Lender) in connection with (i) the preparation, execution, delivery, funding and administration of the DIP Loan Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the DIP Loan Documents, (ii) the Cases or any Successor Cases, or (iii) enforcement of any rights or remedies under the DIP Loan Documents, in each case whether or not the transactions contemplated hereby are fully consummated.   Payment of such fees shall not be subject to allowance by the Bankruptcy Court.   Professionals for the DIP Lender shall not be required to comply with the United States Trustee fee guidelines.   Copies of invoices submitted to the DIP Borrower by the professionals for the DIP Lender shall be forwarded by the DIP Borrower to the United States Trustee, counsel for the Committee, and such other parties as the Court may direct. The invoices shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses (without limiting the right of the various professionals to redact privileged, confidential or sensitive information). This Court shall resolve any dispute as to the reasonableness of any fees and expenses.

(c)     **Successors and Assigns.**  The provisions of this Final Order and the other DIP Loan Documents shall be binding upon and inure to the benefit of the DIP Lender, the DIP Borrower, and their respective successors and assigns (including any trustee or other fiduciary

hereinafter appointed as a legal representative of the DIP Borrower or with respect to the property of the estate of the DIP Borrower) whether in the Cases, in any Successor Cases, or upon dismissal of any such chapter 11 or chapter 7 case.

(d)     **No Waiver.**     The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Final Order or otherwise shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law against any person or entity in any court, including without limitation, the rights of the DIP Lender (i) to request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, or (ii) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender. The entry of this Final Order shall not limit or otherwise modify the rights and remedies of the DIP Lender with respect to non-Debtor entities or their respective assets, whether such rights and remedies arise under the DIP Facility, the DIP Loan Documents, applicable law or equity.

(e)     **No Third Party Rights.**     Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(f)     **No Marshaling.**     The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Liens, the DIP Collateral or any other Collateral.

(g) **Amendment.** The DIP Borrower and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Loan Documents, in accordance with the terms thereof, without further approval of the Court, unless such amendment, modification, supplement or waiver (x) increases the interest rate (other than as a result of the imposition of the default rate), (y) increases the commitments of the DIP Lender under the DIP Loan Documents, or (z) changes the Termination Date. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions of this Final Order shall be effective unless set forth in writing, and signed by, or on behalf of, the DIP Borrower and the DIP Lender.

(h) **Survival of Final Order.** The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Final Order, including the DIP Liens and DIP Superpriority Claim granted pursuant to this Final Order shall continue in full force and effect notwithstanding the entry of such order, and such DIP Liens and DIP Superpriority Claim shall maintain their priority as provided by this Final Order until all the DIP Obligations have been paid in full in cash, discharged and completely satisfied (including the obligation to cash collateralize Letters of Credit as more fully set forth in the DIP Credit Agreement).

(i) **Conversion/Dismissal**. Unless in connection with a transaction which is consistent with and not in conflict with the terms of the DIP Loan Documents and Letter of Intent and that provides for the immediate and indefeasible payment in full in cash and

satisfaction of the DIP Obligations (including the obligation to cash collateralize Letters of Credit as more fully set forth in the DIP Credit Agreement), no motion shall be filed by any of the Debtors seeking to dismiss the DIP Borrower's Case or convert it to a case under chapter 7 of the Bankruptcy Code, or to seek entry of an order in the DIP Borrower's Case appointing a trustee under chapter 11 of the Bankruptcy Code, or a responsible officer or an examiner with enlarged powers relating to the operation of the businesses of the Debtors (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) under section 1106 of the Bankruptcy Code unless and until (i) the DIP Obligations are paid in full in cash, discharged and completely satisfied (including the obligation to cash collateralize Letters of Credit as more fully set forth in the DIP Credit Agreement) and the commitments under the DIP Loan Documents are terminated in accordance therewith, or (ii) the DIP Lender expressly consents in writing.

(j) **Limits on DIP Lender's Liability**. Nothing in this Final Order or in any of the DIP Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender or any affiliate of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

(k) **Lenders Not Responsible Persons.** In (a) deciding to make the DIP Extensions of Credit, (b) administering the DIP Facility, (c) extending other financial accommodations to the DIP Borrower under the DIP Loan Documents and/or (d) entry into the Letter of Intent, none of the DIP Lender nor any of its affiliates shall be considered to be exercising control over any operations of the DIP Borrower or acting in any way as a responsible person, as an owner or operator under any applicable law, including without limitation, any environmental law (including, but not limited to the Comprehensive Environmental Response,

Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

(l)     **Enforceability.**  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(m)     **Inconsistency.**  In the event of any inconsistency between the terms and conditions of this Final Order and the other DIP Loan Documents insofar as they relate to the DIP Borrower only, the provisions of this Final Order shall govern and control.

(n)     **Incorporation by Reference.**  All terms and conditions of the DIP Loan Documents are incorporated by reference and shall be binding and enforceable to the same extent as if set forth herein in the first instance.

(o)     **No Waivers or Modification of Final Order.**  The DIP Borrower irrevocably waives any right to seek any modification or extension of this Final Order without the prior written consent of the DIP Lender and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Lender.

(p)     **Waiver of any Applicable Stay.**  Any applicable stay (including, without limitation, under Interim Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

17.     **Adequate Notice.**  The notice given by the DIP Borrower of the Final Hearing and the relief set forth herein was given in accordance with Bankruptcy Rules 2002 and 4001(c)(3), and the Local Bankruptcy Rules, and was adequate and sufficient, and no other or further notice shall be required.  The DIP Borrower shall promptly mail copies of this Final

Order to the Notice Parties, any known party affected by the terms of the Final Order, and any other party requesting notice after the entry of this Final Order.  The DIP Borrower shall not be required to mail copies of the DIP Loan Documents to such persons or entities.  Service may be made electronically or by fax if made on other than a weekday.

18.     **Retention of Jurisdiction.**  The Bankruptcy Court has and will retain jurisdiction to enforce this Final Order according to its terms.

Dated: Wilmington, Delaware
        July _____, 2009

_____
Mary F. Walrath
United States Bankruptcy Judge

## EXHIBIT A

[DIP CREDIT AGREEMENT]

To Be Provided

## EXHIBIT B

[LETTER OF INTENT]

To Be Provided

# SCHEDULE 1

## FJI LEASES

|   | Property/City | Lessor | Lessee | State | Address |
|---|---|---|---|---|---|
| 1 | Benton Harbor | FJI Plaza Company II LLC | DIP Borrower | MI | 1860 East Napier Avenue |
| 2 | Birmingham | FJI Plaza Company III LLC | DIP Borrower | AL | 224 Daniel Payne Drive North |
| 3 | Black River Falls | FJI Plaza Company III LLC | DIP Borrower | WI | P.O. Box 277/ 780 Hwy 54 & Exit 116 |
| 4 | Evansville | FJI Plaza Company III LLC | DIP Borrower | IN | US 41 and Warrenton Rd. |
| 5 | Hebron | FJI Plaza Company III LLC | DIP Borrower | IN | 3231 East 181 Street |
| 6 | Waco | FJI Plaza Company III LLC | DIP Borrower | TX | 2409 South New Road |
| 7 | Fort Chiswell | FJI Plaza Company IV LLC | DIP Borrower | VA | I-81, I-77 & VA Route 52 |
| 8 | Butte | FJI Plaza Company LLC | DIP Borrower | MT | 112000 Rocker Interchange & I-90 |
| 9 | Evanston | FJI Plaza Company LLC | DIP Borrower | WY | 1920 Harrison Drive |
| 10 | Rawlins | FJI Plaza Company LLC | DIP Borrower | WY | #1 Flying J Way |
| 11 | Tampa | FJI Plaza Company LLC | DIP Borrower | FL | 11555 E. Sligh Avenue |
| 12 | North Salt Lake | FJSD Real Estate LLC | DIP Borrower | UT | 885 W. North Point Circle |
| 13 | Willard Bay | Flying J Real Estate Enterprises Inc. | DIP Borrower | UT | 600 West 750 North |
| 14 | Blackfoot | Flying J Real Estate Enterprises Inc. | DIP Borrower | ID | 1228 Parkway |
| 15 | Boise | Flying J Real Estate Enterprises Inc. | DIP Borrower | ID | 8000 Overland Road |
| 16 | Brigham City (West) | Flying J Real Estate Enterprises Inc. | DIP Borrower | UT | 986 South Main |
| 17 | Boise | Flying J Real Estate Enterprises Inc. | DIP Borrower | ID | 3353 Federal Way |
| 18 | Gillette | Flying J Real Estate Enterprises Inc. | DIP Borrower | WY | 1810 South Douglas Hwy |
| 19 | Springville | Flying J Real Estate Enterprises Inc. | DIP Borrower | UT | 1460 North 1750 West |
| 20 | Tacoma | Flying J Real Estate Enterprises Inc. | DIP Borrower | WA | 1501 33rd Avenue |
| 21 | Barstow | FREE II LLC | DIP Borrower | CA | 2611 Fisher Boulevard |
| 22 | Whiteland | FREE III LLC | DIP Borrower | IN | 4982 North 350 East |
| 23 | Lake Station | FREE IV LLC | DIP Borrower | ID | 1401 Ripley Street |
| 24 | Effingham | FREE V LLC | DIP Borrower | IL | 1701 West Evergreen/I-70 & I-55 Exit 60 |
| 25 | Hubbard | FREE V LLC | DIP Borrower | OH | 2226 North Main |
| 26 | Jeffersonville | FREE V LLC | DIP Borrower | OH | 9935 SR 41 |
| 27 | Lansing | FREE V LLC | DIP Borrower | MI | 7800 West Grand River Avenue |
| 28 | Lowell | FREE V LLC | DIP Borrower | IN | 3231 East 181st Street |
| 29 | Nephi | FREE V LLC | DIP Borrower | UT | 1597 South Main |
| 30 | Oak Creek | FREE V LLC | DIP Borrower | WI | 9650 South 20th Street |
| 31 | Richfield | FREE V LLC | DIP Borrower | UT | Exit 40, 25 East Flying J Drive |
| 32 | Saginaw | FREE V LLC | DIP Borrower | MI | 3475 East Washington |
| 33 | St. George | FREE V LLC | DIP Borrower | UT | 2841 South 60 East |
| 34 | Wichita Falls | FREE V LLC | DIP Borrower | TX | 2311 Jacksboro Highway |
| 35 | Lamar | FREE VI LLC | DIP Borrower | PA | 5609 Nittany Valley Drive |
| 36 | Lubbock | FREE VI LLC | DIP Borrower | TX | 602 4th Street |
| 37 | New Milford | FREE VI LLC | DIP Borrower | PA | 1623 Oliver Road |
| 38 | Wells | William V Rodriguez and Judy A. Rodriguez as Trustees of the Family Revocable Living Trust dated 11/7/91 | DIP Borrower | NV | 174 Highway 93 North |
| 39 | Carnesville | Brentwood Holdings LP, Madision Partners, LP and 1520 Vista Partners, LLC as TIC | DIP Borrower | GA | 10226 Old Federal Road |
| 40 | Spiceland | Spirit Finance | DIP Borrower | IN | 5330 State Route 3 |
| 41 | Cannonsburg | Spirit Finance | DIP Borrower | KY | 15236 State Route 180 |
| 42 | St. Augustine | Spirit Finance | DIP Borrower | FL | 950 State Road 206 West |

|    | Property/City | Lessor | Lessee | State | Address |
|----|---------------|--------|--------|-------|---------|
| 43 | Greenwood | CFJ Properties | DIP Borrower | LA | 9510 Greenwood Road |
| 44 | Ogden | Boyer BDO, L.C. | DIP Borrower | UT | 1172 West 21 Street |
| 45 | Ogden | Boyer BDO, L.C. | DIP Borrower | UT | 119 North 600 West |
| 46 | Ogden | Ogden City | DIP Borrower | UT | N-3412, Ogden Hinckley Airport, Weber County |

DB02:8522438.1          067990.1001

<h1 style="text-align:center">SCHEDULE 2</h1>

FJI REAL PROPERTY

|   | Property/City | Owner | State | Address |
|---|---|---|---|---|
| 1 | Snowville | DIP Borrower | UT | 90 South Stone Road |
| 2 | Ogden | DIP Borrower | UT | 1184 Wall Avenue |
| 3 | Harrisville | DIP Borrower | UT | 907 North 4th East |
| 4 | Layton | DIP Borrower | UT | 855 North Main |
| 5 | Logan | DIP Borrower | UT | 1905 South Hwy 89-90 |
| 6 | Edinburg | DIP Borrower | TX | 1305 East Monte Cristo |
| 7 | Brigham City | DIP Borrower | UT | 986 South Main |
| 8 | Boise | DIP Borrower | ID | 1490 Broadway |
| 9 | Chubbock | DIP Borrower | ID | 4230 Yellowstone Avenue |
| 10 | Dodge City | DIP Borrower | KS | 2524 E. Wyatt Earp Boulevard |