IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Hearing Date: January 26, 2010 at 11:30 a.m. ET |
| | ) | Response Deadline: January 15, 2010 at 4:00 p.m. ET |

**DEBTORS' NINTH OMNIBUS OBJECTION TO CERTAIN (A) DUPLICATE CLAIMS,
(B) AMENDED AND SUPERSEDED CLAIMS AND (C) WRONG CASE CLAIMS
(NON-SUBSTANTIVE)**

Flying J Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), file this ninth omnibus objection (the "Objection") for entry of an order disallowing the claims (the "Disallowed Claims") listed on **Exhibits A-1** through **C-3** to the proposed order attached hereto as **Exhibit 1** (the "Proposed Order"), which exhibits are incorporated herein by reference. In support of this Objection, the Debtors rely on the *Declaration of John Boken in Support of Debtors' Ninth Omnibus Objection to Certain (A) Duplicate Claims, (B) Amended and Superseded Claims and (C) Wrong Case Claims (Non-Substantive)* (the "Boken Declaration"), filed contemporaneously herewith. In further support of this Objection, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226), Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States District Court for the District of Delaware (the "Local Rules") and the *General Order Regarding Applicability of Rule 3007(c) of the Amended Federal Rules of Bankruptcy Procedure*, dated November 27, 2007 (the "Rule 3007(c) General Order").

## Relief Requested

4. By this Objection, the Debtors object to the Claims (as defined below) set forth on **Exhibits A-1** through **C-3** attached to the Proposed Order and, for the reasons described below, seek entry of the Proposed Order, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rules 3007 and 9014 and Local Rule 3007-1, disallowing the Disallowed Claims as set forth below.[2]

---

[2] Kirkland & Ellis LLP ("K&E") has performed and will continue to perform conflicts searches for any existing and future matters in which K&E represents any of the subject claimants. To the extent it is later determined that K&E represents any such parties, Young, Conaway, Stargatt & Taylor LLP ("YCST") will prosecute the respective claim objections to the extent that YCST does not have a conflict. To the extent that both K&E and YCST have a conflict with respect to any such claims, the Debtors reserve the right to retain special conflicts counsel to prosecute any such conflict claim matters.

## Background

1. On December 22, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the Bankruptcy Code. On January 5, 2009, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "Creditors' Committee") [Docket No. 85].

2. The Debtors and their wholly-owned non-debtor subsidiaries (collectively, the "Flying J Group") are a fully integrated oil company with operations in the field of exploration, production, refining, transportation, wholesaling and retailing of petroleum products. Debtor Flying J Inc. ("Flying J") is one of the 20 largest privately held companies in America with 2008 consolidated sales of approximately $18.5 billion and is the direct or indirect parent corporation of each of the other members of the Flying J Group.

3. The Flying J Group operates approximately 250 retail locations, including state-of-the-art travel plazas, convenience stores, restaurants, motels and truck service centers in 43 states and six Canadian provinces. In addition to usual rest stop services (food, fuel, shower facilities), the Flying J Group offers banking, bulk-fuel programs, communications (wireless Internet connections), fuel cost analysis, insurance and truck fleet sales. Furthermore, the Flying J Group explores for, refines and transports petroleum products and is one of the largest retail distributors of diesel fuel in North America. Other operations of the Flying J Group include online banking, card processing, truck and trailer leasing, and payroll services. In these widespread operations, the Flying J Group employs approximately 13,400 people.

4. Each of the Debtors in these chapter 11 cases is involved in or associated with the Flying J Group's core businesses of petroleum refining, supply and distribution. In particular,

Debtors Big West Oil LLC and Big West of California LLC own and operate two refineries in North Salt Lake City, Utah and Bakersfield, California, respectively, which have the combined capacity to refine over 100,000 barrels of crude oil per day. These Debtors also are responsible for purchasing and transporting crude oil in parts of California, Utah, Wyoming and Colorado. On the Petition Date and through July 2009, the Debtors owned a 700-mile common carrier pipeline from the Gulf Coast near Houston to El Paso, Texas (the "Longhorn Pipeline"). On July 27, 2009, the Court approved the sale of the Longhorn Pipeline to Magellan Midstream Partners, L.P. [Docket No. 1578] (the "Longhorn Sale").

5. The Debtors have filed these chapter 11 cases to address near-term liquidity and operational challenges brought on in part by the precipitous drop in the price of oil beginning in September of 2008 and continuing through the first quarter of 2009, as well as the recent tightening credit markets. Over the past twelve months, the Debtors have implemented a range of aggressive restructuring actions, including shutting down non-performing businesses and downsizing continuing operations, designed to improve cash flow performance and financial results. Moreover, the Debtors have aggressively marketed both core and non-core assets for sale, including and in addition to the Longhorn Pipeline, in an attempt to maximize liquidity in preparation for the Debtors' eventual exit from bankruptcy. Such assets include: (a) the Debtors' 50% equity interest in Haycock Petroleum Company;[3] and (b) substantially all the assets of Flying J Oil & Gas Inc. and its subsidiaries, each of which are wholly-owned, directly or indirectly, by Flying J (collectively, the "Sales").[4] The Debtors believe that, after these

---

[3] See *Order Authorizing the Debtors to (A) Vote Common Stock of Haycock Petroleum Company and (B) Enter into a Stock Purchase and Settlement Agreement with Sterling J. Jardine* [Docket No. 1995].

[4] See *Order Authorizing Flying J Inc. to Vote Common Stock of Flying J Oil & Gas, Inc. in Favor of Asset Sale and to Take Related Actions* [Docket No. 2423].

restructuring actions, in particular the Sales, their businesses will be fundamentally sound and profitable and that these chapter 11 cases will allow them to resolve their liquidity constraints and emerge as stronger, healthier companies.

6. The Debtors have determined that a sale of substantially all of the Debtors' retail operations to Pilot Travel Centers LLC ("Pilot") will maximize creditor recoveries and is in the best interests of the Debtors' estates. On July 30, 2009, the Court granted the Debtors the authority to obtain up to $100,000,000 of secured superpriority postpetition financing (the "DIP Facility") from Pilot and to execute a letter of intent to sell its travel center and trucking operations, corporate headquarters building and certain other assets relating to the Debtors' retail business operations to Pilot (the "Pilot Transaction").[5] The DIP Facility provides the Debtors with much needed liquidity to continue business operations pending the sale to Pilot. The transaction currently being negotiated with Pilot would pay all creditors of Flying J in full, provide value to Flying J's shareholders, allow Flying J to exit bankruptcy protection expeditiously as a stronger, healthier business and position Flying J to succeed in today's highly competitive market.

### The Claims Resolution Process

7. On April 14, 2009, the Court entered the *Order Establishing Bar Dates for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 1005] (the "Bar Date Order"). The Bar Date Order established (a) June 1, 2009 (the "Longhorn Bar Date") as the last date for all creditors other than governmental units holding a "claim" (as such term is defined in section 101(5) of the Bankruptcy Code) against Longhorn Partners Pipeline, L.P.,

---

[5] See *Final Order under 11 U.S.C. §§ 105, 362, 363 and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 Authorizing Flying J Inc. to (A) Obtain Postpetition Financing, (B) Grant Liens and Superpriority Claims, and (C) Execute a Letter of Intent Relating to the Target Assets* [Docket No. 1631].

Longhorn Pipeline Holdings, LLC and Longhorn Pipeline Inc. and (b) June 30, 2009 (the "General Bar Date" or "Governmental Bar Date," as applicable and, together with the Longhorn Bar Date, the "Bar Dates") as the last date for all creditors other than governmental units holding a claim against any Debtor that is not a Longhorn Entity and for all governmental entities to file and serve a written proof of claim for payment of any such claim. Notice of the Bar Dates was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order.

8. In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts thereof owed to their creditors.

9. The Debtors' register of claims (the "Claims Register"), prepared and provided by the Debtors' claims and balloting agent, Epiq Bankruptcy Solutions, LLC, reflects that, as of the Bar Dates, approximately 4,158 proofs of claim (collectively, the "Proofs of Claim") were filed in these chapter 11 cases asserting claims against the Debtors (collectively, the "Claims"). The Debtors and their advisors are comprehensively reviewing and reconciling all prepetition claims, including both the claims listed on the Debtors' schedules of assets and liabilities and the Claims asserted in the Proofs of Claim (including any supporting documentation) filed in these chapter 11 cases. The Debtors are also comparing the Claims asserted in the Proofs of Claim with their Books and Records to determine the validity of the asserted Claims.

10. This reconciliation process includes identifying particular categories of Claims that may be targeted for disallowance, reduction and allowance, or reclassification and allowance. To reduce the number of Claims and to avoid possible double recovery or otherwise

improper recovery by claimants, the Debtors anticipate filing several omnibus objections to such categories of Claims. This Objection is the ninth such omnibus objection filed by the Debtors.

11. On July 29, 2009, the Debtors filed the *First Omnibus Objection to Classification of Certain Claims (Non-Substantive)* [Docket No. 1617] (the "First Omnibus Objection"). On September 10, 2009, the Debtors filed the *Brief in Support of the Debtors' First Omnibus Objection to Classification of Certain Claims (Non-Substantive)* [Docket No. 1891]. On September 29, 2009, October 5, 2009 and November 11, 2009, the Court entered orders granting the relief requested in the First Omnibus Objection, as modified by agreement between the Debtors and certain claimants [Docket Nos. 2001, 2032 and 2205].

12. On August 28, 2009, the Debtors filed the *Debtors' Second Omnibus Objection to Certain (A) Duplicate Claims and (B) Amended and Superseded Claims (Non-Substantive)* [Docket No. 1846]. On September 30, 2009, the Court entered the *Order Disallowing and Expunging Certain (A) Duplicate Claims and (B) Amended and Superseded Claims (Non-Substantive)* [Docket No. 2013].

13. On September 25, 2009, the Debtors filed the *Debtors' Third Omnibus Objection to Certain (A) Duplicate Claims, (B) Amended and Superseded Claims, (C) Wrong Case Claims and (D) No Basis/No Support Claims (Non-Substantive)* [Docket No. 1987]. On October 27, 2009, the Court entered the *Order Disallowing and Expunging Certain (A) Duplicate Claims, (B) Amended and Superseded Claims, (C) Wrong Case Claims and (D) No Basis/No Support Claims as Set Forth in the Debtors' Third Omnibus Objection (Non-Substantive)* [Docket No. 2155]

14. On September 25, 2009, the Debtors filed the *Debtors' Fourth Omnibus Objection to Classification of Certain Claims (Substantive)* [Docket No. 1989]. On October 27,

DB02:9069703.1   067990.1001

2009, the Court entered the *Order Reclassifying Claims as Set Forth in the Debtors' Fourth Omnibus Objection to Classification of Certain Claims (Substantive)* [Docket No. 2160].

15. On October 23, 2009, the Debtors filed the *Debtors' Fifth Omnibus Objection to Certain (A) Duplicate Claims, (B) Amended and Superseded Claims, (C) Wrong Case Claims and (D) No Basis/No Support Claims (Non-Substantive)* [Docket No. 2144]. On November 23, 2009, the Court entered the *Order Disallowing Certain (A) Duplicate Claims, (B) Amended And Superseded Claims, (C) Wrong Case Claims And (D) No Basis/No Support Claims (Non-Substantive)* [Docket No. 2268].

16. On October 23, 2009, the Debtors filed the *Debtors' Sixth Omnibus Objection to Certain Claims Requiring Adjustment (Substantive)* [Docket No. 2146].

17. On November 20, 2009, the Debtors filed the *Debtors' Seventh Omnibus Objection to Certain (A) Duplicate Claims, (B) Amended and Superseded Claims and (C) Wrong Case Claims (Non-Substantive)* [Docket No. 2264]. On December 18, 2009, the Court entered the *Order Disallowing and Expunging Certain (A) Duplicate Claims, (B) Amended and Superseded Claims and (C) Wrong Case Claims as set forth in the Debtors' Seventh Omnibus Objection (Non-Substantive)* [Docket No. 2402].

18. On November 20, 2009, the Debtors filed the *Debtors' Eighth Omnibus Objection to Certain (A) Claims Requiring Adjustment, (B) Claims Requiring Reclassification and (C) No Liability Claims (Substantive)* [Docket No. 2396].

19. Contemporaneously herewith, the Debtors have filed the *Debtors' Tenth Omnibus Objection to Certain (A) Claims Requiring Adjustment, (B) Claims Requiring Reclassification and (C) No Liability Claims (Substantive)* [Docket No. TBD].

DB02:9069703.1        067990.1001

## The Disallowed Claims

I. **Duplicate Claims**[6]

20. As a result of their review of the Claims and their Books and Records, the Debtors have identified certain Claims that appear to be duplicates of other Claims filed against the Debtors (the "Duplicate Claims"). Lists of the Duplicate Claims are set forth in **Exhibits A-1** through **A-3** to the Proposed Order. For each Duplicate Claim, the Debtors have identified the related Claim that will remain if the Court grants the Objection (the "Duplicate Remaining Claims") under the heading labeled "Remaining Claim."

21. The Debtors believe that the Claimants holding Duplicate Claims will not be prejudiced by having their respective Duplicate Claims disallowed because the Duplicate Remaining Claims—asserting the same liability against the same Debtor in the same amount and priority as the Duplicate Claims—will remain on the Claims Register after the corresponding Duplicate Claims are disallowed. Therefore, the Debtors (a) object to the Duplicate Claims listed on **Exhibits A-1** through **A-3** to the Proposed Order and (b) seek entry of the Proposed Order disallowing the Duplicate Claims in their entirety, subject to the Debtors' further objections on any other grounds to the Duplicate Remaining Claims.

22. To the extent that a Duplicate Remaining Claim is not otherwise amended or replaced by a proof of claim later filed by the Claimant, or subject to an objection set forth herein or subsequently filed by the Debtors or another party in interest, such Duplicate Remaining Claim ultimately shall be deemed asserted against the Debtor in the case in which it was filed.

---

[6] As defined in Local Rule 3007-1(d)(1).

## II. Amended and Superseded Claims[7]

23. As a result of their review of the Claims and their Books and Records, the Debtors have identified certain Claims that appear to amend and supersede other Claims filed against the Debtors (the "<u>Amended and Superseded Claims</u>"). A list of the Amended and Superseded Claims is set forth in **Exhibits B-1** through **B-3** to the Proposed Order. For each Amended and Superseded Claim, the Debtors have identified the related Claim that will remain if the Court grants this Objection (the "<u>Superseding Remaining Claims</u>") under the heading labeled "Remaining Claim."

24. The Debtors believe that the Claimants holding Amended and Superseded Claims will not be prejudiced by having their respective Amended and Superseded Claims disallowed because their Superseding Remaining Claims—asserting the same liability in a different amount and/or different priority against the same Debtor—will remain on the Claims Register after the corresponding Amended and Superseded Claims are disallowed. Therefore, the Debtors (a) object to the Amended and Superseded Claims listed on **Exhibits B-1** through **B-3** to the Proposed Order and (b) seek entry of the Proposed Order disallowing the Amended and Superseded Claims in their entirety, subject to the Debtors' further objections on any other grounds to the Superseding Remaining Claims.

25. To the extent that a Superseding Remaining Claim is not otherwise amended or superseded by a proof of claim later filed by the Claimant, or subject to an objection set forth herein or subsequently filed by the Debtors or any other party in interest, such Superseding Remaining Claim ultimately shall be deemed asserted against the Debtor in the case in which it was filed.

---

[7] As defined in Local Rule 3007-1(d)(iii).

## III. Wrong Case Claims[8]

26. Based upon a review of the Debtors' Books and Records, the Debtors have determined that certain of the Claims asserted against the Debtors in the Proofs of Claim are objectionable because they have been asserted in the wrong case in these chapter 11 cases. The Claims set forth as "Wrong Case Claims" in **Exhibits C-1** through **C-3** to the Proposed Order are Claims (a) filed against a Debtor that has no liability for the Claims asserted, according to the Debtors' Books and Records, and (b) are properly asserted against a different Debtor (the "Wrong Case Claims"). Therefore, the Debtors object to the Wrong Case Claims pursuant to section 502(b)(1) of the Bankruptcy Code because such Claims are unenforceable against the Debtor against whom the Wrong Case Claims have been asserted. The Debtors request that the Wrong Case Claims be transferred from the "Current Case" to the "Correct Case" as noted on **Exhibits C-1** through **C-3**. If the relief sought in this Omnibus Objection is granted, the creditor that filed the Wrong Case Claim will continue to have a Claim in the "Correct Case" listed on **Exhibits C-1** through **C-3**. The Debtors do not seek an order at this time determining the validity of such Claims. Notwithstanding anything contained herein, the Debtors reserve their right to object to such Claims at a later date on any grounds whatsoever.

### Basis for Relief

27. A chapter 11 debtor has the duty to object to the allowance of any improper claim. 11 U.S.C. §§ 704(a)(5), 1106(a)(1) and 1107(a); see also In re Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis, Inc.), 922 F.2d 659, 661-62 (11th Cir. 1991). When asserting a proof of claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.

---

[8] As defined in Local Rule 3007-1(d)(ii).

In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist). Where the claimant alleges sufficient facts to support its claim, its claim is accorded *prima facie* validity. In re Allegheny Int'l, Inc., 954 F.2d at 173. A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity. Id. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. Id. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. Id. The burden of persuasion is always on the claimant. Id.

28. For the reasons discussed in the preceding section, the Disallowed Claims do not meet the standards for *prima facie* validity and should be disallowed as requested.

### Separate Contested Matters

29. Each Disallowed Claim and the objections by the Debtors to such Disallowed Claim, as addressed herein and as set forth on **Exhibits A-1** through **C-3** to the Proposed Order, constitutes a separate contested matter as contemplated by Bankruptcy Rule 9014 and Local Rule 3007-1. The Proposed Order shall be deemed a separate order with respect to each Disallowed Claim. Any stay of the Proposed Order granted pending appeal by any Claimants whose Claims are subject to the Proposed Order shall only apply to the contested matter which involves such Claimant and shall not act to stay the applicability or finality of the Proposed Order with respect to the other contested matters listed in herein or in the Order.

### Responses to Omnibus Objections

30. To contest an objection, a Claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than 4:00 p.m., prevailing Eastern Time,

12
DB02:9069703.1                                                                                                          067990.1001

on January 15, 2010 (the "Response Deadline"). Every Response must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, and served upon the following entities, so that the Response is received no later than the Response Deadline, at the following addresses:

> Kirkland & Ellis LLP
> 300 North LaSalle Street
> Chicago, Illinois 60654
> Attn: Jeffrey Gettleman and Vincente Tennerelli
>
> -and-
>
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> Attn: Pauline Morgan and Donald Bowman

31. Every Response to this Objection must contain at a minimum the following information:

(a) a caption setting forth the name of the Court, the name of the Debtors, the case number and the title of the Objection to which the Response is directed;

(b) the name of the Claimant, his/her/its claim number and a description of the basis for the amount of the Claim;

(c) the specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

(d) any supporting documentation, to the extent it was not included with the Proof of Claim previously filed with the clerk or claims agent, upon which the party will rely to support the basis for and amounts asserted in the Proof of Claim; and

(e) the name, address, telephone number and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the Claim or the Objection and who possesses authority to reconcile, settle or otherwise resolve the objection to the disputed claim on behalf of the Claimant.

13
DB02:9069703.1                                                                    067990.1001

32. If a Claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order disallowing the claim, without further notice to the Claimant or a hearing.

### Replies to Responses

33. Consistent with Local Rule 9006-1(d), the Debtors may, at their option, file and serve a reply to a Response no later than 4:00 p.m., prevailing Eastern Time, one day prior to the deadline for filing the agenda on any hearing to consider the Objection.

### Reservation of Rights

34. The Debtors hereby reserve the right to object in the future to any of the Proofs of Claim listed in this Objection or on the exhibits attached hereto on any ground, and to amend, modify or supplement this Objection, including, without limitation, to object to amended or newly-filed Claims. Separate notice and hearing will be scheduled for any such objection.

35. Notwithstanding anything contained in this Objection or the attached exhibits, nothing herein shall be construed as a waiver of any rights that the Debtors may have: (a) to bring avoidance actions under the applicable sections of the Bankruptcy Code against the holders of Claims subject to the Objection; or (b) to exercise their rights of setoff against the holders of such Claims relating to such avoidance actions.

### Notice

36. The Debtors have provided notice of this Objection via first class mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Creditors' Committee; (c) counsel for the agents for the Debtors' prepetition secured and unsecured lenders; (d) any persons who have filed a request for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (e) parties whose Claims have been objected to in this Objection. In

light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## Compliance With Local Rule 3007-1

37. To the best of the Debtors' knowledge and belief, this Objection and all exhibits to the Proposed Order comply with Local Rule 3007-1 and the Rule 3007(c) General Order. To the extent that this Objection does not comply in all respects with the requirements of Local Rule 3007-1 or the Rule 3007(c) General Order, the undersigned believes such deviations are not material and respectfully requests that any such requirement be waived.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit 1**, granting the relief requested herein and granting such other and further relief as the Court deems appropriate.

Dated: December 23, 2009
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Ryan M. Bartley
Pauline K. Morgan (Bar No. 3650)
Edmon L. Morton (Bar No. 3865)
Donald J. Bowman, Jr. (Bar No. 4383)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: 302-571-6637
Facsimile: 302-576-3320

- and -

**KIRKLAND & ELLIS LLP**
David L. Eaton (admitted *pro hac vice*)
Adam C. Paul (admitted *pro hac vice*)
Jeffrey W. Gettleman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: 312-862-2000
Facsimile: 312-862-2200

Counsel for the Debtors and Debtors in Possession