## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLYING J, INC., et al., | ) | Case No. 08-13384 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### MEMORANDUM OPINION[1]

Before the Court is the Motion of the United States (the "IRS") to Lift the Automatic Stay to Permit the Setoff of a Tax Overpayment against Another Tax Debt.  The Motion is opposed by Flying J, Inc., and certain of its affiliates (the "Debtors"). Preliminarily the parties have asked the Court to address the narrow legal issue of whether the tax refund (against which the IRS seeks to setoff its pre-petition tax claim) is a pre-petition debt for purposes of the setoff statute.  For the reasons set forth below, the Court determines that the tax refund is a pre-petition claim against which the IRS can set off its pre-petition debt under section 553.

I.   FACTUAL BACKGROUND

On December 22, 2008, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Certain of the Debtors and non debtor affiliates (the "Flying J Group")

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

filed consolidated tax returns for their tax years ending January 31, 2007, 2008 and 2009.  For the tax year ending January 31, 2009, the Flying J Group had a net operating loss ("NOL") of approximately $119 million.  On March 6, 2009, the Flying J Group filed a tentative carryback refund claim seeking to apply a portion of the NOL to offset income earned in 2007 and 2008.  The IRS seeks to offset approximately $17 million of the refund claim against pre-petition claims for excise and employment taxes and penalties that it has against certain of the Debtors.

The Debtors raised various defenses to the IRS attempt to offset, including objections to the specific amount of the claims, assertions that certain of the IRS claims are post-petition not pre-petition, contentions that the claims against specific members of the Flying J Group cannot be offset against refund claims of other members, and objections that some of the IRS claims are not valid at all.  The parties have agreed, however, to address as a preliminary matter the legal issue of whether the Flying J Group's claim for a tax refund is a pre-petition or a post-petition claim for purposes of the setoff provisions of section 553 of the Code.  The parties presented oral argument on this issue at the hearing held on December 22, 2009.  This issue is ripe for decision.

II.  <u>JURISDICTION</u>

This Court has jurisdiction over this matter, which is a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), (C), (G) & (O).


III. <u>DISCUSSION</u>

The IRS asserts that the Flying J Group's claim for a tax refund is a pre-petition claim because it seeks a refund of the taxes paid pre-petition for the 2007 and 2008 tax years.  It relies on the decision in <u>Segal v. Rochelle</u>, 382 U.S. 375 (1966), in which the Supreme Court held that a claim for an NOL carryback tax refund was property of the estate because it was "sufficiently rooted in the pre-bankruptcy past."

The Debtors rely on cases which hold that a debtor's right to a tax refund does not arise until the last day of the debtor's tax year.  <u>See, e.g.</u>, <u>United States v. White</u>, 365 B.R. 457, 460 (M.D. Pa. 2007) (holding that right to refund arises on December 31 not on the date the debtor filed his tax return); <u>In re Glenn</u>, 207 B.R. 418, 421 (E.D. Pa. 1997) (same); <u>In re Stienes</u>, 285 B.R. 360, 362 (Bankr. D.N.J. 2002) (same).  <u>Cf. In re TOUSA, Inc.</u>, 406 B.R. 421, 432 (Bankr. S.D. Fla. 2009) (holding that debtor's right to tax refund arose at 12:01 am on January 1); <u>In re Mason</u>, 79 B.R. 786, 787 (Bankr. N.D. Ill. 1987) (same).

The Debtors argue that the tax refund must be held to be a post-petition claim which arose on the last day of its tax year

3

(January 31, 2009) because it is not until that date that all
events necessary to establish the Debtors' entitlement to any
refund have arisen.  See Glenn, 207 B.R. at 422 (although the
losses may have accrued over the course of the year, "events
could occur before the end of the taxable that would completely
eradicate the taxpayer's right to a tax refund").

   The cases cited by the Debtors deal principally with the
issue of whether the tax refund arose pre or post-petition for
the purposes of determining whether it is property of the estate.
Accordingly, where a debtor files for bankruptcy after the end of
the tax year, courts have held that the tax refund related to
that taxable year is a pre-petition claim and property of the
estate.  See, e.g., White, 365 B.R. at 463-64; Glenn, 207 B.R. at
422; Stienes, 285 B.R. at 362.

> This rule can be justified in that it creates a bright-
> line test which is easily applied.  The rule also
> prevents a debtor from transforming his right to a tax
> refund into a post-petition claim merely by filing his
> tax return or claim for refund after filing the
> bankruptcy case.

In re Rozel Indus., Inc., 120 B.R. 944, 951 (Bankr. N.D. Ill.
1990).

   The instant case deals with the converse, however; here the
Debtors filed their bankruptcy case on December 8, 2008, before
the end of their tax year (January 31, 2009).  The decisions are
not uniform in concluding that where the debtor's case is filed
before the end of the tax year the resulting tax refund is a

4

post-petition claim which is not subject to setoff against pre-

petition taxes.  Compare Wilson v. I.R.S. (In re Wilson), 29 B.R.

54, 58 (Bankr. W.D. Ark. 1982) (concluding that where debtor

filed bankruptcy before end of tax year, a portion of the claim

for refund could be set off against pre-petition taxes) with In

re TMCI Elecs., 279 B.R. 552, 560-61 (Bankr. N.D. Cal. 1999)

(rejecting pro-ration and finding that the debtor did not have

any rights in refund until end of tax year for purposes of

determining if security interest in general intangibles

attached).

     The Wilson court's pro-rata application of the tax refund

was based on a belief that there "appears to be no

administratively practical alternative."  29 B.R. at 58.  It does

find support in dicta in a footnote in the Supreme Court decision

in Segal v. Rochelle.  382 U.S. at 380 n. 5 (noting Fifth

Circuit's suggestion that pro-ration might be appropriate where

debtor sought to apply tax refund to prospective years).

     The Court in TMCI rejected the idea of pro-ration of the tax

refund because it found it to be impractical when applied to

corporate earnings:

          In the business world, it is not uncommon for a
          company's earnings and losses during the course of a
          year to be erratic.  A business can enjoy several
          profitable months followed by a sudden, sizable loss
          due to a labor strike, a competitor's entry of a new
          product into the market, or any other number of
          reasons.  Thus, it is impossible to foresee what will

> happen to a corporate debtor during the remainder of the tax
> year after its bankruptcy petition is filed.

279 B.R. at 560.

The Debtors rely on <u>TMCI</u> and the other cases which apply the bright line test that a debtor has no interest in a tax refund until the end of the tax year.  Consequently, the Debtors argue that because they filed before the end of the tax year, the entire tax refund is a post-petition claim of the Debtors which is not subject to setoff by the IRS against its pre-petition claims.

As noted, however, the cases on which the Debtors rely do not deal with the unique circumstances presented here where the Debtors seek to apply losses which occurred both pre and post-petition to a pre-petition tax year in order to receive a refund. Rather, they dealt with the straight-forward issue of the date the debtor became entitled to a tax refund for a tax year in which he overpaid.  The courts' bright-line test is easily applied in the typical case where the refund relates to activities in that tax year.  It is more problematic in the case where the debtor seeks to apply losses incurred in one tax year to other tax years (either prospectively or retroactively).

The cases which have dealt with the application of NOLs to prior tax years do not support the Debtors' position.  In the seminal case of <u>Segal v. Rochelle</u>, the Supreme Court considered the issue in the context of determining whether a tax refund was

property of the estate.  In that case, the debtor's bankruptcy petition was filed on September 27, 1961.  The debtor incurred losses in 1961 which it sought to carry back and reduce taxes paid in 1959 and 1960.  The Supreme Court concluded that the debtor's claim to a refund was a pre-petition claim and therefore property of the estate "because it is sufficiently rooted in the pre-bankruptcy past."  382 U.S. at 380.  In doing so, the Court noted that the income against which the losses were sought to be applied had all been earned pre-petition and that as of the bankruptcy filing date, much of the losses to be applied had been incurred (though of course they were subject to diminution or elimination before the conclusion of the tax year).  Id. at 380. In a footnote, the Court noted that the Court of Appeals had suggested that a "proration of the refund in the ratio of the losses before and after the filing date would be indicated" but did not decide that issue because there was no suggestion in that case that the losses incurred after the filing date increased the amount of the refund.  Id. n. 5.

The Debtors argue that the Segal case is not applicable here because it dealt only with what is property of the estate and not with whether a claim could be set off under section 553.  They contend that while property of the estate is broadly defined in section 541, setoff rights under section 553 are narrowly construed.

7

However, at least one court has rejected this distinction.

> Given the fact that the, albeit inchoate, right to a tax refund was "property of the estate" at the time of the filing of the debtors' petition herein, it would be anomalous to now hold that it concurrently lacked sufficient specificity and mutuality to permit an offset by the United States under 11 U.S.C. § 553.

Wilson, 29 B.R. at 57-58 (permitting setoff of pre-petition taxes against portion of tax refund for overpayment of taxes in tax year 1980 when debtors filed chapter 13 petition on November 19, 1980).

In fact, courts have applied the holding in Segal to cases under section 553 and have concluded that where NOLs earned post-petition are carried back and applied against income earned pre-petition, they create a pre-petition refund claim which may be set off against pre-petition taxes owed to the IRS.  See, e.g., In re Wade Cook Fin. Corp., 375 B.R. 580, 597 (B.A.P. 9th Cir. 2007) (reversing bankruptcy court decision that tax refund claim was post-petition claim and suggesting the refund should be pro-rated where the bankruptcy petition was filed 11 days before the end of the tax year in which the losses occurred and the debtor sought to apply the losses to set off income in pre-petition years); In re W.L. Jackson Mfr Co., 50 B.R. 506, 508 (Bankr. E.D. Tenn. 1985) (rejecting argument that claim for refund did not arise until the post-petition filing of the tax refund claim that sought to carry back losses to pre-petition tax years).

The Court concludes that the Segal decision and the cases construing it in the context of section 553 mandate the conclusion that the Debtors' refund claim is a pre-petition claim which may be set off against the IRS's pre-petition tax claims. The Court does not believe, however, that pro-ration is mandated by the Segal decision; in fact, in Segal the Court found that the entire tax refund should be considered a pre-petition claim. The suggestion of pro-ration was made by the Court of Appeals, not the Supreme Court, and was at most dicta in the Segal case. Instead, the Court finds it significant that in this case, like the Segal case, the Debtors seek to apply the NOL to offset income that was earned entirely pre-petition (in 2007 and 2008). This leads the Court to the conclusion that "the loss-carryback refund claim in this case . . . is sufficiently rooted in the pre-bankruptcy past" that it should be considered a pre-petition claim. Segal, 382 U.S. at 380.

IV.  CONCLUSION

For the reasons set forth above, the Court determines that the tax refund is a pre-petition claim against which the IRS can set off its pre-petition debt under section 553.

An appropriate order is attached.


Dated: December 28, 2009                BY THE COURT:

                                        Mary F. Walrath
                                        United States Bankruptcy Judge