# EXHIBIT 1

# Final Sale Order

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |
| | ) | **Docket Ref. No. 2473** |

**ORDER (I) AUTHORIZING SALE[2] OF TARGET HOLDINGS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (II) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN AGREEMENTS, (III) APPROVING CONTRIBUTION AGREEMENT AND TRANSACTIONS CONTEMPLATED THEREIN, (IV) APPROVING THE CONOCOPHILLIPS AGREEMENT, AND (V) GRANTING RELATED RELIEF**

Upon consideration of the motion, dated December 30, 2009 (Docket No. 2473), of Flying J. Inc. ("FJI"), and certain of its direct and indirect affiliates and subsidiaries, the debtors and debtors in possession in the above-captioned cases (each a "Debtor," and collectively, the "Debtors"), pursuant to sections 105(a), 363 and 365, 503 and 507 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (i) authorizing the proposed contribution (the "Contribution") of certain equity interests and other assets related to the Debtors' travel center and transportation businesses (the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226), Longhorn Pipeline Inc. (0654).  The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

[2]      The transactions being approved are referred to as a "sale" for purposes of section 363 of the Bankruptcy Code (as defined below); however, for US federal income tax purposes, the transaction will be treated as a contribution under Section 721 of the US Internal Revenue Code, of 1986, as amended from time to time.

"Business") pursuant to, and as more fully described in, that certain Contribution Agreement, dated as of December 18, 2009, by and among FJI, Pacific Sunstone Inc. and Pilot Travel Centers LLC ("PTC"), annexed hereto as Exhibit A (the "Contribution Agreement," and such equity interests and other assets, as identified and defined therein, the "Target Holdings") free and clear of Claims (as defined below) and Interests (as defined below), (ii) approving the assumption and assignment of executory contracts and unexpired leases in connection with the Contribution pursuant to the Contribution Agreement and on the terms set forth herein, (iii) approving the Contribution Agreement, and the other documents, agreements and instruments to be executed or delivered by FJI in connection therewith and the transactions contemplated thereby, (iv) approving the ConocoPhillips Agreement and the other documents, agreements, and instruments to be executed or delivered by FJI in conjunction therewith and expressly authorizing the transactions contemplated thereby, and (v) granting related relief (the "Motion")[3]; and the Court having conducted the Sale Hearing to consider the approval of the Contribution, assumption and assignment of such contracts and leases and related transactions pursuant to the terms of the Contribution Agreement; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the Contribution Agreement and transactions contemplated thereby; and the Court having reviewed and considered the Motion and any objections thereto, and the arguments of counsel made, and evidence adduced, related thereto; and upon the record of the Sale Hearing held before the Court on January 26, 2009, and the full record of these cases; and it appearing that the relief requested in the Motion is in the best interest of the Debtors, their estates, their creditors and other parties

---

[3] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

B.    This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).

C.    This Court has jurisdiction over the Motion and the transactions contemplated by the Contribution Agreement and any other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.    As evidenced by the proofs of service filed with this Court: (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Contribution and the transactions contemplated by the Contribution Agreement, including notice of (x) the assumption and assignment of the Target Contracts (used herein throughout as defined in the Contribution Agreement) to which a Debtor is party on the terms set forth in the Motion and Contribution Agreement, together with the Assumption Schedule (used herein throughout as defined in the Contribution Agreement and attached hereto as <u>Exhibit B</u>) setting forth the proposed Cure Amounts (used herein throughout as defined in the Contribution Agreement), (y)

- 3 -

the Objection Deadline (used herein throughout as defined in the Contribution Agreement) to file an Assumption Objection (used herein throughout as defined in the Contribution Agreement), and (z) any Amendment Notices (used herein throughout as defined in the Contribution Agreement) on any counterparty to a Target Contract to which a Debtor is party, which was added to the Assumption Schedule after the filing of the Motion, has been provided in accordance with sections 102(1), 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and the requirements of the United States Constitution, (ii) such notice was good, sufficient and appropriate in the particular circumstances, and (iii) no other or further notice of the Motion, the Sale Hearing, the Contribution, the Contribution Agreement or the transactions contemplated thereby, including assumption and assignment of the Target Contracts to which a Debtor is party or any Cure Amounts, Objection Deadline or adequate assurance related thereto, is or shall be required.

E.     A reasonable opportunity to object and to be heard with respect to the Motion, the Contribution, the Contribution Agreement and the transactions contemplated thereby has been given to all interested persons and entities, including but not limited to the following: (i) all entities known to have expressed a bona fide interest in acquiring the Business; (ii) counsel to PTC; (iii) counsel to the Official Committee of Unsecured Creditors; (iv) the Office of the United States Trustee for the District of Delaware; (v) all parties that have requested notice pursuant to Bankruptcy Rule 2002; (vi) the counterparties to the Target Contracts to which a Debtor is party; (vii) counsel for the agents for the Debtors' prepetition and postpetition secured and unsecured lenders; (viii) all parties who are known or reasonably believed to have asserted a Claim (as defined below) or Interest (as defined below) in the Target Holdings, (ix) the Securities and Exchange Commission; (x) the Internal Revenue Service; (xi) all applicable state

attorneys general and local environmental enforcement agencies; (xii) all applicable state and local taxing authorities; (xiii) the Federal Trade Commission; (xiv) the United States Attorney General/Antitrust Division of the Department of Justice; (xv) the Environmental Protection Agency, and (xvi) the United States Attorney for the District of Utah.

F.     In addition, the Debtors have published the Notice of the Sale Hearing in the national edition of *The Wall Street Journal*. With regard to parties who have claims against FJI (including Claims and Interests against FJI's property to be transferred pursuant to the Contribution Agreement) but whose identities are not reasonably ascertainable by the Debtors, the Court finds that such publication notice was sufficient and reasonably calculated in the circumstances to reach such parties.

G.     The Target Holdings to be contributed by FJI (the "<u>Debtor Target Holdings</u>") are property of its bankruptcy estate and may be sold by FJI free and clear of any Claim (as defined in section 101(5) of the Bankruptcy Code, including without limitation, rights, rights of action, liabilities, demands, guarantees, contractual commitments, restrictions, interests, products liability claims, environmental liabilities, employee pension or benefit plan claims, retiree benefit or medical claims or claims based on any successor or transferee liability of any kind or nature whatsoever, whether arising prior or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, in equity, at law, under any law, statute, rule, regulation of the United States, any state, territory, or possession thereof or the District of Columbia, or any foreign state, or otherwise) or Interest (as defined below), because each entity with a Claim or Interest in such Debtor Target Holdings to be transferred on the Closing Date (used herein throughout as defined in the Contribution Agreement): (i) has, subject to the terms and conditions of this sale order (the "<u>Sale Order</u>"), consented or is deemed to have

consented to the Contribution; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim or Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code and, therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Claims or Interests who did not object, or who withdrew their objections, to the Motion are deemed, subject to the terms of this Sale Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. All those holders of Claims or Interests, including without limitation any party who objected to the Contribution, are, to the extent applicable, adequately protected by having their Claims or Interests, if any, attach to the proceeds of the Contribution ultimately attributable to the property against or in which they assert a Claim or Interest, subject to the terms of such Claim or Interest with the same validity, order of priority, force and effect which they now have against or in the Debtor Target Holdings, subject to any rights, claims and defenses that the Debtors or their bankruptcy estates, as applicable, may possess with respect thereto. All persons having Claims or Interests of any kind or nature whatsoever against the Debtors or the Debtor Target Holdings shall be forever barred, estopped and permanently enjoined from pursuing or asserting such Claims or Interests against, and such Claims and Interests, upon Closing, are hereby terminated and determined, deemed and declared to be unconditionally released and discharged as against, PTC or the PTC affiliates to which any such Debtor Target Holdings are transferred, or any of PTC's or such PTC affiliates' assets, property, successors, or assigns, or against any of the Debtor Target Holdings; provided, however, that such bar, estoppel and injunction shall not be effective to the extent PTC or any affiliate of PTC expressly assumes any such Claim or Interest pursuant to the Contribution Agreement (the "Assumed Liabilities").

H.     FJI and each other Debtor, as applicable, each has (1) full corporate power and authority to execute the Contribution Agreement, the ConocoPhillips Agreement, and all other documents contemplated thereby, and the transactions contemplated therein have been duly and validly authorized by all necessary corporate action of FJI, (2) all of the corporate power and authority necessary to consummate the transactions contemplated by the Contribution Agreement, and the ConocoPhillips Agreement, (3) taken all actions necessary to authorize and approve the Contribution Agreement, the ConocoPhillips Agreement, and the consummation of the transactions contemplated thereby, (4) all consents and approvals, other than those expressly provided for in the Contribution Agreement, that are required for it to consummate such transactions, and (5) full corporate power and authority to cause and direct all Contributing Affiliates (used herein throughout as defined in the Contribution Agreement) to take any and all actions necessary to consummate the transactions contemplated by the Contribution Agreement and the ConocoPhillips Agreement.

I.     Good and sufficient reasons for approval of the Contribution, the Contribution Agreement and the other transactions contemplated therein, have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors and other parties in interest because it facilitates a reasonable return on the fair value of the Target Holdings.

J.     The Debtors have demonstrated (i) good, sufficient and sound business purposes and justifications, (ii) an appropriate exercise of its business judgment and (iii) compelling circumstances by and in entering into the Contribution Agreement and contracting for the Contribution, which is other than in the ordinary course of business under section 363(b) of the Bankruptcy Code, in that, among other things, the swift consummation of the Contribution

and other transactions contemplated in the Contribution Agreement outside a plan of reorganization, is necessary and appropriate to maximize the value of the Debtors' estates. Business justifications for the Contribution and other transactions include the facts that (i) the provisions of the Contribution Agreement and related documents are fair and reasonable and provide the Debtors the opportunity for a transaction that will maximize value for the Debtors' creditors and equity security holders further the Debtors' ability to promptly exit from chapter 11; (ii) if the Debtors do not obtain approval of the Contribution, they and their respective estates (including the interests of their creditors and equity security holders therein) will suffer immediate and irreparable harm, and the Debtors' operations will be severely and adversely affected as set forth in the Motion; (iii) that entry into the Contribution Agreement and the ConocoPhillips Agreement are in the best interests of the Debtors' estates; and (iv) unless the Contribution and other transactions contemplated in the Contribution Agreement are not concluded as expeditiously as provided therein, creditors' recoveries may be severely diminished.

K.    FJI has obtained a fair and reasonable price for the Contribution of the Target Holdings.  The consideration provided by PTC pursuant to the Contribution Agreement: (i) is fair and reasonable; (ii) is in the best interests of the Estates; and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and the Uniform Fraudulent Conveyance Act (7A part 11, U.L.A. 2 (1999)) or the Uniform Fraudulent Transfer Act (7A part II, U.L.A. 66 (1999)) or any similar laws of any state or other jurisdiction whose law is applicable to the contemplated transactions.

L.    The Contribution Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors as such or similar phraseology is used and

understood under the Bankruptcy Code or under the laws (including the common law) of the United States, any state, territory, possession or the District of Columbia. Neither PTC, FJI nor their respective affiliates are entering into the transactions contemplated by the Contribution Agreement fraudulently. PTC is a third-party purchaser unrelated to the Debtors. No common identity of incorporators, directors, or stockholders exists between the PTC and FJI, or between any affiliate of PTC and any affiliate FJI. PTC is not holding itself out to the public as a continuation of FJI and/or one or more of its affiliates.

M. The Contribution Agreement was negotiated, proposed and entered into by FJI and PTC without collusion, in good faith and from arm's length bargaining positions. The Contribution and other transactions contemplated in the Contribution Agreement will provide at least as great if not greater recovery to the Debtors' creditors than would be provided by any other practical available alternative, including seeking an offer to purchase by auction. Neither the Debtors nor PTC have engaged in any conduct that would cause or permit the Contribution Agreement to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code. Specifically, PTC has not acted in a collusive manner with any person, and the price was not controlled by any agreement among any potential bidders or purchasers.

N. PTC is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. PTC will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Contribution Agreement.

O. All counterparties to the Target Contracts to which a Debtor is party served with notice of the assumption and assignment thereof, together with a statement of the proposed Cure Amounts corresponding to their respective Target Contract, who did not timely

file an objection thereto, and who are listed on Exhibit B hereto, are deemed to consent to the assumption by the Debtors of their respective Target Contracts and the assignment thereof to PTC (or its designated affiliate, as applicable), which assumption and assignment shall, in each case, be (i) subject only to payment of the Cure Amounts (if any) listed in Exhibit B and (ii) effective as of the Closing Date. The Assumption Objections of all parties to the Target Contracts that filed a timely objection to the assumption and assignment thereof were heard at the Sale Hearing, were considered by the Court, and are either overruled on the merits, subject to resolutions reached by the parties, or disposed by the Court, all as set forth herein, including with respect to the Cure Amount (if any) of each such Target Contracts. The Court finds that with respect to each such Target Contract, the applicable Cure Amount (if any) listed in Exhibit B or as otherwise addressed by this Sale Order, is appropriate, and fully satisfies the Debtors' obligations under section 365(b) of the Bankruptcy Code. The Cure Amounts (if any) listed in Exhibit B shall be paid at the Closing or as soon as practicable thereafter, except as may otherwise agreed with the counterparty thereto.

P.     PTC's promise (or that of its affiliate to which a Target Contract is to be assigned, as the case may be) to perform the obligations under each of the Target Contracts to be assigned under the Contribution Agreement as from the Closing Date shall constitute adequate assurance of future performance required pursuant to section 365(f)(2) of the Bankruptcy Code. Neither PTC nor any of its affiliates is assuming any obligation under or in connection with any of the Target Contracts arising prior to the Petition Date, whether encompassed within the relevant Cure Amount or otherwise (including, without limitation, fees or indemnification obligations for any period prior to the Petition Date).

Q.     The assumption and assignment of the Target Contracts to which a Debtor is party, and execution of the ConocoPhillips Agreement, are integral to the Contribution Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment.

R.     As set forth in Section 2.5 the Contribution Agreement, FJI has directed PTC to, and PTC may, apply a portion of the Cash Consideration (used herein throughout as defined in the Contribution Agreement) to repay the principal of all of the outstanding Loans (used herein throughout as defined in that certain Senior Secured Super-Priority Debtor-In-Possession Revolving Credit Agreement, dated as of July 31, 2009, by and between FJI, as borrower, and PTC, as lender, as the same has been and may be amended, modified, supplemented or waived from time to time in accordance with its terms (the "DIP Credit Agreement")), together with all accrued interest thereon and all other costs, expenses, fees and other amounts then due and payable by FJI under the DIP Facility (used herein throughout as defined in the Contribution Agreement) and to cash collateralize Letters of Credit (used herein throughout as defined in the DIP Credit Agreement) and Non-Business Evergreen Bonds (as defined below), with such payment and application to be considered part of the Initial Purchase Price (used herein throughout as defined in the Contribution Agreement). For the avoidance of doubt, all DIP Obligations (used herein throughout as defined in the Court's Final Order Under 11 U.S.C. §§ 105, 361, 362, 363, and 364 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors to (A) Obtain Post-Petition Financing and (B) Utilize Cash Collateral, and (II) Granting Adequate Protection to Prepetition Secured Parties, entered March 9, 2009 (Docket No. 733) (the "Final DIP Order")) represent valid and binding obligations of FJI, enforceable against FJI in accordance with the terms of the DIP Facility. The DIP Liens (used herein

- 11 -

throughout as defined in the Final DIP Order) constitute a valid, binding, perfected, continuing, enforceable and non-avoidable senior and first priority security interest in and lien on all of the property, assets or interests of FJI pledged or granted (or purported to be pledged and/or granted) under the applicable DIP Loan Documents (used herein throughout as defined in the Final DIP Order).

S.     PTC would not have entered into the Contribution Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and creditors, without all of the relief provided for in this Sale Order, including without limitation (i) the Contribution of the Debtor Target Holdings free and clear of all Claims and Interests and the protection of PTC, its affiliates (and their property) against present or future liability in connection with any such Claims or Interests, including Excluded Liabilities (as defined in the Contribution Agreement) and (ii) the direct, indefeasible and non-avoidable application by PTC of a portion of the Cash Consideration to satisfy all DIP Obligations as provided for in the Contribution Agreement.     The consummation of the transactions contemplated in the Contribution Agreement is necessary to maximize the value of the Debtors' estates for the benefit of all creditors and other parties in interest.

T.     The conditions precedent to the Contribution and Contribution Agreement could not be met or discharged absent the ConocoPhillips Agreement and the consents therein; accordingly, the ConocoPhillips Agreement and execution thereof are necessary to maximize value of the Debtors Estates for the benefit of all creditors.

U.     The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

- 12 -

V.    The entry of this Sale Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion, as it may have been modified on the record at the Sale Hearing, is granted as provided herein.

2.    All objections and responses to the Motion that have not been overruled, withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits with prejudice.

3.    PTC's offer for the Target Holdings, as embodied in the Contribution Agreement, is in the best interests of the Debtors, their creditors and their shareholders and is hereby approved.

4.    Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Contribution by FJI to PTC and its affiliates of the Target Holdings, the assumption of the Assumed Liabilities, and any and all transactions related thereto, on the terms and subject to the conditions of Contribution Agreement, and the execution of the ConocoPhillips Agreement and implementation of any and all transactions related thereto, are authorized and approved in all respects.

5.    The Contribution Agreement annexed hereto as Exhibit A, and the transactions contemplated therein, are hereby approved pursuant to sections 363(b) and 365 of the Bankruptcy Code, and FJI, as well as its affiliates (including all Contributing Affiliates), officers, employees and agents, are authorized under sections 365 and 363(b) and (f) of the Bankruptcy Code to execute and deliver, and consummate and perform all of their obligations

- 13 -

under, the Contribution Agreement, along with all additional instruments and documents that may be reasonably necessary or desirable to implement the Contribution Agreement, and to take all further reasonable actions as may be requested by PTC for the purpose of contributing and transferring the Target Holdings to PTC or as may be necessary or appropriate to the performance of the obligations contemplated by the Contribution Agreement, as soon as reasonably possible.

6.     The Debtors are hereby authorized pursuant to Bankruptcy Code sections 105(a) and 363(b) to enter into each of (i) a Guaranty of Collection among FJI, as guarantor, to and for the benefit of each of the Tranche C Term Loan Lenders (as such term is defined in the amended and restated credit agreement to be entered into among Pilot Travel Centers, LLC, a Delaware limited liability company (the "Borrower"), certain of its Subsidiaries, the lenders from time to time party thereto and Bank of America, N.A., as administrative agent (the "Credit Agreement")) holding Tranche C-2 Term Loans (as such term is defined in the Credit Agreement) with respect to the obligations of the Borrower and certain of its Subsidiaries, in respect of the Tranche C-2 Term Loans (as defined in the Credit Agreement) and (ii) a Guaranty of Collection, among FJI, as guarantor, to and for the benefit of each holder of notes issued under a note purchase agreement among the Borrower, as Issuer and the initial note purchasers party thereto with respect to the obligations of the Borrower and certain of its Subsidiaries in respect of such notes.

7.     The contribution and transfer of the Debtor Target Holdings to, and the assumption of the Assumed Liabilities by, PTC and its affiliates pursuant to the Contribution Agreement constitute legal, binding, valid and effective transfers of the Debtors' interests in the Debtor Target Holdings and the assumption by PTC and its affiliates of the Assumed Liabilities

- 14 -

as provided therein. Except as expressly permitted or as otherwise provided for in the Contribution Agreement (including in respect of Disclosed Rights (used herein throughout as defined in the Contribution Agreement)) or this Sale Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Debtors' interests in the Debtor Target Holdings shall be transferred to PTC and its affiliates, as applicable, as of the Closing Date, shall be free and clear of any Claim and any interest, mortgage, pledge, security interest, right of first refusal, option, encumbrance, lien or charge of any kind (including any conditional sale or other title retention agreement or lease in nature thereof or any change of control provision or fee related to any change of control provision in any agreement to which FJI may be a party), any filing or agreement to file a financing statement as debtor under the Uniform Commercial Code or any similar statute, or any subordination agreement in favor of another person (collectively, "Interests," and together with Claims, the "Prohibited Liabilities"), and the Prohibited Liabilities shall simultaneously attach to FJI's interest in the sale proceeds, each in the same order of priority and having the same validity, force and effect which each now has against the Debtor Target Holdings, subject to any rights, claims and defenses the Debtors or their bankruptcy estates, as applicable, may possess with respect thereto *provided, however*, that notwithstanding anything to the contrary in this Order, the Motion, the Contribution Agreement or the ConocoPhillips Agreement, Northville Product Services, L.P. shall retain defenses to any claims, demands, causes of action or otherwise that are asserted against Northville Product Services, L.P. by PTC, Debtors or any other party, to the extent such defenses are available under applicable non-bankruptcy law. Notwithstanding anything herein to the contrary, for the avoidance of doubt, in no event shall Prohibited Liabilities include (i) any Business Permitted Liens (used

- 15 -

herein throughout as the term is defined in the Contribution Agreement), (ii) Assumed Liabilities or (iii) Disclosed Rights.

8.      At the Closing, PTC is authorized and directed to apply a portion of the Cash Consideration required to be paid by PTC to indefeasibly pay (i) the principal of all then outstanding Loans, together with all accrued interest thereon, (ii) all other costs, expenses, fees and other amounts then due and payable by FJI under the DIP Facility, including all amounts owing with respect to any Letters of Credit, or surety or similar bonds, issued under the DIP Facility, which have been drawn upon, (iii) with respect to any outstanding Letter of Credit not issued in connection with the Business (x) as set forth on Section 2.5(b) of the FJI Disclosure Letter (used herein throughout as defined in the Contribution Agreement) or (y) issued after the date of the Contribution Agreement, in each case that may be terminated in accordance with its terms on its original expiry date, an amount equal to 105% of the aggregate Stated Amount (as defined in the DIP Credit Agreement) of each such outstanding Letter of Credit as Cash Collateral (as defined in the DIP Credit Agreement) in accordance with the terms of the DIP Credit Agreement, with such funds to be deposited in the Letter of Credit Cash Collateral Account (as defined in the DIP Credit Agreement) in accordance with the terms of the DIP Credit Agreement, and (iv) in relation to any surety or similar bond not issued in connection with the Business which has been issued pursuant to the DIP Credit Agreement on an "evergreen basis" (x) as set forth on Section 2.5(c) of the FJI Disclosure Letter or (y) issued after the date of the Contribution Agreement, and in each case which shall be outstanding on the Closing Date (the "Non-Business Evergreen Bonds"), an amount equal to 105% of the aggregate Stated Amount (as defined in the DIP Credit Agreement) of each outstanding Non-Business Evergreen Bond, with such funds to be deposited in the Letter of Credit Cash Collateral Account (as

- 16 -

defined in the DIP Credit Agreement). The transfer of such amounts shall be indefeasible and not be subject to avoidance, and thereafter the DIP Facility shall terminate in full, including any commitments under the DIP Facility.

9. Except as expressly set forth in the Contribution Agreement, including, without limitation, with respect to the Assumed Liabilities, PTC and its affiliates, or any of their successors or assigns, shall have no liability for any Claim, damages or other obligation of or against FJI or its affiliates related to the Target Holdings by reason of the contribution and transfer of the Target Holdings to PTC and its affiliates. PTC and its affiliates shall not be considered a successor to the Debtors, their affiliates or their bankruptcy estates, or any combination thereof. The Sale does not amount to a consolidation, merger or de facto merger of PTC and its affiliates and the Debtors, their affiliates or their bankruptcy estates, or any combination thereof. PTC and its affiliates are not merely a continuation of the Debtors, their affiliates or their bankruptcy estates, or any combination thereof, there is not substantial continuity between PTC and its affiliates and the Debtors, their affiliates or their bankruptcy estates, or any combination thereof, and there is no continuity of enterprise between PTC and its affiliates and the Debtors, their affiliates or their bankruptcy estates, or any combination thereof.

10. Without limiting PTC's obligations under the Contribution Agreement, nothing in this Sale Order shall be interpreted to deem PTC and/or its affiliates as the successor to the Debtors, their affiliates or their bankruptcy estates, or any combination thereof, under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to the Closing or for liabilities relating to off-site disposal of wastes by FJI and its affiliates prior to the Closing or relating to any property or facility owned or operated by FJI and its affiliates that is not part of the Target Holdings.

- 17 -

11.     Nothing in this Order or the Contribution Agreement releases, modifies, nullifies, or enjoins the enforcement of any Liability to a governmental unit under Environmental Law (as the term is defined in the Contribution Agreement) or environmental regulations (or any associated Liabilities for penalties, damages, cost recovery, or injunctive relief) that PTC (or a PTC affiliate to which any Debtor Target Holdings are transferred) would be subject to as the owner, lessor, or operator of the Target Real Property or other real property that PTC (or a PTC affiliate to which any Debtor Target Holdings are transferred) will own or operate pursuant to Contribution Agreement after the date of entry of this Order. Notwithstanding the foregoing sentence, nothing in this Order shall be interpreted to deem PTC (or a PTC affiliate to which any Debtor Target Holdings are transferred) to be the successors to the Debtors under any state law successor liability doctrine with respect to any Liabilities under Environmental Law or under environmental regulations for penalties for days of violation prior to the Closing Date.

12.     Nothing in this Order or the Contribution Agreement authorizes the transfer or assignment to PTC (or to a PTC affiliate to which any Debtor Target Holdings are transferred) of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without PTC (or the PTC affiliate to which any Debtor Target Holdings are transferred) complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

13.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, contribution and transfer of FJI's interests in the Debtor Target Holdings or a bill of sale transferring good and marketable title in such Debtor Target Holdings to PTC (or, to the extent applicable, its designated affiliates). Each and every federal, state, and local governmental

- 18 -

agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Contribution Agreement.

14.     Except for the Assumed Liabilities and as expressly permitted by the Contribution Agreement or by this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Prohibited Liabilities of any kind or nature whatsoever against or in FJI or FJI's interests in the Target Holdings (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, FJI, the Debtor Target Holdings, the operation of FJI's businesses before the Closing Date or the transfer of FJI's interests in the Target Holdings to PTC and its affiliates, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against such interests in the Debtor Target Holdings or PTC, its successors, assigns, or affiliates, or any of PTC's, its successors', assigns' or affiliates' property, Prohibited Liabilities, including, without limitation, defaults, breaches or claims of pecuniary losses existing as of the Contribution or by reason of the Contribution. Following the Closing Date, no holder of a Prohibited Liability against FJI shall interfere with PTC's (or its designated affiliates', as applicable) title to or use and enjoyment of the Debtor Target Holdings based on or related to such Prohibited Liabilities, the operation of the Business prior to Closing, or the transfer of the Debtor Target Holdings, or based on any actions the Debtors may take in their chapter 11 cases, and all such Prohibited Liabilities, if any, shall be, and hereby are transferred and attached to the Contribution proceeds as provided in this Sale Order, each in the same order of its respective

- 19 -

priority, and each having the same validity, force and effect which it had against the Debtor Target Holdings on the Closing Date prior to the Contribution, subject to any rights, claims and defenses the Debtors or their bankruptcy estates, as applicable, may possess with respect thereto. Except as provided in the Contribution Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, and their estates.

15.     All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of FJI to (and to cause its applicable affiliates to) contribute and transfer the Target Holdings to PTC (and its designated affiliates, as applicable) in accordance with the Contribution Agreement and this Sale Order.

16.     If any person that has filed any financing statement, mortgage, mechanic's lien, lis pendens or other document or instrument evidencing liens or security interests or other encumbrances ("Liens") with respect to the Debtor Target Holdings, shall have failed to deliver to FJI prior to the Closing Date, in proper form for filing and executed by the appropriate person or persons, termination statements, instruments of satisfaction, releases of all such Liens which such person has with respect to such Debtor Target Holdings, then FJI and/or PTC are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person appropriately limited in scope to the Debtor Target Holdings, and FJI and/or PTC are authorized to file, register or otherwise record a certified copy of the Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens on such Debtor Target Holdings as of the Closing Date.

17.     This Sale Order is and shall be effective as a determination that, all Liens, Claims and Interests (other than, for the avoidance of doubt, (i) any Business Permitted Liens, (ii) Assumed Liabilities or (iii) Disclosed Rights) shall be, and are, without further action by any person or entity, released with respect to the Debtor Target Holdings as of the Closing Date.

18.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Debtor Target Holdings, hereby are directed to surrender possession of such Debtor Target Holdings to PTC (or its designated affiliate) on the Closing Date.

19.     The Target Contracts to which a Debtor is party are deemed to be assumed by the Debtors and assigned to PTC (or, to the extent applicable, its designated affiliate(s)) as of the Closing Date, and PTC (or, to the extent applicable, its designated affiliate(s)) shall be fully and irrevocably vested with all right, title and interest of the Debtors under such Target Contracts. Payment of the applicable Cure Amount (if any) will be made on the Closing Date or as soon thereafter as is reasonably practicable in accordance with the Contribution Agreement, except as may otherwise agreed with the counterparty thereto. PTC's promise (or, to the extent applicable, that of its designated affiliate) to perform under such a Target Contract from and after the Closing Date constitutes adequate assurance of future performance within the meaning of section 365(f)(2) of the Bankruptcy Code. Upon the assumption of a Target Contract on the Closing Date, each such Target Contract shall be assigned to PTC (or its designated affiliate, if applicable) free and clear of all Claims and Interests, and such Target Contract will be in full force for the benefit of PTC (or its designated affiliate, if applicable), and notwithstanding any provision in any such Target Contract (including those of the type described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or

- 21 -

transfer. There shall be no rent accelerations, assignment fees, increases or any other fees charged to PTC (or its designated affiliates, applicable) or the Debtors as a result of the assumption or assignment of Target Contracts. No Target Contract assumed and assigned by a Debtor may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the transactions contemplated by the Contribution Agreement, and all counterparties are barred and enjoined from asserting against PTC (or its designated affiliate to which such a Target Contract is assigned) any defaults (monetary or non-monetary), breaches or claims of pecuniary losses existing as of the Closing Date or by reason of the Contribution, assumption and assignment.

20. The failure of the Debtors or PTC (or its designated affiliate, if applicable) to enforce at any time one or more terms or conditions of any Target Contract to which a Debtor is, or prior to assignment was, a party shall not be a waiver of such terms or conditions, or of the Debtors' and PTC's (or its designated affiliate's) rights to enforce every term and condition of such Target Contracts.

21. Neither PTC nor any of its affiliates is assuming any obligation under any Target Contract arising before the Closing Date, whether encompassed within the Cure Amounts to be paid by the Debtors or otherwise (including any fees or indemnification obligations for any period prior to the Closing Date).

22. This Sale Order and the terms and provisions of the Contribution Agreement shall be binding in all respects upon, and shall inure to the benefit of, PTC and its successors, the Debtors, the holders of the Assumed Liabilities, the Disclosed Rights and the Prohibited Liabilities, creditors of the Debtors and all other parties in interest in the Debtors'

cases, and any successors of the foregoing, including any trustee or examiner appointed in these cases or upon a conversion of these cases to cases under chapter 7 of the Bankruptcy Code.

23. The transactions contemplated in the Contribution Agreement are undertaken by PTC in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Contribution and the transactions contemplated in the Contribution Agreement shall not affect the validity of the Contribution to PTC or such transactions. PTC is a good faith purchaser of the Target Holdings, and is entitled to the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

24. The consideration provided by PTC for the Target Holdings under the Contribution Agreement is fair and reasonable and shall not be avoided under section 363(n) of the Bankruptcy Code.

25. With respect to the transactions consummated pursuant to this Sale Order, this Sale Order shall be sole and sufficient evidence of the transfer of title of any assets of the Debtors or their bankruptcy estates to PTC or any of its affiliates, as applicable, and the transactions consummated pursuant to this Sale Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property of the Debtors or their bankruptcy estates transferred pursuant to this Sale Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is

hereby directed to accept this Sale Order as sole and sufficient evidence of such transfer of such title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

26.     This Court retains jurisdiction to enforce and implement the terms of the Contribution Agreement, all amendments thereto, and any waivers and consents thereunder in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Target Holdings to PTC (or its designated affiliate(s)), (b) protect PTC and its affiliates and their property, including the Debtor Target Holdings, against any Prohibited Liabilities, (c) protect the Debtors against any Assumed Liabilities, (d) resolve any disputes arising under or related to the Contribution Agreement, except as otherwise provided therein, and (e) interpret, implement and enforce the provisions of this Sale Order and the Contribution Agreement and the documents related thereto, all to the maximum extent permitted by law.

27.     Nothing contained in any chapter 11 plan confirmed in these cases or the order of confirmation confirming any such chapter 11 plan, or in any order dismissing any case or converting it to a case under chapter 7 liquidation shall conflict with or derogate from the provisions of the Contribution Agreement and the ConocoPhillips Agreement, any documents or instrument executed in connection therewith, or the terms of this Sale Order, in a manner adverse to the Conoco Parties, PTC, its affiliates or their property or the Debtors' estates.

28.     The failure specifically to include any particular provisions of the Contribution Agreement or any of the documents, agreements or instruments executed in connection therewith in this Sale Order shall not diminish or impair the efficacy of such provision, document, agreement or instrument, it being the intent of the Court by the Sale Order that the Contribution Agreement and each such document, agreement or instrument be authorized and approved in its entirety.

- 24 -

29. The Contribution Agreement and any related agreements, documents or other instruments executed in connection therewith may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

30. To the extent of any conflict between or among the express terms or provisions of the Contribution Agreement and this Sale Order, the terms and provisions of this Sale Order shall govern.

31. No bulk sales law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Contribution Agreement, the Motion and this Sale Order.

32. The ConocoPhillips Agreement and the transactions contemplated therein are hereby approved pursuant to Sections 363, 365, and 105 of the Bankruptcy Code and Bankruptcy Rule 9019 and FJI, as well as its affiliates, officers, agents, and employees are authorized to execute and deliver and consummate and perform all of the obligations under and contained in the ConocoPhillips Agreement, along with all additional agreements, instruments, or documents that may be reasonably necessary to implement and perform the obligations under the ConocoPhillips Agreement, as soon as reasonably possible.

33. Notwithstanding anything contained herein, FJI shall only transfer the "Property," as defined in that certain Commercial Trust Deed, Security Agreement, Assignment of Leases and Rents, and Fixture Filing by and among FJI, National Title Agency, LLC, and GE Commercial Finance Business Property Corporation ("GECF") dated December 20, 2006 (the "Headquarters Trust Deed"), to PTC if all obligations owed (whether or not then due and

- 25 -

payable) to GECF under the Note (as defined in the Headquarters Trust Deed), the Headquarters Trust Deed and any other loan documents are paid to GECF on the Closing Date in an amount mutually agreed among PTC, FJI and GECF; *provided, however*, that if the Property is not transferred to PTC, then FJI and GECF shall retain all rights under applicable bankruptcy and non-bankruptcy law with respect to such Property, the Headquarters Trust Deed, the Note, and all related loan documents and, for the avoidance of doubt, PTC shall not be deemed to have assumed any liabilities or obligations associated therewith under the Contribution Agreement, this Sale Order, applicable law or otherwise.

34.     Notwithstanding anything contained herein or in the Contribution Agreement, upon or prior to the closing of the transactions described in the Contribution Agreement, PTC shall or cause FJI to, for any loan (each a "Loan" and collectively, the "Loans") (A) held by General Electric Capital Corporation, General Electric Capital Business Asset Funding Corporation of Connecticut, GE Business Financial Services, Inc., Bank of America, N.A., as indenture Trustee pursuant to that certain Indenture dated as of September 1, 1999, by and through GE Capital Franchise Finance Corporation ("GEFF"), as special servicer, Bank of America, N.A. as indenture Trustee pursuant to that certain Indenture dated as of April 1, 1999, by and through GEFF, Bank of America, N.A., as indenture Trustee pursuant to that certain Indenture dated as of November 1, 2000, by and through GEFF, as special servicer, CEF Funding L.L.C. or Mass Mutual Asset Finance LLC and (B) pursuant to which the borrower is Free II, LLC, Free V LLC, Flying J Real Estate Enterprises, Inc., FJSD Real Estate, LLC, FJI Plaza Company LLC, FJI Plaza Company III, LLC, FJI Plaza Company IV, LLC, CFJ Plaza Company I LLC, CFJ Plaza Company II LLC, or CFJ Plaza Company III LLC on or before the Closing Date, by wire transfer of immediately available funds, pay the outstanding principal

balance of the such Loans, all accrued but unpaid interest due on such Loans, all fees and costs, including reasonable attorneys fees and costs, all sums advanced by the lenders or holders of such Loans under the documents evidencing such Loans, and all prepayment premiums and yield maintenance amounts payable under the documents evidencing such Loans as a result of the repayment of such Loans on the Closing Date, in all cases to the extent such amounts are specified as obligations of the borrower in the respective Loan documents provided, however, the Loan secured by Unit 0520192 shall not be subject to the foregoing. Notwithstanding anything to the contrary in the foregoing, with respect to both Loans held by Mass Mutual Asset Finance LLC ("MMAF"), PTC acknowledges and agrees that the borrower's obligations under each of those Loans includes: (a) the outstanding principal balance; (b) all accrued but unpaid interest due on the Loans; (c) the prepayment fees calculated in accordance with the formula set forth in the notes evidencing that Loans; and (d) the hedge breakage and all other reasonable fees and costs on the Loans, including but not limited to all reasonable attorneys fees and costs, in all cases to the extent such amounts are specified as obligations of the borrower in the respective Loan documents. FJI shall advise MMAF on or before ten (10) days prior to the Closing Date as to any dispute regarding payoff amounts due asserted by MMAF.

35.    The stays provided for in Bankruptcy Rules 6004(h) and 6006(d), and the provisions of Rule 6006(f)(5) and (6), are hereby waived or otherwise do not apply, and this Sale Order shall be effective immediately upon its entry.

36.    With respect to any objections which are being adjourned, but only to the extent they objected to the Debtors' ability to assume or assign a particular contract, nothing in this Sale Order shall be deemed to approve the assumption or assignment of such particular contracts, absent agreement of the parties or further order of the Court.

37.    Notwithstanding any of the foregoing provisions, to the extent that TON Services, Inc.'s ("TON") assets are being transferred, such assets are not being transferred free and clear of any otherwise valid claim or interest of Universal Service Administrative Company ("USAC") and all such rights of USAC against TON are expressly preserved.

Dated: _____, 2010
        Wilmington, Delaware

_____
The Honorable Mary F. Walrath
United States Bankruptcy Judge