# <u>EXHIBIT D</u>

## Bidding Procedures

# BIDDING PROCEDURES

These Bidding Procedures set forth the process by which Flying J Inc. ("FJI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") are authorized to conduct a sale (the "Sale") by auction (the "Auction") of the refinery located in Bakersfield, California, and certain assets associated therewith (the "Acquired Assets") of Big West of California, LLC ("BWOC").

These Bidding Procedures were approved by order dated [____], 2010 (the "Bidding Procedures Order") of the United States Bankruptcy Court for the District of Delaware (the "Court"), in which the Debtors' jointly administered chapter 11 bankruptcy cases are pending, pursuant to the motion of the Debtors (the "Bidding Procedures Motion") for an order, among other things: (a) establishing bidding and notice procedures and bid protections in connection with the Sale; (b) approving the form and manner of the sale notice; (c) scheduling a sale hearing date; and (d) approving procedures for noticing and determining cure amounts in connection with the assumption and assignment of executory contracts and unexpired leases. Any party desiring to obtain a copy of the motion to approve the Sale (the "Sale Motion") may do so by contacting Debtors' counsel at Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654 Attn.: Jeffrey Gettleman, Esq.

The refinery located in Bakersfield, California, and certain assets associated therewith of BWOC are presently subject to purchase by Paramount Petroleum Corporation (the "Purchaser") pursuant to that certain Asset Purchase Agreement, dated as of February 2, 2010, by and between BWOC and the Purchaser (as amended, modified, supplemented or waived from time to time, the "Purchase Agreement").

A more complete listing of the assets available for inclusion in the Sale are set forth in the Purchase Agreement, copies of which are available at the following website: http://chapter11.epiqsystems.com/fji. Any interested bidder should contact Peter Bennett at Deutsche Bank Securities Inc., 60 Wall Street, 45th Floor, New York, NY 10005.

Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in the Purchase Agreement or, to the extent not defined therein, the Sale Motion.

## 1. Bidding Process

These Bidding Procedures set forth, among other things, the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder(s) and Back-Up Bidder (as defined below), and Court approval thereof (collectively, the "Bidding Process"). Any party who wishes to participate in the Bidding Process must submit a bid in accordance with the procedures set forth herein.

## 2. Confidentiality Agreements

Any prospective bidder that wishes to receive information regarding the Acquired Assets must execute a confidentiality agreement, in form and substance satisfactory to the Debtors (a "Confidentiality Agreement"). Upon execution and delivery of a Confidentiality Agreement,

the Debtors may, in their discretion, provide information to any such prospective bidder, schedule management presentations and make management otherwise available to selected bidders, in each case prior to the Bid Deadline.

## 3. Determination of "Qualified Bidder" Status

In order to be a Qualified Bidder (as hereinafter defined) for the Acquired Assets, a bidder must deliver the Qualified Bid Required Documents (as defined below) **so as to be received by the parties specified in Section 5 hereof by not later than 4:00 p.m. (prevailing Eastern Time) on March 16, 2010 (the "Bid Deadline")**.

When used herein, "Qualified Bid Required Documents" means:

(a) a letter, executed by such bidder, (i) setting forth the cash purchase price proposed to be paid by such bidder for the Acquired Assets proposed to be acquired by such bidder, (ii) stating that the bid submitted by such bidder is binding and irrevocable until the conclusion of the Sale Hearing, (iii) stating that such bid and the agreements, exhibits and schedules referred to in clause (b) immediately below, have been duly authorized, executed and delivered by such bidder and that no further internal or equityholder approvals are required with respect to any such matter, (iv) setting forth each regulatory and third-party approval required by such bidder for the consummation of the purchase and sale of the Acquired Assets and the time period within which such bidder expects to receive such regulatory and third-party approvals (and, in the case that any such regulatory or third-party approval is expected to take more than 30 days after execution and delivery of a purchase and sale agreement, what actions such bidder is prepared to take to ensure prompt receipt of such approval(s)) and (v) confirming that the bid submitted by such bidder is not conditioned on receipt of financing or the outcome of any due diligence investigation regarding the Acquired Assets;

(b) a clean asset purchase agreement, duly authorized, executed and delivered by such bidder, for the Acquired Assets consistent in all material respects with clause (a) immediately foregoing, together with all exhibits and schedules to each of the foregoing (the "Modified Purchase Agreement") and a marked Modified Purchase Agreement reflecting the variations from the Purchase Agreement and each exhibit and schedule thereto (with it being understood that the Modified Purchase Agreement for each bidder shall show with precision any changes to the assets, contracts, leases and liabilities to be assumed or purchased by such bidder relative to the Purchaser);

(c) a proposed purchase price greater than the aggregate consideration offered by the Purchaser pursuant to the Purchase Agreement by at least $1,250,000 (which amount equals the sum of the Break-Up Fee and $250,000).

(d) to the extent that the bidder is proposing to pay for the Acquired Assets, in whole or in part, from cash on its balance sheet, recent financial information and confirmation that such bidder's cash position has not materially decreased, nor is

expected to materially decrease, from that reflected in such recent financial information and to the extent that such bidder is proposing to pay for the Acquired Assets with funds from any third-party financing source (whether debt or equity), includes copies of written firm commitments for such financing (including, without limitation, any existing credit facility) executed by all parties thereto;

(e) does not request or entitle the bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment; and

(f) includes a cash deposit in the amount of 10% of the bidder's cash purchase price set forth in the Modified Purchase Agreement.

Subject to other bids being deemed Qualified Bids in accordance with this Section 3, any bid meeting the above requirements shall constitute a "Qualified Bid" and the bidder submitting such Qualified Bid referred to herein as a "Qualified Bidder". For all purposes of the Bidding Process, the Purchaser shall be deemed a Qualified Bidder and the Purchase Agreement shall be deemed a Qualified Bid.

Upon submission of a bid prior to the Bid Deadline (and whether or not such bid is ultimately determined to be a Qualified Bid), the bidder shall, at the request of the Debtors, include information that, in the discretion of the Debtors after consultation with the counsel and financial advisors for the Creditors' Committee and the lenders party to that certain Credit Agreement dated as of March 15, 2005, as amended, and that certain Term Loan Credit Agreement dated as of May 15, 2007, as amended (the "Secured Lenders"), evidences the bidder's financial wherewithal and operational ability to consummate the transaction proposed by its bid, including, without limitation, such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtors to allow the Debtors to serve within one business day after such receipt of such information on counter-parties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information.

The Debtors reserve the right to (a) solicit bids for the Acquired Assets, (b) subject to execution and delivery by a bidder of a Confidentiality Agreement, provide information regarding the Acquired Assets and liabilities related thereto, (c) discuss the terms of any bid submitted, and (d) request clarifications or resubmission of any bid, and upon receipt of any such clarification or resubmission, to deem a bid as a Qualified Bid even if it was not such a Qualified Bid prior to such clarification or resubmission.

The Debtors, in consultation with the Creditors' Committee, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than 4:00 p.m. on March 17, 2010 (the "Qualified Bidder Notification Deadline"). The Qualified Bidder Notification Deadline may be extended by the Debtors, in their sole discretion, at any time and from time to time; provided that, if the Qualified Bidder Notification Deadline is extended, the Debtors will promptly notify each bidder that has submitted a bid prior to the pre-extension deadline time of such extension. The Debtors will consult with the Secured Lenders to the same extent that they are required to consult with the Creditors' Committee under the Bidding Procedures, but only if the Secured Lenders are not

active bidders at the applicable time. The Debtors will consult with the Secured Lenders to the same extent that they are required to consult with the Creditors' Committee under these Bidding Procedures (including, for the avoidance of doubt, pursuant to Sections 6, 8 and 9 hereof) but only to the extent that the Secured Lenders are not active bidders at the applicable time.

## 4. Aggregate Bids

Persons who collectively are referred to as a "Qualified Bidder" need not be Affiliates and need not act in concert with one another, and the Debtors may aggregate separate bids from unaffiliated persons to create one "Qualified Bid" from one or more "Qualified Bidders"; provided, however, that all bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

## 5. Deadline for Submission

All bids (including any credit bid submitted by the Secured Lenders) must be submitted to the following so as to be received **by the Bid Deadline**:

(a) Flying J Inc., 1104 Country Hills Drive, Ogden, UT 84403; Attn.: Brett H. Bailey;

(b) Investment Banker and Financial Advisor to the Debtors: Deutsche Bank Securities Inc., 60 Wall Street, 45th Floor, New York, NY 10005; Attn: Peter Bennett;

(c) Co-Counsel to the Debtors: Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: Adam C. Paul;

(d) Co-Counsel to the Debtors: Young Conaway Stargatt & Taylor, LLP, The Brandywine Building 1000 West Street, Wilmington, Delaware 19801; Attn.: Pauline K. Morgan;

(e) Counsel to the Official Committee of Unsecured Creditors: Pachulski Stang Ziehl & Jones LLP, 150 California Street San Francisco, California 94111; Attn.: Debra Grassgreen; and

(f) Counsel to the Secured Lenders: (i) Brown Rudnick LLP, City Place 1, 185 Asylum Street, Hartford, Connecticut 06103; Attn: Howard L. Siegel; and (ii) Moore & VanAllen, Suite 4700, 100 North Tryon Street, Charlotte, NC 28202-4003; Attn: Alan W. Pope.

## 6. Evaluation of Qualified Bids

Prior to the Auction, the Debtors shall determine, in their reasonable business judgment after consultation with the Debtors' financial and legal advisors and the financial and legal advisors for the Creditors' Committee, which of the Qualified Bids is likely to result in the highest or otherwise best offer for the Acquired Assets (the bid so selected, being referred to herein as the "Starting Bid"). Subject in all respects to the requirements of the Bankruptcy Code,

and all rules and regulations (including, without limitation, local rules) promulgated pursuant thereto, and the Bidding Procedures Order, in evaluating whether a Qualified Bid for the Acquired Assets is the highest or otherwise best offer, such bid will be valued by the Debtors, in consultation with its financial and legal advisors and the legal and financial advisors for the Creditors' Committee, based on numerous factors, including, without limitation, the net value and recovery to the Debtors and their stakeholders (including, without limitation, after giving effect to any purchase price adjustments provided for in such bid), the amount and availability of distributions to the Debtors and their creditors as a result of the proposed transaction, the assets and liabilities included or excluded from the bid (and the resulting effect on value and distributions), the number, type and nature of any changes to the Purchase Agreement requested by each bidder (and whether any such changes are favorable or not to the Debtors) and the certainty and timing of closing the transactions contemplated by such Qualified Bid.

**7. No Qualified Bids**

If no Qualified Bids other than the Purchase Agreement are submitted by the Bid Deadline, the Debtors shall cancel the Auction, shall deem the Purchase Agreement to be the Successful Bid, and shall seek authority to consummate the sale contemplated in the Purchase Agreement with the Purchaser.

**8. Auction**

If the Debtors receive at least one Qualified Bids other than the Purchase Agreement by the Bid Deadline, the Debtors shall conduct an auction (the "<u>Auction</u>") with respect to the Acquired Assets. The Auction will take place starting at **9:00 a.m. (prevailing Eastern Time) on March 19, 2010** at Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, or at such other place, date and time as may be designated in writing by the Debtors.

Other than the Debtors, only (i) the Purchaser and its advisors, (ii) parties and their advisors that have been advised that they have submitted a Qualified Bid, (iii) counsel and financial advisors to the Creditors' Committee and the Secured Lenders, (iv) counsel and financial advisors for the Secured Lenders, and (v) other parties specified in the Bidding Procedures Order will be permitted to participate in and/or make any statements on the record at the Auction.

Subject to Section 13 hereof, the Auction shall be governed by the following procedures:

(i) Only Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

(ii) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale;

(iii) The Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative;

(iv) Prior to the Auction, the Debtors shall provide copies of the Starting Bid to all Qualified Bidders which have informed the Debtors of their intent to participate in the Auction;

(v) All bids will be made and received in one room, on an open basis, and all other Qualified Bidders will be entitled to be present for all bidding, and all material terms of each bid will be fully disclosed to all other Qualified Bidders; provided that the Debtors shall have the right, once a Qualified Bidder has fully disclosed its bid, to meet with such Qualified Bidder privately in a separate break-out room;

(vi) Qualified Bidders may then submit successive bids with the value to the Debtors, as determined by the Debtors in their reasonable business judgment after consultation with the legal and financial advisors for the Creditors' Committee, of at least $250,000 more than the bid at which the Auction commenced and then continue in minimum increments of at least $250,000 higher than the previous bid;

(vii) The Auction will be conducted in a manner as reasonably determined by the Debtors;

(viii) All Qualified Bidders shall have the right to submit additional bids and make additional modifications to their respective Modified Purchase Agreements at the Auction, provided that any such modifications to the Modified Purchase Agreements, on an aggregate basis and viewed in whole, shall not be less favorable to the Debtors than any prior bid by such party or the preceding bid;

(ix) The Debtors will, from time to time, in an open forum, advise Qualified Bidders participating in the Auction of their determination as to the terms of the then highest or otherwise best bid;

(x) The Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by one or more of the Modified Purchase Agreements as further amended during the Auction process and any further information that the Debtors believe that they reasonably need to better understand the terms of a Qualified Bidder's bid; and

(xi) Any bid submitted by the Purchaser at the Auction will include a credit equal to $1,000,000, which equals the amount of the Break-Up Fee.

**9. Selection of Successful Bidder**

The concluding date and time of the Auction shall be stated on the record. At the conclusion of the foregoing steps in the Auction, or as soon thereafter as practicable, the Debtors,

in consultation with counsel and financial advisors for the Creditors' Committee, will: (i) review each Qualified Bid, and consider each Qualified Bid, in each case as updated through the conclusion of the Auction, on the basis of, among other considerations, the same considerations used by the Debtors in determining the Starting Bid, and (ii) identify the highest or otherwise best offer(s) for the Acquired Assets received at the Auction (each, a "Successful Bid" and each party making such a bid, a "Successful Bidder"), as well as identifying the Back-up Bidder (as defined below). The Successful Bidder(s) shall have such rights and responsibilities as set forth in the applicable purchase and sale agreement for such Successful Bidder as agreed at the Auction.

Within one calendar day after conclusion of the Auction, the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made. The results at the close of the Auction shall be final and no additional bids will be accepted after the close of the Auction.

## 10. Sale Hearing

The Successful Bid will be subject to approval by the Court. The Debtors' presentation of a particular bid to the Court for approval does not constitute the Debtors' acceptance of the bid. The Debtors will be deemed to have accepted a bid only when the bid has been approved by the Court at hearing (the "Sale Hearing") to approve the sale of the Acquired Assets to the Successful Bidder in accordance with the Bidding Procedures. Please be advised that the Sale Hearing will take place before the **Honorable Mary F. Walrath in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom 4, Wilmington, Delaware 19801 at 11:30 a.m. (prevailing Eastern Time) on March 23, 2010**, or at such time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other by announcement of the adjournment in open court on the date scheduled for the Sale Hearing. The Successful Bidder and the Backup Bidder (as defined below), if any, should be represented by counsel at the Sale Hearing.

## 11. Failure to Consummate Purchase

If an Auction is conducted, the party with the next highest or otherwise best Qualified Bid, as determined by the Debtors in the exercise of their business judgment at the Auction, shall be required to serve as a back-up bidder (the "Back-up Bidder"). If the Back-up Bidder is the Purchaser, the bid of the Purchaser shall remain open and irrevocable in accordance with the terms of the Purchase Agreement. All other Back-up Bidders shall keep their bids open and irrevocable until the earlier of 5:00 p.m. prevailing Eastern time on the date (the "Outside Back-up Date") that is 180 days after the Sale Hearing or the closing of the sale transaction with the buyer approved at the Sale Hearing (the "Buyer"). Following the Sale Hearing, if the Buyer fails to consummate an approved Sale because of a breach or failure to perform on the part of such Buyer, the Back-up Bidder will be deemed to have the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the Sale with the Back-up Bidder without further order of the Court. In such case, the defaulting Buyer's deposit, if any, shall be forfeited to the

Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Buyer.

## 12. Return of Deposits

Notwithstanding anything to the contrary in the Bidding Procedures, the Deposit (as defined in the Purchase Agreement) made by the Purchaser shall be returned to the Purchaser in accordance with the terms of the Purchase Agreement.

Except as otherwise provided in the Bidding Procedures, all other deposits shall be returned to each bidder not selected by the Debtors as the Buyer or the Back-up Bidder by no later than the fifth business day following the conclusion of the Auction; provided, however, that the interest on such deposit may not be returned until the second business day of the month following such termination. The deposit of the Back-up Bidder shall be held by the Debtors until the earlier of 24 hours after (i) the closing of the sale transaction with the Successful Bidder and (ii) the Outside Back-up Date.

## 13. Reservation of Rights

The Debtors reserve the right, as they may reasonably determine to be in the interests of their estates, to: (a) determine which bidders are Qualified Bidders; (b) determine which bids are Qualified Bids; (c) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (d) reject any bid that is inadequate or insufficient or for any other reason; (e) refuse to execute a Confidentiality Agreement with, or provide information or access to, any prospective bidder; (f) impose additional terms and conditions with respect to any or all potential bidders (other than the Purchaser); or (g) adjourn or cancel the Auction or Sale Hearing in open court without further notice. Notwithstanding the foregoing, the Debtors may not impair or modify the rights and obligations of the Purchaser under the Purchase Agreement or the right of the Purchaser to credit the Break-Up Fee as part of any subsequent bid for the Acquired Assets.

# <u>EXHIBIT E</u>

## Sale Notice

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF (A) BID DEADLINE, AUCTION AND SALE HEARING IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF BIG WEST OF CALIFORNIA, LLC AND (B) THE DEBTORS' INTENT TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE PROPOSED SALE**

NOTICE IS HEREBY GIVEN, as follows:

1. Flying J Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), seek to sell substantially all of the assets of Big West of California, LLC (the "Acquired Assets") including, but not limited to, certain executory contracts and unexpired leases belonging to certain of the Debtors, to Paramount Petroleum Corporation as buyer (collectively with its designated affiliate or affiliates, the "Buyer")[2] and Alon USA Energy, Inc. as guarantor (the "Guarantor") or the Successful Bidder[3] to be identified pursuant to the Bidding Procedures.

2. On February 2, 2010, the Debtors filed a motion (the "Motion")[4] pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226), Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

[2] As further provided in the Purchase Agreement, Paramount Petroleum Corporation, as the Buyer, and its affiliate, Alon Energy USA, Inc., may at any time prior to closing of the Sale, substitute one or more entities affiliated with Alon and Paramount as the purchaser of the Acquired Assets in the Sale.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

[4] A copy of the Motion may be obtained from the Debtors' notice and claims agent, Epiq Bankruptcy Solutions LLC, (a) at its website at http://chapter11.epiqsystems.com/fji or (b) by writing (sent via first class mail) to Epiq
(Continued…)

rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking approval of, among other things: (a) bidding procedures that govern the manner in which the Acquired Assets are to be sold (the "Bidding Procedures"); (b) scheduling of certain dates and deadlines, including an Auction, Sale Hearing and receipt of Modified Purchase Agreements; (c) the form and manner of the sale and related publication notices; and (d) procedures for determining Cure Amounts and adequate assurance of future performance with respect to Assigned Contracts [Docket No. ____].

3. On [___________], 2010, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. ___] (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures, and setting key dates and times relating to the Sale of the Acquired Assets. As set forth in the Bidding Procedures, the sale of the Acquired Assets is subject to competing offers from any prospective qualified bidder. ***All interested potential bidders should carefully read the Bidding Procedures***. To the extent there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

4. All interested parties are invited to make offers to purchase the Acquired Assets in accordance with the terms of the Bidding Procedures and Bidding Procedures Order, copies of which may be obtained from the Debtors' notice and claims agent, Epiq Bankruptcy Solutions LLC, (a) at its website at http://chapter11.epiqsystems.com/fji; (b) by calling Epiq at (646) 282-2500; or (c) by written request (sent via first class mail) to (i) Epiq Bankruptcy Solutions, LLC, Attn.: Flying J Inc., FDR Station, P.O. Box 5082, New York, New York 10150; (ii) Deutsche Bank Securities Inc., 60 Wall Street, 45th Floor, New York, NY 10005, Attn: Peter Bennett (Peter.Bennett@db.com); or (iii) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: Jeffrey W. Gettleman, Esq., Facsimile: (312) 862-2200 (counsel to the Debtors) (jeffrey.gettleman@kirkland.com).

5. The Debtors have been marketing and will continue to market the Acquired Assets in advance of the Auction. The deadline to submit bids for the Acquired Assets (the "Bid Deadline") is **March 16, 2010 at 4:00 p.m. (prevailing Eastern Time)**. Pursuant to the Bidding Procedures Order, if the Debtors receive, by the Bid Deadline, one or more bids that meets the qualification standards set forth in the Bidding Procedures (a "Qualified Bid"), the Debtors will conduct an auction (the "Auction") for the sale of the Acquired Assets on **March 19, 2010 at 9:00 a.m. (prevailing Eastern Time)**. Other than the Debtors, only (a) the Buyer and the Guarantor and their respective advisors, (b) parties that have submitted a Qualified Bid by the Bid Deadline, and their respective advisors, (c) counsel to the Official Committee of Unsecured Creditors, (d) counsel for the Secured Lenders and (e) other parties specified in the Bidding Procedures Order will be permitted to participate in or make any statements on the record at the Auction. The Auction will be conducted at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022. The Debtors reserve the right to change the date or the place of the Auction, and will notify Qualified Bidders if they do so.

Bankruptcy Solutions, LLC, Attn.: Flying J Inc., FDR Station, P.O. Box 5082, New York, NY 10150 or (c) by calling (646) 282-2500.

6. The Bidding Procedures Order further provides that a Sale Hearing will be held to confirm the results of the Auction, approve the sale of the Acquired Assets to the successful bidder at the Auction (the "Successful Bidder"), and approve the other relief requested in the Motion, on **March 23, 2010 at 11:30 a.m. (prevailing Eastern Time)** before the Honorable Mary F. Walrath United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 or at such time thereafter as counsel may be heard. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

7. Pursuant to the Motion and section 365 of the Bankruptcy Code, the Debtors request authority to assume and assign the Assigned Contracts to the Successful Bidder, and that upon such assumption and assignment the Debtors shall be relieved of any liability under the Assigned Contracts arising after the closing of the Sale. Attached hereto as **Exhibit 1** is a schedule of the Assigned Contracts that may be assumed and assigned under the Purchase Agreement, together with the proposed Cure Amounts relating to each Assigned Contract.

8. Any counterparty to an Assigned Contract that wishes to obtain adequate assurance information regarding bidders that will or may participate at the Auction must notify the Debtors in writing, c/o Jeffrey W. Gettleman, Esq. (jeffrey.gettleman@kirkland.com), Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, on or before 4:00 p.m. (prevailing Eastern Time) on March 9, 2010 (the "Request for Adequate Assurance"). The Request for Adequate Assurance must include an e-mail and/or address to which a response to such information request can be sent.

9. If a counterparty to an Assigned Contract does not (a) properly object to the applicable Cure Amounts on or before 4:00 p.m. (prevailing Eastern Time) on March 16, 2010 (the "Cure Objection Deadline"), (b) timely submit a request for Adequate Assurance pursuant to paragraph 8 above, (c) set forth a specific default in any Assigned Contract and (d) claim a specific monetary amount that differs from the amount (if any) specified by the Debtors in the Sale Notice, the Court shall enter an order deeming the amount set forth in the Sale Notice to be the actual Cure Amount payable under section 365 of the Bankruptcy Code and forever barring such counterparty from objecting to the Cure Amounts and from asserting any additional cure or other amounts against the Debtors, their estates, and the Qualified Bidders with respect to its Assigned Contract.

10. If a counterparty to an Assigned Contract timely submits a Request for Adequate Assurance, the Debtors shall serve such counterparty with any non-confidential information relating to adequate assurance received by the Debtors as provided in the Bidding Procedures by electronic mail or overnight delivery on or before March 12, 2010. A counterparty to an Assigned Contract that timely submits a Request for Adequate Assurance shall have until 4:00 p.m. (prevailing Eastern Time) on March 16, 2010 by which to file an objection to adequate assurance of future performance by bidders.

11. Objections, if any, to the proposed assumption and assignment of the Assigned Contracts, including, but not limited to, objections relating to the Cure Amount and/or adequate assurances of future performance, must (a) be in writing, (b) state with specificity the

nature of such objection and the alleged Cure Amount (with appropriate documentation in support thereof), (c) comply with the Bankruptcy Rules and the Local Bankruptcy Rules of this Court, and (d) be filed with this Court and served upon (so as to be received by) the following parties (the "Objection Notice Parties") on or before the Cure Objection Deadline:

(a) Flying J Inc., 1104 Country Hills Drive, Ogden, UT 84403; Attn.: General Counsel;

(b) Co-Counsel to the Debtors: Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654-6636; Attn.: Adam C. Paul; Richard J. Campbell;

(c) Co-Counsel to the Debtors: Young Conaway Stargatt & Taylor, LLP, The Brandywine Building 1000 West Street, Wilmington, Delaware 19801; Attn.: Pauline K. Morgan;

(d) Investment Banker and Financial Advisor to the Debtors: Deutsche Bank Securities Inc., 60 Wall Street, 45th Floor, New York, NY 10005; Attn: Peter Bennett;

(e) Counsel to the Official Committee of Unsecured Creditors: Pachulski Stang Ziehl & Jones LLP, 150 California Street San Francisco, California 94111; Attn.: Debra Grassgreen;

(f) Counsel to Longhorn Pipeline Investors: Stevens & Lee, P.C., 1105 North Market Street, Wilmington, Delaware 19801; Attn: John D. Demmy;

(g) Counsel to Paramount Petroleum Corporation & Alon USA Energy, Inc.: Jones Day, 2727 North Harwood Street, Dallas, Texas; Attn.: Greg Gordon;

(h) Paramount Petroleum Corporation c/o Alon USA Energy, Inc., 7616 LBJ Freeway, Suite 300, Dallas, Texas 75251; Attn.: General Counsel;

(i) The United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801; Attn.: T. Patrick Tinker; and

(j) Any other parties who have timely filed requests for notice under Bankruptcy Rule 2002 or who are entitled to notice under any case management procedures order, if any, entered in these chapter 11 cases prior to the mailing deadline.

12. The Sale Hearing will be conducted on **March 23, 2010 at 11:30 a.m. (prevailing Eastern Time)**. The Debtors will seek the entry of an order of this Court at the Sale Hearing approving and authorizing the Sale to the Successful Bidder that submits the highest or best offer at the Auction, on terms and conditions consistent with the Purchase Agreement, as may be amended and modified. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale

Hearing. At the Sale Hearing, the Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these chapter 11 cases. Objections, if any, to the relief requested in the Motion must: (a) be in writing and filed with this Court; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be served upon (such as to be **received by**) the Objection Notice Parties by **March 16, 2010 at 4:00 pm. (prevailing Eastern time)**.

13. Failure of any person or entity to file an objection on or before the Cure Objection Deadline shall be deemed to constitute consent to the Sale of the Acquired Assets to the Successful Bidder and the other relief requested in the Motion, and be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, the Auction, the sale of the Acquired Assets, or the Debtors' consummation and performance of the terms of the asset purchase agreement entered into with the Successful Bidder (including, without limitation, the sale of the Acquired Assets and Assigned Contracts, free and clear of all Encumbrances other than Permitted Liens, as defined in the Purchase Agreements), if authorized by the Court.

14. Notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.

Dated: [____________], 2010
Wilmington, Delaware

**YOUNG CONAWAY**
**STARGATT & TAYLOR, LLP**
Pauline K. Morgan (Bar No. 3650)
Edmon L. Morton (Bar No. 3865)
Donald J. Bowman, Jr. (Bar No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6637
Facsimile: (302) 576-3320

- and -

**KIRKLAND & ELLIS LLP**
David L. Eaton (admitted *pro hac vice*)
Adam C. Paul (admitted *pro hac vice*)
Jeffrey W. Gettleman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel for the Debtors

# EXHIBIT 1

## Assigned Contracts

# <u>EXHIBIT F</u>

## Publication Notice

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| Debtors. | ) | Jointly Administered |

**NOTICE OF PUBLIC AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE** that Flying J Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), seek to sell substantially all of the assets of Big West of California, LLC (the "Acquired Assets") including, but not limited to, certain executory contracts and unexpired leases belonging to certain of the Debtors, to Paramount Petroleum Corporation as buyer (collectively with its designated affiliate or affiliates, the "Buyer") and Alon USA Energy, Inc. as guarantor (the "Guarantor") or the Successful Bidder[2] to be identified pursuant to the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that on February 2, 2010, the Debtors filed a motion (the "Motion") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking approval of, among other things: (a) bidding procedures that govern the manner in which the Acquired Assets are to be sold (the "Bidding Procedures"); (b) scheduling of certain dates and deadlines, including an Auction Date, Sale Hearing and receipt of Modified Purchase Agreements; (c) the form and manner of the sale and related publication notices; and (d) procedures for determining Cure Amounts and adequate assurance of future performance with respect to Assigned Contracts [Docket No. ___].

**PLEASE TAKE FURTHER NOTICE** that on [__________], 2010, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. ____] (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures, and setting key dates and times relating to the Sale of the Acquired Assets. As set forth in the

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608), Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226), Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

Bidding Procedures, the sale of the Acquired Assets is subject to competing offers from any prospective qualified bidder. ***All interested potential bidders should carefully read the Bidding Procedures***. To the extent there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

**PLEASE TAKE FURTHER NOTICE** that all interested parties are invited to make offers to purchase the Acquired Assets in accordance with the terms of the Bidding Procedures and Bidding Procedures Order, copies of which may be obtained (a) from the Debtors' notice and claims agent, Epiq Bankruptcy Solutions LLC, at its website at http://chapter11.epiqsystems.com/fji; (b) by calling (646) 282-2500; or (c) by written request (sent via first class mail) to (i) Epiq Bankruptcy Solutions, LLC, Attn.: Flying J Inc., FDR Station, P.O. Box 5082, New York, New York 10150; (ii) Deutsche Bank Securities Inc., 60 Wall Street, 45th Floor, New York, NY 10005, Attn: Peter Bennett (Peter.Bennett@db.com); or (iii) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn.: Jeffrey W. Gettleman, Esq., Facsimile: (312) 862-2200 (counsel to the Debtors) (jeffrey.gettleman@kirkland.com).

**PLEASE TAKE FURTHER NOTICE** that the Debtors have been marketing and will continue to market the Acquired Assets in advance of the Auction. The deadline to submit bids for the Acquired Assets (the "Bid Deadline") is **March 16, 2010 at 4:00 p.m. (prevailing Eastern Time)**. Pursuant to the Bidding Procedures Order, if the Debtors receive, by the Bid Deadline, one or more bids that meets the qualification standards set forth in the Bidding Procedures (a "Qualified Bid"), the Debtors will conduct an auction (the "Auction") for the sale of the Acquired Assets on **March 19, 2010 at 9:00 a.m. (prevailing Eastern Time)**. Other than the Debtors, only (a) the Buyer and the Guarantor and their respective advisors, (b) parties that have submitted a Qualified Bid by the Bid Deadline, and their respective advisors, (c) counsel to the Official Committee of Unsecured Creditors, (d) counsel for the Secured Lenders and (e) other parties specified in the Bidding Procedures Order will be permitted to participate in or make any statements on the record at the Auction. The Auction will be conducted at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022. The Debtors reserve the right to change the date or the place of the Auction, and will notify Qualified Bidders if they do so.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order further provides that a Sale Hearing will be held to confirm the results of the Auction, approve the sale of the Acquired Assets to the Successful Bidder or Purchaser at the Auction, and approve the other relief requested in the Motion, on **March 23, 2010 at 11:30 a.m. (prevailing Eastern Time) before the Honorable Mary F. Walrath United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801** or at such time thereafter as counsel may be heard. The Debtors will seek the entry of an order of this Court at the Sale Hearing approving and authorizing the Sale to the highest or best offer at the Auction, on terms and conditions consistent with the submitted Purchase Agreements, as may be amended and modified. The Sale Hearing may be adjourned or rescheduled without notice other than by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Court may enter such orders as it deems appropriate under applicable law and as required by the circumstances and equities of these chapter 11 cases.

Objections, if any, to the relief requested in the Motion must: (a) be in writing and filed with this Court; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be served upon (**such as to be received by) the Debtors no later than 4:00 p.m. (prevailing Eastern Time) on March 16, 2010.**

**PLEASE TAKE FURTHER NOTICE** that this notice of the Auction and Sale Hearing is subject to the full terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.

Dated: [_____________], 2010
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Pauline K. Morgan (Bar No. 3650)
Edmon L. Morton (Bar No. 3865)
Donald J. Bowman, Jr. (Bar No. 4383)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6637
Facsimile: (302) 576-3320

- and -

**KIRKLAND & ELLIS LLP**
David L. Eaton (admitted *pro hac vice*)
Adam C. Paul (admitted *pro hac vice*)
Jeffrey W. Gettleman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Counsel for the Debtors