# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| FLYING J INC., et al.,[1] | : Case No. 08-13384 (MFW) |
| Debtors. | : (Jointly Administered) |
| | : Ref. Docket Nos. 2694, 2802 *2873* |

## REPLY OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO LIMITED OBJECTION OF WILMINGTON TRUST FSB, AS SUCCESSOR ADMINISTRATIVE AGENT AND COLLATERAL AGENT, TO THE DEBTORS' MOTION TO APPROVE BIDDING PROCEDURES, BREAK-UP FEE AND SALE OF SUBSTANTIALLY ALL ASSETS OF BIG WEST OF CALIFORNIA, LLC

The Official Committee of Unsecured Creditors (the "Committee") of Flying J Inc. and its related debtors entities (collectively, the "Debtors") in the above-captioned chapter 11 cases, by and through its undersigned counsel, hereby submits this reply (the "Reply") to the *Limited Objection of Wilmington Trust FSB, as Successor Administrative Agent and Collateral Agent, to the Debtors' Motion to Approve Bidding Procedures, Break-Up Fee and Sale of Substantially All Assets of Big West of California, LLC*, dated as of February 16, 2010 [Docket No. 2802] (the "Limited Objection"). In support of this Reply, the Committee respectfully states as follows:

1. The Committee respectfully submits that the Limited Objection should be overruled because there is no basis to grant the relief requested by Wilmington Trust to have the net proceeds of the sale of the Bakersfield Refinery immediately paid to Wilmington Trust, for the benefit of Debtor Big West Oil's prepetition term lenders (the "BWO Term Lenders"), in partial satisfaction of their prepetition claim prior to confirmation of a plan of reorganization.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of their respective federal tax identifications numbers are as follows: Flying J, Inc. (3458); Longhorn Partners Pipeline, L.P. (0554); Big West Oil, LLC (6982); Big West of California, LLC (1608); Longhorn Pipeline Inc. (0654); Big West Transportation, LLC (6984); and Longhorn Pipeline Holdings, LLC (0226).

28611-001\DOCS_NY:20183.3

2. Similar to the relief requested in the Limited Objection, Wilmington Trust has previously asked this Court to enter an order requiring the Debtors to immediately pay Wilmington Trust, for the benefit of the BWO Term Lenders, its alleged share of the proceeds from the pre-confirmation sale of another asset owned by debtor Big West of California LLC ("BWOC") -- certain emission reduction credits (the "ERCs") -- in partial satisfaction of their prepetition secured claim. [Docket No. 2188]. The Committee objected to Wilmington Trust's request, and the Court denied the request for the reasons set forth on the record. [Docket No. 2323].

3. Just as this Court ruled that there is no justification for Wilmington Trust to be immediately paid the proceeds of the sale of the ERCs, there is no justification for Wilmington Trust to be immediately paid the proceeds of the Bakersfield Refinery. Like the Debtors' motion to sell the ERCs, the Debtors' motion to sell the Bakersfield Refinery [Docket No. 2694] provides for the lien of the BWO Term Lenders to attach to the sale proceeds (*id.*, ¶¶ 54, 57), but does **not** seek authorization to pay over the sale proceeds to any of Big West of California's or Big West Oil's secured creditors. By its Limited Objection, Wilmington Trust is once again improperly seeking affirmative relief beyond the relief requested by the Debtors in the Motion. The Committee respectfully submits that the Debtors' request was appropriate, whereas there is no basis to grant the relief now requested by Wilmington Trust and the BWO Term Lenders by way of their Limited Objection, to have their prepetition claims satisfied in part prior to confirmation of a plan in these chapter 11 cases.

4. The Committee reiterates the objection it made when Wilmington Trust attempted to obtain immediate payment of the proceeds of the ERC's, and hereby objects to Wilmington Trust's requested relief because the proposed distribution on account of the BWO Term Lenders' claim prior to confirmation of the plan runs afoul of the fundamental principle of chapter 11 of

the Bankruptcy Code that distributions to prepetition creditors should not take place except under a confirmed plan. *See In re Conroe Forge & Mfg. Corp.*, 82 B.R. 781, 784 (Bankr. W.D. Pa. 1988) ("The general rule is that distribution should not occur except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances.") (citing *Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *see also Rosenberg Real Estate Equity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.)*, 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988) (same). Indeed, Federal Rule of Bankruptcy Procedure 3021 assumes that distribution will occur only after a plan is confirmed: "[A]fter a plan is confirmed, distribution shall be made to creditors whose claims have been allowed...." Fed. R. Bankr. P. 3021.

5. Decisions affecting distributions among creditors of the various Debtors' estates in these cases should only be made under the plan which fairly and appropriately addresses the claims of all creditors. The Debtors have proposed a plan that will pay the BWO Term Lenders in full. That plan should considered before the sales proceeds from the Bakersfield Refinery are distributed pre-confirmation in a manner that would upset carefully negotiated terms and conditions in the plan of reorganization the Debtors recently filed, which provides for the satisfaction of all claims, including the BWO Term Lenders' claims, in full.

6. Case law makes clear that the reason for requiring creditors to await confirmation to be paid is that there are substantial protections for creditors in the plan process that must be observed, so that all parties in interest are able to consider and weigh in on the proposed distributions. For example, in *In re Air Beds, Inc.*, the bankruptcy court had allowed the debtor to pay $60,000 as a distribution to the IRS before confirmation of a plan. Reversing, the Bankruptcy Appellate Panel of the Ninth Circuit stated: "It is not the propriety of the sale, but the disposition of the sale proceeds which is at issue in this case. We conclude that the bankruptcy court abused its discretion because the order allowing the distribution of the sale proceeds allows

the debtor to circumvent the provisions of the Bankruptcy Code for the administration of a case under Chapter 11." 92 B.R. at 422. The Court further stated: "[R]egardless of whether the payment was for pre-petition or post-petition taxes, the court's order would allow the debtor to circumvent the provisions of Chapter 11 with respect to proposal, disclosure, and confirmation of a plan ... There is no showing why the retention of the proceeds by the debtor in possession, in its capacity as trustee, with a lien attaching to the funds, would not protect the IRS pending confirmation of a plan and a distribution under the plan as contemplated by the Bankruptcy Code." *Id.* at 424.

7.  Similarly, in *In re Conroe Forge & Mfg. Corp.*, a secured creditor requested that it immediately receive the proceeds of the sale of a piece of the debtors' machinery that was sold free and clear of liens. The creditor held a perfected security interest in the debtor's land, buildings, and machinery, and was owed in excess of $2,000,000. The sales price of the machinery was $149,000. The creditor argued that it was entitled to the immediate payment of the sale proceeds, despite the fact that the motion to sell, like the motion in this case, merely provided that the creditor's lien would attach to the sale proceeds. The court denied the request for payment, holding that the secured creditors' interest in the proceeds of the sale were adequately protected, and there were no extraordinary circumstances justifying a distribution of proceeds prior to confirmation of reorganization plan. *Id.* at 787.

8.  This is more than an academic issue in these cases, as the BWO Term Lenders' assert a lien on the assets of Debtor Big West of California, the seller of the Bakersfield Refinery, and Big West of California's parent company, debtor Big West Oil. The BWO Term Lenders thus have two sources of repayment, but depending upon whether the BWO Term Lenders' claims are satisfied from the assets of Big West of California or the assets of Big West Oil, the resulting distributions to unsecured creditors of those two entities may be materially

affected. If the BWO Term Lenders satisfy their claims from Big West of California's assets, including the proceeds of the Bakersfield Refinery owned by Big West of California, creditors of Big West Oil, whose obligor is also liable on the term debt, will be benefitted since the term debt will be reduced using assets of Big West of California. Conversely, paying the BWO Term Lenders' claim now from the proceeds of the Bakersfield Refinery will work to the detriment of anticipated recoveries by unsecured creditors of Big West of California. These same concerns were raised by the Committee when the BWO Term Lenders sought immediate payment of the ERC proceeds, and the Court correctly declined to order immediate payment then and should reach the same result on this Motion.

9. Here, the interests of the BWO Term Lenders in the proceeds from the sale of the Bakersfield Refinery will be adequately protected, and there are no extraordinary circumstances. The BWO Term Lenders' lien will attach to the proceeds of the sale, and a plan has been filed that will satisfy the BWO Term Lenders' claims in full. Moreover, upon information and belief the BWO Term Lenders have a large equity cushion in all of their collateral, which includes not only the Bakersfield Refinery but also the valuable North Salt Lake Refinery. Accordingly, there is no substantial threat that value of the BWO Term Lenders' collateral will dip below amount of their secured claim pending plan confirmation, and no basis for departing from the general rule that distributions to pre-petition creditors shall only be made pursuant to a confirmed plan of reorganization.

WHEREFORE, the Committee respectfully requests that the Court overrule the Limited Objection for the reasons set forth herein.

Dated: February 22, 2010

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

James E. O'Neill, Esq. (DE Bar No. 4042)
Robert J. Feinstein, Esq. (admitted *pro hac vice*)
Debra Grassgreen, Esq. (admitted *pro hac vice*)
David Abadir, Esq. (admitted *pro hac vice*)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: joneill@pszjlaw.com
      rfeinstein@pszjlaw.com
      dgrassgreen@pszjlaw.com
      dabadir@pszjlaw.com

Counsel to the Official Committee of Unsecured Creditors of Flying J Inc. et al.