**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| FLYING J INC., et al., | ) | Case No. 08-13384 (MFW) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **Hearing Date: March 11, 2010, at 10:30 a.m. (ET)** |
| | ) | **Objection Deadline: March 1, 2010, at 4:00 p.m. (ET)** |

**LIMITED OBJECTION OF WILMINGTON TRUST FSB, AS SUCCESSOR ADMINISTRATIVE AGENT AND COLLATERAL AGENT, TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE SALE OF CERTAIN REFINERY EQUIPMENT AND SEEKING RELATED RELIEF [DOCKET NO. 2762]**

Wilmington Trust FSB, in its capacities as successor Administrative Agent and Collateral Agent (the "Agent") for the pre-petition term lenders to Debtor Big West Oil, LLC ("BWO Term Lenders"), by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to the *Motion of the Debtors for Entry of an Order (A) Approving the Debtors' Notice of Sale and Notice Procedures, (B) Approving the Sale of Certain Refinery Equipment, (C) Approving the Debtors' Entry Into an Asset Purchase Agreement and All Ancillary Documents Relating to Such Sale, (D) Authorizing the Transfer of the Refinery Equipment Free of All Liens, Claims, Interests, Liabilities and Encumbrances and (E) Authorizing the Debtors to Pay the Lien Release Amount to Alliance Process Partners LLC D/B/A International Alliance Group* dated February 12, 2010 [Docket No. 2762] (the "Motion").[1] In support thereof, the Agent respectfully states as follows:

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

## BACKGROUND

1. On December 22, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of title 11 of the Bankruptcy Code. On January 5, 2009, the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors [Docket No. 85].

2. On February 12, 2010, the Debtors filed the Motion to seek entry of an order approving the sale of certain Equipment (as defined in the Motion) of Big West of California, LLC ("BWOC") and providing for certain related relief.

3. The Motion seeks authority to sell the Equipment free and clear of liens and encumbrances with all such liens and encumbrances to attach to the proceeds of sale. Specifically, paragraph 29 of the Motion provides as follows:

> 29. One or more of the tests of section 363(f) will be satisfied with respect to each of the Liens. Particularly, each of the parties holding a Lien will consent, or absent any objection to this Motion, will be deemed to have consented to, the Sale. See 11 U.S.C. § 363(f)(2). Any holder of a Lien also will be adequately protected by having their encumbrances, if any, in each instance against the Debtors or their estates, attach to the cash proceeds of the Sale ultimately attributable to the Equipment in which such creditor alleges an interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto. Accordingly, section 363(f) authorizes the transfer and conveyance of the Equipment free and clear of any Liens.

4. Pursuant to a Term Loan Credit Agreement dated as of May 15, 2007, the BWO Term Lenders made certain term loans (the "BWO Term Loan Facility") to Big West Oil, LLC ("BWO") in the original principal amount of $400 million. BWO's obligations under the BWO

Term Loan Facility are guaranteed by its subsidiaries, including BWOC (such guarantors, together with BWO, the "Term Loan Obligors"). As of the date hereof, the outstanding principal balance of the BWO Term Loan Facility is $392.25 million.

5. The BWO Term Loan Facility is secured by, *inter alia,* a certain Term Loan Security Agreement dated as of May 15, 2007 which includes and provides for a grant of security interest in the Equipment. A UCC financing statement with respect to the Term Loan Security Agreement was properly filed against BWOC in the Utah Division of Corporations and Commercial Code on May 16, 2007.[2]

6. In the *Final Order (A) Authorizing the Use of Big West Cash Collateral, (B) Granting Adequate Protection to Prepetition Lenders* dated February 18, 2009 [D.I. 549] ("BWO Cash Collateral Order"), the Debtors agreed that the liens granted by the Term Loan Obligors in favor of the BWO Term Lenders are valid, binding, enforceable and perfected. See BWO Cash Collateral Order, ¶ K. The BWO Cash Collateral Order further provides that the BWO Term Lender liens are not subject to avoidance, contest, subordination or objection by the Debtors on any basis. See id., ¶ 13. The BWO Cash Collateral Order provided the Official Committee of Unsecured Creditors and other parties a period within which to investigate and challenge the BWO Term Lender liens (the "Third Party Challenge Period"). See id. The Third Party Challenge Period, as extended by several stipulations, expired on September 15, 2009. See *Stipulation and Order Between the Official Committee of Unsecured Creditors and Wilmington*

---

2 The UCC financing statement was filed by Bank of America, as the predecessor collateral agent for the BWO Term Lenders. After Wilmington Trust's succession to Bank of America, Wilmington Trust filed a UCC Financing Statement Amendment on February 10, 2009, which evidenced that Wilmington Trust replaced Bank of America as the secured party of record.

*Trust FSB Extending Deadline for Official Committee of Unsecured Creditors to Commence Adversary Proceeding* dated as of August 4, 2009 [D.I. 1676].

**LIMITED OBJECTION**

7. The Agent and the BWO Term Lenders expressly object and do not consent to the entry of an order authorizing the sale of the Equipment free and clear of their lien and security interest unless:

A. the net proceeds of the sale of the Equipment are paid to the Agent immediately upon the closing of said sale for application to the BWO Term Loan Facility; and

B. the Agent is deemed to fully reserve as against the Debtors and there shall be no waiver by the Agent as against the Debtors of any Event of Default that will occur under the BWO Term Loan Facility as a result of the sale of the Equipment.

8. Insofar as the Motion and proposed Order attached to the Motion do not satisfy the above conditions, the Agent and the BWO Term Lenders will only consent to a sale free and clear order which, by its terms, expressly satisfies the above conditions – whether such an order is entered by consent of all parties in interest or by the Court at the March 11, 2010 hearing on the Motion.

**ARGUMENT**

9. For the reasons set forth below, a sale of the Equipment free and clear of the Agent's security interest is not authorized under Bankruptcy Code Section 363(f) or otherwise absent the Agent's consent. Moreover, whether or not the Debtors and the Official Committee of Unsecured Creditors (the "Committee") consent, there is ample authority and, indeed, it is common practice, for the Court to order the immediate payment to a secured party from the net

proceeds of a Section 363 sale. To the extent necessary, the Agent requests that this Limited Objection also be deemed a request to the Court for the entry of such an order directing such immediate payment. Finally, the Committee's anticipated claim of prejudice to BWOC creditors is unfounded as it fails to recognize BWOC guarantor subrogation rights against BWO. Each of these arguments are addressed in more detail below.

**Sale of the Equipment Free and Clear of the Agent's Security Interest is Not Authorized Under the Bankruptcy Code Absent the Agent's Consent**

10. As is evident from this Limited Objection, Section 363(f)(2) is not available to support a free and clear order with respect to the Agent's security interest in the Equipment. Moreover, given the facts that the sale price for the Equipment is substantially less than the amount of the Agent's lien on the Equipment and the Agent's lien is not subject to dispute, neither 363(f)(3) or (4) are available to the Debtors. Since 363(f)(1) is not applicable on its face to a Uniform Commercial Code security interest, the only possible means to support a free and clear order, by process of elimination, is section 363(f)(5). That too is unavailing to the Debtors.

11. The Debtors cannot demonstrate that Section 363(f)(5) somehow would apply to this asset sale. That section provides that an asset can be sold free and clear of interests if the entity holding the interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5). Although the provisions of Section 363(f) are disjunctive, it is well settled that language of specific provisions should be read in the context of the entire statute. See Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989) ("[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

12. Notably, Section 363(f)(3) expressly provides circumstances in which an asset may be sold free and clear of a *lien*—circumstances that, as noted, do not apply here. Accordingly, because Section 363(f)(3) provides narrow circumstances for asset sales free and clear of liens, courts have held that the exception in Section 363(f)(5) is not applicable to liens and, rather is intended to address those other kinds of interests that, by operation of law, can be reduced to dollar amounts. See, e.g. In re Beker Indus. Corp., 63 B.R. 474, 478 (Bankr. S.D.N.Y. 1986); In re Canonigo, 276 B.R. 257, 265 (Bankr. N.D. Ca. 2002). That is, it is well settled that Section 363(f)(3) only permits sales free and clear of liens if the sale price is greater than the face value of the secured claim. See In re WDH Howell, LLC, 298 B.R. 527, 534 (D.N.J. 2003) ("we conclude that Congress must have meant face value when it stated "value" in § 363(f)(3)"). As such, because Section 363(f)(3) plainly addresses the sale of assets free and clear of liens—and requires that such a sale would result in a value greater than the face value of the secured claim—it is difficult to conceive that Section 363(f)(5) somehow could apply to liens and permit a sale of an asset free and clear—no matter the value to be obtained by the sale. That reading of the Section 363(f)(5) would, in effect, render Section 363(f)(3) superfluous. Indeed, as the Beker Court noted,

> Rather, § 363(f)(5) is to be interpreted, in our judgment, as referring to those few interests in property that can, by operation of law, be reduced to dollars. Liens are addressed directly in § 363(f)(3) and it is that section which is to be applied. To interpret § 363(f)(5) in the fashion suggested by the Debtor would "swallow up (f)(1)-(f)(4) . . . .
> [In re Beker, 63 B.R. at 468. (emphasis added)]

Moreover, other Courts have read the subsections of 363(f) together and reached the same conclusions. In In re Canonigo, the Court reasoned,

> If section 363(f)(5) is read to apply to liens, read literally, it is puzzling why that section does not require that the sale price be sufficient to provide a money satisfaction of the secured claim. However, if section 363(f)(5) is read to apply

> only to interests other than liens, the omission of this requirement makes perfect sense in two regards. An interest in property may never be greater than the fair market value of the property. Moreover, if section 363(f)(5) is read to apply only to interests other than liens, it would supplement rather than "swallow-up" section 363(f)(1)-(4).
> [276 B.R. at 265.]

13. If a debtor or trustee had the authority to sell any property subject to a lien, because the secured lender is only entitled to a single money satisfaction and can be compelled to accept such a satisfaction in return for the release of his lien, "subsection 5 would consume subsections 2, 3 and 4 and upset the balance Congress intended." In re Takeout Taxi Holdings, Inc., 307 B.R. 525, 534 (Bankr. E.D. Va. 2004). Moreover, "[s]uch a broad construction would always enable a trustee to sell the collateral over the objection of the secured creditor for an amount insufficient to pay the secured creditor in full even when there is no bona fide dispute." Accordingly, "Section 363(f)(5) has a different purpose...[i]t is intended for interests other than typical monetary liens." Id. Any other reading of Section 363(f)(5) would be inconsistent with the clear language of Section 363(f)(3), and would, in effect, render it unnecessary verbiage.

14. Moreover, even if it could be argued that Section 363(f)(5) somehow applies to liens as a general matter, the case law makes plain that where the proposed sale would not result in payment of the full face value of the secured creditor's claim, the debtor or trustee must show that there is a "legal or equitable proceeding" that would require the secured creditor to take less than full value on account of its lien—a showing that the Debtors plainly cannot make here. See In re PW, LLC, 391 B.R. 25, 48 (9th Cir. B.A.P. 2008); In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002).

15. In PW, LLC, the Court read Section (f)(3) in conjunction with Section (f)(5), and held that in determining whether Section (f)(5) could apply to a sale subject to a lien, the

question was, "[w]hether there is an available type or form of legal or equitable proceeding in which a court could compel [secured creditor] to release its lien for payment of an amount that was less than full value of claim." Id. The Court reasoned that any other interpretation of Section (f)(5) in the context of liens would render Section (f)(3) "superfluous." Id. at 48. Significantly, the Court rejected the notion that a cram-down pursuant to Section 1129(b) could satisfy that standard as to a secured creditor, noting that permitting such a "circular" argument would effectively eliminate the creditor protections embodied in the Code. Id. Here, as in PW, LLC, there plainly is no such proceeding that could compel the Term Lenders to accept less than full payment of their claims. Accordingly, even if Section 363(f)(5) somehow could apply to a creditor with a lien, it cannot apply in these circumstances.

**The Court is Authorized to Order Immediate Payment to the Big West Term Lenders from the Net Proceeds of the Equipment Sale**

16. The Committee's expected assertion that pre-confirmation payment to a secured creditor of the proceeds from the sale of its collateral is an extraordinary event flies in the face of regular, commonsense Chapter 11 practice. Where a secured claim is undisputed, allowed and unquestionably attaches to the proceeds of the irrevocable sale of a fixed asset, as is the case here, it is settled practice for prompt payment to be made to the secured creditor. Surely, the Committee cannot dispute this.[3]

17. Indeed, the Court need look no further than this Motion itself for an example of immediate secured creditor payment in connection with the treatment proposed by the Debtors

---

3 The Bankruptcy Code itself contemplates that a secured creditor may satisfy its claim prior to confirmation of a Chapter 11 plan. Section 363(k) of the Bankruptcy Code allows a secured creditor to credit bid at a sale of the debtor's property. There is no substantive difference between the reduction of a secured creditor's claim by distribution of the proceeds of the sale of its collateral and reduction of the claim through a credit bid for the collateral itself.

for the IAG secured claim. Moreover, this Court previously authorized and directed the Debtors in these cases to pay all pre-petition obligations of the Main Line Fill Secured Lenders from the proceeds of the sale of the Longhorn Pipeline, upon the closing of the sale. See *Order (A) Authorizing and Approving Certain Purchase Agreements By and Between Longhorn Partners Pipeline, L.P. and One or More Other Debtors, as Seller, and Magellan Midstream Partners, L.P., as Purchaser, Which Provide for the Sale of the Longhorn Pipeline, Certain Linefill and Related Property, Free and Clear of All Liens, Claims, Encumbrances and Interests as Provided in the Purchase Agreements; (B) Authorizing and Approving the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, Free and Clear of All Liens, Claims, Encumbrances and Interests as Provided in the Purchase Agreements; and (C) Granting Related Relief* dated July 27, 2009 [D.I. 1578] at ¶ 46. Although the Debtors did not originally propose to pay the claims of secured creditors from the sale proceeds in their original Section 363 sale motion [D.I. 1399], the final order provided for such payment following the well-placed limited objection of the secured parties seeking such payment. See D.I. 1529. Another directly relevant example is this Court's Order dated June 17, 2009 [D.I. 1377] approving the sale of certain excess Bakersfield real property and the direct payment of the proceeds of that sale to the Agent in its capacity as a secured creditor holding a lien on the subject property, as described in the Debtors' Notice of Sale [D.I. 1224].

18. The Committee has in the past relied solely on two cases to argue against immediate secured creditor payment: In re Conroe Forge & Mfg. Corp., 82 B.R. 781 (Bankr. W.D. Pa. 1988) and In re Air Beds Inc., 92 B.R. 419 (B.A.P. 9th Cir. 1988). As discussed below, these two cases are contrary to other persuasive authority on the issue. Moreover, each of these cases is readily distinguishable on its facts from the instant case. The sale in Conroe Forge

occurred at a time when a liquidating plan and disclosure statement were already on file, see 82 B.R. at 785, and the sale in Air Beds occurred at a time when either the filing of a liquidating plan or a Chapter 7 liquidation was imminent. See 92 B.R. at 423-24. In contrast, the Big West Debtors have been operating profitably, and, they have proposed a plan providing for BWO to continue as a going concern. Certainly, there is no immediate prospect of liquidation here as was the case in both Conroe Forge and Air Beds. Moreover, in both cases, the allowed amounts of the secured claims and the relative priority of the secured claims were unresolved. See Conroe Forge, 82 B.R. at 783; Air Beds, 92 B.R. at 422. Here, as noted above, there is no question about the allowed amount or priority of the Agent's secured claim.

19. Because pre-confirmation payment of sale proceeds to undisputed secured parties is often made without controversy, it is not surprising that there is sparse case law on point. However, in contrast to Conroe Forge and Air Beds, there is other persuasive authority holding that the proceeds from the sale of a secured creditor's collateral may be distributed to the secured creditor outside of a plan, where, as is the case here, such distribution will not impact the debtor's reorganization. See, e.g., In re San Jacinto Glass Indus., Inc., 93 B.R. 934, 942-43 (Bankr. S.D. Tex. 1988) (finding no reason shown to delay secured creditor's receipt of proceeds of sale of asset in which it has undisputed priority claim and noting that disbursement of funds to secured creditor would not "materially dictate the terms of the debtor's reorganization nor otherwise endanger the creditor protections available to" the objecting unsecured creditor); In re Indus. Office Bldg. Corp., 171 F.2d 890, 892-93 (3d Cir. 1949) (case under Chapter X of former Bankruptcy Act, holding that statute did not preclude "giving creditors the benefit of their contract rights to the extent that this may be accomplished consistently with the preservation of the going concern value of the real estate when reorganization is contemplated" and objecting

parties "failed to show either that the payment made or the payment contemplated would render reorganization impractical or not feasible"). Consistent with the above authority, Delaware courts have authorized immediate, pre-confirmation payment to secured lenders of the proceeds from the sale of their collateral through a Section 363 sale. See, e.g., In re Avado Brands, Inc., No. 07-11276 (MFW), 2007 WL 4994670, ¶ 5 (Bankr. D. Del. Dec. 10, 2007) (order approving 363 sale and directing, upon closing of sale, immediate payment according to terms of prior order approving debtor-in-possession financing); In re Decora Indus., Inc., No. 00-4459 (JJF), 2002 WL 32332377, at *7, ¶ 9 (Bankr. D. Del. May 17, 2002) (order approving 363 sale and directing immediate payment of debtor-in-possession financing obligations upon closing).

**The Committee's Anticipated Claim of Prejudice to BWOC Creditors is Unfounded as it Fails to Recognize BWOC Guarantor Subrogation Rights Against BWO.**

20. Based on past practice, it is anticipated that the Committee will object to the immediate payment to the Agent of the net sale proceeds from the Equipment on the grounds that such payment would somehow be prejudicial to BWOC creditors and, at least implicitly, somehow unduly beneficial to BWO Creditors. Such a contention is simply incorrect.

21. BWOC is a guarantor of BWO's obligations under the BWO Term Loan Facility. Thus, BWOC will have a subrogation claim against BWO for all amounts paid to the Agent from proceeds of BWOC collateral to reduce the BWO Term Loan Facility.

22. If, as the parties currently expect and the Debtor's filed plan provides, the BWO estate is solvent with all BWO creditor claims to be paid in full and the BWO equity to be retained by the present equity owners, the BWOC subrogation claim will be paid in full, and BWOC creditors will suffer no detriment whatsoever. In fact, creditors of both estates will

receive a benefit from prompt payment of the BWO Term Lenders' secured claim by reduction of ongoing interest expense on the BWO Term Loan Facility.

23. In the unlikely event that BWO creditors are not to be paid in full in these cases, BWOC would still retain a subrogation claim against BWO. In such circumstances, the subrogation claim would be paid on the same *pro rata* basis as other BWO creditor claims. Under that hypothetical scenario, the Committee's effort to force the Agent to look first to BWO for satisfaction of the BWO Term Loan Facility before looking to any assets of BWOC amounts to an effort by the Committee, on behalf of unsecured creditors, to compel a form of marshalling. Such an effort on behalf of general creditors to compel a secured creditor to engage in marshalling is simply not appropriate.[4] Moreover, if BWO is not able to pay all of its creditors in full, such marshalling could be prejudicial to BWO creditors, another constituency represented by the Committee.

---

4 "Marshaling of assets applies when a senior secured creditor can collect on its debt against more than one property or fund held by the debtor but a junior secured creditor can only proceed against one of those sources. Assuming certain elements are met, the process then requires the senior secured creditor to first collect its debt against the collateral other than that in which the junior secured creditor holds an interest, thereby leaving that collateral for the junior secured creditor's benefit." Pittsburgh-Canfield Corp., 309 B.R. at 291 (citations and emphasis omitted). However, the doctrine of marshalling may not be invoked for the benefit of unsecured creditors. See Simon & Schuster, Inc. v. Advanced Mktg. Servs. (In re Advanced Mktg. Servs.), 360 B.R. 421, 427 (Bankr. D. Del. 2007) ("unsecured creditors cannot invoke the equitable doctrine of marshalling") (quoting Yenkin-Majestic Paint Corp. v. Wheeling-Pittsburgh Steel Corp. (In re Pittsburgh-Canfield Corp.), 309 B.R. 277, 291 (B.A.P. 6th Cir. 2004)). In Advanced Mktg. Servs., the Court held that a reclamation claimant, as an unsecured creditor, could not invoke the doctrine of marshalling to require secured lenders to look to assets other than the reclaimed goods to satisfy their claims. See 360 B.R. at 427. Therefore, the Committee, as the representative of unsecured creditors, lacks standing to advance its marshalling argument.

## CONCLUSION

The Agent and BWO Term Lenders expressly object and do not consent to any order authorizing a sale of the Equipment to be made free and clear of the Agent's lien and security interest unless such order, by stipulation of the parties in interest or order of this Court, expressly provides:

A. the net proceeds of the sale of the Equipment are paid to the Agent immediately upon the closing of said sale for application to the BWO Term Loan Facility; and

B. the Agent is deemed to fully reserve as against the Debtors and there shall be no waiver by the Agent as against the Debtors of any Event of Default that will occur under the BWO Term Loan Facility as a result of the sale of the Equipment.

To the extent necessary, the Agent requests that this Limited Objection be deemed a request to the Court for the entry of an order on the above-stated terms.

Dated: March 1, 2010
Wilmington, Delaware

**ASHBY & GEDDES, P.A.**

William P. Bowden (I.D. No. 2553)
Don A. Beskrone (I.D. No. 4380)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

-and-

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Howard L. Siegel, Esq.
Daniel J. Saval, Esq.
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel to Wilmington Trust FSB, solely in its capacities as successor Administrative Agent and Collateral Agent*

# 40269951 v1 - siegelhl - 027213/0009