**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| Debtors. | ) | Jointly Administered |

**DECLARATION OF JOHN BOKEN IN SUPPORT OF THE DEBTORS' MOTION TO APPROVE THE SALE OF CERTAIN REFINERY EQUIPMENT BY DEBTOR BIG WEST OF CALIFORNIA, LLC TO REFINERY EQUIPMENT WORLDWIDE, INC.**

1. My name is John Boken. I am over the age of 18 and competent to testify and make this declaration (the "Declaration"). I am serving as the Chief Restructuring Officer of Flying J Inc. ("Flying J"), a corporation organized under the laws of the State of Utah and a debtor and debtor in possession in the above-captioned chapter 11 cases of Flying J and certain of its affiliates (collectively, the "Debtors"). On April 3, 2009, the Court entered an order approving the services agreement between and among Zolfo Cooper Management, LLC ("Zolfo Cooper"), myself and Flying J.[2]

2. In addition to my position at Flying J, I am also a Senior Managing Director at Zolfo Cooper. Zolfo Cooper specializes in providing restructuring advisory and crisis management services to financially distressed companies and their creditors. Zolfo Cooper is one of the world's leading financial advisory, interim management and litigation support firms,

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608); Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226); and Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

2 See *Order Approving the Services Agreement between the Debtors, Zolfo Cooper Management, LLC and John R. Boken Nunc Pro Tunc to January 5, 2009* [Docket No. 921].

with a team of restructuring and litigation specialists in North America and, together with Zolfo Cooper in Europe, throughout Europe.[3] Zolfo Cooper specializes in advising debtors, creditors, investors and court-appointed officials in bankruptcy proceedings and out-of-court workouts. Zolfo Cooper has significant qualifications and experience in these matters. Zolfo Cooper has a reputation for quality and breadth of experience, and a proven track record for success, earned by serving clients in numerous nationally prominent bankruptcy proceedings.

3. I hold a Bachelor of Science degree in commerce-finance from the University of Santa Clara. I am a Certified Public Accountant (inactive) and a Certified Insolvency and Restructuring Advisor. I am a member of the Association of Insolvency and Restructuring Advisors, the American Bankruptcy Institute and the Turnaround Management Association. I am a frequent speaker at seminars and conferences on issues relating to financially distressed companies.

4. I personally have more than 18 years of corporate restructuring experience and have led over 50 restructuring projects in a wide variety of industries, including energy, construction, health care, manufacturing, retail and agriculture. In doing so, I have developed expertise in devising business turnaround strategies, formulating debt restructuring plans and divesting of unprofitable and/or non-strategic operations and assets. I also have significant experience designing creative solutions to the complex operating and capital structure problems that exist in large restructuring cases. I have served as Chief Restructuring Officer, and in other

---

3 The "Zolfo Cooper" trademark is owned by ZC Holdings, LLC, Zolfo Cooper's parent company, and it is used in the United States by Zolfo Cooper, LLC and its subsidiaries. The Zolfo Cooper trademark is used in Europe and elsewhere around the world under license from ZC Holdings, LLC. ZC Holdings, LLC and its subsidiaries do not share ownership interests with Zolfo Cooper in Europe or any other Zolfo Cooper trademark licensees.

senior management capacities, including Chief Executive Officer and Chief Operating Officer, in other large, complex chapter 11 cases.

5. I am generally familiar with the day-to-day operations, businesses, financial affairs and books and records of the Debtors, as set forth herein.

6. On December 22, 2008 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code. Also on that date, the Debtors filed the *Declaration of J Phillip Adams in Support of Emergency First Day Pleadings* [Docket No. 2] (the "First Day Declaration").

7. On February 12, 2010, the Debtors filed the *Motion for Entry of an Order (a) Approving the Debtors' Notice of Sale and Notice Procedures, (b) Approving the Sale of Certain Refinery Equipment, (c) Approving the Debtors' Entry into an Asset Purchase Agreement and All Ancillary Documents Relating to Such Sale, (d) Authorizing the Transfer of the Refinery Equipment Free of All Liens, Claims, Interests, Liabilities and Encumbrances and (e) Authorizing the Debtors to Pay the Lien Release Amount to Alliance Process Partners LLC d/b/a International Alliance Group* [Docket No. 2762] (the "Sale Motion"). I am familiar with the contents of and the facts and circumstances surrounding the Sale Motion, and I believe that the relief sought therein will maximize the value of the Debtors' estates and, ultimately, facilitate a successful reorganization.

8. This Declaration supplements the First Day Declaration and the various declarations submitted by me in support of previous motions and applications, and is filed in support of the Sale Motion. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge of the Debtors' operations and finances, information gathered from my review of relevant documents and information supplied to me by other

members of the Debtors' management and the Debtors' professional advisors. If called upon to testify, I could and would testify to the facts set forth herein.

## THE SALE MOTION

9. I have read the Sale Motion, which seeks relief designed, in part, to maximize the value of the Debtors' estates to the benefit of the Debtors and their creditors.[4] The Sale Motion, among other relief, seeks approval to sell certain refinery equipment (the "Equipment") owned by Debtor Big West of California, LLC ("BWOC") to Refinery Equipment Worldwide, Inc. (the "Buyer") through a private sale (the "Sale").

10. Each piece of the Equipment is an individual component of a specialized unit (the "Unit") owned by BWOC and primarily located at the Debtors' Bakersfield, California refinery (the "Bakersfield Refinery"), designed for converting liquefied petroleum gas into refined fuel products. The Debtors purchased the Equipment over time and, since January 2006, have sought to obtain permits from the state of California (the "State") necessary for operating the Unit. Because of the presence of a certain volatile catalyst required for operating the Unit, the State has repeatedly and consistently refused to grant such permits. Therefore, the Equipment is of no use to BWOC's estate and is not included in the Debtors' proposed sale of substantially all assets of BWOC (the "BWOC Sale").[5]

11. Given that the State will not issue permits for operation of the Unit, over the past year, the Debtors have marketed the Equipment, independently of their efforts with respect to the BWOC Sale, to a number of potential purchasers with out of state, and in some cases

---

4 All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Sale Motion.

5 See *Amended Order (A) Approving Bidding Procedures and Bid Protections and (B) Approving the Form and Manner of Notices Thereof* [Docket No. 2901].

international, refinery operations. Because the Equipment is highly specialized and unique, the Debtors targeted and canvassed the potential purchasers with refinery equipment of a type and scale conducive to utilizing the Equipment. In all, the Debtors contacted over 50 potential bidders to discuss a potential purchase of the Equipment. I believe that, given the limited market for the Equipment and the broad scope of the Debtors' marketing efforts, the Debtors have approached all potential purchasers of the Equipment. To date, the Buyer is the only party that has bid on the Equipment.

12. The Buyer, a broker of refinery equipment on an international scale, intends to sell the Equipment to a third party, likely outside the United States, after acquiring the Equipment from BWOC. In connection therewith, the Buyer has identified a potential purchaser of the Equipment and has been negotiating the terms of a purchase agreement. I believe that, given that the two agreements are, for practical purposes, dependent on each other, the Debtors must proceed expeditiously to closing.

13. I believe that the Sale provides the highest purchase price and best terms available for the Equipment. As the Asset Sales (as defined in the Sale Motion) demonstrate, the Debtors have sought to maximize liquidity and creditor recoveries by selling underutilized or underperforming assets throughout these chapter 11 cases. The Sale will provide a cash infusion of over $17 million to the Debtors' estates. Given that the Equipment has been specifically excluded from the BWOC Sale, and given that the Debtors will not be authorized by the State to operate the Unit in the foreseeable future, I believe that selling the Equipment to the Buyer pursuant to the terms of that certain Asset Purchase Agreement dated February 12, 2010 by and between BWOC and the Buyer, attached as **Exhibit B** to the Sale Motion (the "APA"), is in the best interests of the Debtors and their estates.

14. The APA includes a covenant that BWOC will obtain a release of any mortgage, pledge, security interest, easement, encroachment, lien or encumbrance of any kind on the Equipment held by IAG. Pursuant to the *Order Approving Entry into Settlement with International Alliance Group* [Docket No. 1312], the Equipment and certain other equipment at the Bakersfield Refinery (collectively, the "Collateral Equipment") is subject to a lien by IAG (the "IAG Lien") pending: (a) a $5,000,000 payment to Alliance Process Partners LLC d/b/a International Alliance Group from the proceeds of a sale of the Collateral Equipment; and (b) the settlement of certain purchase orders. The Debtors have negotiated the release of the IAG Lien as to the Equipment upon the payment of the Lien Release Amount (as defined in the Sale Motion).

15. I believe that selling the Equipment through a private negotiated sale will enable BWOC to capture the maximum value from this transaction for the Debtors' estates, especially given the favorable terms of the APA, the Debtors' year long-efforts in marketing the Equipment, the limited field of potential buyers and the need to proceed expeditiously in order to consummate the Sale.

16. I believe that the APA memorializes a comprehensive, arm's-length transaction that will provide a greater recovery for the Debtors' estates than would be provided by any alternative disposition of the Equipment available to the Debtors.

17. The Debtors marketed the Equipment through an extensive yet targeted search of potential buyers. In light of the highly specialized nature of the Equipment and the results of the Debtors' marketing efforts thusfar, I believe that: (a) the APA memorializes a comprehensive, arm's-length transaction that will provide a greater recovery for the Debtors' estates than would be provided by any alternative disposition of the Equipment available to the Debtors; and

(b) given that the Debtors have comprehensively surveyed the market for the Equipment, a public auction would not result in a higher or better offer for the Equipment and could result in the loss of the current purchaser, given the need to close expeditiously so as to allow for the subsequent sale negotiated by the purchaser.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 9, 2010

Respectfully submitted,

John Boken



K&E 16372783.2