LexisNexis®

LEXSEE 1992 BANKR LEXIS 2574

**In re: STEIN HENRY COMPANY, INC. Debtor**

**Bankruptcy No. 91-15491S, Chapter 11**

**UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

***1992 Bankr. LEXIS 2574***

**June 1, 1992, Decided**

**COUNSEL:** [*1] David S. Fishbone, Esq., Ciardi, Fishbone & DiDonato, 1900 Spruce St., Phila., PA 19103, (Attorney for Debtor).

Robert C. Cohen, Esq., Adlins, Friedman & Cohen, 1616 J. F. Kennedy Blvd., Four Penn Center, Suite 700, Phila., PA 19103, (Attorney for Union).

Steven D. Usdin, Esq., Adelman Lavine Gold & Levin, 1900 Two Penn Center Plaza, Phila., PA 19102-1799, (Attorney for Creditors' Committee).

R. Scott Kauffman, Esq., Morgan, Lewis & Bockius, 2000 One Logan Square, Phila., PA 19103-6993, (Attorney for West Point).

Michael J. Dulin, Esq., 925 Chestnut St., Phila., PA 19107, (Attorney for Pennsylvania, Manufacturers' Association, Insurance Company).

Peter E. Meltzer, Esq., Drinker Biddle & Reath, 1100 PNB Bldg., Broad & Chestnut Sts., Phila., PA 19107, (Attorney for Corestates Bank).

Frederic Baker, Esq., Ass't. U.S. Trustee, 601 Walnut St., Curtis Center, Suite 950 West, Phila., PA 19106, (U.S. Trustee).

**JUDGES:** SCHOLL

**OPINION BY:** DAVID A. SCHOLL

**OPINION**

*MEMORANDUM*

BY: DAVID A. SCHOLL, UNITED STATES BANKRUPTCY JUDGE

In its Objection to the First Amended Plan of Liquidation filed by the Debtor ("the Plan"), Teamsters Local 500 ("the Union") contends [*2] that the Plan cannot be confirmed, presumably pursuant to *11 U.S.C. § 1129(a)(1)*, because it features a sale of all of the Debtor's assets to West Point Meats, Inc. ("West Point") under an agreement of sale which does not include terms which preserve those provisions of the collective bargaining agreement ("the Agreement") between the Debtor and the Union stating that the Agreement "shall be binding upon [the Debtor's] successors . . . and assigns," in violation of *11 U.S.C. § 1113(f)*. We agree.

In its most recent Memorandum, the Debtor attempts to overcome our explicit skepticism that the Agreement was terminated pre-petition by the Union. The Agreement provides as follows:

*ARTICLE 40 - TERM OF AGREEMENT*

> This Agreement shall be in full force and effect from July 1, 1988 up to and including June 30, 1991 and shall continue in full force and effect from year to year thereafter unless and until either of the parties hereto shall give to the other three (3) months' written notice prior to the end of the original term, or three (3) months' written notice prior to the end of any subsequent year of an intention to terminate [*3] at the end of the original term or of the then current year, respectively.

EXHIBIT

2

The Debtor argues that the following letters of May 31, 1991, and June 18, 1991, from the Union to the Debtor constituted the requisite "intention to terminate" the Agreement:

[May 31, 1991]

> This Local Union would like to begin negotiations for the new collective bargaining agreement covering your employees in the bargaining unit.
>
> Please contact this Local union at your earliest convenience so that we may set up a day and time for negotiations.
>
> Thank you for your prompt attention to this request.

[June 18, 1991]

> Confirming telephone conversation of today, due to unforeseen circumstances, it will be necessary to extend the collective bargaining agreement for a thirty (30) day period.
>
> We are in agreement that when a new contract is agreed to, everything will be retroactive back to June 30, 1991.

In support of this argument, the Debtor cites *Oakland Press Co., 229 NLRB 476 (1977), enforced, 606 F.2d 689 (6th Cir. 1979)*; and *South Texas Chapter, Associates General Contractors, 190 NLRB 383 (1971).* In both of these cases, letters [*4] of unions to the respective employers which indicated a desire to negotiate new terms were deemed to be sufficient to terminate the respective collective bargaining agreements.

However, in each of these cases, the notice provided was, within the terms of the respective agreement, timely. In each case, the unions argued that their letters expressed an obvious intention to terminate the agreements in issue. The respective regulatory bodies held that mere technical deficiencies in language should not frustrate the union's intentions, in both cases, to terminate the agreements.

However, the letters in issue here were not even close to timely under the terms of the Agreement. And the Union is of course arguing that it did *not* intend to terminate the Agreement through the letters. Both parties in fact adhered to the Agreement's terms at all times after July 1, 1991. We therefore conclude that *Oakland Press* and *South Texas* are distinguishable and in no way alter our observations, at the hearing, that the Debtor clearly had not proven that the Agreement was in fact terminated.

The issue about which the court expressed its principal concern at the hearing was whether [*5] we could adequately protect the Union's rights against West Point by an Order confirming the Plan, yet expressly declaring that confirmation of the Plan did not affect the Union's rights against West Point.

We note that the Debtor has not argued that the court could do so in its post-hearing Memorandum. Perhaps it recognizes, as we do now, that it is improper for a court to try to modify a plan itself to make it confirmable, and that it is what such an Order would be doing.

We have little doubt that a plan which is contrary to the terms and effect of *11 U.S.C. § 1113* cannot be confirmed. The Debtor has clearly not complied with the demanding notice and negotiation requirements of *11 U.S.C. § 1113. See Wheeling-Pittsburgh Steel Corp. v. United Steelworkers of America, 791 F.2d 1074, 1081-94 (3d Cir. 1986).*

We are convinced that the Plan's failure to preserve a union's rights against a successor-purchaser of a Chapter 11 debtor's assets violates *11 U.S.C. § 1113.* Only through the medium of *11 U.S.C. § 1113(f)* can a collective bargaining agreement be terminated or [*6] modified in any way. *See In re Ionosphere Clubs, Inc., 922 F.2d 984, 988-90 (2d Cir. 1990). See also In re Unimet Corp., 842 F.2d 879, 883-84 (6th Cir. 1988)* (*§ 1113* protects rights of retirees beyond the normal extent provided elsewhere in the Bankruptcy Code). *But see In re Armstrong Store Fixtures Corp., 135 Bankr. 18, 22 (Bankr. W.D. Pa. 1992).* Rights provided in the agreement as to successor-entities must be preserved unless there is, unlike here, compliance with the procedures of *11 U.S.C. § 1113. See Ionosphere Clubs, 922 F.2d at 987* (issue was protection of union members upon a sale or merger of the debtor).

In a prior Memorandum, the Debtor argued that, apart from the Agreement, successor rights generally, and those of the Union in particular, are very fragile and may not be cognizable, citing, *e.g., Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 96 L. Ed. 2d 22, 107 S. Ct. 2225 (1987)*; and *NLRB v. Burns Int'l Security Services, Inc., 406 U.S. 272, 32 L. Ed. 2d 61, 92 S. Ct. 1571 (1972).* If this is so, then that aspect of the Agreement which specifically provides that the rights [*7] created thereby survives a succession or assignment become even more crucial and their preservation is necessary.

The Plan purports to reject "all executory contracts. . . ." This would clearly include the Agreement. We do

not think that we can re-write the Plan to exclude the Agreement from it. In fact, the vigor with which West Point and the Debtor argue the rather hopeless termination issue convinces us that the extrication of West Point from the Agreement, per the rejection of the Agreement was, as the Union argues, a significant aspect of the sale transaction. Therefore, the rejection of the Agreement is a significant provision of the Plan.

In the last analysis, we cannot be influenced by questions such as the following, raised expressly and by implication at the hearing: Couldn't the Debtor accomplish the same ends by converting to Chapter 7 and allowing a trustee to consummate the sale to West Point, apparently free from the constraints of Chapter 11 and *11 U.S.C. § 1113*? Why should the Union be allowed to take a position which not only squelches a plan endorsed by all other creditor entities but jeopardizes jobs of members of another Teamsters [*8] Local, with which West Point has a contract and with whose drivers it itends to replace those of the Debtor (especially since the Debtor's insurance expires on June 1, 1992, and it advises that it may have to close down immediately, thereby eliminating *all* of the driver jobs)?

The first question is answered by the observation that this case is presently in Chapter 11, and *11 U.S.C. § 1113 does* apply, whether the plan proposed is a liquidating one or not. *But cf. In re GF Corp., 115 Bankr. 579, 585 (Bankr. N.D. Ohio 1990)* (Congress did not appear to contemplate liquidating plans in enacting *11 U.S.C. §§ 1113, 1114*).

The second question is answered by two observations. Firstly, the Bankruptcy Code does not authorize confirmation of *any* plan endorsed by even an overwhelming majority of creditors. To be confirmed, the plan must satisfy all applicable Code requirements. Secondly, workers' collective rights have traditionally been won by deference of immediate gratification to long-term collective ends, and the theory that, if push comes to shove, management will, at least in most instances and if compelled [*9] to do so, accommodate itself to labor's needs.

DAVID A. SCHOLL

UNITED STATES BANKRUPTCY JUDGE

3722 United States Court House

Philadephia, PA 19106-1763

Dated at Philadelphia, PA, this 1st day of June, 1992.

*ORDER*

AND NOW, this 1st day of June, 1992, after a hearing to consider confirmation of the First Amended Plan of Liquidation filed by Debtor ("the Plan") and Objections thereto by Teamsters Local 500 ("the Union") on May 28, 1992, and careful consideration of the Memoranda submitted by the parties both before and after this hearing, it is ORDERED AND DECREED as follows:

1. The Objections of the Union are SUSTAINED.

2. Confirmation of the Plan is DENIED.

3. A status conference in this case is scheduled on

WEDNESDAY, JUNE 10, 1992, at 9:30 A.M. and shall be held in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

DAVID A. SCHOLL

UNITED STATES BANKRUPTCY JUDGE

3722 United States Court House

Philadelphia, PA 19106-1763