UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **IN RE:** | **Chapter 11** |
| **FLYING J, INC., et al.**[1] | **Case No. 08-13384 (MFW)** |
| **Debtors.** | **Jointly Administered**<br>**Related Dkt. No. 2936**<br>**Hearing Date: 3/23/2010 @ 11:30** |

# LIMITED OBJECTION OF EQUILON ENTERPRISES LLC D/B/A SHELL OIL PRODUCTS US TO THE MOTION TO APPROVE BID PROCEDURES, BREAK-UP FEE AND SALE OF SUBSTANTIALLY ALL ASSETS OF DEBTOR BIG WEST OF CALIFORNIA, LLC

Equilon Enterprises LLC d/b/a Shell Oil Products US ("**Equilon**"), by and through its undersigned counsel, hereby files this limited objection (the "**Limited Objection**") to the *Motion to Approve Bid Procedures, Break-Up Fee and Sale of Substantially All Assets of Debtor Big West of California, LLC* (the "**Sale Motion**"), which was filed by the above-captioned debtors and debtors in possession (collectively "**Debtors**") on February 2, 2010. In support of its Limited Objection, Equilon submits the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Limited Objection under 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608); Big West Oil, LLC (6982); Big West Transportation, LLC (1056); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226); Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

## BACKGROUND

4. On December 22, 2008 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"). *See* Dkt. No. 1. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On December 23, 2008, an order was entered directing procedural consolidation and joint administration of the Debtors' chapter 11 cases (collectively, the "**Chapter 11 Cases**"). *See* Dkt. No. 26.

The Subdivision Condition and Re-Conveyance of the Terminal Assets

6. Prior to the commencement of the Chapter 11 Cases, Big West of California, LLC ("**Big West**") and Equilon (collectively, the "**Parties**") entered into that certain Asset Purchase Agreement dated January 8, 2005, as amended by the First Amendment, dated March 15, 2005, the Environmental Agreement, dated March 15, 2005, and other related agreements (collectively, the "**Equilon APA**").

7. Pursuant to the Equilon APA, *inter alia*, Equilon agreed to (a) sell the Bakersfield Refinery to the debtor Big West and (b) lease the adjacent facility called the Terminal Assets (as defined in the Equilon APA) to Big West. The real estate, however, needed to be subdivided since the two facilities were on a single parcel of real estate. Rather then wait for the subdivision, the parties provided for the conveyance of both the Bakersfield Refinery and the Terminal Assets to Big West. No part of the sale price paid by Big West reflected or was attributed to the Terminal Assets. Big West paid only for the Bakersfield Refinery. In turn, Big West agreed to re-convey the Terminal Assets to Equilon upon the occurrence of the "Subdivision Condition." The Subdivision Condition involves obtaining the approval of Kern

County, California for the subdivision of the real estate into two separate parcels. After occurrence of the Subdivision Condition and the re-conveyance of the Terminal Assets to Shell, Shell would then lease the Terminal Assets to Big West under a Terminal Lease.

8. Big West agreed to complete all tasks that are required to complete the Subdivision Condition and the re-conveyance of the Terminal Assets, including, but not limited to, (i) confirmation that the taxes are paid as required by Kern County; (ii) submission of the parcel map, signed and notarized by Big West and any necessary parties; (iii) re-conveyance of the Terminal Assets free and clear of any liens and security interests; (iv) execution and recording of the Terminal Deed for the Terminal Property; and (v) execution of the Terminal Bill of Sale for the Terminal Assets other than the Terminal Property pursuant to Section 3.03(c) of the Equilon APA.

9. On April 3, 2009, Equilon filed a motion for relief from the automatic stay to take all actions necessary to complete the Subdivision Condition (the "**Equilon Stay Relief Motion**"). *See* Dkt No. 928. On May 15, 2009, this Court granted the Equilon Stay Relief Motion, allowing Equilon, or any other persons or entities (such as Kern County) to take only those actions necessary to allow the completion and recordation of the subdivision and satisfying the Subdivision Condition and re-conveyance of the Terminal Assets.

10. Though Equilon and Big West have worked to accomplish the tasks required to satisfy the Subdivision Condition and re-conveyance of the Terminal Assets, Big West has not completed its tasks, including, but not limited to, the payment of taxes by Big West to Kern County, the delivery of the documents (including the parcel map) by all required parties to Kern County for the recordation of the parcel map and the execution of the Terminal Deed and Terminal Bill of Sale after recordation of the parcel map.

11. Equilon and Big West have engaged in various discussions regarding the relationship between the parties, including, but not limited to, the Equilon APA, the claims between the Parties arising under and relating to the Equilon APA, the completion of the tasks for the Subdivision Condition and re-conveyance of the Terminal Assets, and the possible sale of the Bakersfield Refinery to third parties.

12. On December 16, 2009, Equilon and Big West met and reached a compromised settlement with respect to the claims between the Parties arising under and related to the Equilon APA, which terms of such settlement are memorialized in a term sheet executed by and between the Parties (the "**Settlement Term Sheet**"). The Parties agreed to enter into a formal settlement agreement ("**Settlement Agreement**") based on the Settlement Term Sheet, and have been working diligently to accomplish this task (collectively, the Settlement Term Sheet and Formal Settlement Agreement are the "**Settlement**"). Approval of the Settlement by the Court effectively amends the Equilon APA, and binds any successors and assigns of the Equilon APA.

13. Though the Parties had contemplated that a motion to approve the Settlement would have been filed and approved prior to any sale motion filed by the Debtors for the Bakersfield Refinery, as of this Limited Objection, the Parties have not done so, even though the Settlement is crucial to the assumption and assignment of the Equilon APA and the sale of the Bakersfield Refinery.

14. Late last year Big West contacted Equilon, indicating that Paramount Petroleum Corporation ("**Paramount**") and Alon USA Energy, Inc. ("**Alon**" and together with Paramount, "**Alon/Paramount**") could be a potential stalking horse bidder. Alon/Paramount indicated their interest in the Equilon APA. Equilon and Paramount and Alon engaged in arms-length negotiations regarding the assumption and assignment of the Equilon APA to Paramount.

Equilon and Paramount executed a term sheet on January 25, 2010, memorializing the agreed amendments to the Equilon APA and related documents, if Paramount is the winning bidder ("**Equilon-Paramount Term Sheet**").

15. On February 2, 2010, the Debtors filed the Motion, which seeks approval of bidding procedures, a break-up fee and a sale of substantially all of the assets of Big West (the "**Sale**") to Paramount, as buyer, and Alon, as guarantor, or the successful bidder to be identified pursuant to the proposed bidding procedures.

16. On March 1, 2010, the Debtors filed their Notice of (A) Bid Deadline, Auction and Sale Hearing in Connection with the Sale of Substantially All of the Assets of Big West of California, LLC and (B) the Debtors' Intent to Assume and Assign Certain Executory Contracts and Unexpired Leases in Connection with the Proposed Sale ("**Contract Assumption Notice**"). Exhibit 1 to the Contract Assumption Notice included six references to the Equilon APA between Equilon and Big West. Specifically, all six references included the same details for the agreement as a "Purchase, Environmental and Access Agreements" and dated Jan – Mar 2005.

17. There is no indication that the Settlement must be approved prior to the assumption and assignment of the Equilon APA. There is no indication on the Contract Assumption Notice that the Equilon APA is to be amended prior to assumption and assignment to Paramount.

## LIMITED OBJECTION

18. Equilon does not object in principle to the sale of the Bakersfield Refinery, but does object to the assumption and assignment of the Equilon APA as currently listed on the Contract Assumption List. Equilon objects because the approval of the Settlement directly

impacts the Equilon APA, effectively amending it and binding any successor and assign of Big West to the Equilon APA, as amended.

19. Equilon further objects to the assumption and assignment of the Equilon APA as listed on the Contract Assumption List because the Equilon-Paramount Term Sheet also requires amendments to the Equilon APA.

20. Lastly, Equilon objects to the assumption and assignment of the Equilon APA unless Big West performs its obligations under the Equilon APA as it relates to the Subdivision Condition and re-conveyance of the Terminal Assets.

21. Generally, an executory contract cannot be rejected in part, and assumed in part. The contract must be rejected in its entirety, or not at all. *In re Italian Cook Corp.*, 190 F.2d 994, 997 (3d Cir. 1951) ("The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere.* If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other."). This *cum onere* rule "prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement." *United Air Lines, Inc v. U.S. Bank Trust Nat'l Ass'n* (*In re UAL Corp.*), 346 B.R. 456, 468 n.11 (Bankr. N. D. Ill. 2006); *see also In re Chicago, Rock Island & Pac. R.R. Co.*, 860 F.2d 267, 272 (7th Cir. 1988) ("A trustee cannot accept the benefits of an executory contract without accepting the burdens as well."); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("[T]he debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement."); *In re TSW Stores of Nanuet*, 34 B.R. 299, 304 (Bankr. S.D.N.Y. 1983) ("An executory contract cannot be rejected in part, and assumed in part . . . . The contract must be rejected in its entirety, or not at all.").

22. Big West is required to assume the Equilon APA with both its benefits and its burdens. Generally, there is no requirement that a counterparty agreed to amendments to its executory contract with a debtor as part of any subsequent assumption and assignment of the contract to a third party. However, in this matter, Equilon did agree to amend the Equilon APA, and such amendments are key to the sale of the Bakersfield Refinery.

23. As noted above, Equilon and Big West have reached a Settlement with respect to the claims arising under and related to the Equilon APA, which directly affect the terms of the Equilon APA, the assumption and assignment of the Equilon APA, and sale of the Bakersfield Refinery. The approval of the Settlement effectively amends the Equilon APA. The Parties agreed that any subsequent successor and assign of Big West would be bound by the terms of the Settlement as approved by the bankruptcy court.

24. Prior to any assumption and assignment of the Equilon APA, the Settlement needs to be approved by the bankruptcy court. Nevertheless, the Parties have not yet filed a motion for the Court to approve the terms of the Settlement. As such, Equilon objects to the assumption and assignment of the Equilon APA until such time as the Court has considered the forthcoming motion to approve the Settlement. To the extent that the Court is inclined to approve the Motion, the Court should condition any approval on the assumption and assignment of Equilon APA on any forthcoming motion to approve the Settlement, finding and concluding that the approval of the Settlement is an integral part of the assumption and assignment of the Equilon APA to the winning bidder.

25. Similarly, Equilon and Paramount have reached an agreement on amendments to the Equilon APA pursuant to the Equilon-Paramount Term Sheet. To the extent that Paramount is the winning bidder, the Equilon APA cannot be assumed and assigned to Paramount without

the effectiveness of the agreed amendments. Equilon further objects to the assumption and assignment of the Equilon APA unless the Court also conditions the assumption and assignment of the Equilon APA on the execution of all appropriate and necessary documents between Big West, Paramount, Alon and Equilon in accordance with the Equilon-Paramount Term Sheet. To the extent that Paramount is not the winning bidder, Equilon requires that any winning bidder satisfy Equilon's requirements for the assumption and assignment of the Equilon APA.

26. Equilon has cooperated with the Debtors in many respects throughout these Chapter 11 Cases to maximize value for the estate. Pursuant to the Equilon APA and the Settlement, the completion of the remaining tasks for the Subdivision Condition and re-conveyance of Terminal Assets must occur prior to the consummation of the Sale so that the prospective purchaser, the estate and Equilon will receive the full benefit of the assumption and assignment of the Equilon APA, as amended. Therefore, Equilon objects to the relief sought in the Motion, requesting that any approval of the assumption and assignment of the Equilon APA also be conditioned upon Big West completing its tasks for the Subdivision Condition and re-conveyance of Terminal Assets in accordance with the Equilon APA and approval of the Settlement.

WHEREFORE, Equilon objects on a limited basis and respectfully requests that the Court enter an order: (i) conditioning the approval of the assumption and assignment of the Asset Purchase Agreement, as amended by the First Amendment, dated March 15, 2005, the Environmental Agreement, dated March 15, 2005, and any such other related agreements on the approval of the Settlement; (ii) approving the assumption and assignment of the Equilon APA, as amended, in accordance with (a) the term sheet entered into between Equilon and Paramount and Alon dated January 25, 2010 to the extent Paramount is the winning bidder or (b) terms

satisfactory to Equilon to the extent another party is the winning bidder; (iii) conditioning approval upon Big West completing its tasks for the Subdivision Condition and re-conveyance of Terminal Assets in accordance with the Equilon APA and approval of the Settlement; and (iv) granting Equilon such other and further relief as Equilon shows itself to be entitled.

Dated: March 16, 2010

Respectfully submitted,

**SMITH KATZENSTEIN & FURLOW LLP**


Kathleen M. Miller (I.D. No. 2898)
The Corporate Plaza
800 Delaware Avenue, 10th Floor
P.O. Box 410 (Courier 19801)
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
Email: kmiller@skfdelaware.com

and

**FULBRIGHT & JAWORSKI, L.L.P.**

Sharon M. Beausoleil
Fulbright Tower
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246


**ATTORNEYS FOR**
**EQUILON ENTERPRISES LLC**
**D/B/A SHELL OIL PRODUCTS US**