# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FLYING J INC., et al., | Case No. 08-13384 (MFW) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos.: 3396 and 3399 |

## OBJECTION OF MASSMUTUAL ASSET FINANCE LLC TO PROPOSED FINDING IN CONFIRMATION ORDER THAT CONSUMMATION OF THE PLAN DOES NOT RESULT IN A CHANGE OF CONTROL UNDER THE DEBTORS' CONTRACTS

In their *Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters* (Dkt. No. 3399), the debtors in the above-referenced cases (the "Debtors") advise that they intend to seek entry of a Confirmation Order that will include a finding that consummation of the Debtors' proposed plan of reorganization (the "Plan") does *not* constitute a "change of control" or "material adverse change" under any of the Debtors' contracts, agreements, understandings, obligations or any other arrangements (the "Proposed "Findings").

MassMutual Asset Finance LLC ("MassMutual") f/k/a Winmark Equipment Finance, LLC, a creditor of debtors Flying J, Inc. ("Flying J") and Flying J. Transportation, Inc. ("FJT"), objects to the Court making the Proposed Findings because they would be plainly be inconsistent with the Debtors' contracts with MassMutual, the Plan, and this Court's prior Order approving the proposed sale between Flying J and Pilot Travel Centers.

In support of its objection, MassMutual states as follows:

### BACKGROUND

1.      On December 22, 2003, the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and

manage their properties as debtors-in-possession pursuant to section 1107 and 1108 of the Bankruptcy Code.

2. MassMutual is the holder of documents evidencing: (a) two loans made to non-debtor Free V LLC ("Free V"); and (b) several equipment leases to FJT that have been guaranteed by Flying J.[1] As set forth more fully below, the occurrence of a "change of control" or "material adverse change" constitutes an Event of Default under these documents.

### A. The Loans to Free V

3. The loans to Free V were made in connection with Free V's acquisition and build-out of two travel plazas—one in Benton Harbor, Michigan and one in Wichita Falls, Texas (the "Travel Plazas"). These loans are secured by a duly perfected and validly enforceable first priority mortgage (Michigan Travel Plaza) and deed of trust (Texas Travel Plaza) on, among other things, the real and personal property associated with those Travel Plazas (together, the "MassMutual Liens"), as more fully described in the various loan documents evidencing those loans (collectively, the "Free V Loan Documents").

4. The Travel Plazas are leased by non-debtor Free V to debtor Flying J pursuant to separate lease agreements (collectively, the "Travel Plaza Leases"). The Travel Plaza Leases, and all of the rents accruing and paid thereunder, are also encumbered by the MassMutual Liens.

5. The Free V Loan Documents provide that the following shall be Events of Default:

    A. "(i) The occurrence of any Change in Control unless waived in writing by Lender." *See* Loan Agreement, Ex. C, § 7.01(i). The phrase "Change in Control" "means a

---

[1] RBS Asset Finance, Inc. and Key Equipment Finance, Inc. assigned the Free V Loan Documents and the FJT Loan Documents (as defined below), respectively, to MassMutual f/k/a Winmark Equipment Finance, LLC. See Exhibits A and B.

- 2 -

change in control of [Free V] . . including, without limitation, a change in control resulting from direct or indirect transfers of voting stock . . . or other ownership interests, whether in one or a series of transactions. "Control" means the possession, directly or indirectly, or the power to direct or cause the direction of the management and policies of [Free V] . . and a Change of Control shall occur if any of the following occurs: . . . (b) the occurrence of an Owner Change." *See id.*, Article I, Definitions, "Change of Control." An Owner Change occurs when "Flying J shall cease to be the record and beneficial owner of at least 100% of the outstanding membership interest of [Free V]." *See id.* and Schedule I thereto.

    B.  "(p)  The occurrence of a material adverse change in the business, assets or financial condition of [Free V] . . ." *See id.* § 7.01(p).

  6.  Thus, a "change of control" or "material adverse change" resulting from consummation of the Debtors' proposed Plan would constitute an Event of Default under the Free V Loan Documents.

**B.  The Equipment Leases with FJT**

  7.  Pursuant to a Master Lease Agreement and several equipment schedules executed in connection therewith, MassMutual is leasing equipment (trucks) to FJT. Flying J has guaranteed FJT's obligations to MassMutual under the lease and equipment schedules. A copy of Flying J's guaranty is attached hereto as Exhibit D.

  8.  The Master Lease Agreement provides that it shall be an Event of Default if "(vii) there is a material adverse change in Lessee's or any Guarantor's financial condition . . ." *See* Master Lease Agreement, Exhibit E hereto, § 18(a)(vii).

## C. The Plan Provides for a "Change in Control" Within the Meaning of the Free V Loan Documents and Will have a Material Adverse Change on Flying J

9.  Article IV of the Plan, entitled "Means for Implementation of this Plan", provides in relevant part: "1. [o]n or prior to the Effective Date, (A) Flying J shall consummate the transactions contemplated by the Acquisition Agreement." The Acquisition Agreement is defined in Article I(A)(6) of the Plan as that certain Contribution Agreement dated as of December 18, 2009, by and among Flying J, Pacific Sunstone, Inc. and Pilot.

10. Section 2.1 of the Acquisition Agreement provides in relevant part, "(i) [Flying J] shall contribute, assign, transfer and deliver to [Pilot] on the Closing Date, and [Pilot] shall assume and accept contribution from [Flying J] on the Closing Date of the Target Equity Interests owned by [Flying J] . . . ." "Target Equity Interests" is defined in the fifth recital of the Acquisition Agreement to include, among other things, the "Wholly-Owned LLC Interests". The Wholly-Owned LLC Interests includes Flying J's membership interests in, among other entities, FJT and Free V.

11. Thus, under the Plan, Flying J will be contributing to Pilot its equity interests in, among other entities, Free V and FJT. Such contribution will result in Pilot owning the equity interests in Free V and FJT, and thus result in a "change in control" of Free V, within the meaning of the Free V Loan Documents and perhaps any definition of "change in control."

12. In addition to contributing its equity interests in the Target Equity Interests, Flying J will be contributing, pursuant to section 2.2 of the Contribution Agreement, the Target Assets. "Target Assets" is defined in section 2.2 to mean "all of [Flying Js] and the Contributing Affiliates' right, title and interest in, to and under all assets properties and rights, tangible and intangible, wherever located, that on the Closing Date are ... primarily used or held for use in the operation or conduct of the Business." "Contributing Affiliates" means each Wholly-Owned

- 4 -

Company, i.e., more than a dozen companies owned by Flying J. The "Business" is defined broadly to mean the travel center operations, terminal fuel locations, trucking operations, corporate headquarters building and operations, etc.

13. Thus, Flying J is contributing to Pilot a substantial portion of its directly and indirectly owned assets and equity interests, which is a material adverse change under the Free V Loan Documents and the Master Lease Agreement.

## **OBJECTION**

14. The Debtors have not adduced any facts that would permit this Court to make the Findings. Indeed, as set forth more fully below, the Findings would be contrary to fact.

15. As noted above, upon confirmation of the Plan and performance of the Contribution Agreement, Flying J is contributing to Pilot 100% of the equity in Free V and FJT. Thus, Flying J, which is now in control of those entities, will no longer control them: Pilot will. , Yet, the Debtors seek a finding expressly to the contrary.

16. Further, this Court's January 27, 2010 Order (Dkt. No. 2637) ("Order") which, among other things, approved the Contribution Agreement, provides that "[n]othing in any chapter 11 plan confirmed in these cases or the order of confirmation confirming any such chapter 11 plan, . . . shall conflict with or derogate from the provisions of the Contribution Agreement . . ." Order, ¶ 27. The Debtors' request that the Court find that confirmation of the Plan would not result in a change of control would conflict with the provisions of the Contribution Agreement because it seeks a finding that confirmation would not result in a change of control when the Contribution Agreement provides for Flying J to contribute to Pilot 100% of its membership interests in FJT and Free V. Under almost any reasonable definition of change

- 5 -

of control, a transfer of 100% of the equity interests in a company would result in a "change of control" of that company.

16. Finally, because Flying J is divesting itself of a substantial portion of its assets and equity interests, there can be little doubt such contribution is a material adverse change to Flying J.

WHEREFORE, MassMutual respectfully requests that the Court:

1. Decline to make the Findings; and

2. Grant MassMutual such other relief as may be appropriate and just.

Dated: June 28, 2010
Wilmington, Delaware

BIFFERATO LLC

Ian Conner Bifferato (#3273)
Thomas F. Driscoll III (#4703)
800 North King Street, Plaza Level
Wilmington, Delaware 19801
Telephone: (302) 225-7600
Facsimile: (302) 254-5383

and

McDERMOTT WILL & EMERY LLP
Thomas O. Bean (*pro hac vice*)
Peter M. Acton, Jr. (*pro hac vice*)
28 State Street
Boston MA 02109
Telephone: (617) 535-4000

BST99 1652803-2.049349.0019