# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FLYING J INC., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13384 (MFW)<br>(Jointly Administered) |

### LIMITED OBJECTION OF TOTAL-WESTERN, INC. TO CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION OF THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

NOW COMES Total-Western, Inc. ("TWI"), a party to an executory contract with Big West of California, Inc. ("BWOC"), one of the debtors in the above-captioned proceeding (the "Debtors"), and hereby objects on a limited basis to confirmation of the Joint Plan of Reorganization of the Debtors under Chapter 11 of the Bankruptcy Code (the "Plan"). In support of this Limited Objection, TWI respectfully states as follows:

### I. BACKGROUND.

1. On December 22, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"). On December 23, 2008, the Court entered Orders directing joint administration of the Debtors' Chapter 11 cases under Case No. 08-13384 (MFW).

2. BWOC lists TWI on its Schedule F as an "AP Trade" creditor holding an unliquidated claim in the amount of $1,069,460.11.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Flying J Inc. (3458), Longhorn Partners Pipeline, L.P. (0554); Big West Oil, LLC (6982); Big West of Califonia, LLC (1608); Longhorn Pipeline (0654); Big West Transportation, LLC (1056) ; Longhorn Pipeline Holdings, LLC (0226). The location of the Debtors' corporation headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

3. The Debtors have continued in possession of their respective properties and have continued to operate their businesses as debtors-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

4. TWI provides a range of maintenance and construction services, primarily labor, to oil refineries and to other heavy industrial clients.

5. Prior to the Petition Date, on October 27, 2005, TWI and BWOC (one of the Debtors) entered into the Master Service Agreement Between Big West of California, LLC and Total Western, Inc. (the "Original Contract"). On November 2, 2008, via letter agreement, the parties extended the duration of the Contract through October 27, 2011 (the "Contract Extension"; together with the Original Contract, the "Contract").

6. Pursuant to the Contract, TWI provides services to BWOC, including labor, materials, supervision, tools and equipment, upon the submission by BWOC of a Purchase Order detailing the specific work requested, defined in the Contract as the "Work". Since March, 2007, TWI has been working under Purchase Order # BW-70-0010, which specifies the provision of supplemental maintenance workers on a continuous, daily basis. In return, BWOC is obligated to pay TWI pursuant to certain compensation provisions set forth in the Contract.

7. On or about March 16, 2009, TWI filed with this Court a Notice of Lien pursuant to Sections 362(b) and 546(b)(2) of the Bankruptcy Code, pursuant to which TWI claims, maintains and continues perfection of its lien filed in Kern County, California (the "Lien") for work, equipment, and materials provided at the real property located at 6451 Rosedale Highway, Bakersfield, California, commonly referred to as the Bakersfield Refinery (the "Bakersfield Refinery"). A copy of the California Mechanic's Lien underlying the Notice of Lien is attached hereto as **Exhibit A**.

8. Further, on April 27, 2009, TWI filed a Proof of Claim pursuant to the claim filing procedures established by this Court. TWI's Proof of Claim evidences a claim in the amount of not less than $1,274,393.62, which claim is secured by the Bakersfield Refinery (the "Claim" or "TWI Claim"). The TWI Claim includes as attachments: (i) an itemized statement of TWI's claim balance, (ii) a time-stamped copy of the Notice of Lien, and (iii) a recorded copy of the California Mechanic's Lien that evidences TWI's Lien. A copy of the Claim is attached hereto as **Exhibit B**. Of the total Claim amount, $200,291.77 represents post-petition obligations, on which the Debtor and, now, the buyer of the Bakersfield Refinery have been making regular payments. $1,074,393.62 represents pre-petition obligations as of the Petition Date, exclusive of interest. No payments have been made towards the pre-petition balance, and as set forth below, TWI has legal rights to payment of this amount with interest at the statutory annual rate of 10%.

9. On February 2, 2010, the Debtors filed a motion seeking approval of, inter alia, sale of the Bakersfield Refinery and sale procedures related thereto (the "Sale Motion"). In connection with the Sale Motion, the Debtors obtained approval of a form of notice (the "Sale Notice") that included procedures regarding objections to the Sale Motion.

10. Out an abundance of caution, on March 16, 2010, TWI filed a Reservation of Rights with respect to certain issues related to the recent sale of the Bakersfield Refinery. In the Reservation of Rights, TWI reserved, inter alia, all rights and defenses related to its Lien, its Claim, and the value of its Claim as a secured claim or otherwise.

11. The Court approved the Sale Motion on March 24, 2010.

12. The Debtors filed the Plan on May 28, 2010, along with their Motion for Entry of Order (A) Approving the Combined Hearing on the Adequacy of the Disclosure Statement and

Plan Confirmation, (B) Approving Form and Manner of Notice of Confirmation Hearing and Notice of Non-Voting Status and Opt-Out-Election, (C) Approving Deadline and Procedures for Filing Objections to the Plan and Disclosure Statement, and (D) Granting Related Relief.

## II. OBJECTION TO CONFIRMATION OF THE PLAN.

### A. Objection Based on Debtors' Failure to Provide for Adequate Interest on TWI's Claim.

#### i. *TWI's Secured Claim.*

13. As set forth above and on its Claim, TWI is the holder of a secured claim against BWOC based on its Lien for work, equipment, and materials provided at the Bakersfield Refinery and as evidenced by the California Mechanic's Lien attached as **Exhibit A**.

14. California mechanic's liens attach to improved property when the first labor or construction material is furnished for the work. See, e.g., Parsons Brinckerhoff Quade & Douglas, Inc. v. Kern County Employees Retirement Assn., 5 Cal.App.4th 1264, 1266 (1992). Pre-judgment interest is appropriate from the date identified in the mechanic's lien as of the date when the obligation becomes due. See Cal. Civ. Code § 3287. Pursuant to California Law, that interest is set at 10%. See Cal. Civ. Code § 3289(b).

15. Based on California law, TWI's pre-petition secured claim, inclusive of interest, is not less than $1,236,834.79.

16. By the terms of the Plan, "other" secured creditors of BWOC shall be treated as follows:

> (a) Treatment: Holders of Other Secured Claims against BWOC shall receive the following treatment, at the option of BWOC: (a) the Debtors or Reorganized Debtors shall pay such Allowed Other Secured Claim in full in Cash; (b) delivery of collateral securing any such claim and payment of any interest required under section 506(b) of the Bankruptcy Code; or (c) other treatment that leaves such Claim Unimpaired.

See Plan, Article III, Section B(BWOC)(2).

17. The Debtors have not objected to TWI's Claim and, if the Plan is confirmed in its current form, the Debtors will have two years after the effective date of the Plan to do so. See Plan, Article VII(C). In the Disclosure Statement, however, the Debtors indicate "Projected Claims" in the "BWOC Other Secured Claims" class in the amount of $0. See Disclosure Statement, Section I(D). TWI is aware of no basis on which the Debtors can object to the TWI Claim, but it appears, based on the Disclosure Statement, that the Debtors may do so.

18. Moreover, TWI is aware of no basis for the BWOC to classify TWI's claim as "unliquidated," as it did on its Schedule F. The pre-petition Work has been completed and billed in accordance with the Contract.

19. TWI objects to the Plan to the extent that the Plan fails to account for the Claim or to provide for payment in full, with pre-petition and post-petition interest, of the Claim.

20. TWI reserves all rights with respect to the Claim and its secured status.

### ii.   *TWI's Unsecured Claim.*

21. TWI maintains that it is the holder of a secured claim against BWOC as set forth above. To the extent that TWI's claim is deemed unsecured, however, TWI is entitled to payment on its claim plus interest in the statutory amount of 10%. Accordingly, TWI objects to the portion of the Plan that sets the rate for interest paid on allowed general unsecured claims.

22. Pursuant to the Plan, BWOC General Unsecured Claims are treated as unimpaired, and shall be paid as follows:

> Allowed General Unsecured Claims against…BWOC…shall include interest accrued after the Petition Date through the Effective Date at an interest rate *equal to the higher of the federal judgment rate in effect on the Petition Date or the rate set forth in the applicable written agreement*, if any, between the Debtors and the Holders of such Allowed General Unsecured Claims.

See Plan, Article VI, Section K (emphasis added).

23. This section of the Plan attempts to comply with Bankruptcy Code § 1124 ("a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest"). See In re Coram Healthcare Corp., 315 B.R. 321, 344 (Bankr. D.Del. 2004) ("we conclude that payment of post-petition interest before any distribution to equity holders in a chapter 11 case is not prohibited by the Code and, in fact, may be required.")

24. However, the two options that the Debtors present in the Plan for payment of post-petition interest on unsecured claims are insufficient to leave TWI's Claim unimpaired, and alter the legal and equitable rights to which TWI is entitled based on the Claim. The Contract entered into between BWOC and TWI sets forth no specific rate of interest but, under California law, TWI has a legal right to the application of a statutory interest rate of 10%. Upon information and belief, the federal judgment rate in effect on the Petition Date was .42% (the "Federal Judgment Rate"), which is woefully inadequate to compensate TWI in this context. The Federal Judgment Rate would have had no relevance to TWI's Lien or its Claim absent this provision of the Plan.

25. Although many courts have used the federal judgment rate as the rate of interest in the plan of reorganization context, this Court has previously determined that there is no requirement for the use of the federal judgment rate for post-petition interest to be paid under a chapter 11 plan of reorganization and, indeed, that "the specific facts of each case will determine what rate of interest is 'fair and equitable.'" In re Coram, 315 B.R. at 346 (citing In re Dow Corning Corp., 244 B.R. 678, 689 (Bankr.E.D.Mich. 1999) ("Dow II")).

26. The Contract entered into between BWOC and TWI sets forth no specific rate of interest. However, the Contract is governed by California law. By virtue of the steps that TWI took pre-petition to claim, maintain, and continue perfection of its Lien, TWI availed itself of the state law rights to which it was entitled at the time the lien arose. Accordingly, TWI became entitled, pre-petition, to an interest rate on its Claim in the amount of 10% under California state law. See Cal. Civ. Code § 3289(b) ("[i]f a contract entered into after January 1, 1986 does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach"). In the absence of a specific contract rate, the only fair and equitable treatment of TWI under the Plan would be to offer interest at the statutory rate to which TWI would otherwise be legally entitled.

27. In its current form, the Plan would deny TWI the pre-petition rights it would have had based on its mechanic's lien while at the same time permitting equity holders to benefit from expected dividends in this bankruptcy case. This is a violation of the "absolute priority rule" set forth in Bankruptcy Code § 1129, which requires that creditors receive payment of their claims in full before lesser-priority claims share in the distributions of a reorganized debtor, and should not be permitted. See e.g. Dow II, 244 B.R. at 689.

28. Moreover, TWI is an arms-length contract party that has caused no delay that would make payment of a higher rate of interest unfair to BWOC or BWOC's other creditors.

### B. Objection Based on Unreasonably Lengthy Deadline to Object to Disputed Claims.

29. Allowance of a particular claim is a requirement for payment on the effective date pursuant to the Plan. The TWI Claim appears to be per se "Disputed," as the Debtors continue to have the opportunity to object to the Claim. TWI objects to the Plan to the extent that it would afford the Debtors an additional two years to object to the TWI Claim.

30. Specifically, the Plan provides that "All objections to Disputed Claims shall be filed and served upon the Holders of each such Claim not later than two years after the Effective Date, unless otherwise agreed to by the parties or ordered by the Bankruptcy Court after notice and a hearing." See Article VII, Section C.

31. Upon information and belief, all information that the Debtors might require to determine allowability or to object to the TWI Claim has been provided to the Debtors and has been in possession of the Debtors since the Petition Date. TWI should not have to wait for, possibly, two years for the Debtors to address the Claim.

32. The Debtors should be required to assess the TWI Claim and file an objection, if they determine an objection is warranted, within 30 days of the effective date of the Plan.

33. Notably, BWOC listed TWI on its Schedule F as a creditor holding a claim in the amount of $1,069,460.11. This amount is not disputed by the Debtors. At minimum, if the Debtors require additional time to assess the TWI Claim, the Debtors should be required to pay the undisputed amount of $1,069,460.11 to TWI on the effective date of the Plan

### C. The Plan Demonstrates a Lack of Good Faith Regarding TWI's Claim.

34. As set forth above, BWOC does not dispute that TWI holds a claim in the amount of $1,069,460.11. It offends good faith that the Debtors would propose to pay the Federal Judgment Rate of .42% on a claim in excess of $1 million, possibly two years from now or longer, while making distributions to equity holders.

35. To the extent that there is any risk that funds may be insufficient to pay creditors in full at the end of the proposed claim resolution process, the Debtors and, in particular, the equity holders who ultimately benefit, should bear that risk. TWI, an arms-length contract party with a properly perfected lien, should be compensated at a reasonable rate for the delay in

payment of its Claim, and should not be forced to bear the longer-term risks associated with a reorganizing debtor.

### III. RESERVATION OF RIGHTS.

36. TWI specifically reserves the right to supplement and raise other objections to approval of the Disclosure Statement or confirmation of the Plan at any hearing to consider the Disclosure Statement or confirmation of the Plan. Nothing contained herein should be construed as a waiver of any objection.

WHEREFORE, for the reasons set forth above, the Court should deny approval of the Disclosure Statement and confirmation of the Plan, and grant TWI such other and further relief as is just.

Date: June 28, 2010
Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ Allinson III*

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195

- and –

MIRICK, O'CONNELL, DEMALLIE & LOUGEE, LLP
Joseph H. Baldiga, Esq.
Christine E. Devine, Esq.
Gina M. Barbieri, Esq.
100 Front Street
Worcester, MA 01608
Phone: (508) 791-8500
Fax: (508) 791-8502
Email: bankrupt@modl.com

*Attorneys for Total-Western, Inc.*