**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| FLYING J INC., et al.,[1] | ) Case No. 08-13384 (MFW) |
| Debtors. | ) Jointly Administered |

**DECLARATION AND EXPERT REPORT OF PAUL P. HUFFARD IN SUPPORT OF CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION OF THE DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

I, Paul P. Huffard, declare as follows under penalty of perjury under 28 U.S.C. § 1746:

1. I am over the age of 18 and competent to testify and make this declaration in support of confirmation of the *Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code (With Technical Amendments)* (the "Plan"), filed contemporaneously herewith. I am a Senior Managing Director of Blackstone Advisory Partners L.P. ("Blackstone"), an operating subsidiary of The Blackstone Group L.P. ("The Blackstone Group"), a global alternative asset manager and provider of financial advisory services which has its principal office at 345 Park Avenue, New York, New York 10154.

2. I submit this declaration and expert report (this "Declaration") in conjunction with the *Debtors' Memorandum of Law in Support of Entry of an Order (A) Approving the Debtors' Disclosure Statement Pursuant to Sections 1125 and 1126(B) of the Bankruptcy Code and (B) Confirming the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Flying J Inc. (3458); Big West of California, LLC (1608); Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226); and Longhorn Pipeline Inc. (0654). The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403

*States Bankruptcy Code* (the "Confirmation Brief"), filed contemporaneously herewith.[2] All facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by the Debtors and other parties in interest, my review of relevant documents and my education and experience. If I am called upon to testify, I can and will testify competently to the facts set forth herein.

**I.      Background and Qualifications.**

3.      Blackstone currently is serving as investment banker and financial advisor for Flying J Inc. ("Flying J"), a corporation organized under the laws of the State of Utah and a debtor and debtor in possession in the above-captioned chapter 11 cases of Flying J and certain of its affiliates (collectively, the "Debtors"). On April 3, 2009, the Court entered the *Order Authorizing the Debtors to Retain Blackstone Advisory Services L.P. As Their Investment Banker and Financial Advisor* Nunc Pro Tunc *to the Petition and Approving Limited Waiver of the Timekeeping Requirement of Del. Bank. L.R. 2016-2(d)* [Docket No. 926], which approved Blackstone's engagement letter with the Debtors (the "Engagement Letter") as well as the *Amended Order Authorizing the Debtors to Retain Blackstone Advisory Services L.P. As Their Investment Banker and Financial Advisor* Nunc Pro Tunc *to the Petition Date* [Docket No. 927], which approved an additional engagement letter (the "Additional Services Engagement Letter") between Blackstone and the Debtors. In addition, on August 27, 2009, the Court entered the *Order Further Amending the Retention Order Authorizing the Debtors to Retain Blackstone Advisory Services L.P. As Investment Banker and Financial Advisor to Include Additional*

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Confirmation Brief or in the *Disclosure Statement for the Joint Plan of Reorganization of Flying J Inc., Big West of California, LLC, Big West Oil, LLC, Big West Transportation, LLC and Longhorn Partners Pipeline, L.P. Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement").

2

*Necessary Financial Advisory and Investment Banking Services* [Docket No. 1830], which approved an amendment to the Engagement Letter to include additional necessary financial advisory and investment banking services related to exploring exit financing options for Debtor Big West Oil LLC.

4. The Blackstone Group is a leading global alternative asset manager and provider of financial advisory services listed on the New York Stock Exchange (ticker symbol: BX). Blackstone's restructuring and reorganization advisory operation is one of the leading advisors to companies and creditors in restructurings and bankruptcies.

5. Blackstone professionals have extensive experience working with financially troubled companies in complex financial restructurings. Since 1991, Blackstone has advised on more than 245 distressed situations, both in and out of bankruptcy proceedings, involving more than $945 billion of total liabilities.

6. Since joining Blackstone in 1995, I have worked on a variety of restructuring and reorganization assignments, both in-court and out-of-court, for debtors, creditor groups, corporate parents of troubled companies and purchasers of distressed assets. In addition, I have provided expert witness testimony in numerous bankruptcy cases on a variety of issues, including valuation and capital structure issues. I received my Bachelor of Arts from Harvard College and Masters in Business Administration from the Kellogg Graduate School of Management at Northwestern University. Prior to joining Blackstone, I served as vice president of Hellmold Associates, Inc., an investment management firm specializing in financial restructuring services, and as an Associate in the corporate finance department of Smith Barney, Harris Upham & Co., Inc.

7. I have also been qualified and have testified as an expert in the area of investment banking and valuation in a number of cases.

## II. Blackstone's Involvement in These Chapter 11 Cases.

8. Since the Debtors' retention of Blackstone as the Debtors' investment banker, Blackstone has, among other tasks: (a) reviewed and analyzed the Debtors' business, operations and financial projections; (b) assisted the Debtors in the months subsequent up to the Petition Date in evaluating strategic alternatives, including identification of potential post-petition and exit financing sources; (c) provided financial and valuation advice and assistance to the Debtors in developing and seeking approval of the Plan; (d) assisted in the negotiation and execution of the sale of the Debtors' highway hospitality business to Pilot Travel Centers; (e) conducted a marketing process for certain of the Debtors' non-core assets; and (f) participated in negotiations with parties in interest in the chapter 11 cases with the goal of a smooth and consensual restructuring process. During that time, Blackstone developed a great deal of institutional knowledge regarding the Debtors' finances, operations and systems. It has also become intimately familiar with the Debtors' restructuring initiatives.

## III. Valuation Analysis.

9. In connection with certain matters relating to the Plan, the Debtors requested that Blackstone prepare a valuation analysis of Reorganized Debtors' businesses and assets. The valuation analysis was prepared by Blackstone based, in part, on information contained in and underlying the Debtors' financial projections set forth in Exhibit F to the Disclosure Statement (the "Projections").

10. In preparing its analysis, Blackstone has, among other things: (a) reviewed certain operating and financial forecasts prepared by the Debtors with the assistance of

4

K&E 17132647 5

Zolfo Cooper, including the Projections, as well as operating and financial forecasts prepared by Pilot; (b) discussed with Flying J management and Zolfo Cooper the key assumptions related to the Projections, and discussed with Pilot management assumptions underlying Pilot's operating and financial forecasts; (c) employed generally accepted valuation techniques, as described below; and (d) considered such other analyses as Blackstone deemed appropriate and necessary under the circumstances.

11. Although Blackstone conducted a review and analysis of the Debtors' businesses, operating assets and liabilities, and business plans, Blackstone relied (as is standard practice) upon and assumed, without independent verification, the accuracy and completeness of the financial and other information provided to or discussed with it by the Debtors or obtained by it from public sources. Blackstone has not audited, reviewed, or compiled the information in accordance with Generally Accepted Accounting Principles or otherwise. With respect to all projections furnished to it, Blackstone has relied on representations that these have been reasonably prepared on a basis reflecting the best currently-available estimates and judgments of management of the Debtors as to the expected future performance of the Reorganized Debtors. Blackstone has not assumed any responsibility for the independent verification of any such information, including, without limitation, the Projections.

12. The total enterprise value of the Reorganized Debtors prepared by Blackstone is a hypothetical value derived through the application of various valuation methodologies, as further set forth below, that is inherently uncertain and reflects a number of assumptions. The equity value calculated in Blackstone's analysis does not purport to be an estimate of a post-reorganization trading value. Trading values may be materially different from the implied equity value associated with Blackstone's valuation analysis. Moreover, the Reorganized Debtors will

5

remain a private company upon emergence and will have uncertain liquidity in their shares. Blackstone's reorganization value estimate is based on economic, market, financial, and other conditions as they exist, and on the information made available to Blackstone as of May 27, 2010.

13. I believe that the assumptions and the methodologies employed by Blackstone were reasonable and appropriate. The valuation analyses employed the generally accepted valuation methodologies and techniques described below, and I believe that the results derived by Blackstone's analysis present a reasonable range of valuations of the total enterprise value of the Reorganized Debtors.

## IV. Valuation Methodologies.

14. Blackstone performed its valuation analysis of the Reorganized Debtors on a "sum-of-the-parts" basis, whereby each individual business was valued separately and the values were aggregated in order to estimate the value of the Reorganized Debtors. In preparing its valuation, Blackstone considered three generally accepted valuation techniques, each of which typically is employed by professionals in my field, and each of which I have used many times in the past: (a) discounted cash flow ("DCF") analysis; (b) comparable public company analysis; and (c) precedent transactions analysis.

### A. Discounted Cash Flow Analysis.

15. Blackstone used the DCF methodology to estimate the enterprise value of the Reorganized Debtors' businesses. A DCF analysis estimates the total enterprise value of a business or asset based upon the present value of the projection of unlevered after-tax cash flows available to all providers of capital using estimated discount rates. The projection of unlevered free cash flows is discounted using an estimated weighted average cost of capital determined by, among other things, reference to observed costs of capital for comparable

6

companies (i.e., companies with reasonably similar characteristics, including, among other things, lines of business, geography, size and profitability to the underlying businesses of the Reorganized Debtors). Added to the present value of the unlevered free cash flows is an estimate of the present value of the terminal value of the underlying businesses of the Reorganized Debtors.

### B. Comparable Public Company Analysis.

16. In undertaking its comparable public company analysis of the Reorganized Debtors, Blackstone estimated the total enterprise value of the Reorganized Debtors by reference to certain trading multiples of comparable companies. Specifically, Blackstone applied market multiples of EBITDA (or in certain circumstances, net book value of assets) to the financial projections of the Debtors (as summarized in Exhibit F to the Disclosure Statement) to determine the ranges of total enterprise value for the Reorganized Debtors.

### C. Precedent Transactions Analysis.

17. Blackstone also undertook a precedent transactions analysis to estimate the Reorganized Debtors' total enterprise value by analyzing the respective enterprise values of comparable companies involved in merger and acquisition transactions. Under this methodology, the enterprise value of each such company was determined by an analysis of the consideration paid and the liabilities assumed in the merger or acquisition transaction. As in a comparable company valuation analysis, those enterprise values were expressed as multiples of EBITDA (or in certain circumstances, net book value of assets). The derived multiples were then applied to the EBITDA of the Reorganized Debtors' underlying business or assets (or net book value of assets) to determine the ranges of total enterprise value.

## V. Valuation of the Reorganized Debtors

18. Blackstone's estimate of the total enterprise value of the Reorganized Debtors (as a holding company) includes the value of the underlying subsidiaries based upon the Reorganized Debtors' proportional ownership of the subsidiaries' underlying net equity value.[3] Since there will be no debt at the parent upon emergence, the Debtors' total enterprise value equals the equity value.[4]

19. As noted above, Blackstone made certain assumptions in connection with its valuation analysis. Based upon these assumptions, the analyses detailed above, other matters considered, and the limits of review and certainty discussed above, Blackstone provided to the Debtors an estimate of the Reorganized Debtors' total enterprise value as of the Effective Date of approximately $720 to $960 million, with a midpoint of $840 million.

20. Based on shares outstanding at May 27, 2010, which have been adjusted for dilution related to in-the-money options outstanding (using the "treasury stock method" for accounting for such dilution), but without adjustment for any potential dilution related to any management incentive program that might be adopted by Flying J, this would imply a per-share valuation range of $620 to $830, with a midpoint of $725.

---

[3] As such, it does not represent the aggregate gross value of the individual estimates of total enterprise value of the underlying subsidiaries.

[4] Various of the Reorganized Debtors' subsidiaries will have their own debt balances. The figures represented herein do not reflect the subsidiary level debt but rather only the proportionate interest that the Reorganized Debtors will have in the subsidiaries' equity.

K&E 17132647 5

| *(Amounts in millions except per share amounts.)* | Low | Mid | High |
|---|---|---|---|
| Reorganized Debtors Total Enterprise Value | $720.0 | $840.0 | $960.0 |
| Less Pro Forma Debt at Parent[5] | - | - | - |
| **Reorganized Debtors Equity Value** | **$720.0** | **$840.0** | **$960.0** |
| Diluted Common Shares Outstanding | 1,160,793 | 1,160,793 | 1,160,793 |
| Equity Value Per Common Share | $620 | $725 | $830 |

---

[5] Reorganized Flying J (the ultimate parent holding company) will have no debt outstanding at emergence. The equity values of subsidiaries included in Reorganized Debtors Total Enterprise Value are net of debt at each subsidiary.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 2, 2010

Respectfully submitted,

*/s/ Paul. P. Huffard*
Paul P. Huffard