**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FLYING J INC., et al.,[1] | ) | Case No. 08-13384 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Ref. Docket No.: 3603 and 3604** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**
**(A) APPROVING THE DEBTORS' DISCLOSURE STATEMENT**
**PURSUANT TO SECTIONS 1125 AND 1126(B) OF THE BANKRUPTCY**
**CODE AND (B) CONFIRMING THE JOINT PLAN OF REORGANIZATION OF THE**
**DEBTORS UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

having:[2]

a.   commenced the above-captioned chapter 11 cases by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § § 101 *et seq.* (as amended, the "Bankruptcy Code") on December 22, 2008 (the "Petition Date");

b.   continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.   filed, on February 10, 2010, (i) *The Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 2747] and (ii) the *Disclosure Statement for the Joint Plan of Reorganization of Flying J Inc., Big West of California, LLC, Big West Oil, LLC, Big West Transportation, LLC and Longhorn Partners Pipeline, L.P. Under Chapter 11 of the Bankruptcy Code* [Docket No. 2748];

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Flying J Inc. (3458); Big West of California, LLC (1608); Big West Oil, LLC (6982); Big West Transportation, LLC (6984); Longhorn Partners Pipeline, L.P. (0554); Longhorn Pipeline Holdings, LLC (0226); and Longhorn Pipeline Inc. (0654).  The location of the Debtors' corporate headquarters and the service address for all Debtors is: 1104 Country Hills Drive, Ogden, UT 84403.

[2]   Unless otherwise noted, capitalized terms not defined herein shall have the meanings ascribed to them in the Plan (as defined herein) and the "Rules of Interpretation" (set forth in Article I.B. of the Plan), to the extent applicable, shall apply to the Confirmation Order (as defined herein).

d.    Filed, on May 28, 2010, (i) the *Disclosure Statement for the First Amended Joint Plan of Reorganization of Flying J Inc., Big West of California, LLC, Big West Oil, LLC, Big West Transportation, LLC and Longhorn Partners Pipeline, L.P. Under Chapter 11 of the Bankruptcy Code* [Docket No. 3397] (the "Disclosure Statement") and (ii) *The First Amended Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 3396] (as amended through the date hereof and together with the Plan Supplement, the "Plan"), attached hereto as **Exhibit A**;

e.    filed, on May 28, 2010, the *Debtors' Motion for Entry of Order (A) Approving the Combined Hearing on the Adequacy of the Disclosure Statement and Plan Confirmation, (B) Approving Form and Manner of Notice of Confirmation Hearing and Notice of Non-Voting Status and Opt-Out Election, (C) Approving Deadline and Procedures for Filing Objections to the Plan and Disclosure Statement, and (D) Granting Related Relief* [Docket No. 3398] (the "Scheduling Motion") seeking entry of the *Order (A) Approving the Combined Hearing on the Adequacy of the Disclosure Statement and Plan Confirmation (B) Approving Form and Manner of Notice of Confirmation Hearing and Notice of Non-Voting Status and Opt Out Election, (C) Approving Deadline and Procedures for Filing Objections to The Plan and Disclosure Statement, and (D) Granting Related Relief* (the "Scheduling Order");

f.    filed, on May 28, 2010 the *Notice of Combined Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters* [Docket No. 3399] (the "Confirmation Hearing Notice"), which contained notice of the commencement of the Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan, and the deadline for filing objections to the Plan and Disclosure Statement;

g.    served, on or around May 29, 2010, in accordance with the terms of the Scheduling Order, the Confirmation Hearing Notice, the *Notice of (A) Non-Voting Status with Respect to Classes Deemed to Accept the Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code and Unclassified Claims and (B) Third Party Release Opt Out Election* (the "Notice of Non-Voting Status and Opt Out"), the Plan, the Disclosure Statement and the Scheduling Motion, as evidenced by (i) the *Affidavit/Declaration of Mailing Regarding Notice of Hearing on (A) Disclosure Statement and (B) Confirmation of Plan of Reorganization and Related Matters and Notice of (A) Non-Voting Status with Respect to Classes Deemed to Accept the Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code and Unclassified Claims and (B) Third Party Releases Opt Out Election* [Docket No. 3448], and (ii) the *Affidavit/Declaration of Mailing regarding Joint Plan or Reorganization of the Debtors under the Chapter 11 of the Bankruptcy Code, Disclosure Statement for the Joint Plan of Reorganization of Flying J Inc., Big West of California, LLC, Big West Oil, LLC, Big West Transportation, LLC and Longhorn Partners Pipeline, L.P. Under Chapter 11 of the Bankruptcy Code and Motion to Approve (A) Approving the Combined Hearing on the Adequacy of the Disclosure*

*Statement and Plan Confirmation, (B) Approving Form and Manner of Notice of Confirmation Hearing and Notice of Non-Voting Status and Opt-Out Election, (C) Approving Deadline and Procedures for Filing Objections to the Plan and Disclosure Statement, and (D) Granting Related Relief* [Docket No. 3450] and (items (i) and (ii) of this paragraph, collectively, the "<u>Confirmation Hearing Notice Affidavits</u>");

h.      published, on June 10, 2010 in *The Wall Street Journal (National Edition)*, *USA Today*, the *Bakersfield Californian* and the *Salt Lake City Tribune* pursuant to the Scheduling Order, the Confirmation Hearing Notice, as evidenced by the *Certification of Publication in the Bakersfield Californian* [Docket No. 3593], the *Certification of Publication in the Salt Lake Tribune* [Docket No. 3594], the *Certification of Publication in the USA Today* [Docket No. 3595] and the *Certification of Publication in the Wall Street Journal (National Edition)* [Docket No. 3596] (collectively, the "<u>Publication Affidavits</u>," and together with the Confirmation Hearing Notice Affidavits, the "<u>Notice Affidavits</u>");

i.      filed on June 23, 2010, the various documents comprising the *Plan Supplement in Support of the Plan of Reorganization* [Docket No. 3519] (the "<u>Plan Supplement</u>");

k.      filed, on July 2, 2010, the *Declaration of John Boken, Chief Restructuring Officer of Flying J Inc., in Support of the Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code*, the *Declaration and Expert Report of Paul P. Huffard in Support of Confirmation of the Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code*, and the *Declaration of Crystal C. Maggelet in Support of the Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code* (all declarations identified in this paragraph, collectively, the "<u>Confirmation Declarations</u>");

l.      filed, on July 2, 2010, the *Debtors' Memorandum of Law in Support of Entry of an Order (A) Approving the Debtors' Disclosure Statement Pursuant to Sections 1125 and 1126(B) of the Bankruptcy Code and (B) Confirming the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code* (the "<u>Confirmation Brief</u>"); and

m.      filed, on July 2, 2010, these *Findings of Fact, Conclusions of Law and Order (A) Approving the Debtors' Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code and (B) Confirming the Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code* (together with all the exhibits hereto, the "<u>Confirmation Order</u>").

The Bankruptcy Court having:

a.      entered the Scheduling Order on the date hereof;

b.      approved July 6, 2010, at 2:00 p.m., prevailing Eastern Time, as the date and time for the commencement of the Confirmation Hearing (as defined herein) pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.      reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Confirmation Declarations, the Notice Affidavits, and all Filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements and reservations of rights;

d.      held a combined hearing to consider the adequacy of the Disclosure Statement and the Confirmation of the Plan on July 6, 2010 (the "Confirmation Hearing") after due and sufficient notice was given to Holders of Claims against, and Equity Interests in, the Debtors and other parties in interest in accordance with the Scheduling Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), each as established by the Notice Affidavits;

e.      heard the statements, arguments and objections made by counsel in respect of Confirmation;

f.      considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation;

g.      overruled any and all objections (to the extent not withdrawn) to the Plan, the Disclosure Statement and Confirmation Order and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

h.      taken judicial notice of all pleadings and other documents Filed, all orders entered and all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, based on the evidence introduced at the Confirmation Hearing,

that notice of the Confirmation Hearing and the opportunity for any party in interest to object to

Confirmation were adequate and appropriate as to all parties affected or to be affected by the

Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the

documents Filed in support of Confirmation and presented at the Confirmation Hearing establish

just cause for the relief granted herein; and after due deliberation thereon and good cause

appearing therefor, the Bankruptcy Court hereby makes and issues the following Findings of

Fact, Conclusions of Law and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

**A.      Findings and Conclusions.**  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**B.      Jurisdiction, Venue, Core Proceeding (28 U.S.C. § § 157(b)(2), 1334(a)).**  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a Final Order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper in this District and before the Bankruptcy Court pursuant to 28 U.S.C. § § 1408 and 1409.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

**C.      Chapter 11 Petitions.**  On the Petition Date, each Debtor commenced with the Bankruptcy Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases pursuant to section 1104 of the Bankruptcy Code.  On January 5, 2009, the U.S. Trustee for the District of Delaware appointed the Creditors' Committee. The Bankruptcy Court has ordered the procedural consolidation and joint administration of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

5

**D.    Objections.** Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements and reservations of rights are overruled on the merits.

**E.    Burden of Proof.** The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden. The Bankruptcy Court also finds that the Debtors have satisfied the elements of section 1129(a) and (b) of the Bankruptcy Code by clear and convincing evidence.

**F.    Adequacy of Disclosure Statement.** The Disclosure Statement (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, rules and regulations, including the Securities Act of 1933, as amended (the "Securities Act"), (ii) contains "adequate information" (as such term is defined in section 1125(a) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein and (iii) is approved in all respects.

**G.    Solicitation.** Pursuant to section 1126(f) of the Bankruptcy Code, the Debtors are not required to solicit votes from any Holders of Claims or Equity Interests, as each Class of Claims and Equity Interests is Unimpaired under the Plan and is conclusively presumed to have accepted the Plan.

**H.    Notice.** As is evidenced by the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement and the Plan Supplement were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been given due, proper, timely and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any

applicable non-bankruptcy law, rule and regulation and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

I.    **Plan Supplement.**    The Debtors' Plan Supplement includes the following documents: (i) required disclosures under section 1129(a)(5) of the Bankruptcy Code; (ii) the list of Executory Contracts and Unexpired Leases to be rejected or assumed; (iii) the non-exclusive list of Causes of Action to be retained by the Reorganized Debtors; (iv) the Liquidating Trust Agreement or a description thereof; (v) the forms of definitive agreements and other documentation evidencing the Exit Facilities, and (vi) amended certificates of incorporation or other forms of organizational documents and by-laws or descriptions thereof. All such materials comply with the terms of the Plan, the Bankruptcy Code and applicable non-bankruptcy law and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and no other or further notice is or shall be required.

J.    **Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**    The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponent, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

K.    **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).**    In addition to Administrative Claims (Article II.A. of the Plan), Priority Tax Claims (Article II.B. of the Plan) and DIP Facility Claims (Article II.A.3 of the Plan), which need not be classified, Article III of the Plan classifies twenty-one Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for

separately classifying the various Classes of Claims and Equity Interests created under the Plan and such Classes do not unfairly discriminate among Holders of Claims and Equity Interests. Therefore, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

L.    **Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**  Article III of the Plan specifies that all Classes of Claims and Equity Interests are Unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.  Specifically, the below chart identifies all Unimpaired Classes of Claims and Equity Interests.

| Class | Claim or Equity Interest |
|---|---|
| | **FLYING J INC.** |
| 1A | Flying J Other Secured Claims |
| 1B | Flying J General Unsecured Claims |
| 1C | Flying J TCH Intercompany Claims |
| 1D | Flying J Equity Interests |
| 1E | Flying J ESOP Equity Interests |
| 1F | Flying J Assumed Liability Claims |
| | **BIG WEST OIL, LLC** |
| 2A | BWO Prepetition Credit Facility Claims |
| 2B | BWO Other Secured Claims |
| 2C | BWO General Unsecured Claims |
| 2D | BWO Equity Interests |
| 2E | BWO Assumed Liability Claims |
| | **BIG WEST OF CALIFORNIA, LLC** |
| 3A | BWOC Prepetition Credit Facility Claims |
| 3B | BWOC Other Secured Claims |
| 3C | BWOC General Unsecured Claims |
| 3D | BWOC Equity Interests |
| 3E | BWOC Assumed Liability Claims |
| | **BIG WEST TRANSPORTATION, LLC** |
| 4A | BWT Prepetition Credit Facility Claims |
| 4B | BWT Equity Interests |
| | **LONGHORN PARTNERS PIPELINE, L.P.** |
| 5A | Longhorn Other Secured Claims |
| 5B | Longhorn General Unsecured Claims |
| 5C | Longhorn Equity Interests |

M.    **No Discrimination (11 U.S.C. § 1123(a)(4)).**  The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of

8

a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

N.    **Implementation of the Plan (11 U.S.C. § 1123(a)(5)).**  The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including:  (i) consummation of certain sale, merger or other similar transactions involving Flying J and BWOC; (ii) the continued corporate existence of Flying J and BWO; (iii) establishment of the Liquidating Trust pursuant to the Liquidating Trust Agreement; (iv) generally allowing for all corporate action necessary to effectuate the Plan, including the assumption of Executory Contracts, appointment of the directors, officers, and managers of the Reorganized Debtors, and execution and entry into the Exit Facilities; (v) the adoption and filing of the amended and restated certificates of incorporation or other formation documents and by-laws of the Reorganized Debtors; (vi) the release of Liens securing any secured Claim (except Liens securing secured Claims that are reinstated pursuant to the Plan); (vii) the identification of sources of consideration from which the Debtors will make distributions under the Plan; and (viii) the preservation of the Debtors' Causes of Action.

O.    **Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).**  The certificates of incorporation or other formation documents for the Reorganized Debtors (or descriptions thereof), Filed as part of the Plan Supplement, prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

P.    **Designation of Directors, Officers, and Managers (11 U.S.C. § 1123(a)(7)).** The Plan Supplement and Article IV.E. of the Plan contain provisions with respect to the manner

9

of selection of directors, officers and managers of the Reorganized Debtors, which provisions are consistent with the interests of creditors, equity security Holders and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

Q. **Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)).** Pursuant to Article III of the Plan the Classes of Claims and Equity Interests listed in the chart below are Unimpaired, as contemplated by section 1123(b)(1) of the Bankruptcy Code.

| Class | Claim or Equity Interest |
|---|---|
| | **FLYING J INC.** |
| 1A | Flying J Other Secured Claims |
| 1B | Flying J General Unsecured Claims |
| 1C | Flying J TCH Intercompany Claims |
| 1D | Flying J Equity Interests |
| 1E | Flying J ESOP Equity Interests |
| 1F | Flying J Assumed Liability Claims |
| | **BIG WEST OIL, LLC** |
| 2A | BWO Prepetition Credit Facility Claims |
| 2B | BWO Other Secured Claims |
| 2C | BWO General Unsecured Claims |
| 2D | BWO Equity Interests |
| 2E | BWO Assumed Liability Claims |
| | **BIG WEST OF CALIFORNIA, LLC** |
| 3A | BWOC Prepetition Credit Facility Claims |
| 3B | BWOC Other Secured Claims |
| 3C | BWOC General Unsecured Claims |
| 3D | BWOC Equity Interests |
| 3E | BWOC Assumed Liability Claims |
| | **BIG WEST TRANSPORTATION, LLC** |
| 4A | BWT Prepetition Credit Facility Claims |
| 4B | BWT Equity Interests |
| | **LONGHORN PARTNERS PIPELINE, L.P.** |
| 5A | Longhorn Other Secured Claims |
| 5B | Longhorn General Unsecured Claims |
| 5C | Longhorn Equity Interests |

There are no Impaired Classes of Claims or Equity Interests under the Plan.

R. **Assumption and Rejection (11 U.S.C. § 1123(b)(2)).** Article V of the Plan, governing the assumption and rejection of Executory Contracts and Unexpired Leases, and

**Exhibits 4 & 5** of the Plan Supplement meet the requirements of section 365 of the Bankruptcy Code. There have been no objections to the Debtors' assumption of Executory Contracts pursuant to Article V of the Plan.

S.    **Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).**   The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

T.    **The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**   The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

1.    each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code and are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

2.    the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

3.    the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Rules, any applicable non-bankruptcy law, rule and regulation, the Scheduling Order and all other applicable law, in transmitting the Plan, the Plan Supplement, the Disclosure Statement, and related documents and notices. Accordingly, the Debtors and their Representatives acted in "good faith" within the meaning of the Bankruptcy Code.

U.    **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**   The Debtors have proposed the Plan (including all documents necessary to effectuate the Plan) and the transactions

067990.1001

contemplated in the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement and the record of the Confirmation Hearing and other proceedings held in the Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful reorganization of the Debtors. The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's-length among Representatives of the Debtors, Pilot, the Creditors' Committee, the Holders of Pilot DIP Lender Claims, and the Holders of Prepetition Credit Facility Claims, and their respective Professionals. Further, the Plan's classification, indemnification, exculpation, release and injunction provisions have been negotiated in good faith and at arm's-length, are consistent with sections 105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129 and 1142 of the Bankruptcy Code and are each necessary for the Debtors' successful reorganization.

V.    **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).** Any payment made or to be made by the Debtors or by a person issuing securities or acquiring property under the Plan for services or for costs and expenses of the Debtors' Professionals in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

W.    **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).** The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors, officers and managers of the Reorganized Debtors after Confirmation of the Plan have been fully disclosed to the extent available, and the

12

appointment to, or continuance in, such offices of such persons is consistent with the interests of Holders of Claims and Equity Interests and with public policy.    As set forth in the Plan Supplement, on the Effective Date, the initial board of directors of the Reorganized Debtors shall consist of the individuals identified in the Plan Supplement.    Each such individual and each member of the board of directors of the Reorganized Debtors will serve in accordance with the terms and subject to the conditions of the certificates of incorporation or other formation documents and by-laws (or as set forth in the descriptions thereof) Filed in the Plan Supplement and any other relevant organizational documents, each as applicable.    The identity of any insider that will be employed or retained by the Reorganized Debtors has been fully disclosed.

      **X.**      **No Rate Changes (11 U.S.C. § 1129(a)(6)).**    The Plan does not provide for rate changes by any of the Reorganized Debtors.    Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the Chapter 11 Cases.

      **Y.**      **Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).**    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.    The evidence, including the liquidation analysis provided in the Disclosure Statement, and otherwise submitted, proffered or adduced before or at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence and (iii) establishes that if any Claim or Equity Interest were found to be Impaired under the Plan, each Holder of any such Impaired Claim or Equity Interest would receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

      **Z.**      **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**    All Classes of Claims and Equity Interests are Unimpaired under the Plan.    Accordingly, each Class of Claims and

13

Equity Interests, as listed below, is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

| Class | Claim or Equity Interest |
|---|---|
|  | **FLYING J INC.** |
| 1A | Flying J Other Secured Claims |
| 1B | Flying J General Unsecured Claims |
| 1C | Flying J TCH Intercompany Claims |
| 1D | Flying J Equity Interests |
| 1E | Flying J ESOP Equity Interests |
| 1F | Flying J Assumed Liability Claims |
|  | **BIG WEST OIL, LLC** |
| 2A | BWO Prepetition Credit Facility Claims |
| 2B | BWO Other Secured Claims |
| 2C | BWO General Unsecured Claims |
| 2D | BWO Equity Interests |
| 2E | BWO Assumed Liability Claims |
|  | **BIG WEST OF CALIFORNIA, LLC** |
| 3A | BWOC Prepetition Credit Facility Claims |
| 3B | BWOC Other Secured Claims |
| 3C | BWOC General Unsecured Claims |
| 3D | BWOC Equity Interests |
| 3E | BWOC Assumed Liability Claims |
|  | **BIG WEST TRANSPORTATION, LLC** |
| 4A | BWT Prepetition Credit Facility Claims |
| 4B | BWT Equity Interests |
|  | **LONGHORN PARTNERS PIPELINE, L.P.** |
| 5A | Longhorn Other Secured Claims |
| 5B | Longhorn General Unsecured Claims |
| 5C | Longhorn Equity Interests |

Accordingly, the Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code.

AA.   **Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9)).**   The treatment of Administrative Claims, including the Allowed Pilot DIP Facility Claims, pursuant to Article II.A. of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.   The treatment of Priority Tax Claims pursuant to Article II.B. of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

BB.   **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**   Each Class of Claims or Equity Interests is Unimpaired under the Plan.   Accordingly, although section 1129(a)(10) is satisfied as it only requires an accepting class of impaired creditors if such an

15

impaired class of creditors exists.   Since all Classes of Claims and Equity Interests are Unimpaired under the Plan, all Classes of Claims and Equity Interests are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

CC.   **Feasibility (11 U.S.C. § 1129(a)(11)).**   The information in the Disclosure Statement, the Confirmation Declarations and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course and that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

DD.   **Payment of Fees (11 U.S.C. § 1129(a)(12)).**   All fees due and payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

EE.   **Continuation of Employee and Retiree Benefits (11 U.S.C. § 1129(a)(13)).** Article IV.N. of the Plan provides that all employee compensation and benefit plans of the Debtors, including benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be honored.   Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

FF.   **No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).**   The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support

obligation.    Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**GG.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).**    The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**HH.    No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)).**    The Debtors are each a moneyed, business or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**II.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).**    The Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code, including paragraph (8).    Accordingly, the requirements of section 1129(b), which apply only if all of the applicable requirements of section 1129(a) other than paragraph (8) are met with respect to the Plan, are inapplicable in the chapter 11 cases.

**JJ.    Only One Plan (11 U.S.C. § 1129(c)).**    The Plan is the only plan Filed and submitted for Confirmation in each of the Debtors' Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

**KK.    Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**    The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.    Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**LL.    Modifications to the Plan.**    The modifications to the Plan made in the Plan constitute technical changes or do not materially adversely affect or change the treatment of any Claims or Equity Interests of any Holder and are in compliance with section 1127 of the

17

Bankruptcy Code. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or solicitation of votes under section 1126 of the Bankruptcy Code.

**MM. Satisfaction of Confirmation Requirements.** Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**NN. Disclosure of Agreements and Other Documents.** The Debtors have disclosed all material facts required for Confirmation of the Plan regarding: (i) the adoption of new certificates of incorporation and bylaws or similar formation documents; (ii) the selection of directors, officers and managers of the Debtors; (iii) the distribution of Cash in accordance with the Plan; (iv) the Exit Facilities; (v) the adoption, execution and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors; (vi) the Liquidating Trust Agreement; and (vii) the adoption, execution and delivery of all other contracts, leases, instruments, releases, indentures and other agreements related to any of the foregoing.

**OO. Implementation.** All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements and shall not be in conflict with any federal or state law.

**PP. Injunction, Exculpation and Releases.** The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpation and injunction set forth in Articles X.C., D., F., and G. of the Plan. Section 105(a)

of the Bankruptcy Code permits issuance of the injunction and approval of the exculpation and releases set forth in Articles X.C., D., F. and G. of the Plan, when, as has been established here based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among various parties in interest and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair and reasonable and (iv) are in the best interests of the Debtors, their Estates and other parties in interest. Further, the exculpation provision in Article X.D. of the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation and injunction set forth in the Plan and implemented by the Confirmation Order are supported by adequate consideration and are fair, equitable, reasonable and in the best interests of the Debtors, the Reorganized Debtors, and their Estates, creditors and equityholders. The releases of non-Debtors in Article X of the Plan are fair to Holders of Claims and Equity Interests and are necessary to the proposed reorganization, thereby satisfying the requirements of In re Continental Airlines, Inc., 203 F.3d 203, 214 (3d Cir. 2000). Such releases are given in exchange for and are supported by fair, sufficient and adequate consideration provided by each and all of the Releasees and each of their respective Representatives. The record of the Confirmation Hearing and the Chapter 11 Cases is sufficient to support the releases, exculpation and injunction provided for in Articles X.C., D., F., and G. of the Plan. Accordingly, based upon the record of the Chapter 11 Cases, the representations and the evidence proffered, adduced and presented at the Confirmation Hearing, the Bankruptcy Court finds that the exculpation, releases

067990.1001

and injunction set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, exculpation, and releases would seriously impair the Debtors' ability to confirm the Plan. The release provided for in Article X.C.2 of the Plan shall not apply with respect to any Releasing Party that timely submits an Opt Out Notice.

**QQ.** **Settlement.** Except as otherwise provided in the Plan and the Confirmation Order, the Plan is a settlement between and among the Debtors and their creditors and equity holders of all Claims and litigation against the Debtors, pending or threatened, or that were or could have been commenced against the Debtors prior to the date of entry of the Confirmation Order (other than the Reorganized Debtors' ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the Plan, including but not limited to the provisions of Articles VII of the Plan).

**RR.** **Good Faith.** The Debtors, the Reorganized Debtors, and the Releasees and each of their respective Representatives will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby and (ii) take the actions authorized and directed by the Confirmation Order.

**SS.** **Exit Financing.** Upon diligent inquiry, the Debtors have determined that the Exit Facilities, subject to and in accordance with the forms of definitive agreements and documentation Filed in the Plan Supplement, together with all exhibits and schedules thereto, including any financing statements, intercreditor agreements, fee letters and other documents, statements made on the record and such other changes as the parties thereto may agree (the "Exit Facility Documents") are the best financing alternatives available to the Debtors and the Reorganized Debtors, as the case may be. The terms of the Exit Facilities have been negotiated

067990.1001

in good faith and on an arm's-length basis, without intent to hinder, delay or defraud any creditor of the Debtors and each party thereto may rely upon the provisions of the Confirmation Order in closing the Exit Facilities.  The availability under the Exit Facilities is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  The terms and conditions of the Exit Facilities and the Exit Facility Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors' Estates and their creditors.  The execution, delivery, or performance by the Debtors or Reorganized Debtors, as the case may be, of or in accordance with the Exit Facility Documents, and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof are authorized by, and will not conflict with, the terms of the Plan or the Confirmation Order.  The financial accommodations to be extended pursuant to the Exit Facility Documents are being extended in good faith, for legitimate business purposes, are reasonable, shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable non-bankruptcy law.  The Exit Facility Documents, including the credit agreements for the Exit Facilities, and any associated fee letters, including, without limitation, any subordination or intercreditor agreements relating thereto, shall constitute legal, valid, binding and authorized obligations of the Reorganized Debtors enforceable in accordance with their terms and will not conflict with any federal or state law.  The Debtors have provided sufficient and adequate notice of the Exit Facility Documents and the credit arrangements set forth therein to all parties-in-interest, including, without limitation, the Creditors' Committee, Pilot, the Term Loan Agent and Term Loan Lenders, the Revolving Agent and Revolving

067990.1001

Lenders, and the Office of the U.S. Trustee.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Facilities shall be deemed approved and shall be legal, valid, binding, enforceable, and perfected Liens on and security interests in the collateral for the Exit Facilities.  The security interests and Liens to be granted in accordance with the Exit Facilities (the "Exit Liens") shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers, fraudulent transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.  The Reorganized Debtors and the persons granted such Liens and security interests are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of the Confirmation Order.  All fees, costs and expenses paid or to be paid by the Debtors and Reorganized Debtors in connection with the Exit Facilities are hereby ratified and approved.

TT.    **D&O Insurance Assumption.**    The assumption by the Debtors of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code is in the best interests of the Debtors' Estates and accordingly is within the Debtors' sound business judgment. Any and all amounts that may have come due and owing, whether before, on or after the Petition Date, have been satisfied as of the date hereof.

UU.    **Valuation.**    Pursuant to the valuation analysis in Article VI of the Disclosure Statement, the enterprise value of the Debtors is sufficient to support a distribution to all Holders of Claims and Equity Interests under absolute priority principles.  The valuation set forth in the Disclosure Statement was prepared by the Debtors' financial advisor, Blackstone

Advisory Services L.P. ("Blackstone"), in accordance with standard and customary valuation principles and practices, and is a fair and reasonable estimate of the value of the Debtors' business as a going concern.

VV.    **Retention of Jurisdiction.**  The Bankruptcy Court may properly, and upon the Effective Date shall, retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code, except, subsequent to the Effective Date, matters relating to the interpretation and enforcement of the Exit Facility Documents.

**ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

1.    **Findings of Fact and Conclusions of Law.**  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    **Notice of the Confirmation Hearing.**  Notice of the Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and applicable non-bankruptcy law, and no further or additional notice was necessary or required.

3.    **The Disclosure Statement.**  The Disclosure Statement:  (a) complies in all respects with any disclosure requirements of applicable non-bankruptcy law, including the Securities Act, to the extent applicable, (b) contains "adequate information" (as such term is

defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (c) is approved in all respects.

4.    **Confirmation of the Plan.**   The Plan and Plan Supplement and each of their provisions shall be, and hereby are, in each and every respect, CONFIRMED under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and approved.  The terms of the Plan, the Disclosure Statement, the Plan Supplement and all exhibits of the foregoing, are incorporated by reference into and are an integral part of this Confirmation Order.

5.    **Objections.**   All objections, responses to, and statements and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety.

6.    **No Action Required.**   Pursuant to the appropriate provisions of the Delaware General Corporation Law, including section 303 thereof, and the comparable provisions of the Delaware Limited Liability Company Act, and section 1142(b) of the Bankruptcy Code, and any other applicable non-bankruptcy law, no action of the respective directors, stockholders, managers, or members of the Debtors or Reorganized Debtors, as applicable, shall be required to authorize the Debtors or Reorganized Debtors, as applicable, to enter into, execute, deliver, file, adopt, amend, restate, consummate or effectuate, as the case may be, the Plan and any contract, instrument or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan, including any documentation executed in connection with the Exit Facilities.

067990.1001

7.   **Automatic Dissolution.**   Upon the Effective Date, each of BWOC, BWT, Longhorn, LPI, LPH, Big West GP, LLC, Big West Holdings, LLC and Big West Oil Partners, LP shall be entitled to dissolve, shall be deemed to have satisfied all of its respective obligations, shall be deemed to have complied in all respects with all legal requirements for dissolution of a limited liability company or limited partnership, as applicable, under applicable non-bankruptcy law, and shall have no further liabilities or obligations to any party in interest other than those expressly set forth in this Plan.

8.   **Binding Effect.**   On or after entry of the Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan and the Confirmation Order shall bind the Debtors, the Reorganized Debtors, all Holders of Claims and Equity Interests, all Entities that are parties to or are subject to settlements, compromises, releases, discharges and injunctions described in the Plan or herein, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any of the Debtors, any other party in interest in the Chapter 11 Cases and the respective heirs, executors, administrators, successors or assigns, if any, of any of the foregoing.

9.   **Free and Clear.**   Pursuant to section 1141(b) of the Bankruptcy Code, and except as otherwise provided in the Plan or in the Confirmation Order, from and after the Effective Date, the Reorganized Debtors shall be vested with all property of the Estates, free and clear of all Claims, Liens, encumbrances, charges and other interests of Holders of Claims or Equity Interests.  From and after the Effective Date, the Reorganized Debtors may operate each of their businesses and use, acquire or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Court, or the Office of the U.S. Trustee (except for quarterly operating reports and fees associated therewith).  In addition, on the

25

Effective Date, the Reorganized Debtors may engage in any transaction in furtherance of the Plan.

10.   **Authorizations to Take Acts Necessary to Implement Plan.** The Debtors or the Reorganized Debtors, as applicable, may take all actions to execute, deliver, File or record such contracts, instruments, releases, leases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule except for those expressly required pursuant to the Plan. All matters provided for pursuant to the Plan that would otherwise require approval of the shareholders, directors, managers or members of the Debtors or the Reorganized Debtors shall be deemed to have been so approved and shall be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the shareholders, directors, managers or members of the Debtors, or the need for any approvals, authorizations, actions or consents except as otherwise expressly required pursuant to the Plan. The Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement and any documents, instruments or agreements and any amendments or modifications thereto. On the Effective Date, or as soon as thereafter as is practicable, the Reorganized Debtors shall file their amended certificates of incorporation or other formation documents with the Secretary of State of Delaware or the Secretary of State of Utah, as

YCST01:9880692.4                                                                    067990.1001

applicable, in accordance with the Delaware General Corporation Law, the Delaware Limited Liability Company Act, the Utah Revised Business Corporation Act or the Utah Limited Liability Company Act, or other appropriate non-bankruptcy law, as applicable.

11.    **Effectiveness of All Actions.**    Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to the Confirmation Order, without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order or rule except those expressly required pursuant to the Plan.

12.    **Treatment is Full Satisfaction.**    The treatment of Claims and Equity Interests set forth in the Plan is in full and complete satisfaction of the legal, contractual and equitable rights that each Entity holding a Claim or an Equity Interest may have against or in the Debtors, the Debtors' Estates or their respective property, including assets transferred pursuant to any transactions contemplated in the Plan.  This treatment supersedes and replaces any agreements or rights those Entities may have in or against the Debtors, the Debtors' Estates or their respective property, including assets transferred pursuant to any transactions contemplated in the Plan.

13.    **No Successor Liability.**    Except as otherwise provided herein or other Bankruptcy Court order, to the fullest extent permitted under applicable law, neither the Reorganized Debtors nor their respective successors or assigns nor their respective properties (including any assets transferred as part of the transactions contemplated in the Plan), as a result of Confirmation of the Plan or consummation of any of the transactions contemplated in the Plan shall:  (a) be or be deemed to be a successor to the Debtors or the Debtors' Estates; (b) have or be deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or the Debtors' Estates; or (c) be or be deemed to be a continuation or a substantial continuation of the

27

Debtors, the Debtors' Estates or any enterprise of the Debtors. Except as otherwise provided herein or other Bankruptcy Court order, to the fullest extent permitted under applicable law, neither the Reorganized Debtors nor their respective successors or assigns nor their respective properties (including any assets transferred as part of the transactions contemplated in the Plan), as a result of Confirmation of the Plan or consummation of any of the transactions contemplated in the Plan, shall have any successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown, now existing or hereafter arising, asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to the Debtors, the Debtors' Estates, or any enterprise of the Debtors, or any obligations of the Debtors or the Debtors' Estates arising prior to the Effective Date, including, without limitation, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the assets transferred in the any transactions contemplated in the Plan prior to the Effective Date.

14.   **Ownership and Control.** The consummation of the Plan shall not, unless the Debtors expressly agree in writing, constitute a change of ownership or change in control or material adverse change, or material adverse effect, as such terms are used in any statute, regulation, contract or agreement (including, but not limited to, any agreements assumed by the Debtors pursuant to the Plan or otherwise and any agreements related to employment, severance or termination agreements or insurance agreements) in effect on the Effective Date and to which the Debtors are a party.

15.   **Officers and Directors.** The structure and composition of the board of directors and the Reorganized Debtors' compensation of officers thereof shall be as set forth in the Plan

28

and Plan Supplement. Each director, officer and manager thereof shall serve from and after the Effective Date pursuant to the terms of the organizational documents set forth in the Plan Supplement or other constituent documents. Pursuant to section 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Bankruptcy Court approves as consistent with the interests of Holders of Claims and Equity Interests and with public policy the selection, election and/or continuance, as the case may be, of these individuals; provided that nothing set forth herein shall prevent any of the foregoing individuals from resigning or from being removed or replaced as an officer or director without further order of the Bankruptcy Court in accordance with the terms of the Reorganized Debtors' organizational documents, as applicable. On the Effective Date (or on the Confirmation Date with respect to any actions taken prior to the Effective Date), the adoption and filing (as necessary) of any of the Reorganized Debtors' organizational documents not otherwise specifically set forth in the Confirmation Order or the Plan, as the case may be, and all other approvals and corporate actions contemplated by the Plan and the Confirmation Order and not otherwise specifically enumerated in the Confirmation Order shall be authorized and approved in all respects, subject to the provisions hereof and in the Plan, and any other applicable law.

16.    **Compliance with Section 1123(a)(6) of the Bankruptcy Code.**  The amended and restated certificates of incorporation or other formation documents of the Reorganized Debtors as set forth or described in the Plan Supplement comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved. The adoption and filing by the Reorganized Debtors of such certificates of incorporation is hereby authorized, ratified and approved.

YCST01:9880692.4    067990.1001

17.    **Cancellation of Existing Securities and Agreements.**  On the Effective Date, except as otherwise specifically provided for in the Plan or the Confirmation Order:  (a) the obligations of the Debtors under the Big West Revolver, the Big West Term Loan and the Pilot DIP Facility, and any other certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Equity Interest (except such certificates, shares, notes, bonds, indentures, purchase rights, options, warrants or other instruments or documents evidencing indebtedness or obligations of the Debtors that are expressly and specifically reinstated pursuant to the Plan), shall be cancelled, and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such certificates, notes bonds, indentures, purchase rights, options, warrants or other instruments or documents evidencing indebtedness or obligations of the Debtors that are expressly and specifically reinstated pursuant to the Plan) shall be released and discharged.

18.    **Subordination.**  Except as otherwise expressly provided in any of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court:  (a) the classification and manner of satisfying all Claims and Equity Interests under the Plan takes into consideration all contractual, legal and equitable subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a Holder of a Claim or Equity Interest may have with respect to any

30

distribution to be made under the Plan shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; and (c) the distributions under the Plan to the Holders of Allowed Claims and Equity Interests will not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

19.    **Release of Liens.**  Except as otherwise provided herein, in the Plan, the Exit Facility Documents, or in any contract, instrument, release or other agreement or document created pursuant to the Plan, and without any prejudice to the rights of the Debtors and the lenders and agents under the Exit Facility, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a secured Claim, satisfaction in full of the portion of the secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates (other than with respect to a secured Claim that is expressly and specifically reinstated pursuant to the Plan), shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor, its successors and assigns.

20.    **Assumption or Rejection of Contracts and Leases.**  Except as otherwise provided in the Plan, in the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, each Debtor (subject to the proviso below) shall be deemed to have assumed each Executory Contract and Unexpired Lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (a) was previously assumed or rejected by the

31

Debtors, (b) previously expired or terminated pursuant to its own terms, (c) is the subject of a motion to reject Filed by the Debtors on or before the Confirmation Date or (d) is set forth in a schedule, as an Executory Contract or Unexpired Lease to be rejected, if any, Filed by the Debtors as part of the Plan Supplement, and such contract and lease assumptions or rejections are hereby approved as of the Effective Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections, if any, are overruled; provided that any Executory Contract or Unexpired Lease where BWOC is a party which was not specifically assumed by Alon or the BWOC Buyer shall be deemed rejected as of immediately prior to the Petition Date, the entry of this Confirmation Order by the Bankruptcy Court shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code, and the rejection thereof is in the best interest of the Debtors, their Estate and all parties in interest in the Chapter 11 Cases.

21.    **Rejection Bar Date.** All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed within thirty days after the earlier of: (a) the date of entry of an order of the Bankruptcy Court approving any such rejection; and (b) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to Article V.A of the Plan for which Claims are not timely Filed within that time period will be forever barred from assertion against the Debtors, their Estates, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the discharge and permanent injunction set forth in Article X.F of the Plan. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely Filed as provided herein shall be treated**

YCST01:9880692.4                                                                                  067990.1001

as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III of the Plan.

22.    **Adequate Assurance.** Entry of this Confirmation Order shall constitute a finding by the Bankruptcy Court that the Debtors have provided adequate assurance of future performance of any Executory Contract, Unexpired Lease or other obligation assumed under the Plan.

23.    **Resolution of Contingent, Unliquidated and Disputed Claims.** Except as otherwise set forth herein or in other Bankruptcy Court order, the Debtors and the Reorganized Debtors, as applicable, shall have exclusive authority to File objections to, and settle, compromise, withdraw or litigate to judgment objections to any and all Disputed Claims, and the Reorganized Debtors and the Claims Agent shall have the sole and exclusive authority to amend and update the official register of Claims in the Chapter 11 Cases to reflect any settlement of such Disputed Claims without approval from the Bankruptcy Court or notice to any party.  From and after the Effective Date, the Reorganized Debtors, as applicable, may settle, compromise or withdraw objections to any contingent or Disputed Claim without approval of the Bankruptcy Court or notice to any party.  Except as otherwise set forth herein or in other Bankruptcy Court order, the Debtors, prior to the Effective Date, and thereafter the Reorganized Debtors, shall have the exclusive authority to File objections to and settle, compromise, withdraw or litigate to judgment objections to any and all Disputed Claims not otherwise reflected in the Debtors' books and records and not otherwise satisfied and paid pursuant to Article III of the Plan without approval of the Bankruptcy Court or notice to any party, and the Reorganized Debtors and the Claims Agent shall have the sole and exclusive authority to amend and update the official register of Claims in the Chapter 11 Cases to reflect any settlement of such Disputed Claims

YCST01:9880692.4

067990.1001

without approval from the Bankruptcy Court or notice to any party. Except as expressly provided by the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order (including the Confirmation Order) in the Chapter 11 Cases allowing such Claim. Except as expressly provided by the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Reorganized Debtors will have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date.

24.    **Disputed Reserves.**  As provided in Article VI.B of the Plan, on the Initial Distribution Date, and after making all distributions required to be made on such date under the Plan, the Reorganized Debtors shall establish a separate Disputed Reserve for Disputed Claims, which Disputed Reserve shall be administered by the Reorganized Debtors; provided that the Debtors shall not reserve, nor shall be required to reserve, for any Disputed Claims assumed by Pilot pursuant to the Acquisition Agreement or in connection with the Pilot Transaction, including but not limited to the Hot Fuel Claims, or for any Disputed Claims assumed by the BWOC Buyer pursuant to the BWOC APA or in connection with the BWOC Sale. The Reorganized Debtors shall hold property in the Disputed Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed.

25.    **Interest Payment Procedures.**  Interest on Allowed General Unsecured Claims, Priority Tax Claims, or 503(b)(9) Claims, as applicable, asserted against any Debtor for the period following the Petition Date ("Postpetition Interest") is to be calculated at the higher of the federal judgment rate in effect on the Petition Date or the rate set forth in the applicable written

YCST01:9880692.4                                                                    067990.1001

agreement, if any, between the Debtors and the Holders of such Allowed General Unsecured Claims, Priority Tax Claims, or 503(b)(9) Claims, as applicable provided that interest accruing or Priority Tax Claims after the Effective Date shall be calculated at the rate determined under applicable nonbankruptcy law in accordance with section 511 of the Bankruptcy Code (the "Presumptive Interest Rate"), **subject to the following procedures**:  Any Holder of an Allowed General Unsecured Claim, Priority Tax Claim, or 503(b)(9) Claim seeking (a) payment of Postpetition Interest on such Holder's Claim at a rate other than the Presumptive Interest Rate, (b) asserting that the Presumptive Interest Rate is not accurate with respect to such Holder's claim or (c) reimbursement of costs and expenses associated with such Holder's Claim shall provide the Debtors with written notice in accordance with Article XII.K of the Plan within thirty (30) days after the Effective Date or shall be foreclosed from asserting any such amounts.  Any such notice must include all of the documentation upon which the Holder relies including, but not limited to, any contract with the Debtors supporting such interest, costs or expenses, and invoices reflecting additional costs and expenses actually incurred, to establish the Holder's entitlement thereto.  **The inclusion of the entitlement to interest, costs and expenses in Proofs of Claim previously filed shall only be sufficient to establish such Claims without providing the Debtors with notice in accordance with this letter if the Proof of Claim states on its face the alternative rate of interest and actual amount of such costs and expenses.**  If the Proof of Claim does not state on its face the rate of interest and actual amount of other costs and expenses that accrued pre-petition, such amount shall be included in the amount set forth in the notice. The Reorganized Debtors will endeavor to resolve any disputed asserted additional interest or other costs and expenses with the Holder asserting such amounts; provided that the Bankruptcy Court shall, pursuant to Article XI of the Plan, retain exclusive jurisdiction over the Chapter 11

35

Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Reorganized Debtors and the Plan as is legally permissible, including any dispute over asserted additional interest or other costs and expenses that the Reorganized Debtors and the Holder asserting such amounts are unable to resolve on a consensual basis.

26.    **Authorization to Consummate.**  The Debtors are authorized to consummate the Plan at any time after the entry of the Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX of the Plan.

27.    **Exit Facilities.**  The Exit Facilities and the terms and conditions of the Exit Facilities, the Exit Facility Documents, and the respective agreements and undertakings of the Debtors and the Reorganized Debtors therein are approved.  Each of the Debtors and the Reorganized Debtors, as the case may be, is authorized to undertake any and all acts and actions required to implement the Exit Facilities, including without limitation, all actions necessary and appropriate to effectuate the automatic dissolution of those entities listed in **Exhibit B** to this Confirmation Order pursuant to the terms of this Confirmation Order, entering, executing, delivering, filing or recording any documents related thereto, including, without limitation, all related loan documents, as well as any other agreements, subordination or intercreditor agreements, instruments, or documents necessary or appropriate to implement the Exit Facilities, with such changes from the terms set forth in the Exit Facility Documents as may be agreed to between and among the Debtors, the Reorganized Debtors, and the agents, lenders and indenture trustee under the Exit Facilities, and no board, shareholder, manager, or member vote shall be required with respect thereto.  The parties to the Exit Facilities are authorized and empowered to take such steps and to execute such instruments and documents as may be necessary or

appropriate to assist in the implementation of all transactions contemplated by the Exit Facilities,

including, but not limited to, the execution, delivery, filing and recording of the documents and

instruments as are necessary or appropriate to effectuate, implement or consummate fully the

Exit Facilities, the Plan or the Confirmation Order.  The obligations under the Exit Facilities, the

Exit Facility Documents, including without limitation, all related mortgages and security

agreements, shall, upon execution, constitute legal, valid, binding and authorized obligations of

each of the Debtors or Reorganized Debtors, as applicable, enforceable in accordance with their

terms and not in contravention of any state or federal law.   The Debtors and Reorganized

Debtors are authorized to pay the fees and expenses set forth or referred to in any commitment

letter, term sheet, or financing fee letter associated with the Exit Facilities in accordance with the

respective terms and to perform any indemnity obligations set forth or referred to therein.  All

payment obligations of the Debtors and Reorganized Debtors under any such commitment letter,

term sheet, and related financing fee letter shall be entitled to priority as Administrative Claims

under sections 503(b) and 507(a)(2) of the Bankruptcy Code.  Notwithstanding any provision in

the Plan or the Confirmation Order to the contrary, from and after the Effective Date, the choice

of law and jurisdiction provisions of the Exit Facility Documents shall apply to the Exit

Facilities, respectively.  Nothing in the Plan or the Confirmation Order shall be inconsistent with

the terms of the Exit Facilities.

28.    **Exit Liens.**   The automatic stay imposed pursuant to section 362 of the

Bankruptcy Code is vacated and modified solely for the purpose of and solely to the extent

necessary to permit (without further application to the Bankruptcy Court) the execution, delivery,

filing and recordation of the Exit Facility Documents, and all transactions contemplated by such

documents with respect to the Exit Facilities.   The Exit Liens shall be legal, valid and

37

enforceable Liens and security interests, as provided in the Exit Facility Documents and any other documents to be executed and delivered pursuant thereto shall constitute the legal, valid and binding obligations of Reorganized Debtors. As of the Effective Date, the Exit Liens shall constitute legal, valid and duly perfected Liens against and security interests in the "Collateral" (as will be defined in the Exit Facility Documents) and shall be deemed to be created, valid and perfected without any requirement of filing or recording of financing statements, mortgages or other evidence of such security interests, Liens and mortgages and without any approvals or consents from governmental Entities or any other persons and regardless of whether or not there are any errors, deficiencies or omissions in any property descriptions attached to any filing and no further act shall be required for perfection of the Liens and security interests.

29.   **Professional Compensation.**   Professionals or other Entities asserting a Claim for services rendered before the Confirmation Date must File and serve on the Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Fee Claim no later than 60 days after the Effective Date. Objections to the final allowance of any Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party by the later of (a) 60 days after the Effective Date and (b) 30 days after the Filing of the applicable request for payment of the Fee Claim. Notice of a hearing on the final allowance of Claims asserted by Professionals shall be provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course of business and without the need for Court approval.

38

30.   **Professional Reserve.**   To receive payment for unbilled fees and expenses incurred through the Effective Date, on or before the Effective Date, the Professionals shall estimate their Accrued Professional Compensation prior to and as of the Effective Date and shall deliver such estimate to the Debtors.   If a Professional does not provide an estimate, the Reorganized Debtors may estimate the unbilled fees and expenses of such Professional; provided that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional.   The total amount so estimated as of the Effective Date shall comprise the Professional Fee Reserve Amount.

31.   **Professional Fee Escrow Account.**   On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals.   The Professional Fee Escrow Account shall be maintained in trust for the Professionals with respect to whom fees or expenses have been held back pursuant to the Interim Compensation Order.   Such funds shall not be considered property of the Reorganized Debtors.   The remaining amount of Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account when such Claims are Allowed by a Bankruptcy Court order. When all Claims of Professionals have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall be paid to the Reorganized Debtors.

32.   **Administrative Claims of Professionals.**   Subject to the provisions of sections 328(a), 330 and 331 of the Bankruptcy Code, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed Administrative Claim, each Holder of such Allowed Administrative Claim shall be paid in full in Cash the unpaid portion of such Allowed

YCST01:9880692.4

067990.1001

Administrative Claim in accordance with the terms of the applicable contract or agreement governing such Claim, if any, or otherwise in the ordinary course of business.

33.    **Discharge.** As of the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, the Confirmation of the Plan shall, as provided in and pursuant to Article X.A. of the Plan, completely and finally satisfy, discharge and release all Claims (including any Intercompany Claims resolved or compromised before or after the Effective Date by the Reorganized Debtors in accordance with Article III of the Plan), Equity Interests and Causes of Action of any nature whatsoever against the Debtors or any of their assets or properties of any nature whatsoever, including any Claims arising from liabilities assumed by third parties under the Acquisition Agreement and BWOC APA, and including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in the Debtors, the Debtors' assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Equity Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment or a termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Equity Interest based upon such debt, right, or Equity Interest is Filed or deemed Filed pursuant to section 501

of the Bankruptcy Code; (2) a Claim or Equity Interest based upon such debt, right, or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Equity Interest has accepted the Plan, and any default by the Debtors or their Affiliates with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured.

34.   **Cancellation of Loan Agreements.**  As of the Effective Date, and subject to the Claims in Class 2A being satisfied in full, except as otherwise provided in the Plan or the Confirmation Order, the Confirmation of the Plan shall, cancel the Big West Revolver and Big West Term Loan and any related guarantees.

35.   **Return of Deposits.**  All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during the Chapter 11 Cases (collectively, the "Adequate Assurance Deposits"), including any deposit provided pursuant to any order of the Bankruptcy Court approving the *Motion of the Debtors for Entry of Interim and Final Orders Determining Adequate Assurance of Payment for Future Utility Services* [Docket No. 51], shall return such Adequate Assurance Deposits to the Debtors or the Reorganized Debtors, as the case may be, at the conclusion of the Chapter 11 Cases, if not returned or applied earlier.

36.   **Releases, Injunction, Exculpation, and Related Provisions Under the Plan.** The releases, injunctions, exculpations and related provisions set forth in Article X.C., D., F., and G. of the Plan are hereby approved and authorized in their entirety.

37.   **Release and Exculpation Provisions.**  All release and exculpation provisions embodied in the Plan, including those contained in Article X.C., D., F., and G. of the Plan are (a) integral parts of the Plan, (b) fair, equitable, and reasonable, (c) given for valuable

41

consideration and (d) are in the best interest of the Debtors and all parties in interest, and such provisions are approved and shall be effective and binding on all Persons and Entities, to the full extent provided therein.

38.    **D&O Obligations.**  As of the Effective Date, the Debtors shall assume all of the D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' assumption of each of the D&O Liability Insurance Policies.  Confirmation of this Plan shall not discharge, impair or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors hereunder as to which no Proof of Claim need be Filed.

39.    **Payment of Statutory Fees.**  All fees payable pursuant to section 1930 of title 28 of the United States Code have been paid as required by section 1129(a)(12) of the Bankruptcy Code and all such fees that become due and payable after the date hereof shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department of Justice, Office of the U.S. Trustee, until such time as a chapter 11 case for a Debtor is closed (or as soon thereafter as practicable) and each Debtor shall pay any such fees, as provided in Article XII.B of the Plan.

40.    **Intercompany Claims.**  On the Effective Date, the Reorganized Debtors may, in their sole discretion and in accordance with and in order to effectuate the terms of the Plan, satisfy, in full or in part, reinstate or cancel, as the case may be, Intercompany Claims in order to effectuate the distributions under the Plan.  The Debtors reserve all rights they may have under

applicable bankruptcy and non-bankruptcy law to satisfy, settle or otherwise compromise any remaining Intercompany Claims at any time subsequent to the Effective Date.

41.    **Compliance with Tax Requirements.**  Each Holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instruments or making any distribution under the Plan (including the Disbursing Agent) has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or distributing party for payment of any such tax obligations.  The Reorganized Debtors and the Disbursing Agent are authorized to take all actions necessary or appropriate to comply with applicable withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

42.    **Exemption from Transfer Taxes.**  The making, delivery, filing, or recording at any time of any deed, mortgage, leasehold mortgage, deed of trust, leasehold deed of trust, memorandum of lease, lease, assignment, leasehold assignment, security agreement, financing statement, or other instrument of absolute or collateral transfer required by, or deed necessary or desirable by the parties to, the Exit Facilities shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.  All filing or recording officers (or any

43

other Entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

43. **Documents, Mortgages and Instruments.** Each federal, state, commonwealth, local, foreign or other governmental agency is hereby authorized to accept any and all documents, mortgages and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and the Confirmation Order.

44. **Reversal/Stay/Modification/Vacatur of Confirmation Order.** Except as otherwise provided in the Confirmation Order, if any or all of the provisions of the Confirmation Order are hereafter reversed, modified, vacated or stayed by subsequent order of the Bankruptcy Court, or any other court, such reversal, stay, modification or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority or Lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of any such reversal, stay, modification or vacatur. Notwithstanding any such reversal, stay, modification or vacatur of the Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, the Confirmation Order prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the provisions of the Confirmation Order and the Plan or any amendments or modifications thereto.

YCST01:9880692.4                                                                                 067990.1001

45.    **Continued Effect of Stays and Injunction.**  All injunctions or stays provided in, or in connection with, the Chapter 11 Cases, whether pursuant to sections 105 or 362 of the Bankruptcy Code, or any other applicable law or court order, in effect immediately prior to the Confirmation of the Plan, shall remain in full force and effect thereafter, except as otherwise provided by the Confirmation Order, the Plan or their own terms.  Nothing herein shall bar the taking of such other actions as are necessary to effectuate the transactions specifically contemplated by the Plan or by the Confirmation Order.

46.    **Preservation of Causes of Action.**  Any Causes of Action that the Debtors may hold against any Entity are hereby preserved in accordance with Article X.E. of the Plan.

47.    **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including jurisdiction over the matters set forth in Article XI of the Plan.

48.    **Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent.**  Each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (c) nonseverable and mutually dependent.

49.    **Waiver or Estoppel.**  Each Holder of a Claim or Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, secured or not

YCST01:9880692.4

067990.1001

secured, subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with this Court prior to the entry of this Confirmation Order.

50. **Modifications.** Until and including the Effective Date, without need for further order or authorization of the Bankruptcy Court, the Debtors or the Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement, and any other documents that are necessary to effectuate the Plan, that do not materially modify the terms of such documents and are consistent with the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, each of the Debtors expressly reserves its respective rights to revoke or withdraw, or to alter, amend or modify materially the Plan and the Plan Supplement with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article XII.C. of the Plan. Entry of the Confirmation Order means that all modifications or amendments to the Plan since the filing thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or solicitation under Bankruptcy Rule 3019.

51. **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit to the Plan or Plan Supplement provides otherwise

(in which case the governing law specified therein shall be applicable to such Exhibit), pursuant to Article XII.F. of the Plan, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to the principles of conflict of laws.

52.      **Applicable Non-Bankruptcy Law.**  Subject to paragraph 50 of this Confirmation Order, pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of the Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

53.      **Waiver of Filings.**  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to File any list, schedule or statement with the Bankruptcy Court or the Office of the U.S. Trustee is hereby waived as to any such list, schedule or statement not Filed as of the Confirmation Date.

54.      **Governmental Approvals Not Required.**   The Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts or transactions referred to in, or contemplated by, the Plan and the Disclosure Statement and all exhibits thereto.

55.      **Notice of Confirmation Order.**  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of the Confirmation Order, substantially in the form annexed hereto as **Exhibit C**, to all parties who hold a Claim against or Equity Interest in the Chapter 11 Cases, including those parties who have requested service of papers under Bankruptcy Rule 2002 and the U.S. Trustee.

YCST01:9880692.4

067990.1001

Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of the Confirmation Order.

56.    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

57.    **Waiver of Stay.**  The stay of the Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rules 3020(e), 6004(h) and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and the Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

58.    **References to Plan Provisions.**  References to Articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan except as specifically provided herein.  The failure to specifically include or to refer to any particular article, section or provision of the Plan or any related document in the Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, nor constitute a waiver thereof, it being the intent of the Bankruptcy Court that the Plan and any related documents be confirmed in their entirety, and incorporated herein by this reference.

59.    **Headings.**  Headings utilized herein are for convenience and reference only, and shall not constitute a part of the Plan or the Confirmation Order for any other purpose.

60.    **Effect of Conflict Between the Plan and Confirmation Order.**  If there is any conflict between the terms of the Plan or the Plan Supplement and the terms of the Confirmation Order, the terms of the Confirmation Order shall govern and control.

067990.1001

61.    **Plan Classifications Controlling.**    The classification of Claims and Equity Interests for purposes of distributions made under the Plan shall be governed solely by the terms of the Plan.

62.    **Specific Creditor Provisions.**

a.    <u>Environmental Regulatory Agencies.</u>  Nothing in this Order or the Plan discharges, releases, precludes, or enjoins: (i) any environmental liability to any governmental unit that is not a Claim; (ii) any environmental Claim of any governmental unit the facts or conditions underlying which arose on or after the Effective Date; (iii) any environmental liability to any governmental unit that any Entity would be subject to as the owner or operator of property after the Effective Date; or (iv) any environmental liability to the United States on the part of any Person other than the Debtor or Reorganized Debtor; <u>provided</u> that nothing in this paragraph shall modify the rights of the Debtors, Reorganized Debtors or any Affiliate thereof under any agreement between the Debtors or Reorganized Debtors and a governmental unit. The Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by the United States are discharged or otherwise barred by this Order, the Plan, the Plan Supplement, or the Bankruptcy Code.

b.    <u>Montana Department of Environmental Quality.</u>  The obligations Flying J Inc. and any successor in interest may have under any environmental laws, including any liability Flying J Inc. and any successor in interest may have for future remediation costs at Facility ID# 56-12585, known as the Billings Flying J Travel Plaza, and located at 2775 Old Hardin Road, Billings, Yellowstone County,

49

Montana; Facility ID #09-08661, known as the Miles City Flying J Travel Plaza, and located at I-94 Exit 141, U.S. Highway 12, east of Miles City, in Custer County, Montana; Facility ID # 47-09893, known as the Rocker Flying J Travel Plaza, and located at 112000 Rocker Interchange, Butte, Silver Bow County, Montana; Facility ID # 07-06926, known as the Great Falls Flying J Travel Plaza, and located at 1715 Vaughn Road, Great Falls, Cascade County, Montana; and Facility ID # 21-08665, known as the Havre Flying J Travel Plaza, and located at 607 1st Street, Havre, Hill County, Montana, shall not be subject to discharge, release, waiver, or exculpation pursuant to the Plan or this Confirmation Order and shall not be enjoined by the Plan or this Confirmation Order. Nothing herein shall discharge, release, waive or exculpate Flying J Inc. and any successor in interest with respect to environmental compliance obligations to the Montana Department of Environmental Quality for the Cut Bank Refinery as is more fully set forth in the *Stipulation Resolving Proof of Claim and Certain Environmental Obligations to Montana Department of Environmental Quality*, and such obligations shall not be enjoined by the Plan or this Confirmation Order.

c.      Headquarters Deed. Notwithstanding the treatment of the Flying J Other Secured Claims (Class 1A) as provided for in Article III of the Plan, the obligations outstanding on that certain Commercial Trust Deed, Security Agreement, Assignment of Leases and Rents, and Fixture Filing by and among Flying J, National Title Agency, LLC and GE Commercial Finance Business Property Corporation ("GECF") dated December 20, 2006 (the "Headquarters Trust Deed"), the Note (as defined in the Headquarters Trust Deed) and all related

YCST01:9880692.4

067990.1001

documentation shall be paid in accordance with that certain Letter to be executed by and between Flying J and GE Corporate Finance Business Property Corporation; provided that if the Effective Date does not occur prior to July 30, 2010, GECF and Flying J reserve all objections and rights with respect to the treatment of GECF's Flying J Other Secured Claim under the Plan.

d.    North Carolina Workers Compensation. Pursuant to applicable non-bankruptcy state law, Debtors will continue to honor their reporting and statutory deposit requirements with respect to workers' compensation obligations incurred in North Carolina during the self-insurance period, irrespective of any transfer or assignment of workers' compensation obligations in the Plan, Acquisition Agreement, or other transaction.

e.    Texas Taxing Authorities.  Notwithstanding any language in the Plan to the contrary, (i) the Flying J Allowed Other Secured Claim of City of El Paso, Ector CAD, Crane County and Harris County, shall be paid in full in Cash within thirty (30) days of the Effective Date, together with any unpaid interest thereon accruing from the Petition Date through the date of payment at the rate determined under applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code, (ii) the taxes for the 2010 tax year owed to Bexar County, Crane County, Dallas County, Ector CAD, City of Edinburg, Edinburg CISD, City of El Paso, Harris County, Judson ISD, McLennan County, Montgomery County, Orange County, Pecos-Barstow-Toyah ISD, Reeves County, South Texas College, South Texas ISD, Taylor CAD, City of Waco and Waco ISD (collectively, the "Local Texas Tax Authorities") shall be paid timely pursuant to applicable nonbankruptcy

law without the necessity of the Local Texas Tax Authorities filing an administrative expense claim or request for payment, and (iii) the Liens securing such Allowed Other Secured Claims or for post-petition year 2010 taxes shall not be cancelled, released, subordinated or otherwise affected pursuant to the Plan pending satisfaction of any such Allowed Other Secured Claim and payment of post-petition year 2010 taxes provided, however, that nothing in this paragraph shall affect either the Local Texas Taxing Authorities' or the Debtors' rights to assert or dispute the Allowed amount of a Flying J Allowed Other Secured Claim.

f.    <u>Pension Benefit Guarantee Corporation</u>.  Notwithstanding any provision of the Plan or Confirmation Order, nothing shall:  (1) release any Entity from any liability for breach of fiduciary duty respecting the BWO Pension Plan or the BWOC Pension Plan, or (2) enjoin any action seeking remedy for such breach of fiduciary duty.  Further, neither the Pension Benefit Guaranty Corporation, nor the BWO Pension Plan, nor the BWOC Pension Plan shall be subject to the Release provisions of Article X.C of the Plan whether or not either the BWO Pension Plan or the BWOC Pension Plan submit an Opt Out Notice.  In the event of any conflict between Article V.E. of the Plan and any conflicting provision, the former shall govern.

g.    <u>Criminal Liability</u>.  Notwithstanding anything contained in the Plan or the Confirmation Order, no Entity will be released from any Claim or Cause of Action existing as of the Effective Date based on any criminal laws of the United States or any domestic state, city or municipality.

YCST01:9880692.4

067990.1001

h.      Internal Revenue Service.  Notwithstanding any provision to the contrary in the Plan, this Confirmation Order or any implementing Plan documents, including the Amended Organizational Documents, nothing shall affect the rights of the United States, including the Internal Revenue Service ("IRS") to assert setoff and recoupment. Specifically, any setoff rights of the United States in the Debtors' 2007 income tax refund are hereby preserved and may be exercised following confirmation of the plan of reorganization subject to the resolution of the correct amount of the claims owed to the IRS now pending. To the extent that it is determined that the Debtors owe taxes to the IRS, and that the IRS may otherwise offset against such taxes, such amounts can be setoff against the 2007 income tax refund and any excess refunded to the Debtors to the extent that such excess cannot be applied to any other amounts owed to the United States.

i.      United States Government.  Notwithstanding any provision to the contrary in the Plan, this Confirmation Order or any implementing Plan documents, including the Amended Organizational Documents, the Debtors shall not assume and assign any contract, license, permit or easement to which the United States is a party unless and until the United States consents to the assignment.

j.      Missouri Department of Revenue.  Missouri Department of Revenue's Priority Tax Claims shall be paid in full in Cash within thirty (30) days of the Effective Date.

k.      Total-Western, Inc.   Upon the Effective Date, Total-Western, Inc. ("TWI") shall have an allowed claim in the amount of $1,074,101.85 (the "Allowed Amount") on account of its proof of claim filed in the Chapter 11 Cases

067990.1001

and listed by Epiq on the Debtors' official claims register as Claim No. 889 ("Claim No. 889") and, upon payment of the Allowed Amount on or as reasonably practicable after the Effective Date, and solely to the extent that TWI files a timely response to the Seventh Notice of Claims Previously Satisfied [Docket No. 3577] (the "Notice of Satisfaction"), in express accordance with the procedures set forth in the Notice of Satisfaction Claim No. 889 shall be reduced to $200,291.77 (the "Remaining Amount") and the Debtors and Epiq are hereby authorized to adjust the official claims register to reflect such reduction. The Reorganized Debtors shall reserve all rights to object to or contest the Remaining Amount, including as set forth in the Notice of Satisfaction, and TWI shall reserve all rights to contest such objection. TWI shall reserve all rights to seek interest at the California statutory rate on account of both the Allowed Amount and the Remaining Amount and the Reorganized Debtors shall reserve the right to contest any such claim for interest. Upon entry of this Confirmation Order, the *Limited Objection of Total-Western, Inc. to Confirmation of the Joint Plan of Reorganization of the Debtors under Chapter 11 of the Bankruptcy Code* [Docket No. 3558] shall be deemed resolved.

l.     Iowa Department of Revenue. Notwithstanding any language in the Plan to the contrary, the Debtors' administrative expenses, in the form of postpetition taxes, owed to the Iowa Department of Revenue ("Iowa") shall be paid timely without the necessity of Iowa filing an administrative expense claim or request for payment. Iowa's Priority Tax Claims shall be paid in full in Cash within thirty (30) days of the Effective Date.

m.    <u>Texas Comptroller for Public Accounts</u>.  Notwithstanding any provision to the contrary in the Plan, this Confirmation Order or any implementing Plan documents, nothing shall affect the rights of the Texas Comptroller of Public Accounts ("<u>Texas Comptroller</u>") to assert setoff and recoupment. Specifically, any setoff rights of the Texas Comptroller, accrued prior to the Effective Date, are hereby preserved and may be exercised following confirmation of the Plan.

n.    <u>Galena Park Independent School District</u>.  The Debtors' outstanding ad valorem taxes assessed for 2008 and 2009, if any, owed to the Galena Park Independent School District, Sheldon Independent School District, Klein Independent School District, and Austin County Appraisal District (collectively, the "<u>Galena Park ISD</u>") re classified as Other Secured Claims under the Plan. Notwithstanding any language in the Plan to the contrary, (i) the Allowed Other Secured Claims of Galena Park ISD, shall be paid in full in Cash within thirty (30) days of the Effective Date, together with any unpaid interest thereon accruing from the Petition Date through the date of payment at the rate determined under section 511 of the Bankruptcy Code, (ii) the taxes accrued postpetition, prior to the Effective Date, and owed to Galena Park ISD shall be paid timely pursuant to applicable nonbankruptcy law without the necessity of the Galena Park ISD filing an administrative expense claim or request for payment, and (iii) the Liens securing Galena Park ISD's Allowed Other Secured Claims shall not be cancelled, released, subordinated or otherwise affected pursuant to the Plan pending satisfaction of any such Allowed Other Secured Claim.

YCST01:9880692.4                                                                                      067990.1001

o.    Notwithstanding anything contained in this Confirmation Order or the Plan, the Debtors shall file objections, if any, to the Claims of Tenby Inc., Pacific Enterprises Oil Company - Western, Gold Coast Energy Marketing, LLC, Naftex Section 27 Partners, L.P., Southern California Gas Company, Vaquero Energy Inc., Vaquero Partners I L.P. (the "<u>Joinder Parties</u>") within 120 days of the Effective Date. The Debtors shall use reasonable best efforts to determine the undisputed amounts (the "<u>Undisputed Amounts</u>"), if any, and meet and confer no later than August 30, 2010 with respect to the Claims filed by the Joinder Parties and shall pay such Undisputed Amounts as soon as reasonably practicable after agreement is reached on such Undisputed Amounts. Joinder Parties reserve all rights, if any, to assert California's statutory interest rate of 10% and to affirmatively move to allow any of the Undisputed Amounts or any other portion of the Claims.

p.    Notwithstanding anything in this Order or in the Plan, the Holders of Allowed Hot Fuel Claims shall be treated as Class 1B Flying J General Unsecured Claims and after the Effective Date the Hot Fuel Claims may be maintained and prosecuted against Reorganized Flying J outside of the Bankruptcy Court, provided, however, that nothing herein affects the rights and obligations under the Pilot Sale Order; provided, further, that notwithstanding anything to the contrary in the definition of > "> Allowed> ">  contained in the Plan, the Hot Fuel Claims shall not be automatically deemed withdrawn and the Claims Agent shall not expunge any Hot Fuel Claims without agreement of the parties or further order of this Court. Moreover, nothing in the Confirmation Order or the Plan shall release,

enjoin, limit or restrict the rights or claims of any plaintiff or unnamed class member in any of the actions pending under the consolidated caption In re Motor Fuel Temperature Sales Practice Litigation, MDL No. 1840, Case No. 07-MD-1840-KHV-JPO (D. Kan.) against any of the non-Debtor defendants named therein.

63. **Final Order.**  The Confirmation Order is a Final Order and the period in which an appeal must be Filed shall commence upon the entry hereof.

Dated:  Wilmington, Delaware
      July 9 , 2010

                                      The Honorable Mary F. Walrath
                                      United States Bankruptcy Judge

57